# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

MARGARET KENNEDY, et al.,

        **Plaintiffs,**

       **v.**

ABB INC., et al.,

        **Defendants.**

**CIVIL ACTION
NO. 06-cv-04305**

**(JUDGE NANETTE K. LAUGHREY)
JURY TRIAL DEMANDED**

## SUGGESTIONS OF LAW IN SUPPORT OF ABB DEFENDANTS' MOTION TO DISMISS

Thomas E. Wack
Jeffrey S. Russell
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
twack@bryancave.com
jrussell@bryancave.com

Brian T. Ortelere
William J. Delany
Catherine A. Cugell
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5150
Facsimile: (215) 963-5001
bortelere@morganlewis.com
wdelany@morganlewis.com
ccugell@morganlewis.com
*admitted pro hac vice*

Attorneys for Defendants ABB Inc., John W.
Cutler, Jr., Pension Review Committee of ABB
Inc., Pension & Thrift Management Group of ABB
Inc., and the Employee Benefits Committee of ABB
Inc.

Dated:  March 7, 2007

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF RELEVANT ALLEGATIONS ............................................. 3

III. ARGUMENT ........................................................................................................ 6

   A.   Standard of Review ..................................................................................... 6

   B.   Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Based on
        Failure to Disclose Revenue Sharing Payments Because ERISA Does Not
        Require Such Disclosures. ........................................................................ 7

        1.   No ERISA Provision Mandates Disclosure Of Revenue Sharing. ............ 8

        2.   DOL Regulations Do Not Require Disclosure Of Revenue Sharing. ........ 9

   C.   Because ABB Satisfied Both the Statutory and Regulatory Disclosure
        Requirements, ERISA Section 404(c) Compels Dismissal of the Entire
        Lawsuit. ................................................................................................... 14

        1.   Plaintiffs' Attempts To Avoid A "Safe Harbor" Affirmative
             Defense Opens The Door For Its Application At This Juncture .............. 15

        2.   There Can Be No Finding Of A Fiduciary Breach ................................. 16

IV.  CONCLUSION .................................................................................................. 18

Case 2:06-cv-04305-NKL   Document 26   Filed 03/07/07   Page 2 of 25

# TABLE OF AUTHORITIES

Bash v. Firstmark Standard Life,
861 F.2d 159 (7th Cir. 1988) ................................................................................4

Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein,
107 F.3d 139 (2d Cir. 1997)................................................................................13

Brandt v. Grounds,
687 F.2d 895 (7th Cir. 1982) ..............................................................................17

Brown v. American Life Holdings, Inc.,
190 F.3d 856 (8th Cir. 1999) ..............................................................................13

Burlison v. United States,
627 F.2d 119 (8th Cir. 1980) ..............................................................................15

Carpenter Outdoor Advertising Co. v. City of Fenton,
251 F.3d 686 (8th Cir. 2001) ................................................................................6

Carter v. United States,
123 Fed. Appx. 253 (8th Cir. 2005)......................................................................7

Coleman v. Watt,
40 F.3d 255 (8th Cir. 1994) ............................................................................3, 6

Curtiss-Wright Corp. v. Schoonejongen,
514 U.S. 73 (1995)..............................................................................................13

Ehlmann v. Kaiser Found. Health Plan of Texas,
198 F.3d 552 (5th Cir. 2000) ..............................................................................13

Faircloth v. Lundy Packing Co.,
91 F.3d 648 (4th Cir. 1996) ................................................................................13

Jenkins v. Yager,
444 F.3d 916 (7th Cir. 2006) ..............................................................................17

Jensen v. Sipco, Inc.,
38 F.3d 945 (8th Cir. 1994) ................................................................................12

Katsaros v. Cody,
744 F.2d 270 (2d Cir. 1984)................................................................................11

Langbecker v. Electronic Data Sys. Corp.,
No. 04-41760, 2007 WL 117465 (5th Cir. Jan. 18, 2007)..................................17

Case 2:06-cv-04305-NKL   Document 26   Filed 03/07/07   Page 3 of 25

Loomis v. Exelon Corp.,
Civ. Action No. 06-C-4900 (N.D. Ill. Feb. 21, 2007)....................................................17

Mertens v. Hewitt Assoc.,
508 U.S. 248 (1993)..................................................................................................14

Moses.com Sec., Inc. v. Comprehensive Software Sys.,
406 F.3d 1052 (8th Cir. 2005) ....................................................................................4

Nechis v. Oxford Health Plans, Inc.,
421 F.3d 96 (2d Cir. 2005)........................................................................................13

Pension Benefit Guar. Corp. v. LTV Corp.,
496 U.S. 637 (1990)....................................................................................................4

Romine v. Acxiom Corp.,
296 F.3d 701 (8th Cir. 2002) ......................................................................................7

Roth v. Sawyer-Cleator Lumber Co.,
16 F.3d 915 (8th Cir. 1994) ......................................................................................11

Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,
365 F.3d 353 (5th Cir. 2004) ......................................................................................2

Sprague v. Gen. Motors Corp.,
133 F.3d 388 (6th Cir. 1998) ....................................................................................13

In re Tower Air, Inc.,
416 F.3d 229 (3d Cir. 2005)......................................................................................15

In re Unisys Savings Plan Litig.,
74 F.3d 420 (3d Cir. 1996)...................................................................................15, 17

United States v. Clark,
454 U.S. 555 (1982)..................................................................................................11

United States v. Lewis,
411 F.3d 838 (7th Cir. 2005) ....................................................................................15

Weisbuch v. City of Los Angeles,
119 F. 3d 778 (9th Cir. 1997) ...................................................................................17

