UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

MARGARET KENNEDY, et al.,

               Plaintiffs,

v.

ABB, INC., et al.,

               Defendants.

CIVIL ACTION
No. 06-CV-04305

(Judge Nanette K. Laughrey)

**SUGGESTIONS IN SUPPORT OF FIDELITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
FOR BREACH OF FIDUCIARY DUTY**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND FACTS .................................................................................. 3

        A.      The Plans. ............................................................................................... 3

        B.      Plaintiffs' Claims. .................................................................................. 4

III.    ARGUMENT .................................................................................................... 5

        A.      Standard of Review. ............................................................................... 5

        B.      Count I Should Be Dismissed. ............................................................... 6

                1.      The Claims Against FMRCo Should be Dismissed Since FMRCo
                        is Not a Fiduciary to the ABB Plans. ........................................... 6

                2.      Count I Should be Dismissed Against FMTC Since FMTC is Not a
                        Fiduciary as to the Challenged Conduct. ...................................... 9

        C.      Count II Should Be Dismissed. ............................................................ 12

                1.      Count II Should be Dismissed on the Same Grounds as Count I. ........... 12

                2.      Count II Should be Dismissed Since it Does Not Seek
                        "Appropriate Equitable Relief" Authorized by ERISA. .......................... 12

        D.      Count III Should Be Dismissed. .......................................................... 17

IV.     CONCLUSION ................................................................................................ 19

Case 2:06-cv-04305-NKL    Document 48    Filed 04/06/07    Page 2 of 25

# TABLE OF AUTHORITIES

Page

## Cases

*A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec.,*
    964 F. Supp. 147 (S.D.N.Y. 1997) ........................................ 7

*Calhoon v. TWA,*
    400 F.3d 593 (8th Cir. 2005) ............................................ 17

*Carpenter Outdoor Adver. Co. v. City of Fenton,*
    251 F.3d 686 (8th Cir. 2001) ............................................. 5

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.,*
    474 F.3d 463 (7th Cir. 2007) ........................................... 8, 9

*Corbett v. Marsh & McLennan Cos.,*
    No. MDL-15863, 2006 WL 734560 (D. Md. Feb. 27, 2006) ..................... 7

*Curtiss-Wright Corp. v. Schoonejongen,*
    514 U.S. 73 (1995) ..................................................... 14

*Daily Income Fund, Inc. v. Fox,*
    464 U.S. 523 (1984) .................................................... 16

*Eckelkamp v. Beste,*
    201 F. Supp. 2d 1012 (E.D. Mo.) ......................................... 9

*Ehlmann v. Kaiser Found. Health Plan,*
    198 F.3d 552 (5th Cir. 2000) ........................................... 14

*Faircloth v. Lundy Packing Co.,*
    91 F.3d 648 (4th Cir. 1996) ............................................ 14

*Fairview Health Servs. v. Ellerbe Becket Co. Employee Med. Plan,*
    No. 06-2585, 2007 WL 967780 (D. Minn. March 29, 2007) ................... 4

*Great-West Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002) ................................................. 16, 17

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,*
    434 F. Supp. 2d 233 (S.D.N.Y. 2006) .................................... 15

*In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.,*
    No. 03 Civ. 8208(RO), 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. Apr. 18, 2006) ....... 15

*Jensen v. SIPCO, Inc.,*
    38 F.3d 945 (8th Cir. 1994) ............................................ 14

*Johnston v. Paul Revere Life Ins. Co.,*
    241 F.3d 623 (8th Cir. 2001) ........................................... 10

*Kalda v. Sioux Valley Physician Ptnrs., Inc.*
    394 F. Supp. 2d 1107 (D.S.D. 2005) ..................................... 11

Case 2:06-cv-04305-NKL   Document 48   Filed 04/06/07   Page 3 of 25

*Kerr v. Charles F. Vatterott & Co.*,
 184 F.3d 938 (8th Cir. 1999) ................................................ 12

*Knieriem v. Group Health Plan, Inc.*,
 434 F.3d 1058 (8th Cir.) ..................................................... 17

*Kushner v. Beverly Enters., Inc.*,
 317 F.3d 820 (8th Cir.2003) ................................................ 3

*Maniace v. Commerce Bank, N.A.*,
 40 F.3d 264 (8th Cir. 1994) ............................................. 9, 10

*Mertens v. Hewitt Assocs.*,
 508 U.S. 248 (1993) ...................................................... 6, 12

*Moses.com Sec., Inc. v. Comprehensive Software Sys.*,
 406 F.3d 1052 (8th Cir. 2005) ........................................... 5, 6

*Pegram v. Herdrich*,
 530 U.S. 211 (2000) ...................................................... 9, 11

*Romine v. Acxiom Corp.*,
 296 F.3d 701 (8th Cir. 2002) ............................................... 5

*Schulist v. Blue Cross of Iowa*,
 717 F.2d 1127 (7th Cir. 1983) ............................................ 11

*Seaway Food Town, Inc. v. Med. Mut. of Ohio*,
 347 F.3d 610 (6th Cir. 2003) ............................................. 11

*Varity Corp. v. Howe*,
 516 U.S. 489 (1996) ...................................................... 13

