UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

MARGARET KENNEDY, et al.,

                Plaintiffs,

v.

ABB, INC., et al.,

                Defendants.

CIVIL ACTION
No. 06-CV-04305

(Judge Nanette K. Laughrey)

**REPLY IN SUPPORT OF FIDELITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
FOR BREACH OF FIDUCIARY DUTY**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II. ARGUMENT .............................................................................................. 1

    A.    The Court May Properly Consider the Trust Agreement ...................................... 1

    B.    Count I Should Be Dismissed .............................................................. 2

        1.    Count I Should be Dismissed as to FMRCo Since FMRCo is Not a Fiduciary to the ABB Plans ...................................... 2

        2.    Count I Should Be Dismissed Against FMTC Since FMTC is Not a Fiduciary as to the Challenged Conduct ................................ 8

    C.    Count II Should Be Dismissed ............................................................. 10

    D.    Count III Should Be Dismissed ............................................................ 14

III. CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A. Ronald Sirna Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*,
964 F.Supp. 147 (S.D.N.Y. 1997) ............................................................... 6

*Blatt v. Marshall and Lassman*,
812 F.2d 810 (2d Cir. 1987) ...................................................................... 4

*Brock v. Hendershott*,
840 F.2d 339 (6th Cir. 1988) ..................................................................... 4

*Calhoon v. TWA*,
400 F.3d 593 (8th Cir. 2005) ..................................................................... 15

*Castillo v. Dean Witter Discover & Co.*,
No. 97 Civ. 1272, 1998 WL 342050 (S.D.N.Y. June 25, 1998)................... 12

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ............................................................... 4, 6, 7

*Farthing v. United Healthcare of the Midwest*,
No. 98-4262, 2000 U.S. Dist. LEXIS 21994 (W.D. Mo. Feb. 29, 2000) .......... 11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)................................................................................. 14

*Griggs v. E.I. duPont De Nemours & Co*.,
237 F.3d 371 (4th Cir. 2001) .................................................................... 12

*Haddock v. Nationwide Fin. Servs.*,
419 F. Supp. 2d 156 (D. Conn. 2006)................................................... 4, 5, 6

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000)................................................................................. 11

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
434 F. Supp. 2d 233 (S.D.N.Y. 2006) ....................................................... 12

*In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*,
No. 03 civ. 8208, 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. April 14, 2006)........... 12

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ....................................................... 12

*Knieriem v. Group Health Plan, Inc.*,
434 F.3d 1058 (8th Cir.), *cert. denied*, 126 S.Ct. 2969 (2006)................ 13, 14

*Kushner v. Beverly Enters., Inc.*,
317 F.3d 820 (8th Cir.2003) ...................................................................... 1

*Morgan Distrib. Co. v. Unidynamic Corp.*,
868 F.2d 992 (8th Cir. 1989) ..................................................................... 3

-ii-

# TABLE OF AUTHORITIES
(continued)

Page

*Pappas v. Buck Consultants, Inc.*,
   923 F.2d 531 (7th Cir. 1991) ................................................... 3

*Reich v. Continental Casualty Co.*,
   33 F.3d 754 (7th Cir. 1994) ............................................... 10, 11

*Schloegel v. Boswell*,
   994 F.2d 266 (5th Cir. 1993) ................................................. 3

*Schulist v. Blue Cross of Iowa*,
   717 F.2d 1127 (7th Cir. 1983) ............................................... 9

*Seaway Food Town, Inc. v. Med. Mut. of Ohio*,
   347 F.3d 610 (6th Cir. 2003) ................................................ 9

*Siemers v. Wells Fargo & Co.*,
   No. 05-4518, 2007 WL 760750 (N.D. Cal. March 9, 2007)................... 12

*Trigon Ins. Co. v. Columbia Naples Capital, L.L.C.*,
   235 F. Supp. 2d 495 (E.D. Va. 2002) ...................................... 8

*United States v. Glick*,
   142 F.3d 520 (2d Cir. 1998) ............................................... 5

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996).................................................... 11, 13

**Statutes**

15 U.S.C. § 80a-22.......................................................... 5

ERISA § 3(21)(B), 29 U.S.C § 1002(21)(B) ................................... 2

ERISA § 401(b)(1), 29 U.S.C. § 1101 (b)(1)................................. 5

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ............................... 10

