# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

MARGARET KENNEDY, et al.,

               **Plaintiffs,**

        v.

ABB INC., et al.,

               **Defendants.**

**CIVIL ACTION
NO. 06-cv-04305**

**(JUDGE NANETTE K. LAUGHREY)**

## SUGGESTIONS OF LAW IN SUPPORT OF ABB DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Thomas E. Wack
Jeffrey S. Russell
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile:  (314) 259-2020
twack@bryancave.com
jrussell@bryancave.com

Brian T. Ortelere
William J. Delany
Catherine A. Cugell
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
bortelere@morganlewis.com
wdelany@morganlewis.com
ccugell@morganlewis.com
*admitted pro hac vice*

Attorneys for Defendants ABB Inc., John W.
Cutler, Jr., Pension Review Committee of ABB
Inc., Pension & Thrift Management Group of ABB
Inc., and the Employee Benefits Committee of ABB
Inc.

Dated:  August 3, 2007

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF RELEVANT ALLEGATIONS ........................................................ 4

III.    ARGUMENT ..................................................................................................... 6

        A.      Standard of Review .................................................................................... 6

        B.      Plaintiffs Still Fail to State a Claim for Breach of Fiduciary Duty Based on
                Failure to Disclose Revenue Sharing Payments Because ERISA Does Not
                Require Such Disclosures. .......................................................................... 8

                1.      No ERISA Provision Mandates Disclosure Of Revenue Sharing. ............ 9

                2.      DOL Regulations Do Not Require Disclosure Of Revenue Sharing......... 9

        C.      Because ABB Satisfied Both the Statutory and Regulatory Disclosure
                Requirements, ERISA Section 404(c) Again Compels Dismissal of
                Plaintiffs' Suit, or, in the Alternative, Summary Judgment in ABB's
                Favor. ................................................................................................ 14

                1.      There Can Be No Finding Of A Fiduciary Breach ................................ 14

IV.     CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

Bartis v. City of Bridgeton,
No. 4:06-CV-1574 (JCH), 2007 WL 1486024 (E.D. Mo. May 18, 2007) ................................5, 6

Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein,
107 F.3d 139 (2d Cir. 1997)..........................................................................................................13

Bell Atlantic Corp. v. Twombley,
127 S. Ct. 1955 (2007)....................................................................................................................6

Blair v. Wills,
420 F.3d 823 (8th Cir. 2005) ..........................................................................................................7

Carpenter Outdoor Advertising Co. v. City of Fenton,
251 F.3d 686 (8th Cir. 2001) ..........................................................................................................6

Coleman v. Watt,
40 F.3d 255 (8th Cir. 1994) ............................................................................................................6

Ehlmann v. Kaiser Found. Health Plan of Texas,
198 F.3d 552 (5th Cir. 2000) ........................................................................................................13

Hecker v. Deere & Co.,
No. 06-C 719 S, 2007 WL 1874367 (W.D. Wis. Jun. 21, 2007).....................1, 2, 6, 9, 12, 14, 16

Jenkins v. Yager,
444 F.3d 916 (7th Cir. 2006) ........................................................................................................14

Jensen v. Sipco, Inc.,
38 F.3d 945 (8th Cir. 1994) ......................................................................................................2, 13

Katsaros v. Cody,
744 F.2d 270 (2d Cir. 1984)..........................................................................................................12

Langbecker v. Elec. Data Sys. Corp.,
No. 04-41760, 2007 WL 117465 (5th Cir. Jan. 18, 2007)............................................................14

Moses.com Sec., Inc. v. Comprehensive Software Sys.,
406 F.3d 1052 (8th Cir. 2005) ........................................................................................................4

Nechis v. Oxford Health Plans, Inc.,
421 F.3d 96 (2d Cir. 2005).............................................................................................................13

Case 2:06-cv-04305-NKL   Document 99   Filed 08/03/07   Page 3 of 22

Romine v. Acxiom Corp.,
296 F.3d 701 (8th Cir. 2002) ...............................................................................7

Roth v. Sawyer-Cleator Lumber Co.,
16 F.3d 915 (8th Cir. 1994) ...............................................................................12

Sprague v. Gen. Motors Corp.,
133 F.3d 388 (6th Cir. 1998) .............................................................................13

Stahl v. United States Dep't of Agriculture,
327 F.3d 697 (8th Cir. 2003) ...............................................................................7

Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.,
828 F.2d 1245 (8th Cir. 1987) ..............................................................................7

In re Unisys Sav. Plan Litig.,
73 F.3d 420 (3d Cir. 1996)................................................................................14

United States v. Clark,
454 U.S. 555 (1982) ..........................................................................................12

