UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

MARGARET KENNEDY, et al.,

               Plaintiffs,

v.

ABB, INC., et al.,

               Defendants.

CIVIL ACTION
No. 06-CV-04305

(Judge Nanette K. Laughrey)

**SUGGESTIONS IN SUPPORT OF FIDELITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
FOR BREACH OF FIDUCIARY DUTY**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ALLEGATIONS ....................................................................... 2

ARGUMENT ....................................................................................................... 4

    I.      Standard of Review ................................................................................ 4

    II.     The Complaint Should Be Dismissed in its Entirety Because Plaintiffs Have Failed to Allege Sufficient Facts to Support an ERISA Claim that Fees Were "Excessive" and "Unreasonable." ......................................... 5

    III.   Count I Should Be Dismissed Because the Fidelity Defendants Have No Fiduciary Status Relevant to Plaintiffs' Claims. ..................................... 8

           A.     The Claims Against FMRCo Should be Dismissed Since FMRCo is Not a Fiduciary to the ABB Plans. ......................................... 8

           B.     Count I Should be Dismissed Against FMTC Since FMTC is Not a Fiduciary as to the Challenged Conduct. .................................. 12

    IV.   Count II Is Similarly Defective and Also Seeks Relief That is Unavailable Under ERISA § 502(a)(3). ..................................................................... 19

           A.     Count II Should be Dismissed on the Similar Grounds as Count I. ........ 19

           B.     Count II Should be Dismissed Since it Does Not Seek "Appropriate Equitable Relief" Authorized by ERISA. .......................... 19

CONCLUSION .................................................................................................... 25

Case 2:06-cv-04305-NKL   Document 103   Filed 08/03/07   Page 2 of 32

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec.*,
964 F. Supp. 147 (S.D.N.Y. 1997) ............................................................. 9

*Alvary v. United States*,
302 F.2d 790 (2d Cir. 1962) ..................................................................... 6

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955, 1964-65 (2007) ................................................. 2, 5, 7, 18

*Calhoon v. TWA*,
400 F.3d 593 (8th Cir. 2005) .................................................................. 24

*Carpenter Outdoor Adver. Co. v. City of Fenton*,
251 F.3d 686 (8th Cir. 2001) .................................................................... 4

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) .................................................................. 11

*Corbett v. Marsh & McLennan Cos.*,
No. MDL-15863, 2006 WL 734560 (D. Md. Feb. 27, 2006) .................... 9

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995).......................................................................... 16, 17

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984)............................................................................... 23

*Eckelkamp v. Beste*,
201 F. Supp. 2d 1012 (E.D. Mo.) ........................................................... 12

*Ehlmann v. Kaiser Found. Health Plan*,
198 F.3d 552 (5th Cir. 2000) ............................................................ 17, 21

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) .................................................................. 18

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)......................................................................... 23, 24

*Greeley v. Fairview Health Servs.*,
479 F.3d 612 (8th Cir. 2007) .................................................................. 18

*Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*,
298 F.3d 136 (2nd Cir. 2002) ................................................................... 3

*Hecker v. Deere & Co.*,
__ F. Supp. 2d __, No. 06-C-719, 2007 U.S. Dist. LEXIS 45275 (W.D. Wis. June 20, 2007)
....................................................................................................... passim

*Herman v Mercantile Bank*,
  143 F.3d 419 (8th Cir. 1998) ............................................................... 5, 6

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
  434 F. Supp. 2d 233 (S.D.N.Y. 2006) .................................................. 18, 22

*In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*,
  No. 03 Civ. 8208(RO), 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. Apr. 18, 2006)....... 18, 21, 22

*Jensen v. SIPCO, Inc.*,
  38 F.3d 945 (8th Cir. 1994) ............................................................... 17, 21

*Johnston v. Paul Revere Life Ins. Co.*,
  241 F.3d 623 (8th Cir. 2001) ............................................................... 12

*Kalda v. Sioux Valley Physician Partners, Inc.*,
  481 F.3d 639 (8th Cir. 2007) ............................................................... 17

*Kalda v. Sioux Valley Physician Ptnrs., Inc.*,
  394 F. Supp. 2d 1107 (D.S.D. 2005) ..................................................... 14

*Kerr v. Charles F. Vatterott & Co.*,
  184 F.3d 938 (8th Cir. 1999) ............................................................... 20

*Knieriem v. Group Health Plan, Inc.*,
  434 F.3d 1058 (8th Cir.) ..................................................................... 23

*Kushner v. Beverly Enters., Inc.*,
  317 F.3d 820 (8th Cir. 2003) ............................................................... 3

*Maniace v. Commerce Bank, N.A.*,
  40 F.3d 264 (8th Cir. 1994) ............................................................... 12, 15

*Mattes v. ABC Plastics, Inc.*
  323 F.3d 695 (8th Cir. 2003) ............................................................... 3

*McLaughlin v. Bendersky*,
  705 F. Supp. 417 (N.D. Ill. 1989) ......................................................... 6

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993)........................................................................ 8, 20

*Moses.com Sec., Inc. v. Comprehensive Software Sys.*,
  406 F.3d 1052 (8th Cir. 2005) ............................................................. 4

*Pappas v. Buck Consultants, Inc.*,
  923 F.2d 531 (7th Cir. 1991) ............................................................... 15

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)........................................................................ 12, 14

*Rhodes v. Amoco Oil Co.*,
  143 F.3d 1369 (10th Cir. 1998) ............................................................ 6

*Romine v. Acxiom Corp.*,
  296 F.3d 701 (8th Cir. 2002) .................................................................................. 5

*Schloegel v. Boswell*,
  994 F.2d 266 (5th Cir. 1993) ................................................................................ 15

*Schulist v. Blue Cross of Iowa*,
  717 F.2d 1127 (7th Cir. 1983) ............................................................................. 14

*Seaway Food Town, Inc. v. Med. Mut. of Ohio*,
  347 F.3d 610 (6th Cir. 2003) ............................................................................... 14

*Unaka Co., Inc. v. Newman*,
  No. 2:99-CV-267, 2005 WL 1118065  (E.D. Tenn. Apr. 26, 2005).......................... 6

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)............................................................................................. 20

**Statutes**

15 U.S.C. § 77a, *et seq.*.......................................................................................... 21

15 U.S.C. § 77aa ...................................................................................................... 21

15 U.S.C. § 78a, *et seq.*.......................................................................................... 21

15 U.S.C. § 78l ......................................................................................................... 21

15 U.S.C. § 80a-1, *et seq.* ....................................................................................... 21

15 U.S.C. § 80a-29(e) .............................................................................................. 21

15 U.S.C. § 80a-35(b) .............................................................................................. 23

15 U.S.C. § 80a-8(b) .......................................................................................... 21, 23

15 U.S.C. § 80a-8(b)(5) ........................................................................................... 21

15 U.S.C. § 80b-1, *et seq.* ....................................................................................... 21

26 U.S.C. § 401(k) ..................................................................................................... 3

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)...................................................... 8, 12

ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B) .......................................................... 9

ERISA § 3(34), 29 U.S.C. § 1002(34).................................................................... 2

ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1)........................................................... 9

ERISA § 403(a), 29 U.S.C. 1003(a) ..................................................................... 12

