UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

MARGARET KENNEDY, et al.,

                       Plaintiffs,

v.

ABB, INC., et al.,

                       Defendants.

CIVIL ACTION
No. 06-CV-04305

(Judge Nanette K. Laughrey)

**REPLY SUGGESTIONS IN SUPPORT OF FIDELITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
FOR BREACH OF FIDUCIARY DUTY**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.     THE COURT MAY PROPERLY CONSIDER THE TRUST AGREEMENT ............... 2

II.    PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO
SUPPORT A CLAIM THAT FEES WERE "EXCESSIVE" AND
"UNREASONABLE." ................................................................................................... 3

III.   COUNT I SHOULD BE DISMISSED BECAUSE THE FIDELITY
DEFENDANTS HAVE NO FIDUCIARY STATUS RELEVANT TO
PLAINTIFFS' CLAIMS ............................................................................................... 7

      A.     FMRCo is Not a Fiduciary to the ABB Plans ...................................................... 7

      B.     FMTC is Not a Fiduciary as to the Challenged Conduct .................................... 13

IV.   COUNT II IS SIMILARLY DEFECTIVE AND ALSO SEEKS RELIEF THAT
IS UNAVAILABLE UNDER ERISA § 502(a)(3) ........................................................ 16

V.    COUNT III SHOULD BE DISMISSED BECAUSE IT SEEKS RELIEF THAT
IS UNAVAILABLE UNDER ERISA § 502(a)(3) ........................................................ 20

CONCLUSION ................................................................................................................... 21

Case 2:06-cv-04305-NKL   Document 117   Filed 08/31/07   Page 2 of 29

# TABLE OF AUTHORITIES

**Cases**

*A. Ronald Sirna Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.,*
964 F.Supp. 147 (S.D.N.Y. 1997) ............................................................................. 11

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ........................................................................................... 1, 3

*Blatt v. Marshall and Lassman,*
812 F.2d 810 (2d Cir. 1987) ........................................................................................ 9

*Brandt v. Grounds,*
687 F.2d 895 (7th Cir. 1982) ..................................................................................... 14

*Brock v. Hendershott,*
840 F.2d 339 (6th Cir. 1988) ....................................................................................... 9

*Calhoon v. TWA,*
400 F.3d 593 (8th Cir. 2005) ..................................................................................... 21

*Castillo v. Dean Witter Discover & Co.,*
No. 97 Civ. 1272, 1998 WL 342050 (S.D.N.Y. June 25, 1998)............................... 19

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.,*
474 F.3d 463 (7th Cir. 2007) ..................................................................................... 12

*Corbett v. Marsh & McLennan Cos., Inc.,*
No. MDL-15863, 2006 WL 734560 (D. Md. Feb. 27, 2006) ................................... 12

*DiFelice v. U.S. Airways, Inc.,*
397 F. Supp. 2d 735 (E.D.Va. 2005) ........................................................................ 14

*Eddy v. Colonial Life Ins. Co. of America,*
919 F.2d 747 (D.C. Cir. 1990)................................................................................... 18

*Erickson v. Pardus,*
127 S. Ct. 2197 (2007)................................................................................................. 3

*Erpelding v. Delaware Charter Guarantee & Trust Co.,*
162 Fed. Appx. 730 (9th Cir. 2006)........................................................................... 13

*Farthing v. United Healthcare of the Midwest,*
No. 98-4262, 2000 U.S. Dist. LEXIS 21994 (W.D. Mo. Feb. 29, 2000) ................. 17

*Geiler v. Jones,*
No. 8:05CV268, 2006 WL 407683 (D. Neb. Feb. 6, 2006) ..................................... 13

*Geller v. County Line Auto Sales, Inc.,*
86 F.3d 18 (2d Cir. 1996) .......................................................................................... 12

*Great-West Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002)................................................................................................... 20

Case 2:06-cv-04305-NKL    Document 117    Filed 08/31/07    Page 3 of 29

*Haddock v. Nationwide Fin. Servs.*,
  419 F. Supp. 2d 156 (D. Conn. 2006) ................................................................. 10, 11

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
  530 U.S. 238 (2000) ....................................................................................... 17

*Hartje v. Fed. Trade Comm'n*,
  No. Civ. 3-94-1288, 1995 WL 779156 (D. Minn. Dec. 4, 1995) ............................ 13

*Hecker v. Deere & Co.*,
  __ F. Supp. 2d __, No. 06-C-719, 2007 U.S. Dist. LEXIS 45275 (W.D. Wis. June 20, 2007). 1

*Herman v. Mercantile Bank*,
  143 F.3d 419 (8th Cir. 1998) ........................................................................... 4, 6

*In re AIG Advisor Group Securities Litigation*,
  No. 06 CV 1625, 2007 WL 1213395 (E.D.N.Y. March 9, 2007) ............................ 19

*In re McKesson HBOC, Inc. ERISA Litig.* 2002 U.S. Dist. LEXIS 19473
  (N.D. Cal. Sep. 30, 2002) ................................................................................ 8

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
  434 F. Supp. 2d 233 (S.D.N.Y. 2006) ................................................................ 19

*In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*,
  No. 03 civ. 8208, 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. April 14, 2006) .......... 19

*In re Providian Fin. Corp.*, 2002 U.S. Dist. LEXIS 25676 (N.D. Cal. Nov. 14, 2002) ............. 8

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
  441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................ 19

*Knieriem v. Group Health Plan, Inc.*,
  434 F.3d 1058 (8th Cir.), *cert. denied*, 126 S.Ct. 2969 (2006) ............................ 20

*Kushner v. Beverly Enters., Inc.*,
  317 F.3d 820 (8th Cir.2003) .............................................................................. 2

*Morgan Distrib. Co. v. Unidynamic Corp.*,
  868 F.2d 992 (8th Cir. 1989) ............................................................................ 9

*Pappas v. Buck Consultants, Inc.*,
  923 F.2d 531 (7th Cir. 1991) ......................................................................... 9, 15

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ....................................................................................... 14

*Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding Group*,
  731 F. Supp. 161 (D.N.J. 1990) ........................................................................ 15

*Reich v. Continental Casualty Co.*,
  33 F.3d 754 (7th Cir. 1994) .............................................................................. 17

Case 2:06-cv-04305-NKL   Document 117   Filed 08/31/07   Page 4 of 29

# TABLE OF AUTHORITIES
## (continued)

*Schloegel v. Boswell,*
  994 F.2d 266 (5th Cir. 1993) .......................................................................... 9, 15

*Siemers v. Wells Fargo & Co.,*
  No. 05-4518, 2007 WL 760750 (N.D. Cal. March 9, 2007)................................. 6, 19

*Spano v. Boeing Co.,*
  No. 06-cv-743, 2007 WL 1149192 (S.D. Ill. Apr. 18, 2007) .................................... 7

