IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| RONALD C. TUSSEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-04305-CV-NKL |
| | ) | |
| ABB, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiffs' Motion to Certify Class [Doc. # 71] in this

breach of fiduciary duty case brought pursuant to §§ 502(a) and 409(a) of the Employee

Retirement Income Security Act ("ERISA"). Plaintiffs seek certification of the following

class pursuant to Fed. R. Civ. P. 23:

> All persons, *excluding individual employees who are or may be liable for the
> conduct described in the Complaint*, who are or were participants or beneficiaries
> of the Plans and who are, were or may have been affected by the conduct set forth
> in the Complaint, as well as those who will become participants or beneficiaries of
> the Plans in the future.

Defendants ABB, Inc.("ABB"), and Fidelity Management Trust Company

("Fidelity Trust") and its affiliated advisor, Fidelity Management & Research Company

("Fidelity Management") raise several objections to the certification of Plaintiff's

proposed class based on the sufficiency of Plaintiffs' class-wide evidence, and argue

alternatively that in the event of certification, several reasons require the shortening of

1

the proposed class period and narrowing of class scope.  Because Plaintiffs satisfy each element required under Fed. R. Civ. P. Rule 23, Plaintiffs' motion will be GRANTED.

## I.    Background

ABB, Inc., is a subsidiary of ABB, Ltd., a Swiss corporation and a major manufacturer of power and automation equipment.  In 1992, ABB created a 401(k) plan for its employees (the "Plan"), which allowed Plan participants to contribute a portion of their income to individual retirement accounts.  Several investment options were selected for the Plan participants to choose from.  Each participant was able to select from that list his or her individual investment.  In 1995, ABB selected Fidelity Trust to manage the Plan.  (*Trust Agreement Between Asea Brown Boveri Inc. And Fidelity Management Trust Company*).  Plaintiffs allege that, until 2004, the Trust Agreement between ABB and Fidelity Trust required ABB to get the consent of Fidelity Trust before choosing investment options for the Plan.  (Am. Compl. ¶ 34).  As a result, Plan participants were steered toward investments which were managed, operated or advised by Fidelity Trust or one of its affiliates.  In addition, the investment options made available to the Plan participants charged higher fees to the Plan participants than were charged in the open market for the same product.  *Id*. ¶ 36.

ABB was designated as the administrator of the Plan and a named fiduciary of the Plan as that term is defined by ERISA.  Fidelity Trust and Fidelity Management are also alleged to be fiduciaries subject to ERISA.  Plaintiff Ronald C. Tussey ("Tussey")

2

has been employed by ABB since 1990[1] and participated in the Plan at all times during the proposed class period.

Tussey has brought this action pursuant to ERISA § 502(a) and § 409(a), on behalf of himself and a proposed class of Plaintiffs, alleging that ABB and the Fidelity Defendants breached their fiduciary duties under ERISA § 409(a), by allowing Fidelity Trust to steer the Plan toward expensive Fidelity funds which in turn paid Fidelity Trust for the business. ABB and the Fidelity Defendants are also alleged to have breached their fiduciary duty by causing Plan participants to incur unnecessary and improper fees in connection with the Plan. (Am. Compl. ¶ 2) ("[T]he fees and expenses paid by the Plan, and thus borne by Plan participants - that were and are unreasonable and excessive; not incurred solely for the benefit of the Plan and its participants; and undisclosed to participants . . . By subjecting the Plan and its participants to these investment options and the accompanying excessive fees and expenses, and by other conduct set forth below, Defendants violated their fiduciary obligations under ERISA . . . .").

Plaintiffs allege several ways in which ABB's alleged imprudence rose to the level of breaching its fiduciary duties: failing to capture additional compensation streams for the benefit of the Plan; failing to exercise substantial bargaining leverage for

---

[1]Tussey originally worked for Westinghouse in 1967 which was subsequently acquired by ABB in a series of acquisitions beginning in 1988 and ending in 1990. ABB Form 20-F, April 3, 2001, p. 4.