Wright v. Oregon Metallurgical Corp.,
360 F.3d 1090 (9th Cir. 2004) ..................................................................................16

## STATUTES

26 U.S.C. § 401(k) ..................................................................................................4

29 C.F.R. § 2520.103-1(b)(2)(ii) ..........................................................................9

29 C.F.R. §§ 2520.104b-10 ..................................................................................10

29 C.F.R. §§ 2520.104b-10(d)(3) .........................................................................10

29 C.F.R. § 2550.404c-1(b)(2)(i)(B) .....................................................................16

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)*(1)(vi)* ........................................................10

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)*(1)(v)* ...................................................10, 16

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)*(2)(i)* ....................................................10, 16

29 U.S.C. § 1002 (34) ...........................................................................................4

29 U.S.C. §§ 1021-31 ............................................................................................8

29 U.S.C. § 1023(a) ...............................................................................................8

29 U.S.C. § 1023(b)(3) ..........................................................................................8

29 U.S.C. § 1024(b)(1) ..........................................................................................9

29 U.S.C. § 1024(b)(4) .....................................................................................9, 13

29 U.S.C. § 1104(c) ...............................................................................................6

29 U.S.C. § 1104(c)(1)(B) ....................................................................................16

29 U.S.C. § 1104(c)(1) .........................................................................................14

29 U.S.C. § 1109 ....................................................................................................6

29 U.S.C. § 1023 ..................................................................................................12

29 U.S.C. § 1023(b)(2) ..........................................................................................9

29 U.S.C. § 1104(c) ...............................................................................................3

29 U.S.C. § 1104(c) .............................................................................................14

29 U.S.C. § 1104(c) ...............................................................................................15

29 U.S.C. § 1109 .....................................................................................................6

29 U. S. C. § 1132(a)(2)............................................................................................6

## MISCELLANEOUS

5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1276
(2d ed. 1987) .........................................................................................................15

<u>A Look at 401(k) Plan Fees</u>,
United States Department of Labor Employee Benefits Security Administration,
http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf..................................................18

<u>Annual Reporting and Disclosure</u>,
71 Fed. Reg. 41,392, 41,394 ................................................................................11, 12

Instruction for DOL Form 5500, Schedule H,
http://www.dol.gov/ebsa/500main.html.......................................................................9

<u>Private Pensions: Changes Needed to Provide 401(k) Plan Participants</u>
<u>and the Department of Labor Better Information on Fees</u>,
United States Government Accountability Office, GAO-07-21 (November 2006),
http://www.goa.gov/new.items/d0721.pdf...........................................................2, 5, 10

<u>Report of the Working Group on Plan Fees and Reporting on Form 5500</u>,
Advisory Council on Employee Welfare and Pension Benefit Plans (Nov. 11, 2004),
http://www.dol.gov/ebsa/pdf/ac_111804_report.pdf ...................................................12

# I.    INTRODUCTION

Plaintiffs Margaret Kennedy, Ron Tussy, Charles Fisher, Timothy Herndron and Timothy Pinnell ("Plaintiffs") allege that Defendants ABB Inc., John W. Cutler, the Pension Review Committee of ABB Inc., the Pension & Thrift Management Group of ABB Inc.[1] and the Employee Benefits Committee of ABB Inc. (collectively, "ABB") breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.   ABB moves the Court to dismiss all of Plaintiffs' claims on the grounds that the allegations of Plaintiffs' Complaint fail to plead a viable claim under ERISA.

Plaintiffs' ERISA claims stem from their individual decisions on how to allocate their 401(k) retirement savings across a variety of mutual funds and other investments (each with its own varying fees and expenses charged to participants' accounts) in the Personal Retirement Investment and Savings Management Plan ("PRISM") and the Represented Personal Retirement Investment and Savings Management Plan ("RepPRISM") (individually and collectively, the "Plan" or "Plans").[2]  In essence, Plaintiffs maintain that the fees and expenses charged against their individual 401(k) accounts to manage their investments and administer those monies were not properly disclosed and were excessive.  This, they claim, gives rise to a breach of ERISA's fiduciary standards.

As is common with large retirement savings plans, the Plans' fiduciaries

---

[1]    Although not the subject of this Motion, there is no legally cognizable entity known as the "Pension & Thrift Management Group of ABB Inc." amenable to suit under ERISA.

[2]    The two Plans are "mirror image" plans, having essentially the same terms.  The former Plan is for non-unionized employees while the latter Plan's participants are certain represented ABB employees.

1

contracted with a third party, Fidelity Management Trust Company ("FMTC"), to provide administrative and recordkeeping services to the Plans. See Compl. ¶ 20.[3] At bottom, although Plaintiffs do not allege that ABB failed to disclose the total amount of fees or expenses charged to the Plans (and are content, it appears, to quibble with the adequacy of the DOL's disclosure format), they maintain that the transfers of some portion of that money, so-called "revenue sharing" or "soft dollar" payments to FMTC, were not disclosed to them.[4] In other words, while Plaintiffs were told the total amount of the expenses paid (albeit in a format they think inadequate), they contend that ABB should have provided them with more detail about the manner in which expenses were further distributed to the Plans' service providers, including the amount that each service provider received. In that regard, their Complaint contains a variety of allegations regarding information Plaintiffs contend the fiduciaries should have told them related to revenue sharing, and the aggregate amount that inured to each entity which received revenue sharing.

The issues before the Court are much simpler than Plaintiffs' detailed and multi-paragraph Complaint suggests.[5] While Plaintiffs lodge a variety of allegations regarding

---

[3] Plaintiffs joined FMTC as well as Fidelity Management & Research Company in this lawsuit.