### Statutes

15 U.S.C. § 77a *et seq.* ..................................................... 15

15 U.S.C. § 77aa ............................................................. 15

15 U.S.C. § 78a *et seq.* ..................................................... 15

15 U.S.C. § 78l .............................................................. 15

15 U.S.C. § 80a-1 *et seq.* .................................................. 14

15 U.S.C. § 80a-8(b) ......................................................... 15

15 U.S.C. § 80a-8(b)(5) ...................................................... 15

15 U.S.C. § 80a-29(e) ........................................................ 15

15 U.S.C. § 80a-35(b) ........................................................ 16

15 U.S.C. § 80b-1 *et seq.* .................................................. 15

-iii-

**Page**

26 U.S.C. § 401(k) .................................................................................................... 3

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ................................................... 6, 9

ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B) ................................................... 7, 9

ERISA § 3(34), 29 U.S.C. § 1002(34) ............................................................... 3

ERISA §§ 101-11, 29 U.S.C. §§ 1021-31 ...................................................... 13, 14

ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1) ................................................... 7, 8

ERISA § 403(a), 29 U.S.C. § 1103(a) ............................................................... 10

ERISA § 409(a), 29 U.S.C. § 1109(a) ............................................................. 6, 13

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ......................................... 5, 6, 7, 12, 13

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ..................................... 2, 5, 12, 13, 16, 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 2, 5

**Other Authorities**

17 C.F.R. § 270.30e-1 ................................................................................ 15

29 C.F.R. §§ 2520.101-1 ............................................................................. 14

153 Cong. Rec. D270 (daily ed. Mar. 6, 2007) ....................................... 14

71 Fed. Reg. 41,392 (proposed July 21, 2006) (to be codified at 29 C.F.R. pt. 2420) ............... 14

Case 2:06-cv-04305-NKL   Document 48   Filed 04/06/07   Page 5 of 25

Defendants Fidelity Management & Research Company ("FMRCo") and Fidelity Management Trust Company ("FMTC") (collectively the "Fidelity Defendants") respectfully submit these suggestions in support of their Motion to Dismiss Plaintiffs' Complaint for Breach of Fiduciary Duty, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

This is one of fourteen nearly identical lawsuits brought within the past seven months by the same law firm under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). All of the suits accuse large companies of breaching their fiduciary duties under ERISA in operating 401(k) retirement savings plans for their employees. This case, like two others involving different plans, also names as defendants affiliates of Fidelity Investments ("Fidelity"), which provide plan trustee and recordkeeping services and offer mutual funds that are investment options for the Personal Retirement Investment and Savings Management Plan for Employees of ABB Inc. (the "PRISM Plan") and the Personal Retirement Investment and Savings Management Plan for Certain Represented Employees of ABB Inc. (the "RepPRISM Plan") (collectively, the "ABB Plans" or "Plans").

Plaintiffs' Complaint for Breach of Fiduciary Duty (the "Complaint" or "Compl") (Docket #1) spins out paragraphs of background description about the charging and disclosure of fees to 401(k) plans and "Revenue Sharing" payments made to plan service providers, such as plan recordkeepers, by mutual fund advisers and other providers of investment options made available to employees who participate in those plans. Very little in this description is specific to the ABB Plans. Rather, as the filing of fourteen similar lawsuits suggests, plaintiffs' counsel have mounted a broad-scale attack asking the courts to fashion standards governing 401(k) plan fees and disclosure where Congress and the regulatory agencies have not done so. In basing

their claims on ERISA, plaintiffs ignore the detailed statutory and regulatory securities law regime that already specifically governs mutual fund fees and their disclosure.

Similarly, the Complaint provides nothing in the way of detail to support its allegations regarding "Revenue Sharing" involving Fidelity or anyone else. In particular, plaintiffs' allegations make no sense when applied to a single business enterprise like Fidelity that bundles together both investment options and recordkeeping and other services; how the Fidelity entities choose to allocate or share revenue internally among themselves makes no difference to the Plans and has no significance under ERISA. Indeed, courts that have addressed a similar issue under the securities laws governing mutual funds have held that the manner in which such revenues are shared is immaterial to investors and need not be disclosed.

Although plaintiffs have framed their claims loosely to evade dismissal, the claims against the Fidelity Defendants fail to state valid claims for relief on multiple grounds. One of the two Fidelity Defendants, FMRCo, is the investment adviser to the Fidelity mutual funds that are investment options under the Plans. Since ERISA expressly provides that a mutual fund adviser is not a fiduciary to an ERISA plan that invests in the mutual fund, the claims against FMRCo should be dismissed. The other named Fidelity Defendant, FMTC, does have limited fiduciary functions. Because plaintiffs' claims do not relate to those functions, however, the claims against FMTC should also be dismissed. To the extent plaintiffs attempt to repackage their claims as seeking "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the relief sought is neither "appropriate" nor "equitable" as the Supreme Court has interpreted § 502(a)(3). Therefore, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should grant the Fidelity Defendants' motion to dismiss.

## II.    BACKGROUND FACTS

Plaintiffs Margaret Kennedy, Ron Tussey, Charles Fisher, Timothy Herndron, and Timothy Pinnell purport to bring this action as a class action on behalf of current, former and future participants and beneficiaries in the Plans.  (Compl. ¶ 29.)