**Rules**

17 C.F.R. § 270.2a-4(a)(4)................................................. 5

**Other Authorities**

DOL Adv. Op. 99-08A, 1999 WL 343509 ...................................... 7

Statement of Marvin Mann, Chairman of the Independent Trustees of The Fidelity Funds, Before
   the Senate Committee on Banking, Housing and Urban Affairs on "Review of Current
   Investigations and Regulatory Actions Regarding the Mutual Fund Industry: Fund Operations
   and Governance" (Mar. 2, 2004), *available at* http://banking.senate.gov/_files/mann.pdf) .... 13

## I.    INTRODUCTION

Plaintiffs' Opposition to Fidelity Defendants' Motion to Dismiss Plaintiffs' Complaint (the "Opposition" or "Opp."), creates a moving target that bears little resemblance to the facts and theories alleged in plaintiffs' Complaint for Breach of Fiduciary Duty (the "Complaint" or "Compl."). Despite the length of their 26-page Opposition, neither plaintiffs' original allegations nor their new assertions state valid claims for relief. Accordingly, for the reasons set forth below and in the Suggestions in Support of Fidelity Defendants' Motion to Dismiss Plaintiffs' Complaint for Breach of Fiduciary Duty ("Fidelity's Suggestions" or "Fid. Sugg."), plaintiffs' claims should be dismissed in their entirety.

## II.    ARGUMENT

### A.    The Court May Properly Consider the Trust Agreement.

Seeking to avoid the merits of the Fidelity Defendants' Motion, plaintiffs initially argue that the Court cannot properly consider the Trust Agreement[1] that governs Fidelity's relationship with the ABB Plans and ask the Court to deny the Motion on that basis. (Opp. at 5-6.) Plaintiffs' argument is without merit.

As discussed in Fidelity's Suggestions (p. 3, 5-6 & n. 2), it is well-established that in deciding a motion to dismiss, a court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions," even if those documents are not physically attached to the Complaint. *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). Here, the Complaint refers to the Trust Agreement multiple times, both directly and indirectly, and purports to summarize various provisions of that agreement, including provisions addressing the services that FMTC was retained to provide and defining the range of investment

---

[1] The governing Trust Agreement, entitled "Trust Agreement Between Asea Brown Boveri Inc. And Fidelity Management Trust Company: Personal Retirement Investment and Savings Management Plan for Employees of Asea Brown Boveri Inc. Trust" (the "Trust Agreement"), was previously filed as Exhibit 1 to the Fidelity Defendant's Motion.

1

options that could be offered to the Plans' participants.  (*See, e.g.*, Compl. ¶¶ 37, 40-42.)
Moreover, plaintiffs have not in any way challenged or questioned the authenticity of the Trust
Agreement.  Accordingly, under Eighth Circuit law, the Trust Agreement is properly deemed
part of the pleadings and may be considered without converting this motion into a motion for
summary judgment.

### B. Count I Should Be Dismissed.

#### 1. Count I Should be Dismissed as to FMRCo Since FMRCo is Not a Fiduciary to the ABB Plans.

As discussed in pages 6 through 9 of Fidelity's Suggestions, Count I of the Complaint
should be dismissed against FMRCo because plaintiffs have not stated a viable claim that
FMRCo is a fiduciary to the Plans.  Although plaintiffs spend 8 pages of their Opposition
attempting to refute that position, their effort yields nothing more than discussions of
inapplicable legal authorities and conjecture unrelated to the allegations that actually appear in
their Complaint.

The Complaint itself contains three possible grounds for FMRCo's fiduciary status: (1)
that FMRCo is an investment adviser to the Fidelity mutual funds that are "approximately half of
the  investment options available to Plan participants" (¶¶ 23-24, 42); (2) that FMRCo "exercises
discretion in the selection of the investment options the Plan makes available to participants" (¶
23); and (3) that FMRCo "exercises discretion over Plan assets when it decides how much
Revenue Sharing to send to Fidelity affiliates, like FMTC, and thus offset the Plans' expenses"
(*id.*).  The first of those grounds is plainly insufficient since ERISA expressly provides that an
investment adviser to a mutual fund does not become a fiduciary by virtue of an ERISA plan's
investment in that fund.  ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B).  Despite their rhetoric,
plaintiffs do not dispute that point.  (Opp. at 9-11.)  Accordingly, any basis for FMRCo's
fiduciary status must be found in the other two alleged grounds.