## STATUTES

29 C.F.R. § 2520.103-1(b)(2)(ii) .......................................................................10

29 C.F.R. § 2520.104b-10 ..................................................................................10

29 C.F.R. § 2550.404c-1(b)(2)(i)(B) .............................................................11, 15

29 U.S.C. § 1023 ...............................................................................................12

29 U.S.C. § 1023(a) ............................................................................................9

29 U.S.C. § 1023(b) .......................................................................................9, 10

29 U.S.C. § 1024(b) ............................................................................................9

29 U.S.C. § 1104(c) ........................................................................................1, 14

29 U.S.C. § 1132(a)(2).......................................................................................14

71 Fed. Reg. 41,392, 41,394 ..............................................................................12

**MISCELLANEOUS**

Advisory Counsel on Employee Welfare and Pension Benefit Plans,
Report of the Working Group on Plan Fees and Reporting on Form 5500,
(Nov. 11, 2004), available at http://www.dol.gov/ebsa/pdf/ac_111804_report.pdf. .....................11

United States Government Accountability Office,
Private Pensions: Changes Needed to Provide 401(k) Plan Participants
and the Department of Labor Better Information on Fees,
GAO-07-21 (November 2006)..................................................................................................5, 11

# I.     INTRODUCTION

The singular question presented is whether Plaintiffs can avoid dismissal after admitting to the efficacy of a recent opinion cited in support of ABB's first Motion to Dismiss by stripping from their Complaint the allegations conceding application of that district court ruling. In their initial Complaint, Plaintiffs specifically alleged that the ABB Defendants ("ABB") did not satisfy ERISA section 404(c), 29 U.S.C. § 1104(c), which expressly immunizes fiduciaries from liability for "<u>any</u>" claimed fiduciary breaches stemming from the plaintiffs' individual elections regarding their savings plan investments, as long as the fiduciaries have met the appropriate statutory and regulatory disclosure requirements.[1] Having specifically and repeatedly made reference to the affirmative defense in their Complaint, the issue was fair game for ABB's initial Motion to Dismiss, as explained in ABB's initial brief and as the Court recently held in <u>Hecker v. Deere & Co.</u>, No. 06 C 719 S, 2007 WL 1874367 (W.D. Wis. Jun. 21, 2007).[2]

In that opening Motion, ABB established that it complied with the relevant disclosure standards and, therefore, satisfied 404(c), and the issue was properly before the Court given Plaintiffs' repeated reference to 404(c) in their Complaint. In fact, there was no serious dispute that the specific disclosure requirements related to the 401(k) fees and expenses were satisfied and Plaintiffs were left to argue that the statute's general prudence standards formed the basis for a higher disclosure duty, notwithstanding the

---

[1]     The ABB Defendants are ABB Inc., John W. Cutler, Jr., the Pension Review Committee of ABB Inc., the Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc

[2]     <u>See</u> Plaintiffs' Initial Complaint [Dkt. No. 1] ("Complaint"); ABB's initial Motion to Dismiss [Dkt. No. 26] ("Initial Motion"); ABB's Reply Brief in Support of the Motion to Dismiss [Dkt. No. 65] ("Reply Brief"); and ABB's Opposition to Class Certification [Dkt. No. 87] ("Class Brief").

1

Eighth Circuit's opinion in <u>Jensen v. Sipco, Inc.</u>, 38 F.3d 945 (8th Cir. 1994), holding that satisfaction of the DOL's regulatory disclosure duties specifically precludes reliance upon ERISA's general prudence standards to augment or supplant the disclosure standards.

Following the briefing on ABB's 12(b)(6) Motion, on June 21, 2007, <u>Deere</u>, an identical suit brought by the same lawyers, was dismissed because Deere satisfied the statutory and regulatory scheme and plan participants were afforded a variety of investment options into which they could direct their money. Judge Shabaz' conclusion sent these Plaintiffs scrambling to sweep under the rug their prior admissions regarding the relevance of ERISA section 404(c) to this dispute. "<u>The only possible conclusion is that to the extent participants incurred excessive expenses, those losses were the result of participants exercising control over their investments within the meaning of the safe harbor provision.</u>" <u>Deere</u>, 2007 WL 1874367, at *8 (emphasis added).[3]

Just two weeks after the <u>Deere</u> ruling, and after the briefing on the ABB Motion

---

[3]     Plaintiffs' efforts to obscure from the Court's consideration the insurmountable 404(c) causation hurdle is particularly ill-advised mindful of their ready acknowledgment in their depositions, previously filed in response to Plaintiffs' Motion for Class Certification, that they were responsible for their investments and, nevertheless, employed a crazy-quilt of considerations to make their investment choices while spurning all of the relevant information available to them. Plaintiffs admitted in their depositions that they: 1) could have put together a fully diversified portfolio of investments using the inexpensive Barclays Global Investors ("BGI") funds (<u>see</u> Class Brief at 9); 2) directed and were responsible for their own investments (<u>id</u>. at 9 n.12); 3) never considered the "wealth" of investment information available to them (<u>id</u>. at 10, 12, 20 n.33, 23); 4) acted unreasonably in managing their savings plan investments (<u>id</u>. at 3, 18); 5) read <u>none</u> of the relevant disclosures on fees and expenses including summary plan descriptions, fact sheets and prospectuses (<u>id</u>. at 10 n.15, 11 n.16, 16 n.27, 18); 6) relied upon a host of extraneous factors in framing their investment choices including their "gut," spouses and investment advisors (<u>id</u>. at 13 n.20, 15 & n.24, 22); 7) ignored participant-directed DOL materials speaking to fees and expense issues and cross-referenced in ABB Plan documents (<u>id</u>. at 11-12, 21 n.34); 8) considered "television ads" to determine their