ERISA § 409, 29 U.S.C. § 1109 ............................................................................. 8

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) .......................................................... 8

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ................................................... 2, 8, 19

## TABLE OF AUTHORITIES
(continued)

**Page**

ERISA §§ 101-11, 29 U.S.C. §§ 1021-31 .............................................................. 16, 21

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 2, 4

**Other Authorities**

17 C.F.R. § 270.30e-1 ................................................................................................... 22

29 C.F.R. §§ 2520.101-1, *et seq.* ......................................................................... 16, 21

153 Cong. Rec. D270 (daily ed. Mar. 6, 2007)........................................................ 17

72 Fed. Reg. 20,457 ...................................................................................................... 17

*2007 Investment Company Institute Fact Book* at 76 (available at
    www.icifactbook.org/fb_sec7.html (last visited July 20, 2007)................................. 7

Employee Benefits Security Admin., Department of Labor, 401(k) Fiduciary Education
    Campaign, http://www.dol.gov/ebsa/fiduciaryeducation.html (follow "401(k) Plan Fee
    Disclosure Tool" hyperlink) (last visited Jul. 24, 2007) ............................................. 6

Defendants Fidelity Management & Research Company ("FMRCo") and Fidelity Management Trust Company ("FMTC") (collectively the "Fidelity Defendants") respectfully submit these suggestions in support of their Motion to Dismiss Plaintiffs' Amended Complaint for Breach of Fiduciary Duty, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This is one of fourteen nearly identical lawsuits brought within the past year by the same law firm under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). All of the suits accuse large companies of breaching their ERISA fiduciary duties in operating 401(k) retirement savings plans for their employees. This case, like two others involving different plans, also names as defendants affiliates of Fidelity Investments ("Fidelity"), which provide plan trustee and recordkeeping services and offer mutual funds that are investment options for the Personal Retirement Investment and Savings Management Plan for Employees of ABB Inc. (the "PRISM Plan") and the Personal Retirement Investment and Savings Management Plan for Certain Represented Employees of ABB Inc. (the "RepPRISM Plan") (collectively, the "ABB Plans" or "Plans").

On June 20, 2007, the United States District Court for the Western District of Wisconsin dismissed with prejudice the only case decided so far naming FMTC and FMRCo as defendants, holding not only that plaintiffs had failed to state a substantive claim against any defendant but also that plaintiffs could not maintain fiduciary duty claims against the Fidelity Defendants because neither was a fiduciary with respect to the challenged conduct. *Hecker v. Deere & Co.,* __ F. Supp. 2d __, No. 06-C-719, 2007 U.S. Dist. LEXIS 45275 (W.D. Wis. June 20, 2007). In response, plaintiffs here filed their Amended Complaint for Breach of Fiduciary Duty ("Complaint" or "Compl."), obviously designed to create the impression that their claims differ from those dismissed in *Hecker*.

Case 2:06-cv-04305-NKL   Document 103   Filed 08/03/07   Page 7 of 32

Nevertheless, plaintiffs' amended allegations differ only superficially from the earlier set, and do nothing to repair the multiple insufficiencies of their claims against the Fidelity Defendants, which provide independent bases for dismissal. First, while plaintiffs ground their claims in repeated assertions that the Plans paid "excessive" and "unreasonable" fees, they fail to support those conclusory assertions with factual allegations sufficient to meet their pleading obligations under the standard recently announced by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Second, as the district court recognized in *Hecker*, the Fidelity Defendants are not fiduciaries with respect to the conduct alleged in the Complaint and thus cannot be held to have breached fiduciary duties under ERISA. 2007 U.S. Dist. LEXIS 45275 at *21-22 (dismissing all claims with prejudice). Finally, to the extent plaintiffs attempt to repackage their claims as seeking "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the relief sought is neither "appropriate" nor "equitable" as the Supreme Court has interpreted § 502(a)(3). Therefore, under Fed. R. Civ. P. 12(b)(6), the Court should grant the Fidelity Defendants' motion to dismiss.

## BACKGROUND ALLEGATIONS

Plaintiffs Charles Fisher, Ron Tussey, Timothy Herndron, and Timothy Pinnell purport to bring this action as a class action on behalf of current, former and future participants and beneficiaries in the Plans. (Compl. ¶ 29.)

The Plans are "defined contribution" or "individual account" plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). (Compl. ¶ 32.) ABB, Inc. ("ABB") is the Plans' sponsor; the Employee Benefits Committee of ABB ("Benefits Committee") is their administrator; and the Pension Review Committee of ABB ("Pension Review Committee") is their "named

Case 2:06-cv-04305-NKL   Document 103   Filed 08/03/07   Page 8 of 32

fiduciary for the investment of Plan assets." (*Id.* ¶¶ 7, 9-10.)[1] The Plans are "401(k) plans,"

meaning that they are designed to comply with § 401(k) of the Internal Revenue Code, 26 U.S.C.

§ 401(k). (*Id.* ¶ 32.) The Plans allow participants to direct that contributions to their respective

Plan accounts be invested in over twenty different investment options. (*Id.* ¶ 35.)

      In 1995, ABB entered into a Trust Agreement with FMTC under which FMTC agreed to

provide certain services to the PRISM Plan, including trustee and recordkeeping services,

pursuant to a fee schedule. (*Id.* ¶¶ 13-14; Trust Agreement Between Asea Brown Boveri Inc.

And Fidelity Management Trust Company: Personal Retirement Investment and Savings

Management Plan for Employees of Asea Brown Boveri Inc. Trust (the "Trust Agreement"),

attached as Ex. 1, and Schedule B.)[2] The Trust Agreement was amended effective September 1,

1996 to also encompass the RepPRISM Plan. (Trust Agreement, Second Amendment.)

      The Trust Agreement specified that the investment options under the Plans would be

selected from among the following: (1) mutual funds advised by FMRCo; (2) mutual funds not

advised by FMRCo ("Non-Fidelity Mutual Funds"); (3) common stock of Westinghouse, Inc.;

(4) guaranteed investment contracts chosen by FMTC; (5) guaranteed investment contracts

---

[1]     ABB, the Benefits Committee, the Pension Review Committee, as well as John W. Cutler, Jr. and the
Pension & Thrift Management Group are referred to herein collectively as the "ABB Defendants."