*Taylor v. United Technologies Corp.,*
  3:06cv1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007) ........................................ 6

*Trigon Ins. Co. v. Columbia Naples Capital, L.L.C.,*
  235 F. Supp. 2d 495 (E.D. Va. 2002) ..................................................................... 13

*United States v. Glick,*
  142 F.3d 520 (2d Cir. 1998) ................................................................................... 11

*Varity Corp. v. Howe,*
  516 U.S. 489 (1996).......................................................................................... 17, 19

*Wright v. Oregon Metallurgical Corp.,*
  360 F.3d 1090 (9th Cir. 2004) ................................................................................ 12

**Statututes**

15 U.S.C. § 80a-22.......................................................................................................... 11

ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B) ................................................................. 8

ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1)................................................................... 10

ERISA § 405, 29 U.S.C. § 1105 ..................................................................................... 14

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) .................................................................. 17

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .................................................................. 16

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................................... 3

# TABLE OF AUTHORITIES
## (continued)

**Other Authorities**

17 C.F.R. § 270.2a-4(a)(4) .................................................................................. 11

29 C.F.R § 2509.75-8(d)(2) ............................................................................... 16

DOL Adv. Op. 99-08A, 1999 WL 343509 (May 20, 1999) ............................... 13

*2007 Investment Company Institute Fact Book*, *available at* www.icifactbook.org/fb_sec7.html (last visited Aug. 30, 2007) .......................................................................... 5

Employee Benefits Security Admin., Department of Labor, 401(k) Fiduciary Education Campaign, http://www.dol.gov/ebsa/fiduciaryeducation.html (follow "401(k) Plan Fee Disclosure Tool" hyperlink) (last visited Jul. 24, 2007) .......................................... 5

*Investment Company Institute Research Perspective*, "401(k) Plan Asset Allocation, Account Balances, and Loan Activity in 2006," *available at* http://www.ici.org/home/per13-01.pdf (last visited Aug. 30, 2007) ................................................................................... 5

Statement of Marvin Mann, Chairman of the Independent Trustees of The Fidelity Funds, Before the Senate Committee on Banking, Housing and Urban Affairs on "Review of Current Investigations and Regulatory Actions Regarding the Mutual Fund Industry: Fund Operations and Governance" (Mar. 2, 2004), *available at* http://banking.senate.gov/_files/mann.pdf) .... 19

**INTRODUCTION**

Plaintiffs' opposition to the Fidelity Defendants' Motion to Dismiss ("Opposition" or "Opp.") does nothing to salvage plaintiffs' flawed legal theories. Plaintiffs complain that the fees paid by the ABB Plans, and the compensation obtained by the Fidelity Defendants, are "unreasonable," but their Amended Complaint does not plead any facts that logically support this label. The few specific facts that the Amended Complaint does identify—for instance, that the Plans include retail mutual funds as investment options when cheaper investment "pools" may be available—simply do not distinguish the ABB Plans from other 401(k) plans in the country, and therefore fail to satisfy threshold pleading requirements recently clarified by the Supreme Court in *Bell Atlantic v. Twombly*. Moreover, plaintiffs' indiscriminate objection to the presence of *any* retail mutual funds in 401(k) plan lineups exposes their challenge as an industry-wide assault that, if accepted, would require the wholesale restructuring of defined contribution plans and ultimately constrain participant choice.

Nor does plaintiffs' Opposition rehabilitate their core contention that the Fidelity Defendants have breached fiduciary duties with respect to their own compensation. Their conclusory allegation that FMTC has exercised discretion in the selection of investment options (and thus has influenced its own compensation) is contradicted by the Trust Agreement between FMTC and ABB which vests that authority solely in ABB. As a substitute for analysis, plaintiffs list various cases in which courts have allowed claims challenging 401(k) fees to survive a motion to dismiss. None of those cases, however, names as defendants any Fidelity entities, or any entities with like roles. To the contrary, as discussed in the Suggestions in Support of Fidelity Defendants' Motion to Dismiss ("Fidelity's Suggestions" or "Fid. Sugg."), in the one Rule 12(b)(6) decision involving the Fidelity Defendants, *Hecker v. Deere & Co.,* __ F.Supp. 2d__, No. 06-C-719, 2007 U.S. Dist. LEXIS 45275 (W.D. Wis. June 20, 2007), the court

dismissed the claims against the Fidelity Defendants with prejudice, in part because neither Fidelity Defendant was a fiduciary with respect to the challenged conduct.

For the reasons set forth below and in Fidelity's Suggestions, plaintiffs' claims against the Fidelity Defendants here should likewise be dismissed in their entirety.

## ARGUMENT

## I. THE COURT MAY PROPERLY CONSIDER THE TRUST AGREEMENT.

Seeking to avoid the merits of the Fidelity Defendants' Motion, plaintiffs initially argue that the Court cannot consider the Trust Agreement[1] that governs Fidelity's relationship with the ABB Plans and ask the Court to deny the motion on that basis. (Opp. at 6-7.) However, as addressed more fully in Fidelity's Suggestions in Opposition to Plaintiffs' Motion to Strike Extraneous Materials, filed today, it is well-established that in deciding a motion to dismiss, a court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, even if those documents are not physically attached to the Complaint. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) ("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."). While plaintiffs have amended the Complaint to remove several *express* references to the Trust Agreement, the Amended Complaint still makes multiple references to the *substance* of the agreement and relies heavily on the agreement in an effort to establish FMTC's fiduciary status and the existence of supposedly excessive fees. (Compl. ¶¶ 16, 34-35, 49.) Moreover, plaintiffs have not challenged the authenticity of the Trust Agreement. Accordingly, under

---

[1] The governing Trust Agreement, entitled "Trust Agreement Between Asea Brown Boveri Inc. and Fidelity Management Trust Company: Personal Retirement Investment and Savings Management Plan for Employees of Asea Brown Boveri Inc. Trust," was previously filed as Exhibit 1 to the Fidelity Defendant's Motion.

Case 2:06-cv-04305-NKL   Document 117   Filed 08/31/07   Page 8 of 29

*Kushner*, the Trust Agreement is properly deemed part of the pleadings and may be considered without converting this motion into a motion for summary judgment.

## II.    PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT A CLAIM THAT FEES WERE "EXCESSIVE" AND "UNREASONABLE."

In response to the Fidelity Defendants' argument that the Complaint should be dismissed because plaintiffs have failed to allege facts that, if true, would establish the unreasonableness of the fees borne by the Plans (Fid. Sugg. at 5-8), plaintiffs contend that under Fed. R. Civ. P. 8(a), the Complaint is not required to allege facts establishing either "that the Plan's fees were unreasonable" or "that the Defendants' conduct was imprudent." (Opp. at 10.) Plaintiffs suggest instead that the Complaint need only provide "fair notice" of the nature of their claims. (*Id.* at 7.) Plaintiffs' mischaracterize their pleading obligations.