3

lower cost services; and, inclusion of actively managed investment options which cost more without providing any additional return to Plan participants. For instance, Plaintiffs allege that ABB and the Fidelity Defendants disguised the fees actually incurred by Plan participants by entering into revenue sharing agreements whereby Fidelity Trust would be paid a portion of its administrative fees from investment funds selected by Plan participants. Plaintiffs also allege that ABB and the Fidelity Defendants concealed the true nature of the fees and expenses incurred by the Plan by failing to disclose these revenue sharing arrangements to Plan participants and government regulators. *See generally id.* ¶¶ 68-73.

## II. Standing

As a threshold matter, the Fidelity Defendants claim that Tussey has no constitutional standing to bring an action related to investment alternatives in which he never participated. (Fidelity Brief, 18) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In order to satisfy the Article III standing requirement, Tussey must prove that the Plan has suffered an injury in fact which is (a) concrete and particularized, and (b) actual or imminent. *Id.* This is because a retirement plan "is nothing more than an aggregation of its participants' individual accounts, and therefore any loss to the Plan will have caused a loss to some or all of the [P]lan's individual accounts." *DiFelice v. US Airways, Inc.*, 235 F.R.D. 70, 76 (E.D. Va. 2006). The loss to the Plan assets due to ABB and the Fidelity Defendants' alleged failure to prudently select and monitor investment options is concrete and actual. The Fidelity Defendants' argument that

4

Tussey cannot advance any claims for investment options which he never elected is not persuasive because the losses occurred to the Plan as a whole. The standing inquiry in this context requires only that Tussey prove, for example, that the Fidelity Defendants steered ABB's investment options toward unjustifiably expensive funds. "If, but for the breach, the Fund would have earned more than it actually earned, there is a 'loss' for which the breaching fiduciary is liable." *See Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1243 (2d Cir. 1989). Tussey is not required to demonstrate his personal standing at all points throughout the class period in order to satisfy Article III's case or controversy requirement. *See Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993). Tussey has standing to pursue this action on behalf of the Plan.

## III. Legal Standards

### A. ERISA §§ 502(a)(2) and (3)

Tussey brings this action pursuant to ERISA § 502(a), which states, in pertinent part, as follows:

> A civil action may be brought . . . (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title; (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. §§ 1132(a). Plaintiffs allege in their Amended Complaint that ABB and the Fidelity Defendants breached their fiduciary duties under ERISA by providing high fee investment choices to participants and thereby causing the Plan to pay excess and

5

unreasonable fees and expenses. They also claim that the Defendants all breached their fiduciary duty by failing to reveal the revenue sharing agreements between Fidelity Trust and the companies which provided investment options for ABB's Plan. The Complaint goes on to allege many other ways in which the Defendants individually and collectively breached their fiduciary duties to the Plan. In Count I Plaintiffs seek relief under ERISA § 502(a)(2) which requires a breaching fiduciary to make good to the Plan "any losses to the [P]lan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . ." 29 U.S.C. § 1109(a). Plaintiffs also seek appropriate prospective injunctive relief. In Count II, Plaintiffs incorporate by reference the same breaches alleged in Count I and seek relief under ERISA § 502(a)(3). The relief sought is "an accounting of all transactions, disbursements, and dispositions occurring in, in connection with, or in respect of, the Plan and its assets." (Am Compl. ¶ 94). Such an accounting should include "detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties." (Am. Compl., ¶ 95). Plaintiffs also ask for an order requiring the Defendants to pay "all amounts . . . which . . . were improper, excessive and/or in violation of ERISA," and to disgorge ABB's administrative credits. (Am. Compl., ¶ 96). In Count III, Plaintiffs incorporate by reference the fiduciary breaches alleged in Count I and seek relief under ERISA § 502(a)(3) for equitable restitution of any funds obtained by Fidelity that should

6

have been used for the benefit of the Plan.  (Am. Compl., ¶ 107).  They also seek appropriate prospective injunctive relief.

### B.      Class Certification

In addition to generalized argument regarding the propriety of class certification, the Defendants argue that Tussey's claims are not suitable for class-wide relief because they are dependent on proof concerning each participant's individualized choice about which investment option to select and how those choices affected the fees charged to each individual participant in the Plan.  The Defendants argue that the Court must in fact examine the factual support for Tussey's claim to determine whether class certification is appropriate.

A motion for class certification involves a two part analysis.  First, the movant must demonstrate that the proposed class satisfies the requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P.  23(a).