[4] As explained by the General Accounting Office in its recent report to Congress, "revenue sharing" often constitutes compensation "out of the investment funds' operating expenses for [recordkeeping] services, such as maintaining individual account records for its retail investors and consolidating participant requests to buy or sell shares." United States Government Accountability Office, Private Pensions: Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better Information on Fees, GAO-07-21, at 14-15 (November 2006), available at http://www.gao.gov/new.items/d0721.pdf.

[5] As is unfortunately all too common in such pleadings, "[a] garrulous style is not an uncommon mask for an absence of detail." Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 362 (5th Cir. 2004).

2

information that ABB should have provided them, they do not, and indeed cannot, allege that the disclosures made to them were inadequate under ERISA and the Department of Labor's ("DOL") regulations construing the relevant statutory provisions. Put another way, the allegations of the Complaint do not support a cognizable claim, and Plaintiffs' silence confirms that Defendants fully complied with their reporting and disclosure obligations. Accordingly, Plaintiffs' disclosure claims fail as a matter of law.

The fundamental defects of Plaintiffs' disclosure claims are likewise fatal to all of their breach of fiduciary duty claims. Once the Court properly recognizes that Plaintiffs were told all that is necessary under the specific statutory and regulatory provisions they invoke, the entirety of the lawsuit must be dismissed pursuant to ERISA section 404(c), 29 U.S.C. § 1104(c). ABB provided Plan participants with the information that ERISA and its accompanying regulations require so that participants could make informed decisions with regard to the Plans' investment alternatives. With such autonomy, however, comes responsibility. Where, as here, participants are given the information DOL and ERISA requires related to the varied investments in the Plans, ERISA section 404(c) expressly immunizes the fiduciary from *any* claimed fiduciary breaches stemming from the participants' individual elections regarding those investments.[6] Accordingly, the Court should dismiss the Complaint in its entirety.

## II.    STATEMENT OF RELEVANT ALLEGATIONS

The Complaint alleges Defendants breached their fiduciary duties to the 401(k)

---

[6]    ABB certainly disputes any allegation that the fees and expenses incurred by its Plans are in fact unreasonable or excessive, but does not address those issues in this Motion. That said, although ABB disagrees with many of the facts alleged in the Complaint, it accepts them as true for the purpose of this Motion only. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

3

plans in which participants voluntarily contribute a portion of their earnings and choose how their contributions are invested.  Id. ¶¶ 32; 42.[7]  ABB provides matching contributions to the Plans in varying percentages.  Id. ¶ 38.  The Plans allow participants to choose among over twenty diverse investment options.  Id. ¶ 42.[8]  These investment options provide participants with a broad range of alternatives, so that participants can structure an investment portfolio consistent with their individual objectives and risk tolerances.[9]

---

[7]    Such plans are commonly referred to as "401(k) plans" because of the favorable tax treatment given participants' investments under section 401(k) of the Internal Revenue Code.  26 U.S.C. § 401(k).  Moreover, under the parlance of ERISA, the Plans are "individual account plans" or "defined contribution plans."  As the latter terms suggest, only the amounts contributed to the Plan are specified or defined, with the money available at retirement determined by the performance of the investments, net of fees and expenses.  See 29 U.S.C. § 1002 (34) ("The term 'individual account plan'. . . means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.").  Unlike traditional defined benefit plans, the investment risk in a defined contribution plan is borne solely by employee-participants, and not the employer.  E.g., Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 637, 637 n.1 (1990) (in a defined contribution plan (such as the ABB savings plans) "employees are not promised any particular level of benefits; instead, they are promised only that they will receive the balances in their individual accounts"); Bash v. Firstmark Standard Life, 861 F.2d 159, 163 (7th Cir. 1988) (to impose open employer/plan sponsor investment risk in a defined contribution plan "is an inequity of the heads I win, tails you lose variety that neither the ERISA statute nor the plan documents perpetrate").

[8]    The Plans' Summary Plan Descriptions ("SPDs") are referred to in the Complaint.  See, e.g., Compl. ¶ 49.  The Court may now examine the SPDs and any documents incorporated therein, such as fund fact sheets and prospectuses, "even though [they were] not expressly part of the pleadings, because [they were] incorporated into the pleadings by reference."  Moses.com Sec., Inc. v. Comprehensive Software Sys., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005).

[9]    For example, participants can invest in a low-risk fund such as the ABB Inc. Income Fund, a conservative fixed income vehicle that seeks to provide a stable rate of return from insurance company contracts and other similar investments, a more risky major stock index fund such as the BGI Equity Index Fund, which tracks the Standard & Poor's 500 Index, or a number of mutual funds, Compl. ¶ 42, such as the T. Rowe Price International Stock Fund, a relatively aggressive, high-risk fund invested in the common

(continued)

4

Defendant FMTC is the Plans' trustee, acts as recordkeeper and performs a variety of administrative tasks for the Plans. Compl. ¶ 20. FMTC receives compensation from the Plans for these services in the form of "hard dollar" payments—cash payments made directly by the Plans to FMTC. Id. ¶ 61. Plaintiffs allege that FMTC also has "revenue sharing" arrangements with certain brokers or providers of certain investment options (e.g., mutual funds) to transfer Plan-asset-based compensation from such brokers or providers to FMTC in its role as trustee, recordkeeper and administrator for the Plans. Id. ¶¶ 64, 80.