### A.    The Plans.

The Plans are "defined contribution" or "individual account" plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  (*See* Compl. ¶ 32.)  ABB, Inc. ("ABB") is the Plans' sponsor; the Employee Benefits Committee of ABB (the "Benefits Committee") is its administrator; and the Pension Review Committee ("Pension Review Committee") is its "Named Fiduciary."  (*Id.* ¶ 18.)[1]  Eligible ABB employees may—as permitted by § 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k)—contribute a portion of their pre-tax earnings to the Plans.  (*Id.* ¶¶ 32, 38.)  ABB matches those employee contributions in varying percentages.  (*Id.* at 38.)  Participating employees are able to direct that contributions to their respective Plan accounts be invested in any of over twenty investment options "selected by ABB."  (*Id.* ¶¶ 42.)

In 1995, ABB entered into a Trust Agreement with FMTC under which FMTC agreed to provide certain services to the PRISM Plan, including trustee and recordkeeping services, pursuant to a fee schedule.  (Compl. ¶¶ 40; Trust Agreement Between Asea Brown Boveri Inc. And Fidelity Management Trust Company: Personal Retirement Investment and Savings Management Plan for Employees of Asea Brown Boveri Inc. Trust (the "Trust Agreement"), attached as Ex. 1, and Schedule B.)[2]  The Trust Agreement was amended effective September 1, 1996 to also encompass the RepPRISM Plan.  (Trust Agreement, Second Amendment.)

---

[1] ABB, the Benefits Committee, the Pension Review Committee, as well as John W. Cutler, Jr. and the Pension & Thrift Management Group are referred to herein collectively as the "ABB Defendants."

[2] The Court may properly consider the Trust Agreement without converting this motion into a motion for summary judgment because the Complaint explicitly references the Trust Agreement and purports to summarize its relevant terms (Compl. ¶¶ 20, 37, 40, 41).  *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir.2003) ("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a

3

The Trust Agreement specified that the investment options under the Plans would be selected from among the following: (1) mutual funds advised by FMRCo; (2) mutual funds not advised by FMRCo ("Non-Fidelity Mutual Funds"); (3) common stock of Westinghouse, Inc.; (4) guaranteed investment contracts chosen by FMTC; (5) guaranteed investment contracts previously entered into by ABB and the predecessor trustee; and (6) collective investment funds managed by FMTC; and (7) an outside managed GIC Fund, known as the "Income Fund." (Trust Agreement § 4(b).) The Trust Agreement has subsequently been amended to permit other investment options. (*See, e.g.*, Trust Agreement, Twelfth Amendment.)

The Pension Review Committee has final authority under the Trust Agreements to direct FMTC as to which of the investment options are to be provided to Plan participants. (Compl. ¶ 22; Trust Agreement § 4(b).) The Pension Review Committee's initial direction as to which specific investment options to provide to the Plan participants is attached to the Trust Agreement. (*See,* Trust Agreement, Schedule C.) Those investment options have been modified on various occasions through formal amendments to the Trust Agreement and Schedule C. (*See, e.g.*, Trust Agreement, Seventh, Twelfth, and Fourteenth Amendments.)

The Plan offers participants over twenty different investment options. (Compl. ¶ 42.) Those investment options included several mutual funds advised by FMRCo, as well as over a dozen mutual funds unaffiliated with the Fidelity Defendants. (*Id.*; Trust Agreement, Schedule C and Seventh, Twelfth, Thirteenth, Fourteenth, Sixteenth, and Eighteenth Amendments.)

**B.      Plaintiffs' Claims.**

Plaintiffs allege that the Fidelity Defendants "and/or" ABB breached ERISA fiduciary duties by causing or allowing the Plans to pay fees and expenses that "were, or are, unreasonable

complaint and whose authenticity no party questions, but which are not physically attached to the pleading.") (citation omitted); *Fairview Health Servs. v. Ellerbe Becket Co. Employee Med. Plan*, No. 06-2585, 2007 WL 967780, at *3 (D. Minn. March 29, 2007) (same).

4

and/or not incurred solely for the benefit of the Plan participants and beneficiaries[.]" (Compl. ¶ 99.) Plaintiffs' claim, in particular, that the Fidelity Defendants garnered excessive fees through so-called "Revenue Sharing" arrangements, under which the Fidelity Defendants and their affiliates allegedly shared asset-based fees collected from the Fidelity mutual funds and other investment vehicles in which the Plans have invested. (Compl. ¶¶ 64-68, 80-82.) Count I, asserted against all defendants under ERISA § 502(a)(2), seeks recovery of any losses incurred by the Plans as the result of such allegedly improper fees as well as "any other available and appropriate equitable relief[.]" (Compl. ¶¶ 97-102.) Count II seeks equitable relief against all defendants under ERISA § 502(a)(3), including an accounting and the imposition of a surcharge. (Compl. ¶¶ 103-15.) Count III seeks equitable relief under § 502(a)(3) solely against the Fidelity Defendants, including "restitution" of any "Revenue Sharing" payments. (Compl. ¶¶ 116-24.)