2

Both of those grounds, however, are likewise flawed. As explained at pages 7 and 8 of Fidelity's Suggestions, plaintiffs' allegation that FMRCo exercises discretion in the selection of investment options is squarely contradicted by ¶ 22 of the Complaint and the terms of the governing Trust Agreement, all of which make clear that ABB's Pension Review Committee has the authority over the selection of Plan investment options. In an attempt to evade this contradiction, plaintiffs--for the first time--concoct a theory under which, despite the terms of the Trust Agreement, "FMRCo and other Fidelity Defendants [sic] and entities performed the primary screening of plan investment options, reducing the thousands of investment vehicles available to *only* Fidelity funds or non-Fidelity funds of which FMRCo approved." (Opp. at 9.)

This new theory as to FMRCo is neither asserted nor suggested by any of the allegations in the Complaint.[2] Rather, the only limitations on the Pension Review Committee's authority to select investment options are those expressly set forth in the Trust Agreement between ABB and FMTC. (*See* Compl. ¶ 22, 42.) As discussed in Fidelity's Suggestions, FMRCo was not a party to the Trust Agreement, and thus had no role in the contractual provisions regarding investment options set forth in that agreement.

Moreover, even if plaintiffs had alleged their latest theory in their Complaint, it would still be insufficient to establish the discretionary authority or control necessary to confer fiduciary status under ERISA. One does not become a fiduciary by merely providing suggestions on which the plan's existing fiduciaries act. *See Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir. 1993) ("Mere influence over the trustee's investment decisions, however, is not effective control over plan assets."); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (noting that courts have read "the terms 'discretionary authority,' 'discretionary

---

[2] *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.")

3

control' and 'discretionary responsibility' . . . as speaking to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises.").[3] Even if, assuming *arguendo*, FMRCo offered a subset of Fidelity mutual funds as possible investment options, the Trust Agreement gives FMRCo no authority to compel ABB, as the decision-maker, to select the Plans' investment options from that subset. *Cf. Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 472 (7th Cir. 2007) (affirming dismissal of claims under Rule 12(b)(6) where contract contradicted plaintiff's allegation that defendant had discretionary authority over pricing). Thus, even under plaintiffs' unpled theory, FMRCo cannot be said to have discretionary authority or control over the selection of investment options and cannot be deemed a fiduciary on that basis.

This conclusion is unaltered by plaintiffs' reliance on *Haddock v. Nationwide Fin. Servs.*, 419 F. Supp. 2d 156 (D. Conn. 2006). In *Haddock*, the defendant did not merely suggest possible mutual funds to the plan's fiduciaries. Rather, it held the right to *unilaterally* add and delete mutual funds from the menu of investment options available under the respective plans. 419 F. Supp. 2d at 161. Plaintiffs have not alleged such circumstances here and cannot do so given the plain language of the Trust Agreement.

Finally, FMRCo's supposed fiduciary status is unsupported by plaintiffs' allegation that FMRCo exercised discretion in determining "how much Revenue Sharing to send to Fidelity affiliates[.]" (Compl. ¶ 23.) As described in the Complaint, "Revenue Sharing" consists of assets first paid to "Funds" and then passed on to service providers. (*Id.* ¶¶ 65-68.) The only

---

[3] Although plaintiffs argue that mere "influence" and "attenuated actions" are enough to confer fiduciary status (Opp. at 7, 9), the cases they rely upon do not actually support their position. Rather, although some of those cases may use terminology such as "influence," the finding of fiduciary status in each of those cases was ultimately premised on the defendants' exercise of actual control over decisions affecting the plans. *See, e.g., Blatt v. Marshall and Lassman*, 812 F.2d 810, 813 (2d Cir. 1987) (holding that by intentionally preventing plan's retirement committee from returning plaintiff's vested contributions, defendants "exercised actual control respecting disposition of plan assets."); *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988) (defendant "actually took over as bargaining representative" for union in order to cause union plan to select his dental program).

4

investment options that FMRCo is alleged to have advised, managed or otherwise operated are Fidelity mutual funds. (*Id*. ¶¶ 23-24, 42.) ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1), expressly provides that mutual fund assets are not ERISA plan assets. Accordingly, any control by FMRCo over amounts paid from the Fidelity mutual funds does not constitute discretionary control over plan assets and thus is not a basis for fiduciary status.