(continued)

2

to Dismiss was complete, these Plaintiffs filed their Amended Complaint, which most notably deleted any and all references to 404(c), as well as to the specific disclosure statutes which <u>Deere</u> demonstrates ABB satisfied. <u>See</u> Blacklined Complaint, Ex. A at 34-39. Plaintiffs' awkward sleight of hand – deleting from the Amended Complaint all of the many references to 404(c) in the original Complaint – tacitly concedes the efficacy of <u>Deere</u> and further compels the immediate dismissal of this lawsuit.

ABB's arguments compelling dismissal remain unchanged. Plaintiffs do not, and indeed cannot, allege that the disclosures made to them were inadequate under ERISA and the Department of Labor ("DOL") regulations construing the relevant statutory provisions; indeed, that point was conceded during the briefing on ABB's Opening Motion. <u>See</u> Reply Brief at 3 n.3. The Amended Complaint should be dismissed because ABB satisfied the disclosure requirements and, given the fact that the ABB participants direct their own investments and could have selected diversified investment options comparable to or <u>cheaper than</u> the lowest-priced alternatives in <u>Deere</u>, the fiduciaries are immunized against any claims challenging the fees and expenses charged to administer the Plaintiffs' investments. Plaintiffs' inelegant efforts to sidestep <u>Deere</u> with their belated amendments runs headlong into clear Eighth Circuit authority deeming the references to 404(c) in their initial pleading as an "admission" in these proceedings. At the end of the day, Plaintiffs' efforts at obfuscation cannot and should not be rewarded. The lawsuit should be dismissed for the same reasons set forth in ABB's Original Motion to Dismiss as specifically endorsed and set forth in <u>Deere</u>.

---

investment strategies (<u>id.</u> at 15, 23); and 9) immediately threw in the trash relevant Plan documents upon receipt (<u>id.</u> at 16 n.27, 20 & n.32).

3

## II.    STATEMENT OF RELEVANT ALLEGATIONS

None of the facts have changed since Plaintiffs filed their original Complaint, nor have their claims.  Like its predecessor, the Amended Complaint alleges Defendants breached their fiduciary duties related to the 401(k) plans to which participants voluntarily contribute a portion of their earnings and then choose how their contributions are invested.[4]  Am. Compl. ¶¶ 32, 36.  The Plans allow participants to choose among over twenty diverse investment options, including, as noted previously and as explained in more detail below, a host of extraordinarily low-cost investment options to which participants can direct their investments.  Id. ¶ 35.  See also Reply Brief at 3 n.2.[5]  These investment options provide participants a broad range of alternatives, at widely varying "prices," so that participants can structure an investment portfolio consistent with their individual objectives and risk tolerances, and at prices they consider appropriate.[6]

---

[4]    The Plans consist of the Personal Retirement Investment and Savings Management Plan ("PRISM") and the Represented Personal Retirement Investment and Savings Management Plan ("RepPRISM") (individually and collectively, the "Plan" or "Plans").  The two plans are "mirror image" plans, having essentially the same terms.  The former Plan is for non-unionized employees, while the latter Plan's participants are certain represented ABB employees.

[5]    The Court may now examine the Plans' Summary Plan Descriptions ("SPDs") and any documents incorporated therein, such as fund fact sheets and prospectuses, "even though [they were] not expressly part of the pleadings, because [they were] incorporated into the pleadings by reference" to the Plans' funds and other investments.  Moses.com Sec., Inc. v. Comprehensive Software Sys., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005).

[6]    For example, participants can invest in a low-risk fund such as the ABB Inc. Income Fund, a conservative fixed income vehicle that seeks to provide a stable rate of return from insurance company contracts and other similar investments, a more risky major stock index fund such as the BGI Equity Index Fund, which tracks the Standard & Poor's 500 Index, or a number of mutual funds, Am. Compl. ¶ 36, such as the T. Rowe Price International Stock Fund, a relatively aggressive, high-risk fund invested in the common stock of medium to large-sized companies based outside the United States.  See ABB Inc. Income Fund Fact Sheet, Ex. B at 1; BGI Equity Index Fund Fact Sheet, Ex. C at 1-2; BGI Europe Australasia Far East ("EAFE") Equity Index Fund Fact Sheet, Ex. D at 1-2; BGI US Debt Index Fund Fact Sheet, Ex. E at 1-2; BGI Extended Market Fund Fact Sheet, Ex. F at 1-2; T. Rowe Price International Stock Fund Prospectus, Ex. G at 1-6.