[2]     Although plaintiffs have sought through their Amended Complaint to obscure their reliance on the Trust
Agreement by removing several express references to it from their original allegations, a comparison of plaintiff's
current allegations to the terms of the Trust Agreement nonetheless reveals that a number of those allegations derive
from that document. For example, plaintiffs' claims against FMTC rely heavily on allegations similar to the
allegation in paragraph 16 that "ABB and FMTC agreed that ABB would limit its selection" of investment options
to Fidelity mutual funds, "non-Fidelity funds to which FMTC agrees", and "certain pre-existing guaranteed
investment contracts[.]" (*See also* Compl. ¶¶ 34-35, 49.) Plaintiffs cite that agreement as a basis for FMTC's
fiduciary status and claim the agreement allowed FMTC to receive the allegedly excessive fees challenged in the
Complaint. (Compl. ¶¶ 16, 34-35, 49.) While the Fidelity Defendants believe that plaintiffs mischaracterize ABB
and FMTC's agreement, the agreement referenced by plaintiffs is unquestionably the Trust Agreement. (Trust
Agreement § 5(b).) Thus, because the Complaint references and centrally relies upon the Trust Agreement's terms,
the Court may consider that agreement without converting this motion into a motion for summary judgment. *Mattes
v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003), *citing Kushner v. Beverly Enters.*, Inc., 317 F.3d 820,
831 (8th Cir. 2003). *See also Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*, 298 F.3d 136,
140 (2nd Cir. 2002) (considering documents "whose terms and effect are relied upon by the plaintiff in drafting the
complaint"); *Hecker*, 2007 U.S. Dist. LEXIS 45275 at *8 (considering documents where "[a]lthough many of the
allegations are derived from the documents, they have not been attached to the complaint in an apparent effort to
evade assessment of the legal merits of the claims on a motion to dismiss.").

previously entered into by ABB and the predecessor trustee; and (6) collective investment funds managed by FMTC; and (7) an outside managed GIC Fund, known as the "Income Fund." (Compl. ¶ 16; Trust Agreement § 4(b).) The Trust Agreement has subsequently been amended to permit other investment options. (*See, e.g.*, Trust Agreement, Twelfth Amendment.)

The Pension Review Committee has final authority under the Trust Agreements to direct FMTC as to which of the investment options are to be provided to Plan participants. (Compl. ¶ 34; Trust Agreement § 4(b).) The Pension Review Committee's initial direction as to which specific investment options to provide to the Plan participants is attached to the Trust Agreement. (*See,* Trust Agreement, Schedule C.) Those investment options have been modified on various occasions through formal amendments to the Trust Agreement and Schedule C. (*See, e.g.*, Trust Agreement, Seventh, Twelfth, and Fourteenth Amendments.)

The Plan offers participants over twenty different investment options. (Compl. ¶ 35.) Those investment options included several mutual funds advised by FMRCo, as well as over a dozen non-Fidelity investment products, including non-Fidelity mutual funds and collective investment trusts. (Compl. ¶ 36; Trust Agreement, Schedule C and Seventh, Twelfth, Thirteenth, Fourteenth, Sixteenth, and Eighteenth Amendments.)

## ARGUMENT

### I.      Standard of Review.

Dismissal under Rule 12(b)(6) is appropriate if plaintiffs fail to allege facts that would support their claims. *See, e.g., Carpenter Outdoor Adver. Co. v. City of Fenton*, 251 F.3d 686, 689-90 (8th Cir. 2001) (affirming dismissal where plaintiff failed to allege required elements of First Amendment claims). Although the Court will accept well-pleaded facts as true, plaintiffs must still allege facts, not just "conclusory legal accusations." *Moses.com Sec., Inc. v. Comprehensive Software Sys*., 406 F.3d 1052, 1063 (8th Cir. 2005) (affirming dismissal where

the facts in the complaint did not adequately show that the alleged torts occurred). Indeed, as the Supreme Court recently held in *Twombly*, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S.Ct. at 1964-65 (citation omitted). Dismissal is also appropriate if the facts in the complaint contradict each other, or if the complaint refers to documents that refute those facts. *See Romine v. Acxiom Corp.*, 296 F.3d 701, 705-06 (8th Cir. 2002) (affirming dismissal where plaintiffs claimed that defendant violated GAAP accounting, but SEC filings referenced in the complaint showed GAAP compliance).

**II.    The Complaint Should Be Dismissed in its Entirety Because Plaintiffs Have Failed to Allege Sufficient Facts to Support an ERISA Claim that Fees Were "Excessive" and "Unreasonable."**

As a threshold matter, the Complaint fails the requirement, recently announced by the Supreme Court in *Twombly*, that plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974. The core claims asserted by plaintiffs are all grounded in the assertion that fees borne by the Plans are excessive, due to the inclusion of actively-managed investment products and retail mutual funds in the Plans' investment lineup and allegedly undisclosed "revenue sharing payments" to plan service providers generated from those investment products. (Compl. ¶¶ 42-67.) But the allegations of excessiveness and nondisclosure are mere "labels and conclusions[.]" *Twombly*, 127 S. Ct. at 1965.

Under Eighth Circuit law, the imprudence of an investment decision cannot be established under ERISA without proof that a "hypothetical prudent fiduciary" would not have made the same decision. *Herman v Mercantile Bank*, 143 F.3d 419, 421 (8th Cir. 1998). In *Herman*, the Court applied that test to hold that a stock purchase could not be deemed imprudent if the fiduciary paid a reasonable price. *Id.* at 422. The Court was careful to note that a reasonable price for this purpose was not the very lowest price available on the market, but rather

simply one that "a prudent fiduciary…would have paid."  *Id.* ("the District Court did not need to find that [the fiduciary] bought the stock for exactly, to the penny, its fair market value").[3]  This approach is particularly applicable in the context of 401(k) plan services, where, as the Department of Labor ("DOL") has noted, factors such as the quality and nature of the services and products provided can be as important, if not more important, than price.[4]

Against this legal standard, plaintiffs' conclusory assertion that the Plans' fiduciaries caused the payment of "excessive" and "unreasonable" fees (Compl. ¶¶ 2, 42, 48, 69, 73) does not state a claim of imprudence.  Under *Twombly* and Eighth Circuit ERISA standards, merely pinning the "labels and conclusions" of excessiveness and unreasonableness on the fees charged under the Plans is insufficient to survive dismissal.  Rather, plaintiffs must allege facts that plausibly suggest that the fees paid by the Plans fall outside the range of fees that a hypothetical prudent fiduciary would pay as consideration for the array of services Fidelity provides.[5]  Plaintiffs here have failed to do so.  Their Complaint states only that there are cheaper investment options available in the marketplace (such as non-mutual fund investments that are

---

[3]  The Eighth Circuit's recognition that there is a range of reasonable values for a product or service is consistent with the recognition by courts in a variety of contexts that "fair market value" is itself an inexact concept.  *See, e.g., Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1372 (10th Cir. 1998) ("There is no universally infallible index of fair market value.  There may be a range of prices with reasonable claims to being fair market value.") (quotation and citation omitted); *Alvary v. United States*, 302 F.2d 790, 795 (2d Cir. 1962) (recognizing the "inherent inexactness of the concept of fair market value"); *Unaka Co., Inc. v. Newman*, No. 2:99-CV-267, 2005 WL 1118065, at *28 (E.D. Tenn. Apr. 26, 2005) ("Fair market value of an asset will ordinarily be identified by a range of valuations, rather than a specific, set figure; therefore, the valuation assigned to an asset must reflect a figure within an acceptable range of valuations for that asset.").

[4]  *See* Employee Benefits Security Admin., Department of Labor, 401(k) Fiduciary Education Campaign, http://www.dol.gov/ebsa/fiduciaryeducation.html (follow "401(k) Plan Fee Disclosure Tool" hyperlink) (last visited Jul. 24, 2007) ("Selecting a service provider requires that you evaluate and differentiate services offered by competing companies. Cost is one of the criteria, but not the only criterion, for making this evaluation. Other factors of equal or greater importance to consider include the quality and type of services provided, the anticipated performance of competing providers and their investment products and other factors specific to your plan's needs. *The service provider offering the lowest cost services is not necessarily the best choice for your plan*.") (emphasis in original).