As the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Federal Rules require *both* that a plaintiff's allegations adequately notify defendants of the nature of plaintiffs' claims *and* that those allegations set forth sufficient grounds to show that the plaintiff is entitled to some form of relief. *Id.* at 1965 n. 3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also [the] 'grounds' on which the claim rests."). The Supreme Court's subsequent decision in *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), did not relax this requirement, but instead merely restated the general rule that a complaint must provide both notice of the claim and its factual basis.[2] Here, when stripped of "labels and conclusions"[3] that the Court need not and should not accept, the Complaint fails to

---

[2]    Notably, the plaintiff in *Erickson* was proceeding *pro se*, and his complaint was thus "liberally construed." 127 S. Ct. at 2200 (citation omitted). That especially forgiving standard does not apply here.

[3]    *Twombly*, 127 S. Ct. at 1965.

allege sufficient facts to establish a valid claim for relief under the applicable standards of liability.

Plaintiffs' Opposition only confirms this fatal deficiency. Plaintiffs state that, "[t]he Amended Complaint alleges that fees and expenses assessed against the Plan were, and are, excessive and unreasonable because Plan service providers . . . receive" compensation from a variety of distinct sources. (Opp. at 8-9.) However, the fact that the service providers receive funds through a variety of funding mechanisms does not even suggest, let alone establish, that the total fees paid (or compensation received) are excessive. There is thus no connection, either in logic or in plaintiffs' allegations, between the number of channels through which service providers are compensated and the reasonableness of that compensation. Indeed, plaintiffs' only factual assertion that touches on the *amount* of fees paid by the Plans is the allegation that the Plans' investment options included retail mutual funds, when the Plans could "secure . . . much less expensive instruments." (Opp. at 9.) As argued in Fidelity's Suggestions, however, fiduciaries need only act as would a "hypothetical prudent fiduciary," and thus do not breach their duties by selecting funds which fall within a reasonable range of fees and expenses.[4] Plaintiffs' Amended Complaint does not acknowledge this range, much less allege any facts establishing that the overall fees paid by the Plans fall outside it. Moreover, plaintiffs'

---

[4]     *Herman v. Mercantile Bank,*, 143 F.3d 419, 421-22 (8th Cir. 1998) (finding no breach of fiduciary duty where a hypothetical prudent fiduciary would have paid "substantially close" to the fair market value for an investment).

allegations do not even address the ultimate question whether the Plans' fees may be judged reasonable in light of the nature and quality of the services obtained.[5]

Plaintiffs are thus left with the contention that the Plans have much larger asset values than most 401(k) plans and, as a result, have the opportunity to offer customized funds or accounts that are not available to smaller plans. (Opp. at 12.) Yet public reports suggest that large 401(k) plans, too, include retail mutual fund options.[6] Moreover, as the Trust Agreement indicates, the ABB Plans *do* offer participants access to multiple investment options other than retail mutual funds, and participants who wish to do so can therefore avoid investing their accounts in retail mutual funds and incurring the related fees (Trust Agreement, Seventh Amendment[7]); the resulting fees paid by the Plans as a whole are largely determined by the investment choices of individual participants. Perhaps plaintiffs mean to contend that the Plan fiduciaries acted imprudently merely by offering Plan participants the choice of investing in non-retail mutual funds, rather than requiring them to do so. But there is no basis in ERISA for denying plan participants such a choice simply because of the size of their plan.

Although plaintiffs contend that allegations similar to those set forth in the Complaint were held to be sufficient in *Siemers v. Wells Fargo & Co.*, No. C 05-04518, 2007 WL 1140660

---

[5]     *See* Employee Benefits Security Admin., Department of Labor, 401(k) Fiduciary Education Campaign, http://www.dol.gov/ebsa/fiduciaryeducation.html (follow "401(k) Plan Fee Disclosure Tool" hyperlink) (last visited Aug. 30, 2007) ("Selecting a service provider requires that you evaluate and differentiate services offered by competing companies. Cost is one of the criteria, but not the only criterion, for making this evaluation. Other factors of equal or greater importance to consider include the quality and type of services provided, the anticipated performance of competing providers and their investment products and other factors specific to your plan's needs. *The service provider offering the lowest cost services is not necessarily the best choice for your plan*.") (emphasis in original).

[6]     Most 401(k) plan assets are in mutual funds, and the very largest plans contain the vast majority of 401(k) assets. *See 2007 Investment Company Institute Fact Book* at 76, *available at* www.icifactbook.org/fb_sec7.html (last visited July 20, 2007) (at year-end 2006, 55% of 401(k) assets were held in mutual funds)); *Investment Company Institute Research Perspective*, "401(k) Plan Asset Allocation, Account Balances, and Loan Activity in 2006," at 4, *available at* http://www.ici.org/home/per13-01.pdf (last visited Aug. 30, 2007) (at year-end, the largest 401(k) plan segment, defined to include plans with assets in excess of $250 million, held approximately 68% of all 401(k) plan assets.)

(N.D. Cal. Apr. 17, 2007), the decision provides no basis for that assertion. In *Siemers*, which did not involve ERISA claims but instead addressed a claim under Section 10(b) of the Securities Exchange Act of 1934, the district court held that several allegations could establish that the fees charged through defendants' investment products were excessive. *Id.* at *7. But the court did not in any way describe the contents of those allegations, and thus it is impossible to compare the sufficiency of the allegations in *Siemers* to those asserted by plaintiffs. Moreover, the key holding in *Siemers*—that plaintiff was not required to allege the *extent* to which fees were excessive—is not germane to the Complaint in this case, which fails to allege grounds establishing that the fees paid by the Plans were excessive *at all* under ERISA's governing standards.

While the other decision plaintiffs emphasize, *Taylor v. United Technologies Corp.*, 3:06cv1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007), involves claims and allegations that are more closely related to those in this case, the defendants in that case raised a *Twombly* challenge not to the plaintiffs' contention that the plan paid "unreasonable" fees, but rather to the separate allegations that the fiduciaries' conduct fell short of procedural prudence standards. *See id.* at *3-4 Moreover, even if the *Taylor* court had been called upon to analyze whether the plaintiff had pleaded sufficient facts to support his contention on the reasonableness of fees, it would not have been guided by the fiduciary standards established by the Eighth Circuit in *Herman v. Mercantile Bank*, 143 F.3d 419 (8th Cir. 1998).[8] As emphasized above, *Herman* makes clear that as long as the price at which a fiduciary transacts business is within a range of reasonable values, there is no fiduciary breach. *Id.* at 421-22 ("[e]ven if a trustee fails to make a

---

[7]     For example, paragraph 5 of the Seventh Amendment to the Trust Agreement added the following non-retail funds as investment options: BGI EAFE Equity Index Fund, BGI Equity Index Fund, BGI Extended Equity Market Fund, and BGI U.S. Debt Index Fund.

good faith effort to determine the fair market value of [a] stock, 'he is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway'"; the fiduciary bears no liability if price is "sufficiently close" to the fair market value). Plaintiffs have simply alleged no ground on which to conclude that Plan fiduciaries have acted outside this range.