Should Tussey satisfy these requirements, he must then demonstrate that the proposed class fits one of the three categories identified in Fed. R. Civ. P. 23(b).  The Plaintiffs bear the burden of showing that Rule 23 requirements are met and that the

7

class should be certified. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). To determine whether class certification is appropriate, the Court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). "In conducting this preliminary inquiry, however, the Court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* at 566. In considering class certification motions, the Court liberally construes Fed. R. Civ. P. 23(a), and does not resolve the merits of the dispute. *See Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003); *In re Control Data Corp. Sec. Litigation*, 116 F.R.D. 216, 219 (D. Minn. 1986) *rev'd on other grounds In re Control Data Corp. Sec. Litigation*, 933 F.2d 616 (8th Cir. 1991).

### C. Federal Rule of Civil Procedure 23(a)

#### 1. Numerosity

To address the numerosity requirement, the Court should examine the number of persons in a proposed class, the nature of the action, the size of the individual claims and the inconvenience of trying individual claims, as well as other factors. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). The Plan had approximately 12,567 participants at the end of calendar year 2005. ABB and the Fidelity Defendants do not dispute that the putative class satisfies the numerosity requirement. *See e.g.*, *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) (certifying a class of between 20

8

and 65).

## 2. Commonality

The commonality requirement of Rule 23(a)(2) is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). In determining commonality, "the appropriate focus is [on] the conduct of the defendant[s], not the plaintiffs." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207-08 (W.D. Mo. 2006) (citing *DiFelice v. US Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) ("the central question at issue in this litigation is whether US Airways breached its fiduciary duty to select and monitor investment options prudently.")); *In re Williams Co. ERISA Litig.*, 231 F.R.D. 416, 421-22 (N.D. Okla. 2005) ("multiple common issues exist, including but not limited to: whether Defendants acted as fiduciaries; what duties, if any, were violated by Defendants with respect to the Plan; and whether Defendants improperly withheld information from Plan participants."); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 464 (E.D. Pa. 2000) ("common questions include whether the defendants acted as fiduciaries, what communications they made to plan participants and beneficiaries, and whether those communications contained material misrepresentations.")).

ABB and the Fidelity Defendants urge the Court to deny class certification because individualized damage inquiries will dwarf the liability inquiry. (ABB Brief, 7-23); (Fidelity Brief, 9-20). Specifically, ABB and the Fidelity Defendants assert that

Case 2:06-cv-04305-NKL   Document 183   Filed 12/03/07   Page 9 of 23

"excessive fee," "unreasonable compensation" and "non-disclosure" claims are necessarily individualized, incapable of class-wide proof and point out that any calculation of damages in this case will require a comparison of the actual value of individual accounts and the hypothetical value of the Plan assuming ABB and the Fidelity Defendants had not injured the Plan with excessive fees. *See e.g.* (Fidelity Brief, 6).[2] The Court disagrees.

As previously stated, to determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). Citing *Blades v. Monsanto* and *Sanft v. Winnebago Indus. Inc.*, 214 F.R.D. 514 (N.D. Iowa 2003), ABB and the Fidelity Defendants encourage the Court to probe beyond the class certification analysis and into the merits of Plaintiffs' case. (ABB Brief, 6); (Fidelity Brief, 9). The Fidelity Defendants and ABB, however, overstate the extent to which a court may probe into the merits when determining whether common questions of law and fact make class certification appropriate. In the *Blades* case, the Eighth Circuit did authorize district judges to inquire into the merits 1) when a factual dispute necessary for deciding class

---

[2]ABB prematurely asserts arguments based on individual control of 401(k) accounts necessary to prove a defense available to them under ERISA § 404(c)'s safe harbor provision. ERISA § 404 (c) shields fiduciaries from liability for "any loss, or by reason of any breach, which results from" a participant's control. This is an affirmative defense which must be proven and is not an appropriate basis to deny class certification. *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 213 (W.D. Mo. 2006).