Plaintiffs allege that ABB breached its fiduciary duties to the Plans in two ways. First, Plaintiffs assert that ABB failed to disclose adequately service provider fees. Id. ¶ 87. In particular, Plaintiffs maintain that revenue sharing payments are not disclosed to participants, id. ¶ 85, and, therefore, participants are unable to determine either the total fees paid to service providers or the amount of revenue sharing related to each investment option. Id. at ¶ 94. Significantly, and ruinous to their cause, Plaintiffs do not, and cannot, allege that ABB failed to satisfy the DOL's disclosure regime (compelling the disclosure of the entirety of the fees and expenses but in a format these Plaintiffs deem inadequate). At bottom, Plaintiffs are left only with the allegation that participants are

stock of medium to large-sized companies based outside the United States. See ABB Inc. Income Fund Fact Sheet, Ex. A at 1; Barclays Global Investors Collective Funds, Equity Fund Fact Sheet, Ex. B at 1-2; T. Rowe Price International Stock Fund Prospectus, Ex. C at 1-6. The type of investment option a participant selects impacts the associated fees and expenses of that option. See, e.g., United States Government Accountability Office, Private Pensions: Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better Information on Fees," GAO-07-21, at *11 (November 2006), available at http://www.gao.gov/new.items/d0721.pdf (noting that index funds "have lower management fees than actively managed funds" because the index funds "closely track a market performance indicator, such as the Standard & Poor's 500, which largely eliminates expenditures associated with research, investment selection, and buying and selling").

5

not informed how the providers of these investment options may further distribute portions of the total expenses charged. Second, apart from whether ABB is obligated to disclose these revenue sharing payments, Plaintiffs allege that the total fees paid to FMTC are excessive and unreasonable. Id. ¶¶ 79-80, 82.

These allegations underpin the bases for the two Counts asserted against ABB in the Complaint. In the first Count, Plaintiffs seek monetary relief under ERISA section 409, 29 U.S.C. § 1109, and ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), for any supposed losses to the Plans stemming from the claimed excessive fees and expenses.[10] Compl. ¶¶ 97-102. Count Two seeks equitable relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), to remedy the same alleged breaches. Compl. ¶¶ 103-115.

### III.    ARGUMENT

#### A.    Standard of Review.

In ruling on a motion to dismiss, a court must accept the complaint's allegations as true and view them in the light most favorable to the plaintiff. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). Although courts construe the allegations of a complaint liberally when ruling upon a motion to dismiss, this standard does not translate into immunity from dismissal. The complaint still must state the essential elements of a cause of action simply, concisely, and directly. See Carpenter Outdoor Advertising Co. v. City of Fenton, 251 F.3d 686 (8th Cir. 2001) (affirming dismissal of complaint where plaintiff failed to allege in the complaint each element of its claim). Thus, where a complaint

---

[10]    ERISA section 502(a)(2) permits a participant to bring a civil action to enforce ERISA section 409. See 29 U.S.C. §§ 1132(a)(2), 1109. Section 409(a), in turn, makes a fiduciary liable for any losses that the plan incurs as a result of the fiduciary's breach of his or her fiduciary obligations under ERISA, subject, as more fully discussed below, to ERISA section 404(c). See 29 U.S.C. §§ 1104(c), 1109.

Case 2:06-cv-04305-NKL   Document 26   Filed 03/07/07   Page 12 of 25

lacks the necessary legal and factual allegations to support a cause of action, a court should dismiss the complaint. In addition, a court may dismiss an action under Rule 12(b)(6) if the complaint itself admits facts fatal to the claim. <u>Romine v. Acxiom Corp.</u>, 296 F.3d 701, 706 (8th Cir. 2002) (where complaint discloses that the quarterly financial report was prepared in accordance with GAAP, complaint fails to state a claim based upon non-compliance with GAAP).[11] Moreover, and as fully discussed below, where, as here, Plaintiffs interpose an affirmative defense in the Complaint, and offer sufficient admissions such that the Court may determine its application, the Court may dismiss the Complaint on that basis. <u>See</u> <u>infra</u> at 15-16.

**B.   Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Based on Failure to Disclose Revenue Sharing Payments Because ERISA Does Not Require Such Disclosures.**

Because ABB satisfied its disclosure duties, Plaintiffs cannot allege that ABB failed to disclose the total fees and expenses for each investment option. However, Plaintiffs allege that ABB failed to disclose revenue sharing paid by the various mutual funds to FMTC. <u>See</u> Compl. ¶¶ 85-86. While Plaintiffs acknowledge, as they must, that the aggregate of the mutual funds' charges are disclosed, their disclosure claims are grounded upon the premise that ABB failed to disclose the "sharing" of money by the mutual funds to the recordkeeper—at best, a portion of that aggregate amount.[12] In Plaintiffs' own words: "Neither ABB nor Fidelity disclosed to participants, and to this

---

[11]   <u>See also</u> <u>Carter v. United States</u>, 123 Fed. Appx. 253, 258 (8th Cir. 2005) (citing <u>Romine</u> and holding that plaintiff who offers specific facts in her complaint can plead herself out of court).

[12]   For the purpose of this Motion only, it is assumed that the recordkeeper receives some portion of the fees and expenses charged to participant accounts through these revenue sharing streams. In reality, the revenue sharing payments are paid not from plan assets,

(continued)

7

day has not disclosed, the fact that Fidelity and other Plan service providers were engaging in Revenue Sharing." Compl. ¶ 86. Because neither ERISA's specific disclosure requirements nor ERISA's general standards of fiduciary responsibility require fiduciaries to disclose revenue sharing payments to participants, the disclosure claim fails as a matter of law.