## III. ARGUMENT

### A. Standard of Review.

Dismissal under Rule 12(b)(6) is appropriate if plaintiffs fail to allege facts that would support their claims. *See, e.g.*, *Carpenter Outdoor Adver. Co. v. City of Fenton*, 251 F.3d 686, 689-90 (8th Cir. 2001) (affirming dismissal where plaintiff failed to allege required elements of First Amendment claims). Although the Court will accept well-pleaded facts as true, plaintiffs must still allege facts, not just "conclusory legal accusations." *Moses.com Sec., Inc. v. Comprehensive Software Sys.*, 406 F.3d 1052, 1063 (8th Cir. 2005) (affirming dismissal where the facts in the complaint did not adequately show that the alleged torts occurred). Dismissal is also appropriate if the facts in the complaint contradict each other, or if the complaint refers to documents that refute those facts. *See Romine v. Acxiom Corp.*, 296 F.3d 701, 705-06 (8th Cir. 2002) (affirming dismissal where plaintiffs claimed that defendant violated GAAP accounting, but SEC filings referenced in the complaint showed GAAP compliance). Courts may properly

5

consider documents that are attached to the pleadings or incorporated by reference. *Moses.com*,

406 F.3d at 1063 n.3 (affirming dismissal after examining a press release that plaintiffs had

mentioned in their complaint).

**B.     Count I Should Be Dismissed.**

Count I of the Complaint is asserted against all defendants under ERISA § 502(a)(2),

which authorizes suit to obtain broad remedies provided by ERISA § 409(a), 29 U.S.C.

§ 1109(a), for breaches of fiduciary duties.  The claims should be dismissed against both Fidelity

Defendants on the ground that neither of them is a fiduciary with respect to the conduct

challenged in the Complaint.

**1.     The Claims Against FMRCo Should be Dismissed Since FMRCo is
          Not a Fiduciary to the ABB Plans.**

Section 502(a)(2) authorizes actions for "appropriate relief under § 409[,]" which, in turn,

provides:

> Any person *who is a fiduciary* with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this title shall
> be personally liable to make good to such plan any losses to the plan resulting
> from each such breach, and to restore to such plan any profits *of such fiduciary*
> which have been made through use of assets of the plan *by the fiduciary*, and shall
> be subject to such other equitable or remedial relief as the court may deem
> appropriate, including removal of such fiduciary. . . . (Emphasis added.)

A claim under § 502(a)(2) may only be asserted against a fiduciary to an ERISA plan.  *See*

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53 (1993).

Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a fiduciary of a plan:

> to the extent (i) he exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or control
> respecting management or disposition of its assets, (ii) he renders investment
> advice for a fee or other compensation, direct or indirect, with respect to any
> moneys or other property of such plan, or has any authority or responsibility to do
> so, or (iii) he has any discretionary authority or discretionary responsibility in the
> administration of such plan.

Because FMRCo does not meet that definition, it is not a fiduciary and is not subject to suit under § 502(a)(2).

Paragraphs 23 and 24 of the Complaint assert that FMRCo is an investment adviser to the Fidelity mutual funds which comprise "approximately half" of the investment options available to participants in the ABB Plans. As a matter of law, an investment adviser to a mutual fund is not a fiduciary to an ERISA plan that invests in the mutual fund. *See* ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B) ("If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940, such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or party in interest . . .".). That conclusion derives directly from ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1), which provides that when an ERISA plan invests in a security issued by a mutual fund, or "investment company," "the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company." Based on that clear statutory language, courts have uniformly dismissed claims seeking to impose fiduciary liability under ERISA on advisers to mutual funds. *See, e.g.*, *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec.*, 964 F. Supp. 147, 149 (S.D.N.Y. 1997); *Corbett v. Marsh & McLennan Cos.*, No. MDL-15863, 2006 WL 734560, at *2 (D. Md. Feb. 27, 2006).

Seeking to avoid the fatal impact on their claims of § 3(21)(B) and § 401(b)(1), Plaintiff alleges two bases for the fiduciary status of FMRCo. First, ¶ 23 alleges that FMRCo "exercises discretion in the selection of the investment options that the Plan[s] make[] available to participants." This assertion, however, is directly contrary to ¶ 22, which asserts that "the Pension Review Committee had final authority for the selection of investment options," and the

7

Trust Agreements, which expressly grant the Pension Review Committee as "Named Fiduciary" ultimate authority to direct FMTC as to "the investment options in which Plan participants may invest[.]" (Trust Agreement § 4(b).) Moreover, FMRCo is not a party to the Trust Agreement, and nothing in that agreement gives FMRCo any role in selecting investment options. In short, both plaintiffs' own Complaint and the Trust Agreement it references establish that FMRCo has no responsibility for ABB's selection of the Plans' investment options, much less the discretionary responsibility for selection that is essential to fiduciary status.

Plaintiffs also attempt to pin fiduciary status on FMRCo by asserting in ¶ 23 that FMRCo "exercises discretion over Plan assets when it decides how much "Revenue Sharing" to send to Fidelity affiliates, like FMTC, and thus offset the Plans' expenses." That attempt, however, fails because the assets that plaintiffs contend are the subject of "Revenue Sharing" are not plan assets. The Complaint makes clear that the assets plaintiffs contend were subject to "Revenue Sharing" were amounts first paid to "Funds", including mutual funds, and then passed on to service providers. (Compl. ¶¶ 65-68.) Because § 401(b)(1) expressly provides that mutual fund assets are not plan assets, any control by FMRCo over amounts paid from the Fidelity mutual funds it advises does not constitute authority or control over plan assets.