In response, plaintiffs first argue that factual issues exist as to whether the "money paid to Fidelity is routed through Fidelity-related or approved mutual funds before it is tendered to FMTC." (Opp. at 11.) Plaintiffs, however, cannot take issue with their own Complaint, which expressly describes "Revenue Sharing" as fees "a Fund charges to a plan" and that "the Fund 'shares' with" plan service providers. (Compl. ¶¶ 69-70.) Moreover, as a matter of securities law, mutual fund shares must be sold and redeemed on the basis of their "net asset value," which is calculated by deducting the mutual fund's operating expenses and fees from the current market value of the funds' portfolio of securities. 15 U.S.C. § 80a-22; 17 C.F.R. § 270.2a-4(a)(4). Thus, mutual fund fees and expenses, other than fees that the fund is permitted to charge to individual shareholder accounts (such as redemption fees to prevent short-term trading), must be paid out of the mutual fund's corpus because the amount of those fees and expenses is inherent in the price charged to all mutual fund shareholders.

Unable to credibly escape the import of their own allegations, plaintiffs next argue, contrary to the express language of § 401(b)(1), that the amounts invested by the Plans in Fidelity mutual funds and the amounts paid out by those mutual funds as fees remain plan assets. Neither of the two cases on which plaintiffs principally rely supports their position. *United States v. Glick*, 142 F.3d 520 (2d Cir. 1998), did not involve assets paid out of mutual funds and thus did not require the court to apply § 401(b)(1) or any similar statutory provision. While the other case relied upon by plaintiffs, *Haddock*, 419 F. Supp. 2d 156, did involve alleged revenue

sharing payments made from mutual fund assets, *id.* at 162, the decision actually refutes plaintiffs' position. Rather than generally holding such payments to be plan assets, the district court crafted a narrower test under which revenue sharing payments received by a defendant constitute plan assets only if the defendant receives such assets "(1) as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants or beneficiaries." *Id.* at 170. In other words, under the *Haddock* test, the status of revenue sharing payments as plan assets is predicated on the defendant *already* having or exercising fiduciary authority. Thus, under *Haddock,* FMRCo's alleged control over "Revenue Sharing" payments cannot be the basis for FMRCo's supposed fiduciary status.[4]

Plaintiffs' attempt to distinguish the Seventh Circuit's decision in *Caremark*, 474 F.3d 463, is similarly unavailing. As discussed in Fidelity's Suggestions, the court held in that case that revenues collected by a plan service provider for its own account in the form of rebates from drug manufacturers were not "plan assets" and, accordingly, that control over those revenues did not render the service provider a fiduciary. Plaintiffs try to limit the effect of *Caremark* by contending that the court's holding turned on the fact that the service provider had separately negotiated with the plans to provide its own rebates to the plans at a contracted rate. Plaintiffs contend that because the Fidelity Defendants did not negotiate such a rebate with the ABB Plans, *Caremark* does not apply.

---

[4] Plaintiffs also cite *A. Ronald Sirna Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*, 964 F.Supp. 147 (S.D.N.Y. 1997), for the proposition that an entity that can "manipulate the plan or its assets" to its own benefit could be deemed a fiduciary and assert that FMRCo "had this exact sort of control over its compensation and that of other Fidelity entities." (Opp. at 14.) Plaintiffs fail to explain their conclusory assertion or to cite any basis for it in their Complaint. Further, plaintiffs read *Sirna* too broadly. Although the court in *Sirna* acknowledged that substantial control over one's compensation could result in fiduciary status, it went on to explain that, "[t]he touchstone [for fiduciary status] was a transfer of control over the plan or its assets from the plan to the provider which would enable the provider to manipulate the plan or its assets to its own benefit." *Id.* at 150. As discussed above, the only possible control of any type that FMRCo has over its compensation is the control it has over mutual fund assets which, as a matter of law, are not plan assets. Thus, neither *Sirna* nor the authorities cited therein support plaintiffs' argument that FMRCo is an ERISA fiduciary.

6

Plaintiffs simply misread the decision. The plaintiff in *Caremark* contended that the service provider's obligation to provide rebates to the plans rendered some portion of the rebates the service provider received from drug manufacturers plan assets. *Id.* at 476 n.6. The Seventh Circuit rejected that argument, reasoning that although the service provider had agreed to pay its own fixed rate rebates to the plans, nothing in the service provider's contract with the plans required the service provider to pay those rebates out of the revenues it received from drug manufacturers. *Id.* In other words, although the service provider had created a payment obligation to the plans, it had not given the plans an interest in the particular funds the service provider received from the drug makers. Thus, the *Caremark* court's decision, affirming the dismissal of plaintiff's claims,[5] supports the proposition that the revenues a service provider receives for its own use do not become plan assets unless the service provider has agreed to transmit a specific portion of those revenues to a plan. Indeed, this case provides an even weaker basis for treating a service provider's revenues as plan assets than in *Caremark* because in *Caremark* there was at least an agreement providing that the service provider make some payment to the plans. Here, the Trust Agreement does not require Fidelity to pay anything to the Plans, let alone require payments out of fees received from the Fidelity mutual funds.