(continued)

4

Defendant Fidelity Management Trust Company ("FMTC") is the Plans' trustee, acts as recordkeeper and performs a variety of administrative tasks for the Plans. Am. Compl. ¶ 12, 14. FMTC receives compensation from the Plans for these services in the form of "hard dollar" payments – cash payments made directly by the Plans to FMTC. Id. ¶ 43. Plaintiffs allege that FMTC also has "soft dollar" or "revenue sharing" arrangements with certain brokers or providers of certain investment options (e.g., mutual funds) to transfer Plan-asset-based compensation from such brokers or providers to FMTC in its role as trustee, recordkeeper and administrator for the Plans. Id. ¶¶ 46-47.

Plaintiffs continue to allege that ABB breached its fiduciary duties in two ways. First, Plaintiffs maintain that ABB failed to disclose adequately service provider fees, again notwithstanding their prior admission that the disclosures to participants satisfied the specific disclosure requirements related to 401(k) plan fees and expenses. See Reply Brief at 3 n.3; Am. Compl. ¶ 44 (admitting that expense ratios include revenue sharing).[7] In particular, Plaintiffs contend that revenue sharing payments are not disclosed to participants, id. ¶ 68, and, therefore, participants are unable to determine either the total fees paid to service providers or the amount of revenue sharing related to each investment

---

The type of investment option a participant selects impacts the associated fees and expenses of that option. See, e.g., United States Government Accountability Office, Private Pensions: Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better Information on Fees," GAO-07-21, at *11 (November 2006), available at http://www.gao.gov/new.items/d0721.pdf (noting that index funds "have lower management fees than actively managed funds" because the index funds "closely track a market performance indicator, such as the Standard & Poor's 500, which largely eliminates expenditures associated with research, investment selection, and buying and selling").

[7] Plaintiffs are certainly judicially estopped from forsaking admissions made in briefs filed previously. Bartis v. City of Bridgeton, No. 4:06-CV-1574 (JCH), 2007 WL 1486024, at *5 (E.D. Mo. May 18, 2007) (judicial estoppel prevents parties from playing fast and loose with the courts to suit exigencies of self interest).

option.  Id. ¶ 70.  Significantly, and, post-Deere, even more ruinous to their cause,

Plaintiffs once again do not allege that ABB failed to satisfy the specific statutory and

regulatory disclosure requirements now in place (compelling the disclosure of the fees

and expenses but in a format these Plaintiffs apparently deem inadequate).  Plaintiffs are

left only with the allegation that they are not informed how the providers of these

investment options may further distribute portions of the total expenses charged and that

claim, by necessity, is grounded only upon the statute's general prudence requirements

rather than the statutory and regulatory provisions speaking directly to these issues.[8]

Second, apart from whether ABB is obligated to disclose these revenue sharing

payments, Plaintiffs allege that the total fees paid to FMTC are excessive and

unreasonable.  Id. ¶¶ 42, 73.

## III.   ARGUMENT

### A.   Standard of Review

In ruling on a motion to dismiss, a court must accept the complaint's allegations

as true and view them in the light most favorable to the plaintiff.  Coleman v. Watt, 40

F.3d 255, 258 (8th Cir. 1994).  Nevertheless, the complaint must state the essential

elements of a cause of action simply, concisely, and directly.  See Carpenter Outdoor

Advertising Co. v. City of Fenton, 251 F.3d 686 (8th Cir. 2001).  See also Bell Atlantic

Corp. v. Twombley, 127 S. Ct. 1955, 1965 (2007) ("A plaintiff's obligation to provide

the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do.").  In addition, a

---

[8]     Cf. Deere, 2007 WL 1874367, at * 7 ("In assessing the likely return on an investment the
        fees netted against the return are certainly relevant, but knowing the subsequent
        distribution of those fees has no impact on the investment's value").

6

court may dismiss an action under Rule 12(b)(6) if the complaint itself admits facts fatal to the claim. Romine v. Acxiom Corp., 296 F.3d 701, 706 (8th Cir. 2002).

As noted, Plaintiffs previously acknowledged the relevance of ERISA section 404(c) by repeatedly citing to the provision in their first Complaint. The inclusion of the provision made it fair game for a motion to dismiss. See Initial Motion at 15. While the filing of an amended complaint "supersedes" the original complaint, the provisions of that former pleading, including the concession of the relevance of ERISA section 404(c), are now "admissions" properly before the Court. Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co., 828 F.2d 1245, 1249 m.3 (8th Cir. 1987) ("A pleading abandoned or superseded through amendment no longer serves any function in the case, but may be introduced into evidence as the admission of a party.") (emphasis added).