[5]  Among the other flaws in plaintiffs' bald assertions of "excessive" and "unreasonable" fees is that those allegations are wholly untied to any assessment of the quality or nature of the products and services that the Plans' received in return for the fees paid.  *See McLaughlin v. Bendersky*, 705 F. Supp. 417, 420 (N.D. Ill. 1989) ("what is relevant in determining the reasonableness of [a service contract] is the amount [the service provider] charges the fund, and the quality of the services it provides . . .").

passively managed), and that, because of their size, the Plans should be able to use their "leverage" to obtain such lower-cost investment options. (*Id.* ¶ 59.) Plaintiffs do not allege that prudent fiduciaries at other 401(k) plans of like size *have not* obtained investment options with the same or similar fees, or that such fiduciaries have *systematically avoided* retail mutual funds and actively managed investment products. They do not make such allegations because they cannot, as it is common knowledge that retail mutual funds represent the predominant investment options in 401(k) plans today. (*See 2007 Investment Company Institute Fact Book* at 76 (available at www.icifactbook.org/fb_sec7.html (last visited July 20, 2007) (at year-end 2006, 55% of 401(k) assets were held in mutual funds).) In light of the pleading standard recognized by the Supreme Court in *Twombly*, plaintiffs' allegations simply do not state a claim.

Similarly insufficient are plaintiffs' allegations about allegedly undisclosed "revenue sharing payments." Even crediting those allegations fully, they fail *Twombly*'s requirement that allegations be "factually suggestive" of illegal activity or, in this case, of a breach of duty under ERISA. *See Twombly*, 127 S.Ct. 1971-73 (noting that allegations are insufficient under Rule 12(b)(6) when they could be equally suggestive of a lawful purpose). Plaintiffs' factual allegations merely describe the *manner* in which plan service providers are compensated. They do not address the *amounts* that service providers are paid and thus do not support plaintiffs' wholly conclusory allegations that those amounts are "excessive." Accordingly, the mere allegation that there are "revenue sharing payments" does nothing to show that the Plans' fees are unreasonable, much less suggest that a similarly situated hypothetical prudent fiduciary would not have decided to offer the investment options to which these fees relate.

Thus, even before reaching the independent grounds for dismissal of claims against the Fidelity Defendants set forth below, this Complaint warrants dismissal because the central

premise underlying each claim—the supposed "excessiveness" of fees—is unsupported by sufficient factual allegations to meet the *Twombly* standard.

### III. Count I Should Be Dismissed Because the Fidelity Defendants Have No Fiduciary Status Relevant to Plaintiffs' Claims.

Count I of the Complaint is asserted against all defendants under ERISA § 502(a)(2), which authorizes suit to obtain broad remedies provided by ERISA § 409(a), 29 U.S.C. § 1109(a), for breaches of fiduciary duties. In dismissing a comparable claim by the same plaintiffs' counsel against the same Fidelity entities that were performing the same functions, the district court in *Hecker* held that the Fidelity Defendants could not be liable for breaches of ERISA fiduciary duty because they were not fiduciaries with respect to the conduct alleged in the plaintiffs' complaint. 2007 U.S. Dist. LEXIS 45275, at *21-22. Plaintiffs here have similarly failed to adequately allege relevant fiduciary authority by the Fidelity Defendants, and Count I should therefore be dismissed.

### A. The Claims Against FMRCo Should be Dismissed Since FMRCo is Not a Fiduciary to the ABB Plans.

Section 502(a)(2) authorizes actions for "appropriate relief under section 409[,]" which, in turn, provides:

> Any person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits *of such fiduciary* which have been made through use of assets of the plan *by the fiduciary*, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . . (Emphasis added.)

A claim under § 502(a)(2) may only be asserted against a fiduciary to an ERISA plan. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53 (1993).

Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a fiduciary of a plan:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control

-8-

respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

FMRCo does not meet that definition and thus is not a fiduciary subject to suit under § 502(a)(2).

The Complaint asserts that FMRCo is an investment adviser to the Fidelity mutual funds that comprise "approximately half" of the investment options available to participants in the Plans. (Compl. ¶¶ 20, 36.) As a matter of law, an investment adviser to a mutual fund is not a fiduciary to an ERISA plan that invests in the mutual fund. *See* ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B) ("If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940, such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or party in interest . . .".). That conclusion derives from ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1), which provides that when an ERISA plan invests in a security issued by a mutual fund, or "investment company," "the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company." Based on that clear statutory language, courts have uniformly dismissed ERISA claims seeking to impose fiduciary liability on advisers to mutual funds. *See, e.g.*, *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec.,* 964 F. Supp. 147, 149 (S.D.N.Y. 1997); *Corbett v. Marsh & McLennan Cos.*, No. MDL-15863, 2006 WL 734560, at *2 (D. Md. Feb. 27, 2006).

Seeking to avoid the fatal impact on their claims of § 3(21)(B) and § 401(b)(1), plaintiffs allege two bases for the fiduciary status of FMRCo. First, ¶ 18 of the Complaint alleges that FMRCo "exercises discretion in the selection of the investment options that the Plan[s] make[] available to participants." This assertion, however, contradicts ¶ 10, which identifies the Pension

Review Committee as the "named fiduciary for the investment of Plan assets" and the Trust Agreement, which expressly grants the Pension Review Committee as "Named Fiduciary" ultimate authority to direct FMTC as to "the investment options in which Plan participants may invest[.]" (Trust Agreement § 4(b).) Moreover, FMRCo is not a party to the Trust Agreement, and nothing in that agreement gives FMRCo any role in selecting investment options. In short, both plaintiffs' own Complaint and the Trust Agreement it references establish that FMRCo has no responsibility for ABB's selection of the Plans' investment options, much less the discretionary responsibility for selection that is essential to fiduciary status. *Hecker*, 2007 U.S. Dist. LEXIS 45275, at *21-22 (holding that FMRCo was not a fiduciary "for the purposes of making plan investment decisions").

Second, plaintiffs attempt to pin fiduciary status on FMRCo by asserting in ¶ 19 that FMRCo "exercises discretion over Plan assets when it determines how much the Plan will pay to Fidelity affiliates, like FMTC, for administrative and other services with soft dollars collected as part of Fidelity's undisclosed revenue sharing program." Plaintiffs further allege in ¶ 20 that FMRCo "charges participants for the ostensible purpose of operating each investment Fund and managing its assets, but in actuality also assesses fees against participants' accounts to provide 'soft dollars' to support Fidelity's Revenue Sharing program." This attempt to establish fiduciary status fails because, with respect to the mutual funds managed by FMRCo, the assets plaintiffs contend were subject to "Revenue Sharing" are not plan assets. The Complaint makes clear that under the "Revenue Sharing arrangements" alleged, the "Revenue Sharing" amounts are initially assessed by individual "Funds" as part of those Funds' expense ratios before being transferred to Plan service providers. (*Id*. ¶¶ 44-46.) ERISA § 401(b) expressly provides that the assets of a mutual fund in which an ERISA plan invests are not plan assets.