## III. COUNT I SHOULD BE DISMISSED BECAUSE THE FIDELITY DEFENDANTS HAVE NO FIDUCIARY STATUS RELEVANT TO PLAINTIFFS' CLAIMS.

Although Plaintiffs' Opposition fails to distinguish between the claims asserted against FMRCo and FMTC, the Complaint contains separate allegations with respect to these defendants. While Plaintiffs blur the alleged roles played by each defendant in their Opposition in an attempt to salvage their claims, FMRCo and FMTC are distinct entities with distinct roles and responsibilities. Accordingly, this section addresses the allegations as pleaded against each Fidelity defendant separately.

### A. FMRCo is Not a Fiduciary to the ABB Plans.

Count I of the Complaint should be dismissed against FMRCo because plaintiffs have not stated a viable claim that FMRCo is a fiduciary to the Plans. (Fid. Sugg. at 8-11.) Plaintiffs, in their Opposition, betray that they are without factual support for this conclusion by studiously conflating their allegations against both FMRCo and FMTC to argue that the "Fidelity

---

[8] Likewise, the District Court in *Spano v. Boeing Co.*, No. 06-cv-743, 2007 WL 1149192 (S.D. Ill. Apr. 18, 2007) did not apply the *Herman* standard, and in fact did not determine whether plaintiffs' allegations regarding the payment of unreasonable fees to service providers stated a claim for breach of fiduciary duty, focusing instead on the defendants' fiduciary status and their defenses under ERISA § 404(c). Moreover, because the decision in *Spano* pre-dated the Supreme Court's decision in *Twombly*, the district court had no occasion to consider application of that pleading standard.

Defendants" perform fiduciary functions.[9]  In fact, a careful review of the distinct allegations regarding *FMRCo* reveals that those allegations fail to establish fiduciary status of any sort.

The Complaint recites three conclusory grounds for FMRCo's fiduciary status: (1) that FMRCo is an investment adviser to the Fidelity mutual funds that are "approximately half" of the  investment options under the Plans (¶¶ 20, 36); (2) that FMRCo "exercises discretion in the selection of the investment options that the Plan[s] make[] available to participants" (¶ 18); and (3) that FMRCo "exercises discretion over Plan assets when it determines how much the Plan will pay to Fidelity affiliates, like FMTC, for administrative and other services with soft dollars collected as part of Fidelity's undisclosed revenue sharing program" (¶ 19).  The first of those grounds is plainly inadequate since ERISA expressly provides that an investment adviser to a mutual fund does not become a fiduciary by virtue of a plan's investment in that fund.  ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B).  Plaintiffs do not dispute that point.  (Opp. at 14-15.)  Thus, any basis for FMRCo's fiduciary status must be found in the other two alleged grounds.

Yet those grounds, too, are flawed.  As explained at pages 9 and 10 of Fidelity's Suggestions, plaintiffs' allegation that FMRCo exercises discretion in the selection of investment options is squarely contradicted by ¶ 10 of the Complaint and the terms of the governing Trust Agreement, all of which make clear that ABB's Pension Review Committee has the authority over the selection of Plan investment options.  In an effort to evade this contradiction, plaintiffs argue, contrary to the terms of the Trust Agreement, that the "Fidelity Defendants and other Fidelity

---

[9]        This approach mimics plaintiffs' approach in the Complaint, which contains numerous blanket allegations that "Defendants" or "Fidelity" engaged in various forms of conduct, without specifying which defendant supposedly undertook which actions.  Such group pleading has been held wholly insufficient in the ERISA context and is itself grounds for dismissal.  *In re Providian Fin. Corp ERISA Litig.*, No. C 01-05027, 2002 U.S. Dist. LEXIS 25676, at *3-4 (N.D. Cal. Nov. 14, 2002) (finding that ERISA complaint that "lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties . . . fails to put the various defendants on notice of the allegations against them"); *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030, 2002 U.S. Dist. LEXIS 19473, at *10 (N.D. Cal. Sept. 30, 2002) (dismissing ERISA complaint that was "replete with overly general allegations pursuant to which nearly all

entities performed the primary screening of Plan investment options, reducing the thousands of investment vehicles available to *only* Fidelity funds or non-Fidelity funds of which FMRCo approved." (Opp. at 21.) This argument in plaintiffs' Opposition cannot be reconciled with their Complaint, which alleges that *FMTC*, rather than FMRCo, "does the first-cut screening of investment options[.]" (Comp. ¶ 16.) Whatever the reason for plaintiffs' inconsistency, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

Moreover, even if actually pled in the Complaint, an allegation that FMRCo engaged in "first-cut screening of investment options" would not establish fiduciary status under ERISA. Rather, because the Trust Agreement makes clear that no Fidelity entity had the authority to dictate what funds are selected for the Plans, any purported "screening" could serve as nothing more than providing information to the Pension Review Committee. One does not become a fiduciary by merely providing information on which the plan's existing fiduciaries act. *See, e.g., Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir. 1993) ("Mere influence over the trustee's investment decisions, however, is not effective control over plan assets."); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (noting that courts have read "the terms 'discretionary authority,' 'discretionary control' and 'discretionary responsibility' . . . as speaking to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises.").[10]

_____

defendants are generally alleged to be liable for all breaches of fiduciary duty, all the while failing to identify specific defendants who are liable for specific breaches of specific fiduciary duties").

[10] Although plaintiffs argue that "influence" or "attenuated actions" are enough to confer fiduciary status (Opp. at 13, 21), the cases they rely upon do not actually support their position. Rather, although some of those cases may use terminology such as "influence," the finding of fiduciary status in each of those cases was ultimately premised on the defendants' exercise of actual control over decisions affecting the plans. *See, e.g., Blatt v. Marshall & Lassman*, 812 F.2d 810, 813 (2d Cir. 1987) (holding that by intentionally preventing plan's retirement committee from returning plaintiff's vested contributions, defendants "exercised actual control respecting disposition of plan assets."); *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988) (defendant "actually took over" to cause plan to select his dental program).

This conclusion is unaltered by plaintiffs' reliance on *Haddock v. Nationwide Financial Services*, 419 F. Supp. 2d 156 (D. Conn. 2006). In *Haddock*, the defendant did not merely identify possible mutual funds to the plan's fiduciaries. Rather, it had the right to *unilaterally* add and delete mutual funds from the menu of investment options already selected by the named fiduciary for inclusion as options available under the respective plans. 419 F. Supp. 2d at 161 ("It appears that Nationwide's authority at this stage may be limited to deleting and substituting mutual funds that have already been approved by the Plans (*i.e.,* the subset that the Plans have chosen) and specified in their agreements.") Plaintiffs have not alleged such circumstances here and cannot do so given the plain language of the Trust Agreement.