10

certification overlaps with the merits; but only 2) insofar as necessary to "determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations are true, to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). Plaintiff's evidence is sufficient to make out a prima facie case that excessive fees were charged. Taking into account the fees collected by Fidelity Trust from the Plan directly, and the revenue sharing Fidelity collected from the investment companies which were selected as investment options for the Plan, a reasonable fact finder could conclude that the Fidelity Defendants collected excessive fees, given the national data. Because all members of the class are interested in these excess fees being returned to the Plan, there is clearly a common question of both fact and law that satisfies the commonality requirement.

ABB and the Fidelity Defendants urge the Court to prospectively consider what would happen *if* Plaintiffs succeed in proving a breach of fiduciary duty. They contend that how those excess fees will be returned to individual Plan participants makes class certification inappropriate because participants chose different investment options based on disclosed expense ratios. This inquiry, however, is well beyond the proper scope of inquiry for certifying the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). If the Plaintiffs recover any damages on behalf of the Plan, it will be up to the Plan administrator to determine how those damages are to be distributed. As previously stated, the common focus is on the conduct of the Defendants.

11

ABB and the Fidelity Defendants cite *Wiseman v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482 (W.D.N.C. 2003) and *Langbecker v. Elec. Data Sys. Corp.* 476 F.3d 299 (5th Cir. 2007) for the proposition that individual issues in this case will overwhelm the basic determination of liability. However, those courts considering and rejecting the *Wiseman* analysis have done so because "commonality requires that there be only one common issue of law or fact." *See e.g. In re Williams Co. ERISA Litig.*, 231 F.R.D. 416, 421-422 (N.D. Okla. 2005). Also, *Langbecker* is factually distinguishable. In that case, appellants sought injunctive relief that would have dissolved the stock fund whose declining value gave rise to the suit. Appellants were also contesting conduct that involved "a multitude of considerations over a period of years." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 2007 U.S. Dist. LEXIS 56389 (N.D. Ill. July 31, 2007). In contrast, Plaintiffs and all class members seek relief for a fiduciary breach to ABB's plan and ask that improperly charged fees be returned to the Plan. ABB and the Fidelity Defendants' argument would upend the basic rule that "in a breach of fiduciary duty claim" the "appropriate focus" is on the conduct of the defendant, not the plaintiff. *Id.* (citing *In re Ikon Office Solutions, Inc*., 191 F.R.D. 457, 465 (E.D. Pa. 2000)). *See In re Aquila ERISA Litigation*, 237 F.R.D. 202 (W.D. Mo. 2006).

While only one common question or fact is required, Plaintiffs allege several common questions of law and fact which meet Fed. R. Civ. P. 23(b)'s commonality requirement, including (1) whether ABB and the Fidelity Defendants breached their

fiduciary duties owed to the Plan, Plan participants and beneficiaries; (2) whether ABB and the Fidelity Defendants' communications to the Plan and Plan participants provided complete and accurate information concerning the costs of investing in Fidelity-advised funds; (3) whether ABB and the Fidelity Defendants agreed to set excessive fees; (4) whether the Plan and Plan participants were injured by such alleged breaches; and (5) whether the Class is entitled to damages and injunctive relief. *See Loomis v. Exelon Corp.*, 2007 U.S. Dist. LEXIS 46893 (N.D. Ill. June 26, 2007),[3] and *In re Aquila ERISA Litigation*, 237 F.R.D. 202 (W.D. Mo. 2006).

Moreover, should the Plaintiffs succeed in proving their allegations, the Court must address the following issues also common to all class members: (1) the point in time at which the Plan and Plan participants suffered injury as a result of ABB and the Fidelity Defendants' conduct; and (2) the losses suffered by the Plan as a result of the breach by ABB and the Fidelity Defendants. Because these issues involve the acts or omissions of ABB and the Fidelity Defendants, they are common to all Plan participants who might bring an action on behalf of the Plan.[4]

---

[3]The Fidelity Defendants urge the Court to disregard *Loomis* because the district court in *Loomis* had already dismissed some of plaintiffs' claims and because the fees at issue in that case were flat administrative fees paid by each participant. Although the Court does not uniquely rely on *Loomis* in reaching its conclusion that Plaintiffs have satisfied the commonality requirement of Fed. R. Civ. P. 23(a), the Court does not find the Fidelity Defendants' arguments persuasive. In *Loomis*, as here, the plaintiffs claimed that the fiduciaries of their Plan allowed investment managers and other service providers to charge excessive fees to the Plan's detriment.