### 1. No ERISA Provision Mandates Disclosure Of Revenue Sharing.

More specifically, although ERISA sets forth certain specific reporting and disclosure obligations, see, e.g., 29 U.S.C. §§ 1021-31, none of these provisions mandates disclosure of revenue sharing payments. In their Complaint, Plaintiffs assert that Plan participants should be informed as to the breakdown between "hard dollar" fees and revenue sharing amounts. Compl. ¶¶ 73-74; 83-94. However, Plaintiffs point to no legal provision requiring such an accounting to Plan participants. They refer only to ERISA sections 103 and 104, 29 U.S.C. §§ 1023 and 1024. Neither provision requires disclosure of revenue sharing or compels disclosure of fees and expenses on the terms Plaintiffs now deem favorable.

ERISA section 103 requires a plan administrator to publish and file with the DOL an annual report describing a plan's assets and liabilities, as well as its receipts and disbursements. 29 U.S.C. § 1023(a); (b)(3); see Compl. ¶¶ 51; 53. Despite its superficial complexity and bluster, nowhere does the Complaint specifically allege that ABB failed to abide this requirement. Moreover, the other statutory provision invoked in the Complaint, ERISA section 104, only requires that a plan administrator periodically

---

but from the general assets of the mutual fund company or its investment advisor. See supra at 2, n. 4.

provide participants an SPD and speaks further to the timing of the filing of the aforementioned annual report. Once again, the Complaint does not allege that ABB failed to meet these statutory disclosure requirements, setting forth the "hard dollar" amounts mentioned in the Complaint. 29 U.S.C. § 1024(b)(1) and (3); see Compl. ¶¶ 49-50. ERISA section 104 further entitles participants to receive certain additional documents from the plan administrator "upon written request." 29 U.S.C. § 1024(b)(4). Again, there is no contention that ABB failed to honor properly any participant request for information.

### 2. DOL Regulations Do Not Require Disclosure Of Revenue Sharing.

The related DOL regulations similarly do not require the disclosure of the information Plaintiffs allege was unlawfully withheld, and compel the conclusion that there can be no finding of a fiduciary breach on the basis of a misrepresentation or omission. Although ERISA section 103(b)(2), 29 U.S.C. § 1023(b)(2), requires plan expenses to be included in a plan's annual report, DOL regulations further explain that the report need include only the expense categories required to be reported on the Form 5500, the annual financial report for the Plan, and its schedules. See 29 C.F.R. § 2520.103-1(b)(2)(ii). One of those schedules requires a plan administrator to "[r]eport all administrative expenses (by specified category) paid or charged by the plan."[13] Those "administrative expenses" include professional fees, contract administrator fees, and investment advisory and management fees. Id. Similarly, the DOL regulation regarding the summary annual report that must be distributed to plan participants only requires

---

[13] See Instructions for DOL Form 5500, Schedule H, available at http://www.dol.gov/ebsa/500main.html.

9

certain expenses to be reported in the aggregate; the plan is not required to disclose any individual fees or expenses charged to a participant's account, and certainly not revenue sharing payments.  See 29 C.F.R. §§ 2520.104b-10; 2520.104b-10(d)(3).[14]  Careful examination of the existing statutory and regulatory disclosure requirements readily demonstrates that "ERISA does not explicitly require plan sponsors to disclose comprehensive information on fees to participants."[15]  The General Accounting Office's recent report on 401(k) plan fees further demonstrates the limited disclosure duty that fiduciaries shoulder in these circumstances.  Once again, there is no allegation that ABB violated the specific disclosure duties.[16]

---

[14]     The corresponding DOL regulation, 29 C.F.R. § 2520.104b-10, sets forth the plan administrator's duty to provide a "summary annual report" and specifically describes the format within which certain narrow enumerated categories of the fees and expenses are to be stated to participants:

>     Benefits under the plan are provided by (indicate funding arrangements).  Plan expenses were ($   ).  These expenses included ($   ) in administrative expenses and ($   ) in benefits paid to participants and beneficiaries, and ($   ) in other expenses.  A total of (   ) persons were participants in or beneficiaries of the plan at the end of the plan year, although not all of these persons had yet earned the right to receive benefits.

Id.  Once again, there is no allegation, nor could there be, that ABB failed to timely disclose this information to plan participants.

[15]     United States Government Accountability Office, Private Pensions: Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better Information on Fees," GAO-07-21, at 28 (November 2006), available at http://www.gao.gov/new.items/d0721.pdf.

[16]     Moreover, and as set forth in the Complaint, e.g., Compl. ¶ 88, the DOL regulations promulgated under ERISA section 404(c) only require the disclosure of "transaction fees and expenses" such as "commissions, sales leads, deferred sales charges [and] redemption or exchange fees."  29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(v).  Again, there is no requirement that revenue sharing be disclosed, as the DOL's recent initiative conclusively demonstrates.  See infra at 11-12.  Moreover, "upon request," a participant may seek "a description of the annual operating expenses of each designated investment alternative . . . which reduce the rate of return to participants and beneficiaries, and the aggregate amount of such expenses expressed as a percentage of average net assets of the designated investment alternative."  29 C.F.R. §§ 2550.404c-1(b)(2)(i)(B)(1)(vi), 2550.404c-1(b)(2)(i)(B)(2)(i).  The DOL's recent initiative demonstrates that revenue

(continued)