*A fortiori*, the payments that FMRCo receives as fees from the mutual fund assets are also not plan assets. Rather, such payments become revenues and assets of FMRCo. Recently, the Seventh Circuit recognized this critical distinction in its decision in *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007). *Caremark* involved an ERISA plan that contracted with a pharmaceutical benefit management company (PBM) to run its prescription drug program. *Id.* at 466. The contract required the PBM to pay the plan rebates, pursuant to a fixed schedule, on prescription drugs obtained from drug manufacturers. *Id.* at 468-69. The plaintiff alleged that the PBM breached fiduciary duties to the plan by

8

retaining rebates from drug manufacturers that were greater than the rebates that the PBM had contracted to remit to the plan. *Id.* In holding that the PBM was not a plan fiduciary, the Seventh Circuit rejected an argument that the PBM controlled "plan assets" when it received rebates based on the purchase of drugs for plan participants. *Id*. at 476 n.6. The Seventh Circuit explained that because the defendant was collecting the rebates for itself rather than on behalf of the plan, it was controlling its "own assets," not "plan assets." *Id.* Likewise, when FMRCo collects fees from the various mutual funds and uses those monies for its own purposes, including any payments it makes to affiliates, it is controlling its own assets, not plan assets, and is not acting as an ERISA fiduciary.

Indeed, a contrary holding would make nonsense of ERISA's statutory scheme. As discussed above, § 3(21)(B) expressly provides that investment advisers to mutual funds are not ERISA fiduciaries to plans that invest in those funds. This clear boundary would be erased if mutual fund advisers nonetheless become fiduciaries by accepting payment for their services to the mutual funds. ERISA should be read to prohibit, not create, such an absurd result. Since FMRCo is not a fiduciary, judgment should be granted dismissing Count I against it.

### 2. Count I Should be Dismissed Against FMTC Since FMTC is Not a Fiduciary as to the Challenged Conduct.

Unlike FMRCo, FMTC does have limited fiduciary functions under the Trust Agreement, but those functions do not involve the conduct challenged in the Complaint. It is well settled that ERISA makes a person a fiduciary only "to the extent" that person performs fiduciary functions. ERISA § 3(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Thus, someone who becomes a plan fiduciary as to one function is not a fiduciary with respect to other functions under the plan. *Id.*; *Maniace v. Commerce Bank, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) (holding that a plan trustee is not necessarily a fiduciary for all plan purposes); *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1022 (E.D. Mo.) (citing *Maniace* for the proposition that a court must "inquire as

9

to whether a person is a fiduciary with respect to the particular transaction or conduct at issue"), *aff'd,* 315 F.3d 863 (8th Cir. 2002).

Paragraph 20 of the Complaint asserts that FMTC is the trustee and record keeper of the ABB Plans but does not tie any claim of fiduciary status to those functions. Although recordkeeping involves plan administration, it does not involve any exercise of the discretion which is the "benchmark for fiduciary status" in plan administration. *Johnston v. Paul Revere Life Ins. Co.,* 241 F.3d 623, 632 (8th Cir. 2001). FMTC's trustee role does impose fiduciary duties but only the "limited" ones of a directed trustee which, under the Trust Agreement, acts only pursuant to proper directions from Benefits Committee (as the Plans' administrator) and the Pension Review Committee (as the Named Fiduciary).[3] ERISA § 403(a); *Maniace*, 40 F.3d at 268 (noting that obligations of a directed trustee are "something less than that owed by typical fiduciaries"). Nothing in the Complaint alleges that FMTC improperly took direction from the Benefits Committee and Pension Review Committee or otherwise implicates FMTC's role as directed trustee.

Paragraph 21 also asserts that FMTC "manages at least thirteen of the investment options available to Plan participants" under the Plans "and is, thus, a fiduciary to the Plan[s]." This allegation establishes only that FMTC is a fiduciary with respect to management of certain investment options.[4] The Complaint does not attack management of those options. Instead, it attacks so-called "Revenue Sharing" practices between "investment management providers (such as the mutual funds advised and managed by FMRCo . . .)" and "administrative service providers (such as FMTC in its role as record-keeper and trustee . . .)." (Compl. ¶ 64.)

---

[3] FMTC's status as directed trustee is reflected throughout the Trust Agreement. *See, e.g.,* §§ 3(a) (direction as to disbursement of plan assets); 4(a) (direction as to "what investment options…Plan participants may invest [in] . . ."); 4(e)(iii); 7(b) ("Directions from Administrator"); 7(c) ("Directions from Named Fiduciary").

[4] While the Fidelity Defendants disagree with several of the Complaint's factual allegations—including the inflated number of investment options purportedly managed by FMTC—they accept those allegations as true solely for the purposes of the present Motion.