The approach set forth in *Caremark* is also consistent with the Department of Labor's guidance that the status of assets as plan assets should be based on "ordinary notions of property rights." DOL Adv. Op. 99-08A, 1999 WL 343509, at *2 (May 20, 1999). Following that guidance, courts have held in other contexts that assets do not become plan assets unless sufficient steps are taken "to cause the plan to gain a beneficial interest in particular assets . . .

---

[5] In light of plaintiffs' extensive efforts to argue that fiduciary status cannot be decided on a motion to dismiss (Opp. at 6-8), it is worth noting that the Seventh Circuit affirmed the district court's dismissal order for the specific reason that the service provider was, as a matter of law, not an ERISA fiduciary with respect to "any of the relevant actions detailed in the complaint." *Caremark*, 474 F.3d at 477.

such as the transfer to a separate trust account." *Trigon Ins. Co. v. Columbia Naples Capital, L.L.C.*, 235 F. Supp. 2d 495, 505 n.7 (E.D. Va. 2002).

Here, FMRCo has not agreed, and is not alleged to have agreed, to earmark or otherwise direct any portion of its fees from the Fidelity mutual funds to the ABB Plans. Therefore, under the principles set forth by the Seventh Circuit in *Caremark* and echoed in other authority, those fees are solely Fidelity revenues, and not plan assets.

In sum, neither the allegations in plaintiffs' Complaint nor the additional conjecture in their Opposition are sufficient to establish FMRCo's fiduciary status, and Count I should therefore be dismissed against FMRCo.

> **2. Count I Should Be Dismissed Against FMTC Since FMTC is Not a Fiduciary as to the Challenged Conduct.**

Count I should likewise be dismissed against FMTC because, as discussed at pages 9-12 of Fidelity's Suggestions, the limited fiduciary functions that FMTC has under the Trust Agreement do not involve the conduct challenged in the Complaint.

In response, plaintiffs contend that FMTC receives "revenue sharing payments" from the funds managed by it and FMRCo and speculate that "[i]f FMTC determines the amount of revenue sharing . . . then FMTC exercises discretion over the Plans' assets and can be considered a fiduciary." (Opp. at 16-17.) To the extent that this contention relates to the mutual funds managed by FMRCo, the argument fails for the same reason it fails as to FMRCo--any alleged revenue sharing payments are not plan assets. To the extent that the argument relates to investment options managed by FMTC, the argument is meaningless. The Complaint defines "Revenue Sharing" as the "transfer of asset-based compensation from brokers or investment management providers . . . to administrative service providers . . . ." (Compl. ¶ 64.) Thus, plaintiffs' contention that FMTC "exercises discretion over the amount of revenue sharing

payments it receives for the two funds it manages," (Opp. at 16) is nothing more than an absurd argument that FMTC "shares" revenues with itself.[6]

Plaintiffs also contend that FMTC is a fiduciary because it "'plays a role' in determining which investment options ABB will include in the Plans." (Opp. at 16.) However, merely "play[ing] a role" does not render one a fiduciary. As discussed in Fidelity's Suggestions, the "role" that FMTC has been alleged to have in the selection of investment options is as a negotiating party to the Trust Agreement--the document setting forth the terms of FMTC's retention.[7] The federal courts have made clear that a party does not become an ERISA fiduciary by negotiating the terms of its own retention. *See Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131-32 (7th Cir. 1983); *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 618-19 (6th Cir. 2003). Although plaintiffs attempt to distinguish this case from those prior decisions on the grounds that many of the investment options were added through amendments to the Trust Agreement, such a distinction is unavailing. As the Seventh Circuit explained in *Schulist*, even after a party is appointed a fiduciary for some plan purposes, it remains a non-fiduciary with respect to the terms of its retention including renewals of that retention. *Id.*[8] In short, while

---

[6] Even if plaintiffs could proceed on the bizarre theory that FMTC acts as a fiduciary by controlling the degree to which it shares revenue with itself, plaintiffs' argument would permit plaintiffs to maintain a fiduciary duty claim against FMTC only with respect to FMTC-managed investments and not with respect to the mutual fund investments.