Plaintiffs' efforts to obscure these admissions to avoid Deere necessarily fail, because the original Complaint remains part of the public record and, as such, is properly considered in the 12(b)(6) context. Of course, "[t]he district court may take judicial notice of public records and may thus consider them on a motion to dismiss." Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). If, however, the Court concludes that the stripping of the 404(c) allegations now precludes consideration of those issues on 12(b)(6), the Court may convert this Motion to one for summary judgment and consider those prior allegations as admissions under Rule 56 and further compelling the immediate entry of judgment in ABB's favor.[9]

---

[9]    Cf. Blair v. Wills, 420 F.3d 823, 827 (8th Cir. 2005) (explaining process of conversion of 12(b)(6) Motion to motion for summary judgment).

7

**B.**     **Plaintiffs Still Fail to State a Claim for Breach of Fiduciary Duty Based on Failure to Disclose Revenue Sharing Payments Because ERISA Does Not Require Such Disclosures.**

There is no, nor could there be, any allegation in the Amended Complaint that ABB failed to satisfy the specific statutory and regulatory disclosure standards related to fees and expenses.  Nevertheless, Plaintiffs allege that ABB failed to disclose revenue sharing paid by the various mutual funds to FMTC, and they base that so-called duty upon the statute's general prudence standards.  See Am. Compl. ¶¶ 2; 30(B)(i), (ix) and (xiii); 38; 55; 75(A), (D) and (K); 76(D), (L), (N) and (V).  While Plaintiffs acknowledge, as they must, that the aggregate of the mutual funds' charges are disclosed,[10] their disclosure claims are grounded upon the premise that ABB failed to disclose the "sharing" of money by the mutual funds to the recordkeeper – at best, a portion of that aggregate amount. [11]  In Plaintiffs' own words, ABB has "not disclosed, and/or [has] affirmatively concealed" that "Plan service providers maintained undisclosed Revenue Sharing programs to collect soft dollars, and the amount they were receiving from the transfer of those soft dollars."  Am. Compl. ¶ 69(E).  Because neither ERISA's specific disclosure requirements nor ERISA's general standards of fiduciary responsibility require fiduciaries to disclose revenue sharing payments to participants, the disclosure claims fail as a matter of law.

As Judge Shabaz held, consistent with the Eighth Circuit's ruling in Jensen:

---

[10]     See supra at 5.

[11]     For the purpose of this Motion only, it is assumed that the recordkeeper receives some portion of the fees and expenses charged to participant accounts through these revenue sharing streams.  In reality, the revenue sharing payments are paid not from plan assets, but from the general assets of the mutual fund company or its investment advisor.  See Initial Motion at 2 n.4.

> There is no merit to plaintiffs' contention that disclosure not required by the statutory disclosure requirements is separately required by the general ERISA fiduciary obligations. Disclosure requirements are generally limited to those expressly prescribed by the statutory language of ERISA . . . Where as here Congress has by statute and related regulations, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary obligations.

Deere, 2007 WL 1874367, at * 5.

### 1. No ERISA Provision Mandates Disclosure Of Revenue Sharing.

More specifically, ERISA section 103 only requires a plan administrator to publish and file with the DOL an annual report describing a plan's assets and liabilities, as well as its receipts and disbursements. 29 U.S.C. § 1023(a); (b)(3). Despite its continued superficial complexity and bluster, nowhere does the Amended Complaint specifically allege that ABB failed to abide this requirement and, once again, Plaintiffs conceded the point in prior briefing. See supra at 5. Moreover, ERISA section 104 only requires that a plan administrator periodically provide participants an SPD and speaks further to the timing of the filing of the aforementioned annual report. Once again, the Amended Complaint does not allege that ABB failed to meet these statutory disclosure requirements. See 29 U.S.C. § 1024(b)(1) and (3). ERISA section 104 further entitles participants to receive certain additional documents from the plan administrator "upon written request." 29 U.S.C. § 1024(b)(4). Again, there is no contention that ABB failed to honor properly any participant request for information.

### 2. DOL Regulations Do Not Require Disclosure Of Revenue Sharing.

The related DOL regulations similarly do not require the disclosure of the information Plaintiffs allege was unlawfully withheld, and compel the conclusion that

there can be no finding of a fiduciary breach on the basis of a misrepresentation or omission. Although ERISA section 103(b)(2), 29 U.S.C. § 1023(b)(2), requires plan expenses to be included in a plan's annual report, DOL regulations further explain that the report need include only the expense categories required to be reported on the Form 5500, the annual financial report for the Plan, and its schedules. See 29 C.F.R. § 2520.103-1(b)(2)(ii). One of those schedules requires a plan administrator to "[r]eport all administrative expenses (by specified category) paid or charged by the plan."[12] Those "administrative expenses" include professional fees, contract administrator fees, and investment advisory and management fees. Id. Similarly, the DOL regulation regarding the summary annual report that must be distributed to plan participants only requires certain expenses to be reported in the aggregate; the plan is not required to disclose any individual fees or expenses charged to a participant's account, and certainly need not disclose revenue sharing payments. See 29 C.F.R. §§ 2520.104b-10; 2520.104b-10(d)(3).[13] Careful examination of the existing statutory and regulatory disclosure requirements readily demonstrates that "ERISA does not explicitly require plan sponsors

---

[12]     See Instructions for DOL Form 5500, Schedule H, available at http://www.dol.gov/ebsa/500main.html.