*A fortiori*, the payments that FMRCo receives as fees from the mutual fund assets are also not plan assets. Rather, such payments become revenues and assets of FMRCo. Recently, the Seventh Circuit recognized this critical distinction in its decision in *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007). *Caremark* involved an ERISA plan that contracted with a pharmaceutical benefit management company (PBM) to run its prescription drug program. *Id.* at 466. The contract required the PBM to pay the plan rebates, pursuant to a fixed schedule, on prescription drugs obtained from drug manufacturers. *Id.* at 468-69. The plaintiff alleged that the PBM breached fiduciary duties to the plan by retaining rebates from drug manufacturers that were greater than the rebates that the PBM had contracted to remit to the plan. *Id.* In holding that the PBM was not a plan fiduciary, the Seventh Circuit rejected an argument that the PBM controlled "plan assets" when it received rebates based on the purchase of drugs for plan participants. *Id*. at 476 n.6. The Seventh Circuit explained that because the defendant was collecting the rebates for itself rather than on behalf of the plan, it was controlling its "own assets," not "plan assets." *Id.* Likewise, when FMRCo collects fees from the various mutual funds and uses those monies for its own purposes, it is controlling its own assets, not plan assets, and is not acting as an ERISA fiduciary.

Indeed, a contrary holding would make nonsense of ERISA's statutory scheme. As discussed above, § 3(21)(B) expressly provides that investment advisers to mutual funds are not ERISA fiduciaries to plans that invest in those funds. This clear boundary would be erased if mutual fund advisers nonetheless become fiduciaries by accepting payment for their services to the mutual funds. ERISA should be read to prohibit, not create, such an absurd result. Since FMRCo is not a fiduciary, Count I should be dismissed against it.

**B.**     **Count I Should be Dismissed Against FMTC Since FMTC is Not a Fiduciary as to the Challenged Conduct.**

Unlike FMRCo, FMTC does have limited fiduciary functions under the Trust Agreement, but those functions do not involve the conduct challenged in the Complaint. It is well settled that ERISA makes a person a fiduciary only "to the extent" that person performs fiduciary functions. ERISA § 3(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *Hecker,* 2007 U.S. Dist. LEXIS 45275, at *21-22. Thus, someone who becomes a plan fiduciary as to one function is not a fiduciary with respect to other functions under the plan. *Pegram*, 530 U.S. at 225-26; *Maniace v. Commerce Bank, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) (holding that a plan trustee is not necessarily a fiduciary for all plan purposes); *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1022 (E.D. Mo.) (citing *Maniace* for the proposition that a court must "inquire as to whether a person is a fiduciary with respect to the particular transaction or conduct at issue"), *aff'd,* 315 F.3d 863 (8th Cir. 2002).

Paragraphs 13 and 14 of the Complaint assert that FMTC is the trustee and record keeper of the Plans but do not tie any claim of fiduciary status to those functions. Although recordkeeping involves plan administration, it does not involve any exercise of the discretion which is the "benchmark for fiduciary status" in plan administration. *Johnston v. Paul Revere Life Ins. Co.,* 241 F.3d 623, 632 (8th Cir. 2001). FMTC's trustee role does impose fiduciary duties but only the "limited" ones of a directed trustee which, under the Trust Agreement, acts only pursuant to proper directions from Benefits Committee (as the Plans' administrator) and the Pension Review Committee (as the Named Fiduciary).[6] ERISA § 403(a); *Maniace*, 40 F.3d at 268 (noting that obligations of a directed trustee are "something less than that owed by typical

---

[6]     FMTC's status as directed trustee is reflected throughout the Trust Agreement. *See, e.g.*, §§ 3(a) (direction as to disbursement of plan assets); 4(b) (direction as to "what investment options…Plan participants may invest [in] . . ."); 4(e)(iii); 7(b) ("Directions from Administrator"); 7(c) ("Directions from Named Fiduciary").

fiduciaries"). Nothing in the Complaint questions or otherwise implicates FMTC's role as directed trustee.

Paragraph 15 asserts that FMTC "manages at least thirteen of the investment options available to Plan participants" under the Plans and thus "is a fiduciary to the Plan[s]." This allegation establishes only that FMTC is a fiduciary with respect to management of certain investment options.[7] The Complaint does not attack management of those options.

Rather, the Complaint focuses on three general forms of conduct that plaintiffs contend constituted breaches of fiduciary duty under ERISA: (1) causing the Plans to imprudently include as investment options retail mutual funds and actively-managed funds; (2) causing the Plans to pay excessive fees to Plan service providers, including fees paid through investment options offered under the Plans; and (3) failing to disclose information relating the fees and expenses associated with the Plans and Plan investment options. (Compl. ¶¶ 42-73.)

### 1. FMTC Is Not a Fiduciary With Respect to Investment Selection.

Plaintiffs apparently attempt to establish FMTC's fiduciary status with respect to both the Plans' inclusion of allegedly imprudent investment options and payment of allegedly excessive fees through their allegation that "FMTC played, and plays, a central role in the selection of the investment options the Plan makes available to participants." (Compl. ¶ 16.) Plaintiffs suggest that by influencing the Plan's selection of investment options, FMTC could affect the amount of so-called "revenue sharing payments" Fidelity received from the investment options selected. Plaintiffs' assertion, however, is inadequate in that any role FMTC may have played in investment selection was not fiduciary in nature.

---

[7]    While the Fidelity Defendants disagree with several of the Complaint's factual allegations—including the inflated number of investment options purportedly managed by FMTC—they accept those allegations as true solely for the purposes of the present Motion.

Plaintiffs contend in part that FMTC played a "central role" in investment selection in that it allegedly agreed with ABB that ABB would limit its selection of Plan investment options to mutual funds advised by FMRCo, "non-Fidelity funds to which FMTC agrees" and "certain pre-existing guaranteed investment contracts (GICs)." (Compl. ¶ 16.) Those limitations, however, are the negotiated terms of the Trust Agreement under which FMTC was retained.

As federal courts have repeatedly held, a party does not act as an ERISA fiduciary in negotiating the terms of its own retention, even if it is being retained to serve in a fiduciary capacity. *See, e.g.*, *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131-32 (7th Cir. 1983) (holding that defendant insurer could not be held liable as a fiduciary for causing the plan to pay it "unreasonable compensation" where compensation was paid according to contracted rates); *Seaway Food Town, Inc. v. Med. Mut. of Ohio,* 347 F.3d 610, 618-19 (6th Cir. 2003) (holding that HMO's adherence to contractual term allowing it to retain funds resulting from provider discounts did not render HMO a fiduciary under ERISA). Thus, any role that FMTC played in negotiating the terms of the Trust Agreement was not a fiduciary role and cannot serve as the basis for fiduciary liability.[8]

Plaintiffs also allege that FMTC had "veto authority" over the inclusion of investment options. (Compl. ¶ 16.) Further allegations in the Complaint indicate that this allegation is in fact a reference to the term of the Trust Agreement providing that the Pension Review Committee could select as investment options only those non-Fidelity mutual funds "as agreed to between the Sponsor and the Trustee[.]" (Compl. ¶¶ 34-35; Trust Agreement § 4(b).) That provision, however, merely gives FMTC a mechanism to avoid being forced, as a business, to

---

[8]        *See Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *Kalda v. Sioux Valley Physician Ptnrs., Inc.,* 394 F. Supp. 2d 1107, 1112 (D.S.D. 2005) (noting that "the [c]ourt must examine whether a plan fiduciary was acting in a fiduciary capacity to determine liability for breach of fiduciary duty"), *aff'd*, 481 F.3d 639 (8th Cir. 2007).

provide or facilitate the inclusion of investment options that are incompatible with Fidelity's systems or inconsistent with its business objectives. The Trust Agreement gives FMTC absolutely no affirmative authority to select investment options. Rather, such authority is expressly provided to the Pension Review Committee as "Named Fiduciary." (Trust Agreement § 4(b).) Moreover, if ABB is dissatisfied with the services Fidelity provides, including the investment options Fidelity is willing to maintain on its systems, ABB has a right to terminate the Trust Agreement at any time upon 60 days notice. (*See* Trust Agreement § 10.)