Likewise, FMRCo's supposed fiduciary status is unsupported by plaintiffs' allegation that FMRCo exercised discretion in determining "how much the Plan will pay to Fidelity affiliates, like FMTC, for administrative and other services with soft dollars collected as part of Fidelity's undisclosed revenue sharing program[.]" (Compl. ¶ 19.) As described in the Complaint, "Revenue Sharing" consists of charges first assessed by "Funds" as part of those Funds' expense ratios before being passed on to service providers. (*Id*. ¶¶ 44-46.) The only investment options that FMRCo is alleged to have advised, managed or otherwise operated are Fidelity mutual funds. (*Id*. ¶ 36.) ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1), expressly provides that mutual fund assets are not ERISA plan assets. Accordingly, any control by FMRCo over the disposition of fees collected from the Fidelity mutual funds does not constitute discretionary control over plan assets and thus is not a basis for fiduciary status.

Plaintiffs counter Fidelity's position that mutual fund assets resulting from plan participant investments are not plan assets by arguing that Fidelity's position "turns on factual contentions regarding the flow of funds through mutual funds having no basis in the Complaint." (Opp. at 16.) Yet again, plaintiffs' argument conflicts with the Complaint, which expressly

pleads that "[t]he *Funds* transfer the soft dollars collected via Revenue Sharing arrangements to other Plan service providers[.]" (Compl. ¶ 46. (emphasis added).) That a mutual fund's assets include plan participant investments is confirmed by the inclusion of those investments in fund assets used to calculate the daily net asset value per share at which open end mutual fund shares are required by law, 15 U.S.C. sec. 80a-22; 17 C.F.R. sec 270.2a-4(a)(4), to be sold and redeemed upon fund investor order.

Neither of the two cases on which plaintiffs principally rely to escape the consequences of § 401(b)(1) supports their position. *United States v. Glick*, 142 F.3d 520 (2d Cir. 1998), did not involve assets paid out of mutual funds and thus did not require the court to apply § 401(b)(1) or any similar statutory provision. While the other case, *Haddock*, 419 F. Supp. 2d 156, did involve alleged revenue sharing payments made from mutual fund assets, *id.* at 162, the opinion actually refutes plaintiffs' position. Rather than generally holding such payments to be plan assets, the court crafted a more narrow test, under which revenue sharing payments received by a defendant are plan assets only if the defendant receives the assets "(1) as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants or beneficiaries." *Id.* at 170. In other words, under the *Haddock* test, the status of revenue sharing payments as plan assets is predicated on the defendant *already* having or exercising fiduciary authority. Thus, under *Haddock,* FMRCo's alleged control over "Revenue Sharing" payments cannot be the basis for FMRCo's supposed fiduciary status.[11]

---

[11] Plaintiffs also cite *A. Ronald Sirna Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*, 964 F. Supp. 147 (S.D.N.Y. 1997), for the proposition that an entity that can "manipulate the plan or its assets" to its own benefit can be deemed a fiduciary and assert that "the Fidelity Defendants had this exact sort of control over its compensation and that of other Fidelity entities." (Opp. at 14.) Plaintiffs fail to cite any basis in their Complaint for this conclusory assertion. Further, plaintiffs read *Sirna* too broadly. Although the court in *Sirna* acknowledged that substantial control over one's compensation could result in fiduciary status, it also explained that, "[t]he touchstone [for fiduciary status] was a transfer of control over the plan or its assets from the plan to the provider which would enable the provider to manipulate the plan or its assets to its own benefit." *Id.* at 150. As discussed above, the only possible control of any type that FMRCo has over its compensation is its management of mutual fund assets which, as a matter of law, are not plan assets. Thus, neither *Sirna* nor the authorities cited therein support plaintiffs' argument that FMRCo is an ERISA fiduciary.

The case that is on point is the Seventh Circuit's decision in *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007), which held that revenues collected by a plan service provider for its own account in the form of rebates from drug manufacturers were not "plan assets" and, accordingly, that control over those revenues did not render the service provider a fiduciary. Plaintiffs try to limit the effect of *Caremark* by contending that the court's holding turned on the fact (not at play here, they say) that the service provider had separately negotiated with the plans to provide its own rebates to the plans at a specified rate. Plaintiffs misread the decision, however. The plaintiff in *Caremark* contended that the service provider's obligation to provide rebates to the plans rendered some portion of the rebates the service provider received from drug manufacturers plan assets. *Id.* at 476 n.6. The Seventh Circuit rejected that argument, reasoning that although the service provider had agreed to pay its own fixed rate rebates to the plans, nothing in the service provider's contract with the plans required the service provider to pay those rebates out of the revenues it received from drug manufacturers. *Id.* In other words, although the service provider had created a payment obligation to the plans, it had not given the plans an interest in the particular funds the service provider received from the drug makers. Thus, the *Caremark* decision, affirming the dismissal of plaintiff's claims,[12] supports the proposition that the revenues a service provider receives for

---

[12]    In light of plaintiffs' extensive efforts to argue that fiduciary status cannot be decided on a motion to dismiss (Opp. at 12-14), it is worth noting that the Seventh Circuit affirmed the district court's dismissal order for the specific reason that the service provider was, as a matter of law, not an ERISA fiduciary with respect to "any of the relevant actions detailed in the complaint." *Caremark*, 474 F.3d at 477. In fact, courts often grant motions to dismiss for failure to adequately plead fiduciary status, even where plaintiffs assert a question of fact regarding whether the defendant was a "functional" fiduciary. *See, e.g., Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004) (affirming dismissal for lack of fiduciary status, despite allegations that the defendant was a *de facto* fiduciary, and concluding that "any suggestion by Plaintiffs that further discovery is necessary to determine whether the union acted as a fiduciary is contrary to three leading Supreme Court decisions--*Lockheed, Hughes Aircraft,* and *Pegram v. Herdrich* …--all of which affirmed Rule 12(b)(6) dismissals on the grounds that the conduct of the defendant was not that of a 'fiduciary'"); *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996) (affirming dismissal "[b]ecause the complaint fails to allege facts sufficient to support an inference that any of the defendants is a plan fiduciary"); *Corbett v. Marsh & McLennan Cos., Inc.*, No. MDL-15863, 2006 WL 734560, at *2-3 (D. Md. Feb. 27, 2006) (dismissing claims against one of several defendants because plaintiff failed to "plead specific facts that show the defendant performed specified discretionary functions . . . such that it was a *de*

its own use do not become plan assets unless the service provider has agreed to transmit a specific portion of *those* revenues to a plan.