[4]Because the Court need find only one question of fact or law common to the class, further discussion of the merits of these allegations is not necessary.

13

Finally, ABB and the Fidelity Defendants wrongly accuse Plaintiffs of failing to set forth specific facts in support of their allegations. Plaintiffs have alleged with specificity occasions of fee misrepresentation (Plaintiffs Reply Brief, 5), excessive fees (Plaintiffs Reply Brief, Ex. 2) and unreasonable compensation. Plaintiffs' generalized evidence includes third-party analyses showing that the Fidelity Defendants charged ABB per-participant fees in excess of rates paid by similar plans[5]; that ABB and the Fidelity Defendants offered investment options whose sub-asset classes "may create participant confusion in selecting options"; the weighted average expense ratio was high compared to peer plans; and, that the Fidelity Defendants used the Plan to subsidize other outsourcing services.

### 3. Typicality

The third requirement of Fed. R. Civ. P. 23(a)(3) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). The burden is "easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (ruling that plaintiffs satisfied the typicality requirement even

---

[5]*See* Nell Hennessy, *Follow the Money: ERISA Plan Investments in Mutual Funds and Insurance*, 38 J. Marshall L. Rev. 867, 877 (2005) ("At most, reasonable compensation should mean compensation commensurate with that paid by similar plans for similar services to unaffiliated third parties.").

though they carried different mortgage instruments; important inquiry surrounded

mortgage servicer's over-escrowing of funds).

Given the representative nature of a suit filed pursuant to ERISA § 502(a)(2) and

the injunctive relief sought pursuant to ERISA §502(a)(3), Tussey's claim is sufficiently

typical of those of other class members. *See, e.g.*, *In re Aquila ERISA Litigation, supra;*

*In re ADC Telecoms ERISA Litig.*, 2005 U.S. Dist. LEXIS 20224 (D. Minn. 2005); *In re*

*Syncor Erisa Litigation*, 227 F.R.D. 338, 344 (C.D. Cal. 2005) (finding typicality in a §

502(a)(2) suit because "each of the plaintiffs was a Syncor employee and participated in

the Plan during the class period.")).  ABB and the Fidelity Defendants correctly argue

that, if proven, the Court must determine when and to what extent their conduct injured

the value of the Plan.  ABB and the Fidelity Defendants err, however, when they argue

that because each Plan participant has individual "investment strategies and practices,"

each participant, including Tussey, will have widely divergent and conflicting interests

in prosecuting this case.  (ABB Brief, 12).  Because this lawsuit is brought on behalf of

the Plan, individual participants' varying damages are irrelevant.  Also, to the

extent members of the class have interests that are slightly divergent with each other, or

with the Plan itself, this slight divergence is greatly outweighed by shared interests in

establishing ABB's and the Fidelity Defendants' liability to the Plan.  *DiFelice v. US*

*Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006); *In re ADC Telecoms ERISA Litig.*,

2005 U.S. Dist. LEXIS 20224 (D. Minn. 2005).

ABB and the Fidelity Defendants also argue that in order to prevail on the claim that the Defendants are liable for failing to disclose the revenue sharing agreements, Plaintiffs will have to prove that fee and revenue sharing information was material and each putative class member relied on the information. (ABB Brief, 15). ABB argues that the deposition testimony shows that 1) the need for this inquiry defeats typicality, and 2) Plaintiffs did not rely on fee or expense information. *Id.* During their depositions, Tussey and Plaintiffs Hendron and Pinnell testified that they did not rely on fee information in making their investment decisions. (ABB Brief, n.23).

First, for the Plaintiffs to prevail on its claim that the Defendants failed to meet their disclosure obligations under ERISA, Tussey need only show such an obligation and a breach. *See Jensen v. Sipco, Inc.*, 38 F.3d 945 (8th Cir. 1994). Whether ABB and the Fidelity Defendants failed to disclose certain information to a group is just the kind of issue that is appropriately handled in a class action. Second, individual issues of materiality and reliance will not present a bar to certification. *Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D. Ill. 1986) ("It is well established that individual issues of reliance do not thwart class actions."). Here, the alleged misrepresentations were made to participants on a class-wide basis. Typicality should be determined with reference to the defendants' actions, not with respect to individualized defenses it might raise against particular members. *In re Control Data Corp. Sec. Litigation*, 116 F.R.D. 216, 221 (D.