10

Indeed, recent regulatory proposals confirm the limited disclosure obligations currently in place. The DOL only last year proposed an amendment to its existing reporting regime to require disclosure of revenue sharing payments received by a plan's service providers. See Annual Reporting and Disclosure, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. part 2520). This proposal conclusively demonstrates that current statutory law and regulations do not require disclosure of the amounts paid to service providers pursuant to revenue sharing arrangements. Plan fiduciaries need not guess at possible new statutory interpretations; the DOL's construction of ERISA as described in its regulations controls unless and until the new regulations are adopted. See Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 917 (8th Cir. 1994) (ERISA's prudent person standard "is a test of how the fiduciary acted viewed 'from the perspective of the time of the [challenged] decision rather than from the vantage point of hindsight.'") (quoting Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir. 1984)).[17]

_____

sharing need not be disclosed, even "upon request." In this regard, the ABB SPDs refer plan participants to the prospectus for each mutual fund. See PRISM SPD, Ex. D, at 43; RepPRISM SPD, Ex. E, at 130. In turn, the prospectuses each include an "expense ratio" describing the information to be disclosed under 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(*1*)(*v*). Those expense ratios demonstrate that the fees and expenses charged vary significantly by the types of funds and investment options available for selection by the participants. By way of example of the variety of options, in 2006 Plan participants could choose to invest in PIMCO's Total Return Fund, whose Administrative Class offered a 0.68% ratio of net expenses to average net assets, ABF's Large Cap Value Fund, which offered a 0.86% ratio, or Morgan Stanley's Emerging Markets Portfolio, whose Class A offered a 1.41% ratio. See PIMCO Total Return Funds Annual Report, Ex. F, at 11; American Beacon Funds Prospectus, Ex. G, at 61; Morgan Stanley Institutional Fund, Inc. Prospectus, Ex. H, at 32.

[17]   See also United States v. Clark, 454 U.S. 555, 562-63 (1982) (holding that where Congress notes in committee report that proposed revisions are intended to rectify shortcoming in current statute, then current statute should be understood to include shortcoming.).

11

The DOL's proposed regulation would require disclosure of "the source and nature of compensation in excess of $1,000 received from parties other than the plan or the plan sponsor." Annual Reporting and Disclosure, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. part 2520) (emphasis added). The proposal stems from a recommendation by the DOL ERISA Advisory Council Working Group that the Form 5500, the "Annual Report" under 29 U.S.C. § 1023, be revised to require disclosure of revenue sharing payments paid to plan service providers.[18] The Working Group's Report further noted that, although the DOL provides a worksheet for analyzing fees of 401(k) plan service providers, "it does not attempt to capture . . . revenue sharing streams." Id. at 8 (emphasis added).

Taken together, the proposed amendment to the DOL regulations and the Working Group Report demonstrate that ERISA's reporting and disclosure standards do not currently require disclosure of amounts paid to service providers pursuant to revenue sharing arrangements. Plaintiffs allege neither a failure to satisfy the express statutory provisions nor, perhaps more importantly, a violation of the corresponding regulatory disclosure obligations. Satisfaction of the regulatory standard precludes a finding of a breach of the statutory duty. E.g., Jensen v. Sipco, Inc., 38 F.3d 945, 952 (8th Cir. 1994) ("The Department of Labor, which is responsible for interpreting and enforcing ERISA, has promulgated detailed regulations specifying the disclosure requirements for SPDs. Nowhere do these regulations require that a welfare plan SPD specifically disclose that its benefits are not vested . . . . Given the importance of this issue and the Department's

---

[18]    See Advisory Council on Employee Welfare and Pension Benefit Plans, Report of the Working Group on Plan Fees and Reporting on Form 5500 (Nov. 11, 2004), available at http://www.dol.gov/ebsa/pdf/ac_111804_report.pdf.

thorough approach to questions of disclosure, its failure to require SPDs to disclose non-vesting cannot be an inadvertent omission.") (emphasis added).[19]

Plaintiffs have not alleged that the Plan administrator breached its duties under any of these provisions.[20] There is no claim that ABB failed to file any necessary reports with the DOL and/or failed to disclose to Plan participants any of the information required to be disclosed under the current statutory and regulatory regime. Plaintiffs' invitation to this Court to augment the precise disclosure regime now in place must be refused. As the Supreme Court has held, "ERISA [is] an enormously complex and

---

[19]    See also Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 102 (2d Cir. 2005) ("[Defendant] has no duty to disclose to plan participants information additional to that required by ERISA."); Ehlmann v. Kaiser Found. Health Plan of Texas, 198 F.3d 552, 555 (5th Cir. 2000); Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998); Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 146-47 (2d Cir. 1997); Faircloth v. Lundy Packing Co., 91 F.3d 648, 657 (4th Cir. 1996); Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 84 (1995) (ERISA's requirement under 29 U.S.C. §1102(b) that a benefit plan have a procedure for identifying persons with authority to amend the plan "may not be a foolproof information scheme, although it is quite thorough. Either way, it is the scheme that Congress devised. And [the Court] do[es] not think Congress intended it to be supplemented by a faraway provision in another part of the statute, [such as 29 U.S.C. § 1024(b),] least of all in a way that would lead to improbable results . . .").

[20]    Similarly, Plaintiffs allege that ERISA section 104(b)(4) requires a plan, "upon written request of any participant or beneficiary," [to] furnish a copy of . . . any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); Compl. ¶ 52. Again, Plaintiffs nowhere allege that ABB failed to satisfy these requirements. To the extent that Plaintiffs' demand for revenue sharing information can be construed as a demand for "other instruments" under ERISA section 104(b)(4), such a demand fails, given the Courts' uniformly narrow construction of the relevant statutory language. "Other instruments under which the plan is established or operated" encompasses only "formal or legal documents under which a plan is set up or managed." Faircloth v. Lundy Packing Co., 91 F.3d 648, 653 (4th Cir. 1996); Brown v. American Life Holdings, Inc., 190 F.3d 856, 861 (8th Cir. 1999) ("other instruments" means not simply any document relating to a plan, but only formal documents that establish or govern the plan). "Congress meant the formal legal documents that govern or confine a plan's operation, rather than the routine documents with which or by means of which a plan conducts its operations." Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 142 (2d Cir. 1997) (also noting that "[t]he term 'instrument' itself, therefore connotes a formal legal document").