Case 2:06-cv-04305-NKL   Document 48   Filed 04/06/07   Page 15 of 25

Paragraph 22 asserts that FMTC is a fiduciary because it allegedly agreed with ABB that ABB would limit its selection of investment options for the Plans to mutual funds advised by FMRCo, "non-Fidelity funds to which FMTC agrees" and "certain pre-existing guaranteed investment contracts (GICs)." Like the similar allegation against FMRCo, this allegation undercuts itself. As discussed above, the limitations on possible investment options described in ¶ 22 of the Complaint are terms of the Trust Agreement under which FMTC was retained. Plaintiffs acknowledge that "the Pension Review Committee as Plan administrator had final authority" over the selection of investment options within those contracted limitations (Compl. ¶ 22), an acknowledgement supported by the Trust Agreement which expressly provides that the "Named Fiduciary shall direct the Trustee as to . . . the investment options in which Plan participants may invest . . . ." (Trust Agreement § 4(b).)

As federal courts have repeatedly held, a party does not act as an ERISA fiduciary in negotiating the terms of its own retention, even if it is being retained to serve in a fiduciary capacity. *See, e.g.*, *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131-32 (7th Cir. 1983) (holding that defendant insurer could not be held liable as a fiduciary for causing the plan to pay it "unreasonable compensation" where compensation was paid according to contracted rates); *Seaway Food Town, Inc. v. Med. Mut. of Ohio,* 347 F.3d 610, 618-19 (6th Cir. 2003) (holding that HMO's adherence to contractual term allowing it to retain funds resulting from provider discounts did not render HMO a fiduciary under ERISA). Thus, any role that FMTC played in negotiating the terms of the Trust Agreement was not a fiduciary role and cannot serve as the basis for fiduciary liability. *Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *Kalda v. Sioux Valley Physician Ptnrs., Inc.* 394 F. Supp. 2d 1107, 1113 (D.S.D. 2005) (noting

11

that "the [c]ourt must examine whether a plan fiduciary was acting in a fiduciary capacity to determine liability for breach of fiduciary duty").  Accordingly, the claims against FMTC in Count I should be dismissed.

## C.    Count II Should Be Dismissed.

While Count I seeks relief for breach of fiduciary duty under § 502(a)(2) of ERISA, Count II purports to seek equitable relief—including an accounting, surcharge, and injunctive relief—under the separate cause of action provided by ERISA § 502(a)(3).  Count II should be dismissed as to both FMTC and FMRCo for multiple reasons.

### 1.    Count II Should be Dismissed on the Same Grounds as Count I.

First, as is the case with respect to Count I, plaintiffs' claims against the Fidelity Defendants under Count II are expressly premised on the assertion that FMTC and FMRCo are fiduciaries to the Plans.  (*See* Compl. ¶ 106 ("Defendants are the primary fiduciaries of the Plan[s] and occupy a position of trust and confidence in connection with the Plan[s], the Plan[s'] assets, and the Plan[s'] participants and beneficiaries.").)  However, as discussed in Section III.B above, neither Fidelity Defendant acts as an ERISA fiduciary with respect to the conduct challenged in the Complaint.  Thus, like the claims in Count I, the Count II claims against the Fidelity Defendants should be dismissed.

### 2.    Count II Should be Dismissed Since it Does Not Seek "Appropriate Equitable Relief" Authorized by ERISA.

Alternatively, Count II should be dismissed because it does not seek relief that is available under § 502(a)(3).  Section 502(a)(3) authorizes a court to remedy violations of statutory or plan provisions by granting an injunction or "other appropriate equitable relief."  As the Supreme Court has noted, such relief "must mean *something* less than *all* relief."  *Mertens v. Hewitt Associates*, 508 U.S. 248, 258 n.8 (1993); *see also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 943 (8th Cir. 1999) ("section [502(a)(3)] is not a limitless free-for-all").

12

While plaintiffs attempt to invoke equitable terminology by seeking "injunctive" relief and an "accounting" (Compl. ¶¶ 112, 115), their Complaint shows that any such relief would not be "appropriate" as required under § 502(a)(3). In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court noted, "We should expect that courts, in fashioning 'appropriate' equitable relief . . . will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others' . . . Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515 (internal citation omitted).

Not only have plaintiffs here not alleged the inadequacy of other remedies, they have affirmatively sought exactly the same relief under Count II as would already be available against a fiduciary under Count I. Assuming, *arguendo*, that plaintiffs are correct in their assertions that FMRCo and FMTC have acted as fiduciaries to the ABB Plans with respect to the challenged conduct, plaintiffs already have a full and adequate remedy for any breaches of fiduciary duty under § 502(a)(2) which, by its incorporation of § 409(a), authorizes full monetary remedies plus "such other equitable or remedial relief as the court may deem appropriate." Thus, their claims in Count II are entirely duplicative of those in Count I, and no additional equitable relief would be "appropriate."

To the extent plaintiffs seek through their request for "injunctive" relief or an "accounting" to compel FMRCo and FMTC to make disclosures relating to their fees, equitable relief would also be inappropriate because those disclosures are already the subject of express statutory regimes. ERISA itself mandates the disclosures and details that must be provided to plan participants, placing responsibility for such disclosures squarely in the hands of the plan administrator (whom plaintiffs allege in this case to be the Benefits Committee). ERISA §§ 101-

11, 29 U.S.C. §§ 1021-31; *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995) ("ERISA already *has* an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations . . ."). In addition, the Department of Labor ("DOL") has promulgated detailed regulations further delineating those disclosure requirements. 29 C.F.R. §§ 2520.101-1, *et seq.* Plaintiffs do not allege that the Fidelity Defendants have violated any statutory or regulatory disclosure provision.