[7] In their Opposition, plaintiffs for the first time suggest that FMTC may have an additional role, surmising that, "[a]lthough Plaintiffs identified FMRCo as the entity that culls mutual funds to form the short list it presents to ABB for approval, it is equally *possible* that FMTC is the one performing the pre-selection [of investment options] and would thus be fiduciary." (Opp. at 17 (emphasis added).) This argument fails as to FMTC for largely the same reasons that it fails as to FMRCo, namely that even if FMTC had compiled such a list, it has no authority to impose that list on ABB.

[8] *See Schulist*, 717 F.2d at 1131-32 ("After the Contract was signed, BC/BS may have come into a fiduciary relationship to the Trust with respect to the processing of claims, the area over which BC/BS had discretionary authority. Yet it still did not have any control over what organization would be chosen to fulfill these functions in the following year or on what terms--except to the extent that BC/BS rendered its service in such a manner and at such a price that a more attractive competitor did not submit a bid and take these functions away from it."). It is worth noting in the present case that ABB not only had the ability to negotiate the ongoing terms of the Trust Agreement but also had a right to terminate the Trust Agreement at any time upon 60 days notice and thereby remove FMTC as trustee. (*See* Trust Agreement § 10.)

FMTC may "play a role" in the selection of investment options, it does not play a fiduciary role and thus is not subject to fiduciary liability under Count I.

Accordingly, Count I should also be dismissed as to FMTC.

### C. Count II Should Be Dismissed.

Count II should be dismissed against both Fidelity Defendants for the independent reasons that (1) as was true regarding Count I, the Fidelity Defendants are not fiduciaries with respect to the conduct challenged in the Complaint; and (2) Count II does not seek "appropriate equitable relief," authorized under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

Plaintiffs' primary reaction to these challenges is to attempt to recharacterize Count II as, in part, a claim for *non-fiduciary* liability against the Fidelity Defendants. (Opp. at 18-19.) Plaintiffs contend that because ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), does not authorize relief against non-fiduciaries, their claim for such relief under ERISA § 502(a)(3) is non-duplicative and thus "appropriate."

Once again, plaintiffs' argument in their Opposition cannot be reconciled with the allegations in their Complaint. Count II is replete with allegations of the Fidelity Defendants' fiduciary status, including allegations that they "are the primary fiduciaries of the Plans" (¶ 106), that they "have exclusive discretion and control over the Plans' assets" (¶ 107), and that they "occupy the position of a common law trustee" (¶ 109). More importantly, the central form of relief sought under Count II--"an accounting of all transactions, disbursements and dispositions" (Compl. ¶ 112)--is simply not available against non-fiduciaries under ERISA. Indeed, in *Reich v. Continental Casualty Co.*, 33 F.3d 754 (7th Cir. 1994), the Seventh Circuit upheld the

dismissal of a § 502(a)(3) claim seeking an accounting precisely because it was asserted against a non-fiduciary. *Id.* at 756-57.[9]

Beyond their attempt to recast Count II as a claim for non-fiduciary liability, plaintiffs are unable to point to any reason why the relief they seek under Count II is not wholly duplicative of the relief already sought under Count I. Instead, plaintiffs rationalize that the Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489 (1996) only stated that duplicative relief under § 502(a)(3) is "normally" inappropriate. (Opp. at 19 n.10.) Plaintiffs argue, therefore, that the question of what circumstances are sufficiently "abnormal" to justify duplicative relief is a factual issue that cannot be decided on a motion to dismiss. (*Id*. at 19-20.) This Court, however, has applied *Varity* to dismiss § 502(a)(3) claims where plaintiffs assert claims under other parts of § 502, which, if successful, would provide adequate relief. *See Farthing v. United Healthcare of the Midwest*, No. 98-4262, 2000 U.S. Dist. LEXIS 21994, at *8-10 (W.D. Mo. Feb. 29, 2000). Further, even if some exception to the bar against claims for duplicative relief could theoretically exist, plaintiffs fail to provide even a theory as to why such an exception would apply in the current case.

Plaintiffs also challenge the Fidelity Defendants' argument that plaintiffs' request for injunctive relief or an accounting is inappropriate to the extent that it seeks to compel fee-related disclosures because such disclosures are already subject to express statutory regimes. In particular, plaintiffs suggest that the existence of enumerated statutory disclosure requirements does not strictly preclude a court from ever requiring additional disclosures. The Fidelity Defendants, however, do not contend that the Court could *never* require disclosures beyond those

---

[9] Although the Supreme Court subsequently held in *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), that ERISA liability may exist against a non-fiduciary in limited circumstances, it only authorized a restitutionary remedy against such a non-fiduciary where the non-fiduciary is the "transferee of ill-gotten trust assets." *Id.* at 251. Plaintiffs' request for an accounting plainly does not fall within that limited scope of relief.