[13]     The corresponding DOL regulation, 29 C.F.R. § 2520.104b-10, sets forth the plan administrator's duty to provide a "summary annual report" and specifically describes the format within which certain narrow enumerated categories of the fees and expenses are to be stated to participants:

> Benefits under the plan are provided by (indicate funding arrangements). Plan expenses were ($ ). These expenses included ($ ) in administrative expenses and ($ ) in benefits paid to participants and beneficiaries, and ($ ) in other expenses. A total of ( ) persons were participants in or beneficiaries of the plan at the end of the plan year, although not all of these persons had yet earned the right to receive benefits.

Id. Once again, there is still no allegation, nor could there be, that ABB failed to timely disclose this information to plan participants.

to disclose comprehensive information on fees to participants."[14]  The General

Accounting Office's recent report on 401(k) plan fees further demonstrates the limited

disclosure duty that fiduciaries shoulder in these circumstances.  Once again, there was

and is still no allegation that ABB violated the specific disclosure requirements.[15]

Indeed, as <u>Deere</u> specifically holds, recent regulatory initiatives confirm the

limited nature of the disclosure duty.  The DOL only last year <u>proposed</u> an amendment to

its existing reporting regime to require disclosure of revenue sharing payments received

---

[14]     United States Government Accountability Office, <u>Private Pensions: Changes Needed to
Provide 401(k) Plan Participants and the Department of Labor Better Information on
Fees</u>," GAO-07-21, at 28 (November 2006), <u>available at</u>
http://www.gao.gov/new.items/d0721.pdf. (emphasis added).

[15]     Moreover, the DOL regulations promulgated under ERISA section 404(c) only require
the disclosure of "transaction fees and expenses" such as "commissions, sales leads,
deferred sales charges [and] redemption or exchange fees."  29 C.F.R. § 2550.404c-
1(b)(2)(i)(B)(*1*)(*v*).  Again, there is no requirement that revenue sharing be disclosed, as
the DOL's recent initiative conclusively demonstrates.  <u>See</u> <u>infra</u> at 11-12.  Moreover,
"upon request," a participant may seek "a description of the annual operating expenses of
each designated investment alternative . . . which reduce the rate of return to participants
and beneficiaries, and the aggregate amount of such expenses expressed as a percentage
of average net assets of the designated investment alternative."  29 C.F.R. §§ 2550.404c-
1(b)(2)(i)(B)(*1*)(*vi*), 2550.404c-1(b)(2)(i)(B)(2)(*i*).  The DOL's recent initiative
demonstrates that revenue sharing need not be disclosed, even "upon request."  In this
regard, the ABB SPDs refer plan participants to the prospectus for each mutual fund.  <u>See</u>
PRISM SPD, Ex. H at 43; RepPRISM SPD, Ex. I at 130.  In turn, the prospectuses each
include an "expense ratio" describing the information to be disclosed under 29 C.F.R. §
2550.404c-1(b)(2)(i)(B)(*1*)(*v*).  Those expense ratios demonstrate that the fees and
expenses charged vary significantly by the types of funds and investment options
available for selection by the participants.  By way of example of the variety of options,
in 2006 Plan participants could choose to invest in PIMCO's Total Return Fund, whose
Administrative Class offered a 0.68% ratio of net expenses to average net assets, ABF's
Large Cap Value Fund, which offered a 0.86% ratio, or Morgan Stanley's Emerging
Markets Portfolio, whose Class A offered a 1.41% ratio.  <u>See</u> PIMCO Total Return Funds
Annual Report, Ex. J at 11; American Beacon Funds Prospectus, Ex. K at 61; Morgan
Stanley Institutional Funds, Inc. Prospectus, Ex. L at 32.  Plaintiffs also could have
invested in the BGI Equity Fund, which offered a 0.03% expense ratio, or the BGI EAFE
Equity Index Fund,  US Debt Index Fund or Extended Market Fund, which offered
0.10% ratios.  <u>See</u> Ex. C at 2; Ex. D at 2; Ex. E at 2; Ex. F at 2.  The BGI funds are the
very same "separate accounts" which Plaintiffs allege should be made available to Plan
participants.  Am. Compl. ¶ 36.