Finally, the Complaint alleges that FMTC "does the first-cut screening of investment options[.]" (Compl. ¶ 16.) The Complaint does not explain what the term "first-cut screening" is intended to mean, but the Trust Agreement makes clear that FMTC has no authority to dictate what funds are selected for inclusion in the Plans. Thus, any alleged "screening" could serve as nothing more than suggestions to the Pension Review Committee. One does not become a fiduciary by merely providing suggestions on which the plan's existing fiduciaries act. *See Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir. 1993) ("Mere influence over the trustee's investment decisions, however, is not effective control over plan assets."); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (noting that courts have read "the terms 'discretionary authority,' 'discretionary control' and 'discretionary responsibility' . . . as speaking to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises"); *cf. Maniace*, 40 F.3d at 267 ("discretion is the benchmark of fiduciary status under ERISA"). Thus, while plaintiffs may allege that FMTC played a "role" in investment selection, they have not alleged that FMTC played a *fiduciary* role in investment selection. As such, plaintiffs have failed to establish that FMTC has any fiduciary status relating to plaintiffs' claims for either the Plans' investment in allegedly imprudent investment options or the Plans' alleged payment of excessive fees.

*See Hecker*, 2007 U.S. Dist. LEXIS 45275, at *22 ("Had the Fidelity defendants been fiduciaries for some purposes, they were not fiduciaries for the purposes of making plan investment decisions and accordingly could not be liable for breach of fiduciary duty on the claims.")

>        2.      **FMTC Is Not a Fiduciary With Respect to Participant Disclosures and Has No Fiduciary Obligation to Provide the Information that Plaintiffs Allege Should Have Been Disclosed.**

Likewise, FMTC cannot be held liable under § 502(a)(2) for failing to disclose information to participants regarding the Plans' fees and expenses because it has no fiduciary responsibility for participant communications. Notably absent from the Complaint is any allegation that FMTC has discretionary authority or responsibility with respect to participant communications. This is not surprising: FMTC does not occupy any of the defined roles that are charged by statute and regulation with the obligation to make required disclosures to participants. For that reason alone, the disclosure claims as to FMTC must fail. Equally important, plaintiffs have not stated a claim that the alleged omissions constitute an ERISA violation.

ERISA itself mandates the disclosures and details that must be provided to plan participants. ERISA §§ 101-11, 29 U.S.C. §§ 1021-31; *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995) ("ERISA already *has* an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations . . ."). The DOL, in turn, has promulgated detailed regulations further delineating those disclosure requirements. 29 C.F.R. §§ 2520.101-1, *et seq.* In both the statute and the regulations, responsibility for such disclosures is placed squarely in the hands of the plan administrator, whom plaintiffs allege in this case to be the Benefits Committee, and *not* FMTC. ERISA §§ 101-11; 29 C.F.R. §§ 2520.101-1, *et seq.*

Recognizing the existence of an express statutory and regulatory scheme for disclosure requirements, the federal courts have refused to create an implied general fiduciary duty of

disclosure,[9] and the current allegations provide no reason for this Court to vary from that approach. Congress and the DOL plainly could have mandated the types of disclosures regarding 401(k) fees that plaintiffs contend should have been provided. Indeed, both have actively considered, and continue to consider, whether it is advisable to mandate the very type of 401(k) plan fee disclosure sought by plaintiffs in this private litigation.[10] In light of the vigorous policy debate surrounding that issue, it would be particularly inappropriate for the courts to craft their own disclosure regimes based on ERISA's general fiduciary requirements.

It is true that in individualized circumstances, courts have held that fiduciaries had obligations to disclose information that those fiduciaries knew to be material to a participant. However, although plaintiffs make the conclusory assertion that the allegedly undisclosed information was "material" (Compl. ¶ 69), they fail to provide factual allegations necessary to support that assertion.

Materiality does not exist in the abstract. In order for information to be "material" to participants, it must have some effect, or potential effect, on a legally significant decision that participants could make. *See, e.g.*, *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007) ("A statement is materially misleading if there is 'a substantial

---

[9]     *See, e.g.*, *Curtiss-Wright*, 514 U.S. at 84 (reasoning that Congress did not intend statutory disclosure scheme "to be supplemented by a far-away provision in another part of the statute . . ."); *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 952 (8th Cir. 1994) (refusing to expand disclosure requirements beyond those specifically outlined in the text of ERISA and the DOL's regulations); *Ehlmann v. Kaiser Found. Health Plan*, 198 F.3d 552, 554-56 (5th Cir. 2000) (holding that HMO had no duty to disclose compensation scheme, reasoning "[t]hat Congress and DOL were so capable of enumerating disclosure requirements when they wanted to means that the absence of one regarding physician compensation plans was probably intentional"); *Hecker,* 2007 U.S. Dist. LEXIS 45275, at *14 ("Where as here Congress has by statute and related regulation, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary obligations.").

[10]     Earlier this year, the DOL issued a request for information seeking suggestions and comments from plan participants, sponsors, service providers and others regarding the rules applicable to the disclosure of plan administrative and investment related expense information to participants in certain plans, including 401(k) plans. *See* Fee and Expense Disclosures to Participants in Individual Account Plans, 72 Fed. Reg. 20,457 (Apr. 25, 2007). Several dozen individuals and entities formally responded, providing a wide variety of competing views on the issue. *See* http://www.dol.gov/ebsa/regs/cmt-feedisclosures.html (last viewed Aug. 1, 2007) (linking responses to DOL's request for information). In addition, the House Committee on Education and Labor has held hearings in recent months regarding the possibility of legislation to require further disclosure of 401(k) plan fees and expenses. 153 Cong. Rec. D270 (daily ed. Mar. 6, 2007) (list of committee meetings).

likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision . . .'") (citation omitted); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 781-82 (5th Cir. 2007) (affirming dismissal for failure to state a claim where misrepresentation allegedly prevented plaintiffs from accepting an option not actually offered to them); *cf. Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614-15 (8th Cir. 2007) (dismissing misrepresentation claim on grounds that plaintiff could not establish detrimental reliance on an alleged false statement regarding disability pay where he "had no choice but to go on disability"). Thus, plaintiffs' mere assertion of materiality, unsupported by any factual allegations as to how the information at issue could affect actual decisions by the Plans' participants, is not sufficient to impose fiduciary disclosure obligations.[11] *Twombly,* 127 S.Ct. at 1965 (holding that a plaintiff must allege "more than labels and conclusions").