The approach set forth in *Caremark* is also consistent with the Department of Labor's guidance that the status of assets as plan assets should be based on "ordinary notions of property rights." DOL Adv. Op. 99-08A, 1999 WL 343509, at *2 (May 20, 1999). Following that guidance, courts have held in other contexts that assets do not become plan assets unless sufficient steps are taken "to cause the plan to gain a beneficial interest in particular assets . . . such as the transfer to a separate trust account." *Trigon Ins. Co. v. Columbia Naples Capital, L.L.C.*, 235 F. Supp. 2d 495, 505 n.7 (E.D. Va. 2002). Here, FMRCo has not agreed, and is not alleged to have agreed, to earmark or otherwise direct any portion of its fees from the Fidelity mutual funds to the ABB Plans. Therefore, under the principles set forth in *Caremark* and echoed in other authority, those fees are solely Fidelity revenues, and not Plan assets.[13]

In sum, neither the allegations in plaintiffs' Complaint nor the additional conjecture in their Opposition are sufficient to establish FMRCo's fiduciary status, and Count I should therefore be dismissed against FMRCo.

### B.    FMTC is Not a Fiduciary as to the Challenged Conduct.

Count I should also be dismissed against FMTC because, as discussed at pages 12-19 of Fidelity's Suggestions, the limited fiduciary functions that FMTC has under the Trust Agreement

---

*facto* fiduciary" with respect to those functions and requiring that such "factual allegations must amount to more than a mere recitation of the statutory language defining a fiduciary's roles."); *Geiler v. Jones*, No. 8:05CV268, 2006 WL 407683, at *4 (D. Neb. Feb. 6, 2006) (dismissing for failure to establish fiduciary status); *Hartje v. Fed. Trade Comm'n*, No. Civ. 3-94-1288, 1995 WL 779156, at *3 (D. Minn. Dec. 4, 1995) (same); *cf. Erpelding v. Delaware Charter Guarantee & Trust Co.*, 162 Fed. Appx. 730, 732 (9th Cir. 2006) (reversing dismissal on preemption grounds because "the complaint does not allege facts that indicate that [defendant] exercised discretionary control over the Plan in a way that would qualify [it] as an ERISA fiduciary.").

[13]    In an apparent attempt to create some fiduciary status for FMRCo, plaintiffs also suggest, for the first time, that FMRCo is a fiduciary because it subcontracts with another Fidelity entity to provide "investment advisory services" to investment options offered through the Plans. (Opp. at 15.) No allegation of such "contract[ing]" appears anywhere in the Complaint, and, even if it did, it would be irrelevant to fiduciary status. Simply put, decisions by FMRCo as to how to assign its responsibilities internally among Fidelity business units does not constitute discretionary authority over the Plans.

do not involve the conduct challenged in the Complaint. As addressed above, plaintiffs'
Opposition blurs the line between FMTC's and FMRCo's relationships to the Plans, and makes
arguments regarding the supposed fiduciary status of both entities based on allegations directed
at only one of them. For example, plaintiffs argue that "Fidelity" "determined how much the
Plan paid for Revenue Sharing that went to offset recordkeeping and administration charges"
(Opp. at 16), even though the Complaint only makes such an allegation as to FMRCo (Compl. ¶
19). As a result, plaintiffs' arguments as to FMTC's fiduciary status are largely the same as their
arguments as to FMRCo, and should be rejected for the reasons addressed above.

Plaintiffs make three arguments specific to FMTC. First, they assert that because FMTC
has some fiduciary responsibilities (*e.g.*, it is the directed trustee of the Plans), it may be held
liable for alleged breaches by the Plans' other fiduciaries under ERISA § 405, 29 U.S.C. § 1105,
ERISA's co-fiduciary liability provision. Section 405, however, does not circumvent the rule
that a person who performs limited fiduciary functions does not become a fiduciary for all
purposes. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of
ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a
fiduciary (that is, was performing a fiduciary function) when taking the action subject to
complaint."); *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (investment advisor's
"fiduciary status was limited to its function as an investment advisor"); *DiFelice v. U.S. Airways,
Inc.*, 397 F. Supp. 2d 735, 757 (E.D.Va. 2005) ("[C]o-fiduciary liability, like the general
fiduciary liability from which it derives, is not an all or nothing proposition."). Consistent with
this rule, courts have refused to impose § 405 liability absent a meaningful connection between a
defendant's fiduciary role and the alleged breach of a co-fiduciary. *See, e.g., DiFelice,* 397 F.
Supp. 2d at 757 (recognizing, in dismissing claims against FMTC, that the limitation on a
directed trustee's duties under ERISA § 403, 29 U.S.C. § 1103, would have little effect if the

directed trustee's co-fiduciary liability under § 405 was not similarly limited); *Pension Fund-Mid*

*Jersey Trucking Indus. Local 701 v. Omni Funding Group*, 731 F. Supp. 161, 176 (D.N.J. 1990)

("ERISA does not contemplate that every plan fiduciary become an insurer of the entire plan.").

As discussed in Fidelity's Suggestions, the Complaint does not establish any nexus between

FMTC's limited fiduciary roles and the challenged conduct, and plaintiffs have thus failed to

state a claim against FMTC under § 405.[14]

Second, plaintiffs allege that FMTC "does the first-cut screening of investment options,

and has veto authority over the inclusion of investment options in the Plan." (Comp. ¶ 16.) As

discussed above with respect to FMRCo, however, the Trust Agreement makes clear that FMTC

has no authority to dictate the funds selected for the Plans, and could thus only identify funds for

the Pension Review Committee's consideration. It is well-established that the ability to provide

such information, or even to influence investment decisions, does not constitute control over plan

investments or assets. *See, e.g., Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir. 1993) ("Mere

influence over the trustee's investment decisions, however, is not effective control over plan

assets."); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (fiduciary status

requires final decision-making authority). Thus, regardless of any "screening" that FMTC

allegedly performed prior to identifying candidate funds for the Plans' consideration, the Trust

Agreements provided FMTC no authority to compel the Plans to limit their selections to the

identified funds. Moreover, to the extent plaintiffs suggest that FMTC required the Plans to

select certain investment options as a condition of their engagement of FMTC, the Plans'

fiduciaries could have declined to sign the Trust Agreement and hired another recordkeeper, or

terminated the Trust Agreement at any time after executing it. (Trust Agreement § 10 ("This

Agreement may be terminated at any time by the Sponsor upon sixty (60) days' notice in writing

---

[14]     Even if plaintiffs were able to state a claim under § 405, plaintiffs' claims for FMTC's alleged breach of

to the Trustee.").)  Plaintiffs do not—and cannot—allege that FMTC forced the Plans to hire it, or prevented them from terminating the Trust Agreement.