Minn. 1986) *rev'd on other grounds In re Control Data Corp. Sec. Litigation*, 933 F.2d 616 (8th Cir. 1991).[6]

### 4. Adequacy

The class representative and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4). The purpose of the adequacy requirement is to ensure that there are no potential "conflicts of interest between the named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Fidelity Defendants do not contest the adequacy of class counsel, but contend that this action is essentially driven by counsel representing parties "who lack basic knowledge of facts or claims relevant to the case." (Fidelity Brief, 20). (citing *Bodner v. Oreck Direct LLC*, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)). In support of this contention, the Fidelity Defendants assert that Plaintiffs called a toll-free number, met with proposed class counsel, then decided to prosecute this action. (Fidelity Brief, 21). The Fidelity Defendants argue that Tussey does not understand the allegations in the Complaint. *Id*. The record shows that Tussey was alerted to potential improprieties in mutual fund management fees as a result of public service news programs and personal internet research he and his wife conducted. (Tussey Dep. 49-51). Even if Tussey acquired greater understanding of mutual fund fee issues through

---

[6]The Defendants' arguments concerning ERISA's safe harbor provisions are best resolved at a later time. An affirmative defense on which Defendants bear the burden of proof is not appropriately resolved in the context of a motion to certify.

consulting counsel, this is consistent with the role of the attorney in advising his or her clients as to legal rights and remedies. *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977). Tussey's investing strategy does not subject him to a unique defense because, as has been noted, the loss causation inquiry is independent of the actions of particular Plan participants. For these reasons, Tussey and class counsel are adequate representatives of the class.

### D.     Federal Rule of Civil Procedure 23(b)

Tussey seeks to certify this class pursuant to Rule 23(b)(1), which provides that a class may be certified if:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Subsection A attempts to avoid possible prejudice to ABB and the Fidelity Defendants, while subsection B is concerned with prejudice to the putative class members. Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1). *See In re Williams Co. ERISA Litig.*, 231 F.R.D. 416, 425 (N.D. Okla. 2005) ("due to ERISA's distinctive 'representative capacity' and remedial provisions, class treatment under Rule

18

23(b)(1)(B) is appropriate in this case."). *In re Ikon*, 191 F.R.D. at 466 ("given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief."); *Kane v. United Independent Union Welfare Fund*, 1998 U.S. Dist. LEXIS 1965 (E.D. Pa. Feb. 24, 1998) (holding that since claims are brought pursuant to § 502(a)(2) by plaintiffs "in their representative capacity, the Court finds that certification for these claims is proper under Rule 23(b)(1)(B)."); *Koch v. Dwyer*, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. March 23, 2001) ("Since Plaintiff is seeking relief on behalf of both Plans as a whole, prosecution of separate actions by individual members would create a risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications."). "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Global Crossing Ltd. Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (quoting *Kolar v. Rite Aid Corp.*, 2003 U.S. Dist. LEXIS 3646 (E.D.Pa. March 11, 2003)). The Court will certify each of Tussey's claims under Fed. R. Civ. P. 23(b)(1)(A) and (B).

### E. Federal Rule of Civil Procedure 23(c)

Since certification of a class of plaintiffs is appropriate in this case under Fed. R. Civ. P. 23(b)(1)(A) and (B), the Court must resolve the parties' disagreement regarding the appropriate class scope. Fed. R. Civ. P. 23(c)(1)(B). The Fidelity Defendants contend that the class period Tussey seeks to certify - including former and future Plan participants as well as those without a balance in the last six years - is overly broad, and a

19

more appropriate class period would begin on December 29, 2000, the earliest date of Tussey's investment in the Plan that does not fall outside the ERISA-mandated six-year statute of limitations.