13

detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993) (emphasis added). ABB's incontrovertible satisfaction of the statutory and regulatory disclosure requirements compels dismissal of the misrepresentation claims as well as any residual imprudence claims, as next explained.

> **C.** **Because ABB Satisfied Both the Statutory and Regulatory Disclosure Requirements, ERISA Section 404(c) Compels Dismissal of the Entire Lawsuit.**

Throughout their Complaint and ostensibly in support of their claims, Plaintiffs cite to ERISA section 404(c), 29 U.S.C. § 1104(c), the statutory provision that works to ensure that plan participants properly assume the risks and costs associated with their saving plan investments. See supra at 4, n.7. For example, despite an inability to plead and prove a failure to satisfy section 404(c)'s disclosure obligations as set forth in the DOL regulations (id. at 10-11, n.16), Plaintiffs readily concede that "ERISA § 404(c) provides the Plan fiduciaries a 'Safe Harbor' from liability for losses that a participant suffers in his or her 401(k) accounts to the extent that the participant exercises control over the assets in his or her 401(k) accounts." Compl. ¶ 54 (emphasis added).

More specifically, under ERISA section 404(c), where, as here, a pension plan "provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the [DOL])," then "no person who is otherwise a fiduciary shall be liable . . . for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1) (emphasis added). Given the indisputable fact that ABB satisfied the 404(c) disclosure duties set forth in the DOL regulations (and the balance of the statutory

14

and regulatory requirements), it necessarily follows that the fiduciaries cannot be held liable for the claimed fiduciary breaches, as a matter of law.

### 1. Plaintiffs' Attempts To Avoid A "Safe Harbor" Affirmative Defense Opens The Door For Its Application At This Juncture.

Although ERISA section 404(c) is typically described as an affirmative defense,[21] this Court may, and indeed should, hold that the statutory provision compels immediate dismissal of the lawsuit given Plaintiffs' admission that the statute provides a "safe harbor" against fiduciary breach claims where, as here, the disclosure standards are satisfied. More specifically, Plaintiffs' misguided effort to interpose affirmatively ERISA section 404(c), 29 U.S.C. § 1104(c), in support of their claims makes the statutory provision fair game for ABB's Motion to Dismiss. "If the attempt to avoid the affirmative defense actually demonstrates the defense's effectiveness, a situation similar to that of a complaint that contains a built-in defense is presented. As a result, the defendant may test the validity of the defense, since it appears on the face of the complaint, by a motion to dismiss or a motion for summary judgment." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1276 (2d ed. 1987) (emphasis added).[22] As noted, Plaintiffs explicitly concede the requirements of the safe

---

[21] E.g., In re Unisys Savings Plan Litig., 74 F.3d 420, 446 (3d Cir. 1996) ("[S]ection 1104(c) is akin to an exemption from or a defense to ERISA's general rule, relieving fiduciaries in the appropriate circumstances of the liability to which they would otherwise be exposed . . . .").

[22] See also Burlison v. United States, 627 F.2d 119, 122 (8th Cir. 1980) ("Although it may be unusual to uphold an affirmative defense at the pleading stage, when the defense is established on the face of the complaint, dismissal is appropriate.") (emphasis added); In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005) ("A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however."); United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005) ("The exception occurs where, as here, the allegations of the complaint itself set forth everything

(continued)

15

harbor, Compl. ¶¶ 54-56, and, at the same time, cannot possibly demonstrate that ABB did not satisfy the disclosure requirements specifically related to the defense.[23]

## 2.    There Can Be No Finding Of A Fiduciary Breach.

Plaintiffs were given all that is required under the statute and the DOL's 404(c) regulations.  As noted, the statutory provision absolves fiduciaries from "any loss . . . by reason of any breach," upon a finding of participant "control."  29 U.S.C. § 1104(c)(1)(B).  As the Complaint makes plain, to exercise such control, Plan participants must be given the "opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives under the plan."  Compl. ¶ 55; 29 C.F.R. § 2550.404c-1(b)(2)(i)(B).  This information must include "a description of any transaction fees and expenses which affect the participant's or beneficiary's account balance."  Compl. ¶ 56; 29 C.F.R. 2550.404c-1(b)(2)(i)(B)(*1*)(*v*).  Finally, Plaintiffs add that "at least upon request," they must be provided with "[a] description of the annual operating expenses of each designated investment alternative . . . which reduce the rate of return to participants and beneficiaries."  Compl. ¶ 56; 29 C.F.R. 2550.404c-1(b)(2)(i)(B)(*2*)(*i*).

Nowhere in the Complaint do Plaintiffs allege that they failed to receive any of this specific information.  Because the participants were apprised of all of the necessary information required under the 404(c) regulations, it necessarily follows that they

---

necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.").