Recognizing the existence of an express statutory and regulatory scheme for disclosure requirements, the federal courts have refused to create an implied general fiduciary duty of disclosure. *See, e.g.*, *Curtiss-Wright,* 514 U.S. at 84 (reasoning that Congress did not intend statutory disclosure scheme "to be supplemented by a far-away provision in another part of the statute . . ."); *Jensen v. SIPCO, Inc.*, 38 F.3d. 945, 952 (8th Cir. 1994) (refusing to expand the disclosure requirements beyond those requirements specifically outlined in the text of ERISA and in the Department of Labor's regulations).[5] Given that Congress and the DOL could require additional financial disclosure—and are actively deciding whether to do so—the invitation to this Court to undertake the same task as "equitable relief" is surely inappropriate.[6]

Such relief would be particularly inappropriate in the context of the mutual fund options, since disclosures regarding such funds and their expenses are already governed by a robust set of securities laws including the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.*; the

---

[5] *See also Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir. 1996) ("declin[ing] to use [ERISA's general fiduciary duty provision] to expand the [disclosure] duties imposed under § 104(b)(4)."); *Ehlmann v. Kaiser Found. Health Plan*, 198 F.3d 552, 554-56 (5th Cir. 2000) (rejecting claim that HMO had duty to disclose its physician compensation scheme on grounds "[t]hat Congress and the DOL were so capable of enumerating disclosure requirements when they wanted to means that the absence of one regarding physician compensation plans was probably intentional.").

[6] The DOL has recently proposed an amendment to its regulation governing the content of annual financial reporting by plans to require additional disclosure of "indirect compensation" to service providers. *See* Annual Reporting and Disclosure, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. pt. 2520). In addition, the House Committee on Education and Labor has held hearings in recent weeks regarding the possibility of legislation to require further disclosure of 401(k) plan fees and expenses. 153 Cong. Rec. D270 (daily ed. Mar. 6, 2007) (list of committee meetings). In the event that Congress determines the existing statutory scheme to be insufficient, it can address that concern through additional legislation.

Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, *et seq.;* the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.,* and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*[7]  Those statutory requirements are further augmented by Securities and Exchange Commission regulations and rules that specifically address the disclosure of fees.  *See In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208(RO), 2006 U.S. Dist. LEXIS 20758, at *30 (S.D.N.Y. Apr. 18, 2006) ("SEC Form [N-1A] sets forth the requirements for information that must be contained in offering prospectuses and statements of additional information . . . Form N-1A requires the disclosure of the total fees paid by the investor in connection with a securities purchase, as well as total commissions paid by the fund, but it does not require disclosure of how differential compensation is allocated.").[8]

Notably, in applying this securities law regime, the federal courts have held that the type of information plaintiffs claim should have been disclosed here—*i.e.*, the manner in which fees paid by mutual funds are shared among service providers—is not material to an investor's decision to purchase mutual fund shares.  *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,* 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) ("Defendants disclosed the fees and commissions charged to shareholders.  The precise allocation of those fees is not material information under the securities laws."); *In re Morgan Stanley*, 2006 U.S. Dist. LEXIS 20758, at *37-38 ("All fees charged to the shareholder were disclosed in the offering prospectuses . . . The allocation of the fees is immaterial, because it could have no effect on share price.").

---

[7] *See, e.g.*, 15 U.S.C. § 77aa (requiring disclosure of extensive financial information and operational information for any transaction registering the offer or sale of securities under the Securities Act of 1933); 15 U.S.C. § 78l (requiring disclosure of financial and operational information for any class of securities registered under the Exchange Act of 1934); 15 U.S.C. § 80a-8(b) (requiring mutual funds to file registration statements containing disclosures prescribed by Securities and Exchange Commission rules); 15 U.S.C. § 80a-8(b)(5) (requiring that mutual fund registration statements contain all information required under the Securities Act of 1933 and the Exchange Act of 1934); and 15 U.S.C. § 80a-29(e) (requiring investment companies to transmit semi-annual reports to shareholders).

[8] *See also* 17 C.F.R. § 270.30e-1 (requiring semi-annual shareholder reports to contain all of the information required by the investment company's registration statement).

*A fortiori*, an award of equitable relief to require disclosure under ERISA of "Revenue Sharing" among Fidelity entities or others would be inappropriate. There is no basis to conclude that the information material to an ERISA plan or its participants is any different than the information considered material to other mutual fund investors under the securities laws—the price and expense levels charged by mutual funds. How the Fidelity entities choose to allocate their revenues from mutual funds is as immaterial under ERISA as it is under the securities laws.

Likewise, the reasonableness of mutual fund fees is specifically governed by § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b), which authorizes private actions against mutual fund advisers and their affiliates to challenge the receipt of excessive fees. Unlike actions under ERISA, actions under § 36(b) can only be brought by investors in the particular mutual fund whose fees are challenged and is subject to additional restrictions such as a one-year statute of limitations. *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 535-36 (1984); 15 U.S.C. § 80a-35(b)(3). The fact that Congress has already specifically created a separate mechanism to challenge the amount of mutual fund fees further demonstrates that the use of § 502(a)(3) to create a new avenue for that same challenge is unnecessary and inappropriate.