expressly mandated by statute. In the administration of an ERISA plan, unique circumstances can arise in which a fiduciary's disclosure of information may become inherent in the fiduciary's duties of loyalty. An example of such circumstances is provided in *Griggs v. E.I. duPont De Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001), in which the Fourth Circuit held that an employer had breached its fiduciary duties by leading a participant to believe that he could take a tax-free distribution from his plan, and not informing him when subsequent internal calculations showed that the distribution would be subject to tax. *Id.* at 383-84. Because Congress cannot be expected to foresee every such particularized scenario that may arise, judicial determinations that fiduciaries owe a duty to disclose information in specific instances do not disrespect Congress' policy choices in establishing broad-scale disclosure requirements.

Plaintiffs have not pled such particularized circumstances here, however. To the contrary, consistent with plaintiffs' counsel's filing of 14 similar suits, plaintiffs have alleged that "Revenue Sharing is a common practice in the financial, securities, and investment industry that provides services to 401(k) plans." (Compl. ¶ 62.) Thus, a judicial determination that plaintiffs are entitled to detailed information regarding such alleged "Revenue Sharing" would, in effect, impose a sweeping disclosure regime that extends far beyond the disclosure that Congress and regulatory bodies have determined necessary and material both to plan participants and mutual fund investors in general.[10] The Fidelity Defendants submit that equitable relief that

---

[10] Plaintiffs cite the district court's decision in *Siemers v. Wells Fargo & Co.*, No. 05-4518, 2007 WL 760750 (N.D. Cal. March 9, 2007), for the proposition that the details of "revenue sharing" are material to mutual fund investors. (Opp. at 23-24.) It is worth noting that the *Siemers* decision represents a decidedly minority view, standing against the overwhelming authority holding as a matter of law that such information is immaterial. *See, e.g.*, *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 602 (S.D.N.Y. 2006) (holding that specific allocation of fees immaterial because "the great weight of authority in this District has found that the fees' disproportionality must be shown with regard to the *total* amount of fees charged"); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) ("Defendants disclosed the fees and commissions charged to shareholders. The precise allocation of those fees is not material information under the securities laws."); *In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*, No. 03 civ. 8208, 2006 U.S. Dist. LEXIS 20758, at *37-38 (S.D.N.Y. April 14, 2006) ("All fees charged to the shareholder were disclosed in the offering prospectuses . . . . The allocation of the fees is immaterial, because it could have no effect on share price."); *Castillo v. Dean Witter Discover & Co.*, No. 97 Civ. 1272, 1998 WL 342050, at *5 (S.D.N.Y. June 25, 1998) ("Plaintiffs complain that they

would have the effect of imposing such a judicially-created disclosure scheme would be inappropriate, particularly where, as here, Congress and regulatory agencies have addressed, and continue to consider, the issue through the legislative and regulatory processes.[11]  Moreover, this Court's consideration of such factors is wholly consistent with the Supreme Court's expectation that "courts, in fashioning 'appropriate' equitable relief . . . will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others . . . ." *Varity Corp.*, 516 U.S. at 515 (internal citation omitted).

Finally, plaintiffs appear to take issue with the Fidelity Defendants' argument that Count II should be dismissed to the extent that it seeks monetary relief because such relief is not "equitable" for the purposes of § 502(a)(3).  However, plaintiffs do nothing more than cite a case standing for the fact that an accounting is an equitable remedy.  (Opp. at 20.)  Their point is irrelevant.  The Fidelity Defendants have not disputed that an accounting, at least as applied against a fiduciary, may be an equitable remedy.  Rather, the Fidelity Defendants have argued that the use of equitable labels does not entitle plaintiffs to assert a claim for what is quintessentially legal relief.  *See Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1064 (8th Cir.), *cert. denied*, 126 S.Ct. 2969 (2006) ("Merely re-labeling the relief sought as 'restitution' or 'surcharge' does not alter the nature of a remedy from monetary to equitable.")  As explained in

---

were not informed of the precise allocation of fees . . . but the allocation of fees would not affect the damages for the losses claimed by plaintiffs. It is the total fees charged that would affect the asset value of a mutual fund and the decision to invest.").  More importantly, *Siemers* is a securities law action and thus itself demonstrates that courts are already examining mutual fund disclosures and practices under the statutory regime specifically intended to address those issues.