11

by a plan's service providers.[16]  This proposal demonstrates that current statutory law and regulations do not require disclosure of the amounts paid to service providers pursuant to revenue sharing arrangements.  Deere, 2007 WL 1874367 at *4 ("[R]ecent proposals to amend the regulations . . . to require revenue sharing disclosures in annual reports make it apparent that present regulations do not require it.")[17]

The DOL's proposed regulation would require disclosure of "the source and nature of compensation in excess of $1,000 received from parties other than the plan or the plan sponsor." Annual Reporting and Disclosure, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. part 2520) (emphasis added).  The regulatory initiative stems from a recommendation by the DOL ERISA Advisory Council Working Group that the Form 5500, the "Annual Report" under 29 U.S.C. § 1023, be revised to require disclosure of revenue sharing payments paid to plan service providers.[18]  The Working Group's Report further noted that, although the DOL provides a worksheet for analyzing fees of 401(k) plan service providers, "it does not attempt to capture . . . revenue sharing streams."  Id. at 8 (emphasis added).

---

[16]    See Annual Reporting and Disclosure, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. part 2520).

[17]    The DOL's construction of ERISA as described in its regulations controls unless and until the new regulations are adopted.  See Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 917 (8th Cir. 1994) (ERISA's prudent person standard "is a test of how the fiduciary acted viewed 'from the perspective of the time of the [challenged] decision rather than from the vantage point of hindsight.'") (quoting Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir. 1984)).  See also United States v. Clark, 454 U.S. 555, 562-63 (1982) (holding that where Congress notes in committee report that proposed revisions are intended to rectify shortcoming in current statute, then current statute should be understood to include shortcoming).

[18]    See Advisory Council on Employee Welfare and Pension Benefit Plans, Report of the Working Group on Plan Fees and Reporting on Form 5500 (Nov. 11, 2004), available at http://www.dol.gov/ebsa/pdf/ac_111804_report.pdf.

Plaintiffs allege neither a failure to satisfy the express statutory provisions nor, perhaps more importantly, a violation of the corresponding regulatory disclosure obligations, not surprising given their prior admission that ABB satisfied all of the specific disclosure standards relevant to the task at hand. Satisfaction of the regulatory standard precludes a finding of a breach of the statutory duty. E.g., Jensen, 38 F.3d at 952 ("The Department of Labor, which is responsible for interpreting and enforcing ERISA, has promulgated detailed regulations specifying the disclosure requirements for SPDs. Nowhere do these regulations require that a welfare plan SPD specifically disclose that its benefits are not vested . . . . Given the importance of this issue and the Department's thorough approach to questions of disclosure, its failure to require SPDs to disclose non-vesting cannot be an inadvertent omission.") (emphasis added).[19]

There is no claim that ABB failed to file any necessary reports with the DOL or failed to disclose to Plan participants any of the information required to be disclosed under the current statutory and regulatory regime. Plaintiffs' invitation to augment the precise disclosure regime now in place based upon the general prudence requirements must be refused, consistent with both Jensen and Deere. ABB's satisfaction of the statutory and regulatory disclosure requirements compels dismissal of the misrepresentation claims as well as any imprudence claims, as next explained.

---

[19]    See also Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 102 (2d Cir. 2005) ("[Defendant] has no duty to disclose to plan participants information additional to that required by ERISA."); Ehlmann v. Kaiser Found. Health Plan of Texas, 198 F.3d 552, 555 (5th Cir. 2000); Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998); Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 146-47 (2d Cir. 1997).

13

**C.** **Because ABB Satisfied Both the Statutory and Regulatory Disclosure Requirements, ERISA Section 404(c) Again Compels Dismissal of Plaintiffs' Suit, or, in the Alternative, Summary Judgment in ABB's Favor.**

Plaintiffs necessarily concede that they were given all of the required information, including the expense ratios setting forth the bulk of the fees and expenses charged against their investments. Considered next to the array of investments available to them at widely varying prices and the indisputable fact that Plaintiffs alone direct their investments, immediate dismissal is required.[20]

**1.** **There Can Be No Finding Of A Fiduciary Breach.**

Plaintiffs were given all that is required under the statute and the DOL's regulations on disclosure of fees and expenses and they direct how their savings are invested. ERISA section 404(c), in turn, absolves fiduciaries from "any loss . . . by reason of any breach," upon a finding of participant "control." 29 U.S.C. § 1104(c).[21] To

---

[20]   Parenthetically, whether the Court now considers 404(c) is immaterial to the task at hand mindful that Plaintiffs have not adequately pled causation in these unique circumstances. As noted, two threshold issues are not disputed. First, Plaintiffs were provided all the information required on fees and expenses. Second, they control their investments by selecting among a variety of options at widely varying prices and, equally importantly, by voluntarily electing to participate in the Plan. That said, Plaintiffs' selection of the pricier investment options over the low-cost alternatives precludes a finding that Defendants caused the claimed losses, a requisite to a finding of liability, and Plaintiffs make no allegations to the contrary. See 29 U.S.C. §§ 1132(a)(2) and 1109(a) (liability imposed under ERISA section 502(a)(2) only for losses "resulting from" claimed breach). See also Jenkins v. Yager, 444 F.3d 916, 924 (7th Cir. 2006) ("Although section 404(c) and its accompanying regulationi . . . create a safe harbor for a trustee, we see no evidence that these provisions necessarily are the only means possible by which a trustee can escape liability for participant directed plans.").