The recent decision in *Hecker,* 2007 U.S. Dist. LEXIS 45275, further illustrates the shortcomings in plaintiffs' argument. Plaintiffs do not allege that participants, in choosing among the investment options, were deprived of information concerning the expense ratios of each investment option or the investment returns of each such option. Plaintiffs do not, and cannot, allege that participants selected service providers, such that the mechanisms by which service providers were compensated was relevant to them. For all these reasons, the *Hecker* court's conclusion is equally applicable here: "In the context of the disclosure of information on investment options the additional information suggested by plaintiffs including revenue sharing

---

[11]      Plaintiffs' bald assertion of materiality is particularly unfounded as applied to plaintiffs' claims that defendants failed to disclose information regarding mutual fund fees and expenses. As discussed *infra*, disclosures regarding such funds and their expenses are governed by an extensive set of securities laws and regulations, and courts applying those laws have held as a matter of law that the type of information participants claim was not disclosed her is immaterial to investment decisions. *See, e.g., In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,* 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006); *In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.,* No. 03 Civ. 8208(RO), 2006 U.S. Dist. LEXIS 20758, at *37-38 (S.D.N.Y. Apr. 18, 2006). Based in part on those decisions, the court in *Hecker* reached that same conclusion when addressing ERISA claims similar to the ones asserted here. 2007 U.S. Dist. LEXIS 45275, at *18 ("In the context of the disclosure of information on investment options the

is neither required by the regulations nor material to participant investors assessing the investment opportunity." 2007 U.S. Dist. LEXIS 45275, at *18. Accordingly, the nondisclosure claims against FMTC in Count I should be dismissed.

## IV. Count II Is Similarly Defective and Also Seeks Relief That is Unavailable Under ERISA § 502(a)(3).

While Count I seeks relief for breach of fiduciary duty under § 502(a)(2) of ERISA, Count II purports to seek equitable relief—including an accounting, surcharge, and injunctive relief—under the separate cause of action provided by ERISA § 502(a)(3). Count II should be dismissed as to both FMTC and FMRCo for multiple reasons.

### A. Count II Should be Dismissed on the Similar Grounds as Count I.

First, plaintiffs' claims against the Fidelity Defendants under Count II are expressly premised on the assertion that FMTC and FMRCo are fiduciaries to the Plans. (*See* Compl. ¶ 85 ("Defendants are the primary fiduciaries of the Plan[s] and occupy a position of trust and confidence in connection with the Plan[s], the Plan[s'] assets, and the Plan[s'] participants and beneficiaries.").) However, as discussed in Section III above, neither Fidelity Defendant acts as an ERISA fiduciary with respect to the conduct challenged in the Complaint. Thus, like the claims in Count I, the Count II claims against the Fidelity Defendants should be dismissed.

### B. Count II Should be Dismissed Since it Does Not Seek "Appropriate Equitable Relief" Authorized by ERISA.

Alternatively, Count II should be dismissed because it does not seek relief that is available under § 502(a)(3). Section 502(a)(3) authorizes a court to remedy violations of statutory or plan provisions by granting an injunction or "other appropriate equitable relief." As the Supreme Court has noted, such relief "must mean *something* less than *all* relief." *Mertens*

<hr />

additional information suggested by plaintiffs including revenue sharing is neither required by the regulations nor material to participant investors assessing the investment opportunity.")

508 U.S. at 258 n.8; *see also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 943 (8th Cir. 1999) ("section [502(a)(3)] is not a limitless free-for-all").

While plaintiffs attempt to invoke equitable terminology by seeking "injunctive" relief and an "accounting" (Compl. ¶¶ 94, 98), the Complaint shows that any such relief would not be "appropriate" as required under § 502(a)(3). In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court noted, "We should expect that courts, in fashioning 'appropriate' equitable relief . . . will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others' . . . Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515 (citation omitted).

Not only have plaintiffs here not alleged the inadequacy of other remedies, they have affirmatively sought exactly the same relief under Count II as would already be available against a fiduciary under Count I. Assuming, *arguendo*, that plaintiffs are correct that FMRCo and FMTC have acted as fiduciaries to the Plans with respect to the challenged conduct, plaintiffs already have a full and adequate remedy for any breaches of fiduciary duty under § 502(a)(2) which, by its incorporation of § 409(a), authorizes full monetary remedies plus "such other equitable or remedial relief as the court may deem appropriate." Thus, their claims in Count II are wholly duplicative of those in Count I, and no additional relief would be "appropriate."

To the extent plaintiffs seek through their request for "injunctive" relief or an "accounting" to compel FMRCo and FMTC to make disclosures relating to their fees, equitable relief would also be inappropriate because those disclosures are already the subject of express statutory regimes. As discussed in Section III.B.2. above, ERISA and related regulations set forth in detail the form and types of information that must be provided to plan participants, and plaintiffs do not allege that the Fidelity Defendants have violated any of those statutory or

regulatory provisions. ERISA §§ 101-11; 29 C.F.R. §§ 2520.101-1, *et seq.* In light of this comprehensive statutory and regulatory scheme, the federal courts have expressed great reluctance to expand on that scheme by imposing implied fiduciary duties of disclosure. *See, e.g.*, *Jensen*, 38 F.3d. at 952; *Ehlmann*, 198 F.3d 552. Given that Congress and the DOL could have required additional financial disclosures—and are actively deciding whether to do so—the invitation to this Court to undertake the same task as "equitable relief" is surely inappropriate. *Hecker*, 2007 U.S. Dist. LEXIS 45275, at *14 ("Where as here Congress has by statute and related regulation, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary obligations.").

Such relief would be particularly inappropriate in the context of fees and expenses related to mutual fund options, since disclosures regarding such funds and their expenses are already governed by a robust set of securities laws including the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.*; the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, *et seq.;* the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.,* and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*[12] Those statutory requirements are further augmented by Securities and Exchange Commission regulations and rules that specifically address the disclosure of fees. *See In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208(RO), 2006 U.S. Dist. LEXIS 20758, at *30 (S.D.N.Y. Apr. 18, 2006) ("SEC Form [N-1A] sets forth the requirements for information that must be contained in offering prospectuses and statements of

---

[12]     *See, e.g.*, 15 U.S.C. § 77aa (requiring disclosure of extensive financial information and operational information for any transaction registering the offer or sale of securities under the Securities Act of 1933); 15 U.S.C. § 78l (requiring disclosure of financial and operational information for any class of securities registered under the Exchange Act of 1934); 15 U.S.C. § 80a-8(b) (requiring mutual funds to file registration statements containing disclosures prescribed by Securities and Exchange Commission rules); 15 U.S.C. § 80a-8(b)(5) (requiring that mutual fund registration statements contain all information required under the Securities Act of 1933 and the Exchange Act of 1934); and 15 U.S.C. § 80a-29(e) (requiring investment companies to transmit semi-annual reports to shareholders).