Plaintiffs' third allegation regarding FMTC's fiduciary status is that "FMTC is not the entity who provides recordkeeping services, despite the fact that its contract with ABB states otherwise."  (Opp. at 15.)  This assertion, like others in plaintiffs' Opposition, flatly contradicts the Complaint, which states that "FMTC is the Plan's recordkeeper and performs a variety of administrative tasks for the Plan."  (Compl. ¶ 14.)  Regardless, FMTC's decision to select an affiliate to perform services to the Plans cannot be a fiduciary act where, as here, the services themselves are ministerial rather than fiduciary in nature.  (Trust Agreement Preamble ("WHEREAS, the Trustee is willing to perform recordkeeping and administrative services for the Plan if the services are *purely ministerial in nature* and provided within a framework of plan provisions, guidelines and interpretations")) (emphasis added); 29 CFR § 2509.75-8(d)(2) ("a person who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary").  Moreover, even if FMTC's selection of an affiliate to perform recordkeeping functions (and its compensation of that affiliate from its own funds) could be construed as a fiduciary act, plaintiffs have alleged nothing to connect that act to any conduct challenged in the Complaint.  Count I should thus be dismissed as to FMTC.

## IV.  COUNT II IS SIMILARLY DEFECTIVE AND ALSO SEEKS RELIEF THAT IS UNAVAILABLE UNDER ERISA § 502(a)(3).

Count II should be dismissed against both Fidelity Defendants for the independent reasons that (1) as was true regarding Count I, the Fidelity Defendants are not fiduciaries with respect to the conduct challenged in the Complaint; and (2) Count II does not seek "appropriate equitable relief," authorized under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

---

duties arising under other provisions of ERISA, including § 404, should nonetheless be dismissed.

Plaintiffs' initial reaction to these challenges is to try to recharacterize Count II as, in part, a claim for *non-fiduciary* liability. (Opp. at 23.) Plaintiffs contend that because ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), does not authorize relief against non-fiduciaries, their claim for such relief under ERISA § 502(a)(3) is non-duplicative and thus "appropriate." The problem, yet again, is that plaintiffs' argument cannot be reconciled with the allegations in their Complaint. Count II is replete with conclusory allegations of the Fidelity Defendants' fiduciary status, including allegations that they "are the primary fiduciaries of the Plans" (¶ 85), that they "have exclusive discretion and control over the Plans' assets" (¶ 86), and that they "occupy the position of a common law trustee" (¶ 89). In addition, the central form of relief sought under Count II—"an accounting of all transactions, disbursements and dispositions" (Compl. ¶ 94)—is not available against non-fiduciaries under ERISA. Indeed, in *Reich v. Continental Casualty Co.*, 33 F.3d 754 (7th Cir. 1994), the Seventh Circuit upheld the dismissal of a § 502(a)(3) claim seeking an accounting precisely because it was asserted against a non-fiduciary. *Id.* at 756-57.[15]

Beyond their attempt to recast Count II as a claim for non-fiduciary liability, plaintiffs are unable to point to any reason why the relief they seek under Count II is not wholly duplicative of the relief already sought under Count I. Instead, plaintiffs rationalize that the Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489 (1996) only stated that duplicative relief under § 502(a)(3) is "normally" inappropriate. (Opp. at 25 n.17.) Plaintiffs argue, therefore, that the question of what circumstances are sufficiently "abnormal" to justify duplicative relief is a factual issue that cannot be decided on a motion to dismiss. (*Id.* at 19-20.) This Court, however, has applied *Varity* to dismiss § 502(a)(3) claims where plaintiffs assert claims under other parts of § 502, which, if successful, would provide adequate relief. *See Farthing v. United Healthcare of the*

---

[15]     Although the Supreme Court later held in *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), that ERISA liability may exist against a non-fiduciary in limited circumstances, it only authorized a

*Midwest*, No. 98-4262, 2000 U.S. Dist. LEXIS 21994, at *8-10 (W.D. Mo. Feb. 29, 2000). Further, even if some exception to the bar against claims for duplicative relief could theoretically exist, plaintiffs do not even provide a theory as to why an exception would apply in this case.

Plaintiffs also challenge the Fidelity Defendants' argument that plaintiffs' request for injunctive relief or an accounting is inappropriate to the extent that it seeks to compel fee-related disclosures on grounds that such disclosures are already subject to express statutory regimes. Plaintiffs' argument appears to be that the existence of enumerated statutory disclosure requirements does not strictly preclude a court from ever requiring additional disclosures. The Fidelity Defendants, however, do not contend that the Court could *never* require disclosures beyond those expressly mandated by statute. In the administration of an ERISA plan, unique circumstances can arise in which a fiduciary's disclosure of information may become inherent in the fiduciary's duties of loyalty. *See Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 751 (D.C. Cir. 1990) (where plaintiff asked his insurer whether he could continue his policy after termination from employment, insurer was obligated to inform him of the options for continued coverage other than technical continuation).

Plaintiffs have not pled such particularized circumstances here, however. To the contrary, plaintiffs challenge practices that are common in the 401(k) industry, as reflected in the legislative attention paid to the issue of 401(k) fees (*see* Fid. Sugg. at 17 n. 10) as well as plaintiffs' counsel's filing of over a dozen similar suits. Thus, a judicial determination that plaintiffs are entitled to the detailed information sought in the Complaint would, in effect, impose a sweeping disclosure regime that extends far beyond the disclosure that Congress and regulatory bodies have determined necessary both to plan participants and mutual fund investors

restitutionary remedy against such a non-fiduciary where the non-fiduciary is the "transferee of ill-gotten trust assets." *Id.* at 251. Plaintiffs' request for an accounting plainly does not fall within that limited scope of relief.

in general.[16]  The Fidelity Defendants submit that equitable relief that would impose such a

judicially-created disclosure scheme would be inappropriate, particularly where, as here,

Congress and regulatory agencies have addressed, and continue to consider, the issue through

legislative and regulatory processes.[17]  Moreover, this Court's consideration of such factors is

wholly consistent with the Supreme Court's expectation that "courts, in fashioning 'appropriate'

equitable relief . . . will respect the 'policy choices reflected in the inclusion of certain remedies

and the exclusion of others.'"  *Varity Corp.*, 516 U.S. at 515 (internal citation omitted).