The Fidelity Defendants cite *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3d Cir. 2000), for the proposition that future class members would render the class infeasible. In *Holmes*, the Third Circuit ruled that the district court's exclusion of future members for delayed interest payments under ERISA was not "clearly erroneous." *Id.* However, the Eighth Circuit's reasoning in *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995), leads the Court to the conclusion that where injunctive relief is requested[7] by Plaintiffs, inclusion of future Plan participants is appropriate. In *DeBoer*, the Eighth Circuit considered a scheme by which a bank was over-escrowing its customers' accounts. The defendant in the case argued that the commonality and typicality prongs of Fed. R. Civ. P. 23(a) had not been met because the bank offered differing types of mortgage contracts which raised different questions of law and fact. The Court rejected this claim noting, "the main point of contention centers on Mellon's alleged over-escrowing of funds, and all members of the class are interested in a satisfactory common course of conduct in the future servicing of their loans, despite the fact that some class members have different mortgage contracts." *Id.* at 1174. The Court finds this language persuasive as to Tussey's claims.

---

[7] Injunctive relief is sought in all three Counts of Plaintiffs' First Amended Complaint.

The Fidelity Defendants next argue that former Plan participants should be excluded from the class because they lack standing to sue under ERISA. Only a "participant" or a "beneficiary" may bring a civil enforcement action under §§ 502(a)(2) and (a)(3). A participant or a beneficiary is defined in ERISA as someone "who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. §§ 1002(7), (8). The Eighth Circuit construed this statutory definition in *Adamson v. Armco, Inc.*, 44 F.3d 650, 653-54 (8th Cir. 1995) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) ("*In our view the term 'participant' is naturally read to mean* either employees in, or reasonably expected to be in, currently covered employment, or *former employees* who have a reasonable expectation of returning to covered employment or *who have a colorable claim to vested benefits*."). *Id.* (Emphasis in original; citations and internal quotations omitted.). In order to establish that he may become eligible for benefits, a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. In *Adamson*, the Eighth Circuit specifically concluded that former participants whose claims were time-barred could not bring an action under ERISA § 502. However, former Plan participants whose claims are not time-barred have a colorable claim to vested benefits. *See Bridges v. Amer. Elec. Power Co.*, 498 F.3d 442, 444 (6th Cir. Aug. 15, 2007); *Harzewksi v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294 (3d Cir. 2007). The class properly includes former Plan participants whose claims are not time-barred.

The Fidelity Defendants finally and correctly argue that former participants may be included only to the extent that their claims are not time barred. (Fidelity Brief, 24) (citing *Great Rivers Coop v. Farmland Indus.*, 120 F.3d 893, 899 (8th Cir. 1997)). ERISA contains a six-year statute of limitations. ERISA § 413, 29 U.S.C. § 1113. Under ERISA § 413 and the Eighth Circuit's decision in *Cont'l Assur. Co. v.. Cedar Rapids Pediatric Clinic*, 957 F.2d 588, 593 (8th Cir. 1992), the six-year statute of limitations may be tolled where a party shows affirmative misrepresentation and concealment. Tussey correctly argues that statute of limitations is an affirmative defense which has been raised by the parties in separate briefing. (Pl. Reply Brief, 10). For that reason, the issue is not yet properly before the Court.

## IV. Conclusion

Pursuant to Fed. R. Civ. P. 23(c), the Court certifies the following class:

All persons, *excluding individual employees who are liable for the conduct described in the Complaint*, who are or were participants or beneficiaries of the Plans and who are or were affected by the conduct set forth in the Complaint, as well as those who will become participants or beneficiaries of the Plans in the future.

The Court will not adopt the Plaintiffs' proposed language for participants or beneficiaries who "may have been" affected by ABB's and the Fidelity Defendants' conduct. When certifying a class action the Court "must define the class and the class claims, issues or defenses . . . ." Fed. R. Civ. P. 23(c)(1)(B). Certifying a class which "may have been" affected by defendants' conduct would improperly widen the scope of conduct and claims at issue in this litigation.

22

Pursuant to Fed. R. Civ. P. 23(g), the Court appoints the law firm of Schlichter, Bogard & Denton as class counsel. This certification is subject to the Court's determination of the correct statute of limitations period.

Accordingly, it is hereby

ORDERED that Tussey's Motion to Certify Class [Doc. # 71] is GRANTED.


                                        s/ Nanette K. Laughrey
                                            NANETTE K. LAUGHREY
                                            United States District Judge

Dated:  December 3, 2007
Jefferson City, Missouri