[23]  E.g., Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1098 (9th Cir. 2004) (affirming grant of motion to dismiss and holding that "a plaintiff may plead herself out of court . . . If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment

(continued)

exercised control over their investments, and, as such, the fiduciaries cannot be held liable for the alleged breaches.[24] E.g., Langbecker v. Electronic Data Sys. Corp., No. 04-41760, 2007 WL 117465, at * 8 (5th Cir. Jan. 18, 2007) ("A plan fiduciary may have violated the duties of selection and monitoring of a plan investment, but § 404(c) recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options.") (emphasis added).[25]

---

establishes the identical facts.") (quoting Weisbuch v. City of Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

[24] To the extent that Plaintiffs premise their claims on any allegation that the Plans included what they maintain are more expensive "retail mutual funds," Compl. ¶ 42, Plaintiffs' claims likewise must fail pursuant to 404(c), because Plaintiffs had the opportunity to direct their investments. A discussion of retail and institutional mutual funds can be found in the GAO report at http://www.gao.gov/new.items/d0721.pdf, at 11.

[25] See also In re Unisys Sav. Plan Litig., 74 F.3d at 445 ("There is nothing in section 1104(c) which suggests that a breach on the part of a fiduciary bars it from asserting section 1104(c)'s application. On the contrary, the statute's unqualified instruction that a fiduciary is excused from liability for 'any loss' which 'results from [a] participant's or [a] beneficiary's exercise of control' clearly indicates that a fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated."); Jenkins v. Yager, 444 F.3d 916, 924 (7th Cir. 2006) ("Therefore, we agree with the district court and believe that the statute, when read as a whole along with the accompanying regulations, permits a plan trustee to delegate decisions regarding the investment of funds to plan participants even if the plan does not meet the requirements for the section 404(c) safe harbor."). Moreover, Plaintiffs' Complaint seeks multiple forms of relief, two of which are monetary: 1) Plaintiffs allege that as a result of ABB's fiduciary breaches, the Plan participants have suffered financial losses and damages ("direct loss"), Compl. ¶100; and 2) they allege that because ABB failed to disclose adequate information about the fees to participants, ABB does not qualify for ERISA section 404(c)'s "safe harbor" provision, and, therefore, ABB is liable "for any investment losses participants and beneficiaries may have experienced in the Plan." Compl. ¶ 101. The claim to "investment losses" should now be dismissed. For the reasons set forth in Section III.C, Plaintiffs' Complaint establishes without doubt that Defendants complied with ERISA section 404(c) and, therefore, the premise of their damage claim is faulty. In any event, Plaintiffs failed to plead any causal connection between the alleged breach and investment losses Plaintiffs claim they experienced and, as such, the claims to investment losses must now be dismissed. As the Court in Loomis v. Exelon Corp., Civ. Action No. 06-C-4900 (N.D. Ill. Feb. 21, 2007) (Exh. I), recently held, based on allegations

(continued)

17

## IV.    CONCLUSION

For the foregoing reasons, the ABB Defendants respectfully request that the

Complaint be dismissed.

Respectfully submitted,

BRYAN CAVE LLP

By:    /s/ Jeffrey S. Russell

Brian T. Ortelere                           Thomas E. Wack
William J. Delany                          Jeffrey S. Russell
Catherine A. Cugell                        BRYAN CAVE LLP
MORGAN, LEWIS & BOCKIUS, LLP      211 North Broadway, Suite 3600
1701 Market Street                         St. Louis, MO  63102
Philadelphia, PA  19103                    Telephone:  (314) 259-2000
Telephone:  (215) 963-5150                 Facsimile:  (314) 259-2020
Facsimile: (215)963-5001
*Admitted Pro Hac Vice*

Attorneys for Defendants ABB Inc.,
John W. Cutler, Jr., Pension Review
Committee of ABB Inc.), Pension &
Thrift Management Group of ABB
Inc., and the Employee Benefits
Committee of ABB Inc.

Dated:  March 7, 2007

---

indistinguishable to those here, "ERISA claimants must plead that there is some causal connection between their claim and the alleged loss."  Id. (citing Brandt v. Grounds, 687 F.2d 895, 898 (7th Cir. 1982)).  In that regard, the entirety of the lawsuit should now be dismissed for the additional simple reason that Plaintiffs' attempt to examine the fees and expenses in isolation, and devoid of the investment returns enjoyed by each particular option, is improper.  Absent allegations speaking to the net investment performance of each investment alternative, Plaintiffs fail to properly allege that the claimed wrongdoing caused any loss.  Id.; see also United States Department of Labor Employee Benefits Security Administration, A Look at 401(k) Plan Fees, at *17-18, available at http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf (advising 401(k) participants to "[c]ompare the net returns relative to the risks among available investment options." Moreover—"don't consider fees in a vacuum.  They are only one part of the bigger picture including investment risk and returns and extent and quality of services provided.") (emphasis added).  Excessive fees are a meaningless concept when divorced from investment returns.  At bottom, Plaintiffs' allegations cannot give rise to a finding of loss causation, and, therefore, the lawsuit should be dismissed.

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2007, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send such notification to the following:

| | |
|---|---|
| Jerome J. Schlichter<br>Daniel V. Conlisk<br>Heather Lea<br>Schlicter, Bogard & Denton<br>100 South 4th Street, Suite 900<br>St. Louis, MO 63102<br><br>**Attorneys for Plaintiffs** | Richard N. Bien<br>Adam B. Walker<br>Lathrop & Gage, L.C.<br>2345 Grand Boulevard, Suite 2800<br>Kansas City, MO 64108<br><br>**Attorneys for Defendants Fidelity Management Trust Company and Fidelity Management & Research Company** |
| Bob Eccles<br>O'Melveny & Myers LLP<br>1625 I Street, NW<br>Washington, DC 20006<br><br>**Attorney for Fidelity Management & Research Company** | |

/s/ Jeffrey S. Russell

19