Finally, to the extent that plaintiffs are seeking monetary relief via Count II, that relief is plainly not "equitable" for purposes of § 502(a)(3). The Supreme Court has recognized, "[a]lmost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' … [a]nd money damages are, of course, the classic form of *legal* relief." *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210 (2002) (internal citation omitted). While plaintiffs cast their request in the equitable terms of "surcharge" (Compl. ¶ 114), their Complaint makes clear that plaintiffs are not seeking recovery of specific funds in FMRCo's and FMTC's possession that properly belong to the Plans. Rather,

they are seeking broad recovery of "fees and expenses incurred by the Plan[s] and/or paid to third parties, whether paid directly by the Plan[s] or indirectly transferred among Plan service providers or other thirds parties." (Compl. ¶ 113.) Regardless of the label applied, recovery of such fees and expenses falls well outside the realm of equitable relief and thus outside the scope of § 502(a)(3). *See Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1064 (8th Cir.) ("Merely re-labeling the relief sought as 'restitution' or 'surcharge' does not alter the nature of a remedy from monetary to equitable."), *cert denied*, 126 S. Ct. 2969 (2006). Accordingly, because Count II seeks relief that is neither "appropriate" nor "equitable" under § 502(a)(3), it should be dismissed.

**D.     Count III Should Be Dismissed.**

Like Count II, Count III is styled as a claim for "Other Remedies for Breach of Fiduciary Duty" under § 502(a)(3). Although Count III differs from Count II in that it is asserted solely against the Fidelity Defendants and relabels the remedies sought, Count III is largely duplicative of the prior count and should be dismissed on similar grounds, including that it does not seek either "appropriate" or "equitable" relief.

That conclusion is unaltered by plaintiffs' claim in Count III that they are entitled to "equitable restitution" of "Revenue Sharing payments" (Compl. ¶ 124) received by FMRCo and FMTC. As the Supreme Court explained in *Great-West,* restitution exists in equity, as opposed to law, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213; *see also Calhoon v. TWA*, 400 F.3d 593, 597 (8th Cir. 2005) (holding that monetary relief is equitable only where the money sought is "specifically identifiable" and can "clearly be traced to particular funds or property in the defendant's possession.") (citing *Great-West*). Recovery of the alleged "Revenue Sharing" payments does not fall within that category. As an initial matter,

any fees received by Fidelity entities have become part of Fidelity's general revenues and thus cannot be considered traceable. Moreover, as described in the Complaint, "Revenue Sharing" payments are not paid directly by the Plans. Rather, the Plans are alleged to make payments to a "Fund" which then makes "Revenue Sharing" payments to other entities. (Compl. ¶¶ 65-68.) Once the Plans' assets are invested in the Funds, the amounts invested cease to be specifically identifiable assets but instead become part of a commingled pool and in the case of mutual funds, cease to be plan assets as a matter of law (*See* Section III(B)(i) *supra*). Thus, any payments from the Funds to FMRCo or FMTC cannot be traced to the Plans' assets and are not subject to equitable restitution.

Accordingly, Count III should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Fidelity respectfully requests that that this Court enter an

Order granting the Fidelity Defendants' Motion to Dismiss Plaintiffs' Complaint for Breach of

Fiduciary Duty and dismiss plaintiffs' claims against Fidelity Management & Research

Company and Fidelity Management Trust Company with prejudice.

Dated:  April 6, 2007                          Respectfully submitted,


                                               BY:  ___/s/ Richard N. Bien_____

                                               Richard N. Bien, #31398
                                               Adam B. Walker, #56299
                                               LATHROP & GAGE L.C.
                                               2345 Grand Boulevard, Suite 2800
                                               Kansas City, Missouri 64108-2684
                                               Telephone: (816) 292-2000
                                               Facsimile: (816) 292-2001

                                               Robert N. Eccles
                                               Brian D. Boyle
                                               Shannon M. Barrett
                                               Stephen D. Brody
                                               O'MELVENY & MYERS LLP
                                               1625 Eye Street, N.W.
                                               Washington, D.C. 20006
                                               Telephone:  (202) 383-5300
                                               Facsimile:   (202) 383-5414

                                               *Counsel for Defendants Fidelity Management*
                                               *Trust Company and Fidelity Management &*
                                               *Research Company*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

| | |
|---|---|
| Jerome J. Schlichter<br>Daniel V. Conlisk<br>Heather Lea<br>Schlicter, Bogard & Denton<br>100 South 4th Street, Suite 900<br>St. Louis, MO 63102<br><br>**Attorneys for Plaintiffs** | Brian T. Ortelere<br>William J. Delany<br>Catherine A. Cugell<br>Morgan, Lewis & Bockius, LLP<br>1701 Market Street<br>Philadelphia, PA 19101-2921<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** |
| Thomas E. Wack<br>Jeffrey S. Russell<br>Bryan Cave LLP<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** | |

/s/Adam B. Walker
_____

20