[11] Indeed, plaintiffs themselves highlight Congress' attention to this issue by citing Marvin Mann's testimony to a Senate committee.  (Opp. at 24 (citing Statement of Marvin Mann, Chairman of the Independent Trustees of The Fidelity Funds, Before the Senate Committee on Banking, Housing and Urban Affairs on "Review of Current Investigations and Regulatory Actions Regarding the Mutual Fund Industry: Fund Operations and Governance" (Mar. 2, 2004), *available at* http://banking.senate.gov/_files/mann.pdf).)  After clarifying that he was speaking in his personal capacity and not as a trustee of the Fidelity mutual funds, Mr. Mann outlined to the Senate Committee his suggestions for industry-wide changes to existing law.  *Id.* at 16.  Notably, Mr. Mann acknowledged that all of his proposals were contained in bills that had been introduced in Congress and were thus already the subject of legislative deliberation.  *Id.*

Fidelity's Suggestions (pp. 16-17), plaintiffs are seeking broad monetary relief, including "fees and expenses . . . paid to third parties, whether paid directly by the Plan[s] or indirectly transferred among Plan service providers or other third parties." (Compl. ¶ 113.) Recovery of such fees and expenses falls well outside the scope of equitable relief and thus cannot be sought under § 502(a)(3). *See Knieriem*, 434 F.3d at 1064 (upholding the dismissal of a claim for surcharge under § 502(a)(3) where the defendant held "no readily identifiable funds or property belonging to [plaintiff's] estate to form the basis of a constructive trust.").

> **D.      Count III Should Be Dismissed.**

As discussed at pages 17-18 of Fidelity's Suggestions, Count III of the Complaint largely duplicates Count II and should thus be dismissed on similar grounds, including that it does not seek either "appropriate" or "equitable" relief, as required under § 502(a)(3). In particular, although plaintiffs have attempted to characterize Count III as a claim for "equitable" restitution, they have not pled, and cannot adequately plead, the elements of a claim for such relief because the assets they seek to recover--the proceeds of Revenue Sharing payments--are not traceable to the Plans' assets. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (holding that restitution exists in equity "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession").

Plaintiffs attempt to avoid this flaw in their claim by focusing narrowly on the Fidelity Defendants' point that any fees received by Fidelity entities are not traceable because they have become part of Fidelity's general revenues. Plaintiffs contend that that issue is a factual one that cannot be decided on the present Motion. Plaintiffs, however, conspicuously ignore the Fidelity Defendants' separate point that, according to plaintiffs' own Complaint, the so-called "Revenue Sharing payments" are not paid directly by the Plans but are instead the result of investments by

14

the Plans in mutual funds and other commingled "Funds" which then "share" part of their revenues with other entities. As explained in Fidelity's Suggestions (p. 18), once the Plans' assets are invested in commingled vehicles, the amounts invested cease to be specifically identifiable assets, and in the case of mutual funds, cease to be plans assets as a matter of law. *See Calhoon v. TWA*, 400 F.3d 593, 597 (8th Cir. 2005) (holding that monetary relief is equitable only where the money sought is "specifically identifiable" and can "clearly be traced to particular funds or property in the defendant's possession."). Plaintiffs provide no response to this argument, and Count III should therefore be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Fidelity respectfully requests that that this Court enter an

Order granting the Fidelity Defendants' Motion to Dismiss Plaintiffs' Complaint for Breach of

Fiduciary Duty and dismiss plaintiffs' claims against Fidelity Management & Research

Company and Fidelity Management Trust Company with prejudice.

Dated:  May 17, 2007                                  Respectfully submitted,

 

Richard N. Bien, #31398
Adam B. Walker, #56299
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Telephone: (816) 292-2000
Facsimile: (816) 292-2001

BY:  ___/s/ Shannon M. Barrett_____

Robert N. Eccles
Brian D. Boyle
Shannon M. Barrett
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

*Counsel for Defendants Fidelity Management*
*Trust Company and Fidelity Management &*
*Research Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

| | |
|---|---|
| Jerome J. Schlichter<br>Daniel V. Conlisk<br>Heather Lea<br>Schlicter, Bogard & Denton<br>100 South 4th Street, Suite 900<br>St. Louis, MO 63102<br><br>**Attorneys for Plaintiffs** | Brian T. Ortelere<br>William J. Delany<br>Catherine A. Cugell<br>Morgan, Lewis & Bockius, LLP<br>1701 Market Street<br>Philadelphia, PA 19101-2921<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** |
| Thomas E. Wack<br>Jeffrey S. Russell<br>Bryan Cave LLP<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** | |

/s/ Shannon M. Barrett
_____

17