[21]   See also Deere, 2007 WL 1874367, at 7; Langbecker v. Elec. Data Sys. Corp., No. 04-41760, 2007 WL 117465, at * 8 (5th Cir. Jan. 18, 2007) ("A plan fiduciary may have violated the duties of selection and monitoring of a plan investment, but § 404(c) recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options."); In re Unisys Sav. Plan

(continued)

14

exercise such control, Plan participants must be given the "opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives under the plan," including "a description of any transaction fees and expenses which affect the participant's or beneficiary's account balance." 29 C.F.R. §§ 2550.404c-1(b)(2)(i)(B); 2550.404c-1(b)(2)(i)(B)(1)(v). Finally, participants must be provided with "[a] description of the annual operating expenses of each designated investment alternative . . . which reduce the rate of return to participants and beneficiaries." 29 C.F.R. § 29 C.F.R. 2550.404c-1(b)(2)(i)(B)(2)(i). Again, it is beyond dispute that ABB discharged these duties.

Next, as the indisputably authentic Plan documents make certain, Plaintiffs have available to them a wide array of investment alternatives to which they may direct their retirement savings, and that array includes investment options similar to and indeed cheaper than the investments before the Court in Deere. Of particular importance to this Motion are four funds available to Plaintiffs and managed by BGI. The BGI Equity Index Fund, which affords participants the opportunity to track equity investments included in the S&P 500, has an expense ratio of .03%, or three one-hundredths of a percent. Ex. C at 2. The remaining BGI funds invest in stocks and bonds that make up the Morgan Stanley Capital International EAFE Index, Lehman Brothers Aggregate Bond Index and Dow Jones Wilshire 4500 Completion Index, and have expense ratios of

Litig., 73 F.3d 420, 445 (3d Cir. 1996) ("[T]he statute's unqualified instruction that a fiduciary is excused from liability for 'any loss' which 'results from [a] participant's or [a] beneficiary's exercise of control' clearly indicates that a fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated.").

0.10%, or one-tenth of a percent.  Ex. D at 2; Ex. E at 2; Ex. F at 2.[22]  The BGI funds are precisely the sort of investment vehicle Plaintiffs maintain should have been included in the Plan's array of investments, further requiring the entry of judgment in Defendants' favor.  See supra at 11 n.15.  The availability of these extraordinarily low-cost funds, particularly the BGI Equity Index Fund at three "basis points" or .03%, coupled again with the satisfactory disclosures and Plaintiffs' voluntary participation and responsibility to direct their investments, immediately compels the entry of judgment in favor of Defendants.

As Judge Shabaz explained in Deere,

> [t]he expense ratios among the twenty primary funds ranges from just over 1% to as low as .07% . . .  The only possible conclusion is that to the extent participants incurred excessive expenses, those losses were the result of participants exercising control over their investments within the meaning of the safe harbor provision.

Deere, 2007 WL 1874367 at *8 (emphasis added).

Plaintiffs could have directed their investments into these low-cost investment options, yet chose not to.  ERISA section 404(c) compels dismissal of this lawsuit.  Deere; Langbecker; Unisys.

## IV.    CONCLUSION

For the foregoing reasons, the ABB Defendants respectfully request that the Amended Complaint be dismissed, or, in the alternative, that summary judgment be granted to ABB.

---

[22]    To the extent that Plaintiffs premise their claims on any allegation that the Plans included what they maintain are more expensive "retail mutual funds," Compl. ¶ 42, Plaintiffs' claims likewise must fail pursuant to 404(c), because Plaintiffs had the opportunity to direct their investments.  A discussion of retail and institutional mutual funds can be found in the GAO report at http://www.gao.gov/new.items/d0721.pdf, at *11.

16

Respectfully submitted,

/s/ William J. Delany
Thomas E. Wack
Jeffrey S. Russell
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
twack@bryancave.com
jrussell@bryancave.com

William J. Delany
Catherine A. Cugell
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5150
Facsimile: (215) 963-5001
bortelere@morganlewis.com
wdelany@morganlewis.com
ccugell@morganlewis.com
*admitted pro hac vice*

Attorneys for Defendants ABB Inc., John
W. Cutler, Jr., Pension Review Committee
of ABB Inc., Pension & Thrift Management
Group of ABB Inc., and the Employee
Dated: August 3, 2007             Benefits Committee of ABB Inc.

17