Case 2:06-cv-04305-NKL   Document 103   Filed 08/03/07   Page 27 of 32

additional information . . . Form N-1A requires the disclosure of the total fees paid by the investor in connection with a securities purchase, as well as total commissions paid by the fund, but it does not require disclosure of how differential compensation is allocated.").[13]

Notably, in applying this securities law regime, the federal courts have held that the type of information that plaintiffs suggest in Count II should have been disclosed here—*i.e.*, the manner in which fees paid by mutual funds are shared among service providers—is not material to an investor's decision to purchase mutual fund shares. *In re Merrill Lynch,* 434 F. Supp. 2d at 238 ("Defendants disclosed the fees and commissions charged to shareholders. The precise allocation of those fees is not material information under the securities laws."); *In re Morgan Stanley*, 2006 U.S. Dist. LEXIS 20758, at *37-38 ("All fees charged to the shareholder were disclosed in the offering prospectuses . . . The allocation of the fees is immaterial, because it could have no effect on share price.").

*A fortiori*, an award of equitable relief to require disclosure under ERISA of "Revenue Sharing" among Fidelity entities or others would be inappropriate. There is no basis to conclude that the information material to an ERISA plan or its participants is any different than the information considered material to other mutual fund investors under the securities laws—the price and expense levels charged by mutual funds. How the Fidelity entities choose to allocate their revenues from mutual funds is as immaterial under ERISA as it is under the securities laws. *See Hecker*, 2007 U.S. Dist. LEXIS 45275, at *18 ("In the context of the disclosure of information on investment options the additional information suggested by plaintiffs including

---

[13]     *See also* 17 C.F.R. § 270.30e-1 (requiring semi-annual shareholder reports to contain all of the information required by the investment company's registration statement).

revenue sharing is neither required by the regulations nor material to participant investors assessing the investment opportunity.").[14]

Finally, to the extent that plaintiffs are seeking monetary relief via Count II, that relief is plainly not "equitable" for purposes of § 502(a)(3). The Supreme Court has recognized, "[a]lmost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' . . . [a]nd money damages are, of course, the classic form of *legal* relief." *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210 (2002) (internal citation omitted). While plaintiffs cast their request in the equitable terms of "surcharge" (Compl. ¶ 96), their Complaint makes clear that plaintiffs are not seeking recovery of specific funds in FMRCo's and FMTC's possession that properly belong to the Plans. Rather, they are seeking broad recovery of "fees and expenses incurred by the Plan[s] and/or paid to third parties, whether paid directly by the Plan[s] or indirectly transferred among Plan service providers or other thirds parties." (*Id.* ¶ 95.) Regardless of the label applied, recovery of such fees and expenses falls well outside the realm of equitable relief and thus outside the scope of § 502(a)(3). *See Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1064 (8th Cir.) ("Merely re-labeling the relief sought as 'restitution' or 'surcharge' does not alter the nature of a remedy from monetary to equitable."), *cert denied*, 126 S. Ct. 2969 (2006). Because Count II seeks relief that is neither "appropriate" nor "equitable" under § 502(a)(3), it should be dismissed.

---

[14] Likewise, the reasonableness of mutual fund fees is specifically governed by § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b), which authorizes private actions against mutual fund advisers and their affiliates to challenge the receipt of excessive fees. Unlike actions under ERISA, actions under § 36(b) can only be brought by investors in the particular mutual fund whose fees are challenged and is subject to additional restrictions such as a one-year statute of limitations. *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 535-36 (1984); 15 U.S.C. § 80a-35(b)(3). The fact that Congress has already specifically created a separate mechanism to challenge the amount of mutual fund fees further demonstrates that the use of § 502(a)(3) to create a new avenue for that same challenge is unnecessary and inappropriate.

**V.     Count III Should Be Dismissed Because It Seeks Relief That Is Unavailable Under ERISA § 502(a)(3).**

Like Count II, Count III is styled as a claim for "Other Remedies for Breach of Fiduciary Duty" under § 502(a)(3). Although Count III differs from Count II in that it is asserted solely against the Fidelity Defendants and relabels the remedies sought, Count III is largely duplicative of the prior count and should be dismissed on similar grounds, including that it does not seek either "appropriate" or "equitable" relief.

That conclusion is unaltered by plaintiffs' claim in Count III that they are entitled to "equitable restitution" of "Revenue Sharing payments" (Compl. ¶ 107) received by FMRCo and FMTC. As the Supreme Court explained in *Great-West,* restitution exists in equity, as opposed to law, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213; *see also Calhoon v. TWA*, 400 F.3d 593, 597 (8th Cir. 2005) (holding that monetary relief is equitable only where the money sought is "specifically identifiable" and can "clearly be traced to particular funds or property in the defendant's possession") (citing *Great-West*). Recovery of the alleged "Revenue Sharing" payments does not fall within that category. As an initial matter, any fees received by Fidelity entities have become part of Fidelity's general revenues and thus cannot be considered traceable. Moreover, as described in the Complaint, "Revenue Sharing" payments are not paid directly by the Plans. Rather, the Plans are alleged to make payments to a "Fund" which then makes "Revenue Sharing" payments to other entities. (Compl. ¶¶ 44-46.) Once the Plans' assets are invested in the Funds, the amounts invested cease to be specifically identifiable assets but instead become part of a commingled pool and in the case of mutual funds, cease to be plan assets as a matter of law (*See* Section III.A. *supra*). Thus, any payments from the Funds to FMRCo or FMTC cannot be traced to the Plans' assets and are not subject to equitable restitution. Accordingly, Count III should be dismissed.

## CONCLUSION

For the foregoing reasons, Fidelity respectfully requests that that this Court enter an

Order granting the Fidelity Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for

Breach of Fiduciary Duty and dismiss plaintiffs' claims against Fidelity Management &

Research Company and Fidelity Management Trust Company with prejudice.

Dated: August 3, 2007                                    Respectfully submitted,


                                    BY:    /s/ Shannon M. Barrett

                                    Richard N. Bien, #31398
                                    Adam B. Walker, #56299
                                    LATHROP & GAGE L.C.
                                    2345 Grand Boulevard, Suite 2800
                                    Kansas City, Missouri 64108-2684
                                    Telephone: (816) 292-2000
                                    Facsimile: (816) 292-2001

                                    Robert N. Eccles
                                    Brian D. Boyle
                                    Shannon M. Barrett
                                    Stephen D. Brody
                                    O'MELVENY & MYERS LLP
                                    1625 Eye Street, N.W.
                                    Washington, D.C. 20006
                                    Telephone:  (202) 383-5300
                                    Facsimile:  (202) 383-5414

                                    *Counsel for Defendants Fidelity Management
                                    Trust Company and Fidelity Management &
                                    Research Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

| | |
|---|---|
| Jerome J. Schlichter<br>Daniel V. Conlisk<br>Heather Lea<br>Schlicter, Bogard & Denton<br>100 South 4th Street, Suite 900<br>St. Louis, MO 63102<br><br>**Attorneys for Plaintiffs** | Brian T. Ortelere<br>William J. Delany<br>Catherine A. Cugell<br>Morgan, Lewis & Bockius, LLP<br>1701 Market Street<br>Philadelphia, PA 19101-2921<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** |
| Thomas E. Wack<br>Jeffrey S. Russell<br>Bryan Cave LLP<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** | |

/s/Shannon M. Barrett
_____