Finally, plaintiffs appear to take issue with the Fidelity Defendants' argument that Count

II should be dismissed to the extent that it seeks monetary relief because such relief is not

"equitable" for the purposes of § 502(a)(3).  However, plaintiffs do nothing more than cite

various cases, treatises and briefs for the point that accounting and surcharge are equitable

remedies.  (Opp. at 24.)  Plaintiffs' point is irrelevant.  The Fidelity Defendants have not argued

---

[16]    Plaintiffs cite *Siemers v. Wells Fargo & Co.*, No. C 05-04518, 2007 WL 1140660 (N.D. Cal. Apr. 17, 2007) and *In re AIG Advisor Group Securities Litigation*, No. 06 CV 1625, 2007 WL 1213395 (E.D.N.Y. March 9, 2007), for the proposition that the details of "revenue sharing" are material to mutual fund investors.  (Opp. at 27.) These decisions interpret a different statutory regime (the securities laws) which imposes distinct duties and obligations.  Nevertheless, to the extent that the reasoning of these decisions may be applied by analogy to a fiduciary's disclosure obligations under ERISA, they represent a decidedly minority view and stand against legions of cases holding that information regarding "revenue sharing" is immaterial to mutual fund investors.  *See, e.g.*, *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 602 (S.D.N.Y. 2006) (holding that specific allocation of fees immaterial because "the great weight of authority in this District has found that the fees' disproportionality to services must be shown with regard to the *total* amount of fees charged") (emphasis in original); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) ("Defendants disclosed the fees and commissions charged to shareholders.  The precise allocation of those fees is not material information under the securities laws."); *In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*, No. 03 civ. 8208, 2006 U.S. Dist. LEXIS 20758, at *37-38 (S.D.N.Y. April 14, 2006) ("All fees charged to the shareholder were disclosed in the offering prospectuses . . . .  The allocation of the fees is immaterial, because it could have no effect on share price."); *Castillo v. Dean Witter Discover & Co.*, No. 97 Civ. 1272, 1998 WL 342050, at *5 (S.D.N.Y. June 25, 1998) ("Plaintiffs complain that they were not informed of the precise allocation of fees . . . but the allocation of fees would not affect the damages for the losses claimed by plaintiffs.  It is the total fees charged that would affect the asset value of a mutual fund and the decision to invest.").

[17]    Indeed, plaintiffs themselves highlight Congress' attention to this issue by citing Marvin Mann's testimony to a Senate committee.  (Opp. at 27 n. 19 (citing Statement of Marvin Mann, Chairman of the Independent Trustees of The Fidelity Funds, Before the Senate Committee on Banking, Housing and Urban Affairs on "Review of Current Investigations and Regulatory Actions Regarding the Mutual Fund Industry: Fund Operations and Governance" (Mar. 2, 2004), *available at* http://banking.senate.gov/_files/mann.pdf).)  After clarifying that he was speaking in his personal capacity and not as a trustee of the Fidelity mutual funds, Mr. Mann outlined his suggestions for industry-wide changes to existing law.  *Id.* at 16.  Notably, Mr. Mann acknowledged that all of his proposals were contained in bills that had been introduced in Congress and were thus already the subject of legislative deliberation.  *Id.*

that an accounting or a surcharge, at least as applied against a fiduciary, could not be an equitable remedy. Rather, the Fidelity Defendants have argued that the use of equitable labels does not entitle plaintiffs to assert a claim for what is quintessentially legal relief. *See Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1064 (8th Cir.), *cert. denied*, 126 S.Ct. 2969 (2006) ("Merely re-labeling the relief sought as 'restitution' or 'surcharge' does not alter the nature of a remedy from monetary to equitable.") Plaintiffs are seeking broad monetary relief, including "fees and expenses . . . paid to third parties, whether paid directly by the Plan[s] or indirectly transferred among Plan service providers or other third parties." (Compl. ¶ 95.) Recovery of such fees and expenses falls well outside the scope of equitable relief and thus cannot be sought under § 502(a)(3). *See Knieriem*, 434 F.3d at 1064 (upholding the dismissal of a claim for surcharge under § 502(a)(3) where the defendant held "no readily identifiable funds or property belonging to [plaintiff's] estate to form the basis of a constructive trust.").

## V. COUNT III SHOULD BE DISMISSED BECAUSE IT SEEKS RELIEF THAT IS UNAVAILABLE UNDER ERISA § 502(a)(3).

As discussed in Fidelity's Suggestions, Count III of the Complaint largely duplicates Count II and should thus be dismissed on similar grounds, namely that it does not seek either "appropriate" or "equitable" relief, as required under § 502(a)(3). In particular, although plaintiffs have cast Count III as a claim for "equitable" restitution, they have not pled, and cannot plead, the elements of a claim for such relief because the assets they seek to recover—the proceeds of Revenue Sharing payments—are not traceable to Plan assets. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (restitution exists in equity "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession").

Plaintiffs attempt to avoid this flaw in their claim by focusing narrowly on the Fidelity Defendants' point that any fees received by Fidelity entities are not traceable because they have

become part of Fidelity's general revenues. Plaintiffs contend that that issue is a factual one that cannot be decided on the present Motion. Plaintiffs, however, conspicuously ignore the Fidelity Defendants' separate argument that, according to plaintiffs' own Complaint, the so-called "Revenue Sharing payments" are not paid directly by the Plans but are instead the result of investments by the Plans in mutual funds and other commingled "Funds" which then "transfer" part of their revenues to other entities. As explained in Fidelity's Suggestions, once the Plans' assets are invested in commingled vehicles, the amounts invested cease to be specifically identifiable assets, and in the case of mutual funds, cease to be plans assets as a matter of law. *See Calhoon v. TWA*, 400 F.3d 593, 597 (8th Cir. 2005) (holding that monetary relief is equitable only where the money sought is "specifically identifiable" and can "clearly be traced to particular funds or property in the defendant's possession.") (quotation omitted). Plaintiffs provide no response to this argument, and Count III should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Fidelity respectfully requests that that this Court enter an Order granting the Fidelity Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Breach of Fiduciary Duty and dismiss plaintiffs' claims against Fidelity Management & Research Company and Fidelity Management Trust Company with prejudice.

Dated:  August 31, 2007

Respectfully submitted,

Richard N. Bien, #31398
Adam B. Walker, #56299
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Telephone: (816) 292-2000
Facsimile: (816) 292-2001

BY: ___/s/ Shannon M. Barrett___

Robert N. Eccles
Brian D. Boyle
Shannon M. Barrett
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

*Counsel for Defendants Fidelity Management
Trust Company and Fidelity Management &
Research Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

| | |
|---|---|
| Jerome J. Schlichter<br>Daniel V. Conlisk<br>Heather Lea<br>Schlicter, Bogard & Denton<br>100 South 4th Street, Suite 900<br>St. Louis, MO 63102<br><br>**Attorneys for Plaintiffs** | Brian T. Ortelere<br>William J. Delany<br>Catherine A. Cugell<br>Morgan, Lewis & Bockius, LLP<br>1701 Market Street<br>Philadelphia, PA 19101-2921<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** |
| Thomas E. Wack<br>Jeffrey S. Russell<br>Bryan Cave LLP<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102<br><br>**Attorneys for Defendants ABB Inc., John W. Cutler, Jr., Pension Review Committee of ABB Inc., Pension & Thrift Management Group of ABB Inc., and the Employee Benefits Committee of ABB Inc.** | |

/s/ Shannon M. Barrett
_____