IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| RONALD C. TUSSEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-04305-CV-NKL |
| | ) | |
| ABB, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This is a breach of fiduciary duty case brought pursuant to §§ 502(a) and 409(a) of the Employee Retirement Income Security Act ("ERISA") by Plaintiffs on behalf of a class of persons who are or were participants in ABB's 401(k) plan. Pending before the Court are the Defendants' Motions to Dismiss [Docs. # 97, # 102 and # 155]. Also pending before the Court is Plaintiffs' Motion to Strike Extraneous Materials and Defective Motions for Summary Judgment. The motions are DENIED.

**I.  BACKGROUND**

ABB, Inc., is a subsidiary of ABB, Ltd., a Swiss corporation and a major manufacturer of power and automation equipment. In 1992, ABB created a 401(k) plan for its employees (the "Plan"), which allowed Plan participants to contribute a portion of their income to individual retirement accounts. Several investment options were selected for the Plan participants to choose from. Each participant was able to select his or her individual investment from that list.

1

In 1995, ABB selected Fidelity Trust to manage the Plan. In return for its services, Fidelity Trust received two forms of compensation. First, Fidelity Trust received "hard dollar" fees. "Hard dollar" fees are determined based on the number of participants or transactions. For example, a provider may charge $1,000, plus $15 per participant, on an annual basis. The Plan writes a check to the service provider, such as Fidelity Trust, and that amount is reported annually. Second, Fidelity Trust receives "revenue sharing" payments from companies which provide investment options to the Plan. Those companies charge fees to the Plan participants and a portion of the fees are given to Fidelity Trust. The fact and the amount of the revenue sharing payments are not disclosed to Plan participants.

Until 2004, the trust agreement permitted Fidelity Trust to withhold its consent to any investment option not managed, operated or advised by Fidelity Management. (Am. Compl. ¶ 34). In short, Plaintiffs allege that Fidelity Trust steered the Plan toward expensive Fidelity Management managed funds in exchange for money and ABB was either aware of the arrangement or should have been. Plaintiffs further allege several ways in which Defendants' imprudence rose to the level of breaching their fiduciary duties: failing to capture additional compensation streams for the benefit of the Plan; failure to exercise substantial bargaining leverage for lower cost services; and inclusion of actively managed investment options which cost more without providing any additional return to Plan participants. *Id*. ¶¶ 51-54, 64-67, 69. Plaintiffs further allege that

2

Defendants concealed the true nature of the fees and expenses incurred by the Plan by failing to disclose the details of the revenue sharing agreements to Plan participants.

## II. ABB'S MOTION TO DISMISS

The ABB Defendants have moved to dismiss Plaintiffs' claims based on a two-step analysis. First, the ABB Defendants argue that Plaintiffs have not and cannot show that the ABB Defendants violated their fiduciary duty by failing to disclose the actual fees paid by the Plan to Fidelity Trust. This is because the ABB Defendants made all disclosures required by ERISA and the Department of Labor's ("DOL") regulations. (Doc. 99, 1, 8-13). Second, because they made the required disclosures, ABB is fully immunized under ERISA § 404(c) "from any claimed fiduciary breaches stemming from the participants' individual elections regarding those investments." (Doc. 99, 14-15).

Under ERISA § 404(c), where a pension plan "provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)," then "no person who is otherwise a fiduciary shall be liable . . . for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1). To qualify for Section 404(c) protection, ABB must have complied with the lengthy requirements of 29 C.F.R. § 2550.404c-1 which specify the components of disclosure and choice regarding the Plan. 29 U.S.C. § 1104(c)(1).

3

Based on Eighth Circuit precedent, the Court agrees that the ABB Defendants had no duty to disclose the Fidelity Defendants' revenue sharing agreements. In *Jensen v. Sipco, Inc.*, the Eighth Circuit addressed an analogous matter. There, the plaintiff retirees brought an ERISA-based class action against their former employer and its sister company alleging that plaintiffs were entitled to vested medical benefits under two medical benefit plans for salaried pensioners. 38 F.3d 945 (8th Cir. 1994). At issue in *Jensen* was whether the employers' failure to disclose that a welfare plan's benefits are not vested was a material misrepresentation or a breach of the plan administrators' fiduciary duties. *Id.* at 952. The Eighth Circuit commented that:

> Adequate disclosure to employees is one of ERISA's major purposes. Recognizing that employee benefit plans are usually lengthy and highly technical documents, Congress required plan administrators to furnish [Summary Plan Descriptions ("SPDs")] to each plan participant and beneficiary. *See* 29 U.S.C. § 1022(a)(1). Congress also stated very specifically what an SPD must contain . . . . *Id.*

After finding that the regulations did not require that a welfare plan SPD specifically disclose that its benefits are not vested, the *Jensen* court concluded that "[g]iven the importance of this issue and the Department's thorough approach to the questions of disclosure, its failure to require SPDs to disclose non-vesting cannot be an inadvertent omission." *Id.* Accordingly, the *Jensen* court gave "appropriate deference" to the DOL's interpretation of the statute and held that the employers' failure to disclose the non-vesting information was not a material misrepresentation and was not a breach of fiduciary duty. *Id.*

4

Similarly, in *Anderson v. Resolution Trust Corp.*, the Eighth Circuit held that ERISA's general prudence requirement may not be invoked to create a more stringent disclosure requirement if the statute already dictates what notice is required. 66 F.3d 956, 960 (8th Cir. 1995). The *Anderson* court held as follows:

> ERISA fiduciaries are prohibited from materially misleading plan participants, and fiduciaries sometimes have a duty to disclose information. Because . . . the [defendant's] failure to disclose the suspension of benefit accruals was lawful under the applicable ERISA notice provision, the failure to disclose cannot be a breach of fiduciary duty. *Id.*

Neither ERISA, nor the DOL require that revenue sharing be specifically identified and disclosed to Plan participants. That the DOL is considering amending its regulations to require the disclosure of revenue sharing is further evidence that revenue sharing need not be disclosed under today's ERISA. As required by the Eighth Circuit's holdings in *Jensen* and *Anderson*, the Court defers to ERISA and the DOL's specific disclosure and reporting requirements. As a result, the ABB Defendants could not have breached their fiduciary duty by failing to disclose the portion of the Plan's fees and expenses attributable to revenue sharing.

Even though ABB has established that it had no duty to disclose Fidelity Trust's revenue sharing agreements, ABB still cannot prevail on its motion to dismiss based on Section 404(c) of ERISA. First, the majority of cases have held that Section 404(c) is an affirmative defense that must be pleaded and proved at trial and is not appropriately resolved in a motion to dismiss. *See Spano v. Boeing Co.*, 2007 U.S. Dist. LEXIS 28774 (S.D. Ill. April 18, 2007); *George v. Kraft Foods Global, Inc.*, 2007 U.S. Dist. LEXIS

5

18650 (S.D. Ill. Mar. 16, 2007). *See also Pedraza v. Coca-Cola Co.,* 456 F. Supp. 2d 1262, 1269 n.11 (N.D. Ga. 2006); *Woods v. Southern Co.,* 396 F. Supp. 2d 1351, 1367 (N.D. Ga. 2005); *In re AEP,* 327 F. Supp. 2d at 829-30; *In re Reliant Energy ERISA Litig.,* 336 F. Supp. 2d 646, 669 (S.D. Tex. 2004). Second, even if the Court accepts that a Section 404(c) defense is properly raised on a motion to dismiss, ABB has failed to show as a matter of law that the Plan's losses were caused solely by choices made by Plan participants.

The ABB Defendants rely heavily on *Hecker v. Deere & Co.*, 496 F. Supp.2d 967 (W.D. Wis. June 20, 2007), to show that its 404(c) defense has been established as a matter of law. While *Hecker* is factually on point, *Hecker's* holding that a 404(c) defense can be established as a matter of law at the pleading stage represents a clear minority view. In addition, the Court disagrees with the conclusion in *Hecker* that knowledge about revenue sharing agreements is irrelevant to a Section 404(c) defense. Because a fiduciary cannot be sued for failing to disclose revenue sharing agreements does not mean that its failure to disclose is *irrelevant* to a Section 404(c) defense. Such a defense is only applicable if the fiduciary proves that any losses sustained by the Plan are *caused* by a plan participant exercising control over his or her investments. When a Plan participant chooses an investment with a higher expense ratio, it is logical to assume that the participant thought he or she was getting some benefit in return for the fund's higher overhead. The participant's choice might change if he or she knew that the additional expense was going to the Plan's fiduciary in exchange for choosing that investment

6

company to become one of the limited companies permitted to sell their products to Plan participants, or as an undisclosed way to subsidize the administrative costs of the Plan. Thus, where such revenue sharing agreements are not disclosed, a reasonable fact finder could conclude that losses to the Plan as a result of revenue sharing were not caused by the Plan participant who was ignorant of the revenue sharing arrangement when he or she chose their investment.

In other words, ABB effectively argues that Plan participants are the intervening cause of their own loss, even though they were unaware of their fiduciary's conduct, merely because they were told the cost and expense ratio of their chosen investment. It is one thing to preclude a claim for failure to disclose and another to establish causation as a matter of law when the Plan participants did not understand the consequence of their choice but their fiduciaries did. The record in this case is far too thin to resolve the question of causation on a motion to dismiss.[1]

In addition, Plaintiffs have alleged other fiduciary breaches besides ABB's failure to disclose revenue sharing. For example, Plaintiffs have alleged, with supporting facts, that the ABB Defendants breached their core fiduciary duties by the manner in which investment options were chosen. Thus, in order to prevail on their motion to dismiss, the ABB Defendants must demonstrate that they are immune under Section 404(c) for all

---

[1]Because Plan participants did not know about revenue sharing, the issue of causation will not vary between Plan participants. This is another reason why class certification is appropriate in this case.

7

fiduciary breaches, not just losses caused by failing to disclose revenue sharing. Case law indicates that they cannot establish their defense on this record. Both *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007), and *Schied v. Dynegy, Inc.*, 309 F. Supp. 2d 861, 894 n.57 (S.D. Tex. 2004), suggest that a Section 404(c) affirmative defense is not available to immunize a fiduciary breach involving the selection of investment options for defined contribution plans.

ABB cites *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 312 (5th Cir. Jan. 18, 2007), and *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 445 (3d Cir. 1996), for the proposition that, as long as ABB meets its disclosure requirements, Section 404(c) absolves it of all liability for breaching any fiduciary duty. Neither case stands for that proposition. In *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 312 (5th Cir. Jan. 18, 2007), the Fifth Circuit held that a Section 404(c) defense applies to losses sustained by a defined contribution retirement plan and that should be considered to determine whether a class action was appropriate. The Third Circuit, in *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 445 (3d Cir. 1996), held that a fiduciary can be absolved of its fiduciary breaches if losses are caused by the participant's control over his or her individual account, and not the fiduciary's misconduct. This of course is a correct statement of law but it was not applied by the Third Circuit to a factually analogous issue. Thus, neither the Third nor the Fifth Circuit courts held that Section 404(c) provides an absolute bar to recovery for all fiduciary breaches merely because the Defendants provided information required by ERISA and the DOL. Indeed, *Langbecker* recognized that the applicability of the 404(c)

8

affirmative defense was factually complex and remanded for the development of the record. Because the Court cannot rule on ABB's affirmative defense at this time, Plaintiffs' Motion to Strike is denied as moot.

## III. THE FIDELITY DEFENDANTS' MOTION TO DISMISS

### A. Plaintiffs' Allegations Common to Fidelity Defendants

#### 1. Fidelity Fees were "Excessive" or "Unreasonable"

In their Amended Complaint, Plaintiffs allege that Fidelity Trust and Fidelity Management breached their fiduciary duties to Plan participants by providing investment options whose fees and expenses are excessive and not properly disclosed. (Am. Compl. ¶¶ 21-25, 68-73). Fidelity Trust and Fidelity Management together claim that Plaintiffs' Amended Complaint should be dismissed in its entirety because it fails to allege sufficient facts that the fees charged to the Plan were "excessive" or "unreasonable." (Doc. 103, 5-8). The Fidelity Defendants, relying on *Herman v Mercantile Bank*, 143 F.3d 419 (8th Cir. 1998), argue that Plaintiffs have failed to allege "facts that plausibly suggest that the fees paid by the Plans fall outside the range of fees that a hypothetical prudent fiduciary" would pay as consideration for Fidelity services. *Id.* at 421. First, the *Herman* decision had nothing to do with pleading requirements. It was an appeal from a final judgment. Second, while *Herman* does acknowledge that a fiduciary is relieved from liability for failing to make a good faith effort to determine the value of a stock if it could show that a "hypothetical prudent fiduciary" would pay a similar value, it does not indicate who has the burden of proof on the issue. *See Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915,

9

919 (8th Cir. 1984) ("The trustees are not entitled to summary judgment on the causation theory that a hypothetical prudent fiduciary would have decided to secure the plaintiffs' notes with Company stock . . . . We do not know what [the trustees] should have known because the relevant facts are disputed.") (internal citation omitted). The prudent investor issue more closely resembles a defense and not an element of the Plaintiffs' complaint. Third, even if the hypothetical prudent fiduciary standard applied at the pleading stage, and Plaintiffs have the burden of proof on this issue, Plaintiffs have set forth specific facts that the Fidelity Defendants charged ABB per-participant fees significantly in excess of rates paid by similar plans;[2] that the Fidelity Defendants offered investment options whose sub-asset classes "may create participant confusion in selecting options"; the weighted average expense ratio was high compared to peer plans; and, that the Fidelity Defendants subsidized services provided to ABB through revenue sharing. *See e.g.* (Am. Compl. ¶ 42; November 2005 ABB Defined Contribution Fee Review, 6-10). A fair inference from these allegations is that a prudent investor would not behave in a similar manner. *See Taylor v. United Technologies Corp.*, 2007 WL 2302284 (D.Conn. Aug. 9, 2007).

### 2. Remedies Under ERISA Section 503(a)(3)

---

[2]*See* Nell Hennessy, *Follow the Money: ERISA Plan Investments in Mutual Funds and Insurance*, 38 J. Marshall L. Rev. 867, 877 (2005) ("At most, reasonable compensation should mean compensation commensurate with that paid by similar plans for similar services to unaffiliated third parties."). *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007).

10

In Count II and Count III, Plaintiffs incorporate by reference the breach of fiduciary duties alleged in Count I and seek relief under ERISA § 502(a)(3) for, an accounting with a surcharge for wrongfully retained funds and/or equitable restitution of any funds obtained by Fidelity that should have been used for the benefit of the Plan. (Am. Compl., ¶ 101-102, 107). The Fidelity Defendants first argue that because Plaintiffs' requested relief is available under ERISA Section 502(a)(2), the Plaintiffs are precluded for duplicative relief under ERISA § 502(a)(3). Second, because Plaintiffs cannot specifically identify funds which can "clearly be traced to particular funds or property in the defendant's possession," their claims for an accounting and for restitution are not for "equitable" relief under ERISA, § 502(a)(3). *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *Calhoun v. TWA*, 400 F.3d 593, 597 (8th Cir. 2005). The Fidelity Defendants, in essence, assert a "traceability" requirement as to any equitable claim under ERISA § 502(a)(3).

Plaintiffs are permitted to plead in the alternative and make inconsistent pleadings. *Garman v. Griffin*, 666 F.2d 1156, 1157 n.1 (8th Cir. 1981). The Court need not determine at this stage whether Plaintiffs, if successful, are entitled only to relief under ERISA Section 502(a)(2), and not Section 502(a)(3).

Because there is a factual dispute as to how the Fidelity Defendants' revenue sharing occurs and whether revenue sharing payments are traceable to Plan assets (if in fact traceability is a requirement), the Court cannot determine whether funds collected

11

through revenue sharing are Plan funds which can be recovered by an equitable remedy. It is premature to dismiss Counts II and III.

### B. Plaintiffs' Allegations as to Fidelity Trust

Fidelity Trust argues that the Plaintiffs' Amended Complaint should be dismissed because it is only a "directed trustee" with a record keeping function under the Plan documents and it is therefore not a fiduciary with respect to the conduct alleged. (Doc. 103, 12). ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), provides that a person is a fiduciary of a plan:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Under ERISA, "the term 'fiduciary' is to be broadly construed," *Consolidated Beef Indus. v. New York Life Insurance Co.*, 949 F.2d 960 (8th Cir. 1991). Subsection one of ERISA § 3(21)(A) imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Congress desired that ERISA protect "the interests of participants in employee benefit plans and their beneficiaries," 29 U.S.C. § 1001(b), and therefore imposed fiduciary status upon those who act like fiduciaries as well as those who actually are fiduciaries. *Olson v. E. F. Hutton & Co.*, 957 F.2d 622, 625 (8th Cir. 1992) (comparing *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812-13 (2d Cir. 1987) ("Whether or not an individual or entity

12

in an ERISA fiduciary must be determined by focusing on the function performed, rather than the title held.").

Plaintiffs allege (1) that Fidelity Trust directly manages the Fidelity mutual funds that are "approximately half of the investment options available to Plan participants;" (2) that Fidelity Trust "plays a central role in the selection of the investment options the Plan makes available to participants," because Fidelity Trust "does the first-cut screening of investment options, and has veto authority over the inclusion of investment options available in the Plan " (Am. Compl. ¶¶ 15 -16); (Doc. 110, 4). The Trust Agreement[3] provides that ABB's Pension Review Committee may select "only (i) securities issued by the investment companies advised by Fidelity Management & Research Co. . . , (ii) securities issued by the investment companies not advised by Fidelity Management & Research Company" as long as Fidelity Trust approves those elections. (Fidelity Brief Ex. 1-A, *Trust Agreement Between Asea Brown Boveri Inc. and Fidelity Management Trust Company*). Given ERISA's expansive definition of fiduciary, the Court cannot say on this record that Fidelity Trust is not a fiduciary.

Fidelity Trust also argues that a party "does not act as an ERISA fiduciary in negotiating the terms of its own retention, even if it is being retained to serve in a fiduciary capacity." *Shulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131-32 (7th Cir. 1983). In *Shulist*, the Seventh Circuit ruled that a fiduciary was not required to refund

---

[3]Because the Trust Agreement was included with the Fidelity Defendants' pleading and there is no doubt as to its authenticity, the Court properly considers it in a motion to dismiss. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003).

13

excess compensation which it had contracted for through competitive bidding before it exercised discretionary control over the fund. 717 F.2d at 1131. *Shulist*, however, does not apply to the fiduciary's future conduct which may violate ERISA. *Sixty-Five Sec. Plan v. Blue Cross and Blue Shield of Greater New York*, 588 F.Supp. 119 (S.D.N.Y. July 25, 1984); *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 56 (5th Cir. 1988).

In *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 737 (7th Cir. 1986), the Seventh Circuit clarified its holding in *Schulist* as follows:

> *Schulist* stands for the proposition that if a specific [contract] term (not a grant of power to change terms) is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty. No discretion is exercised when an insurer merely adheres to a specific contract term. When a contract, however, grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary. *Seaway Foodtown, Inc v. Med. Mut.*, 347 F.3d 610, 618 (6th Cir. 2003).

The Plaintiffs' Amended Complaint, however, raises factual questions as to Fidelity Trust's discretion over Plan assets and related conflicts of interest. Unlike the plan in *Shulist*, the dispute is not about a fee schedule guaranteed by the terms of a bargained-for contract. Had the Trust Agreement provided no discretion for Fidelity Trust, its authority might be persuasive. *See Seaway Foodtown, Inc v. Med. Mut.*, 347 F.3d 610, 618 (6th Cir. 2003).

Determining Fidelity Trust's actual role in administering and/or advising the Plan is not possible at this stage. *See Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003) ("[T]he Plan Documents imbue all of the defendants with some degree of authority

14

over the Plan. However, the manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case."). Even if Fidelity Trust is not the final arbiter of Plan decisions, it may still be a fiduciary with respect to choosing funds.

Based on the Plaintiffs' Amended Complaint, the Court cannot conclude that Plaintiffs failed to allege sufficient facts to show that Fidelity Trust was a fiduciary.

### C. Plaintiffs' Allegations as to Fidelity Management

In order to satisfy the requirements set forth by the United States Supreme Court in *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955 (2007), the Plaintiffs must set forth facts "to state a claim to relief that is plausible on its face." *Id.* at 1974. Plaintiffs Complaint alleges that Fidelity Management is a fiduciary to the Plan under ERISA because Fidelity Management exercises discretion:

> [1] "in the selection of the investment options the Plan makes available to participants"; and [2] "when it determines how much the Plan will pay to Fidelity affiliates, like Fidelity Trust, for administrative and other services with soft dollars collected as part of Fidelity's undisclosed revenue sharing program." (Am. Compl. ¶ 18-19).

Fidelity Management first argues that Plaintiffs' claim must be dismissed because the Trust Agreement establishes that the ABB Pension Review Committee has the sole power to select the Plan's investment options. (Doc. 103, 4). Fidelity Management also argues that as a matter of law, an investment adviser to a mutual fund is not a fiduciary

15

to an ERISA plan that invests in the mutual fund. (Doc. 103, 7) (citing ERISA §§ 3(21)(B) and 401(b)(1)).

While Plaintiff's theory of liability as to Fidelity Management appears tenuous, the Court cannot resolve the claim at this early stage litigation. Although Fidelity Management is not a party to the Trust Agreement, the Trust Agreement provides for two core sources of Plan investment options: (1) those advised by Fidelity Management; or (2) those not advised by Fidelity Management but approved by Fidelity Trust. Plaintiffs allegations sufficiently state that Fidelity Management "indirectly" exercised discretion over Plan assets because, according to the revenue sharing scheme, it paid its affiliate, Fidelity Trust, to steer the Plan toward mutual funds it advised. *See* 29 C.F.R. 2510.3-21c.; (Doc. 110, 22). Similarly, if Fidelity Management set fees paid by Plan assets, then Plaintiffs may prove that Fidelity Management acted as a *de facto* fiduciary. *See United States v. Glick*, 142 F.3d 520, 527-28 (2d Cir. 1998) ("Glick had sufficient control over at least part of the Welfare Fund assets to create a fiduciary relationship. Glick had full discretion in selecting the amount of HIG's commission to be collected from each participant. He had the authority to incorporate that amount of commission into the amount of fund contribution the participants would be required to make.").

The cases cited by Fidelity Management are distinguishable because, in those cases, the plaintiffs failed to allege any facts other than the defendant acted within its capacity as an investment advisor. In *Sirna v. Prudential Securities, Inc.*, 964 F. Supp. 147, 149 (S.D.N.Y. 1997), the district court dismissed a suit against a brokerage

company for failing to sweep unencumbered funds as often as technologically possible into plaintiffs' money market accounts. In *Corbett v. Marsh & McLennan Cos.*, 2006 WL 734560 (D. Md. Feb. 27, 2006), the district court dismissed the defendant because it provided only "investment services" to the employee plan. *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007), is similarly distinguishable. In that case, the Seventh Circuit ruled that Caremark could not be held liable for breach of fiduciary status merely by paying the employee plan rebates it negotiated before the parties entered into the contract (although less than the total rebates it received in administering the plan).

As made clear in a recent discovery dispute, the relationship between Fidelity Trust and Fidelity Management is confusing. At the pleading state, it is not appropriate to dismiss a party whose involvement may or may not be supported by evidence. The Supreme Court in *Twombly* reaffirmed the concept of notice pleading with discovery being used to develop a factual record. It is apparent that further discovery will be needed to untangle the relationship between the Fidelity Defendants and between them and associated companies. Plaintiffs' Amended Complaint is not dismissed as to Fidelity Management.

### IV. DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR DAMAGES PRE-DATING DECEMBER 29, 2000

The ABB Defendants, joined by Fidelity Trust and Fidelity Management, move to dismiss Plaintiffs' damages which pre-date December 29, 2000. ERISA § 413, 29 U.S.C. § 1113, states as follows:

17

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Defendants move the Court to dismiss any claim for damages relating to conduct occurring more than six years before the commencement of the present action. (Doc. 155, 1). According to Defendants, the Eighth Circuit has interpreted ERISA's language of "fraud" or "concealment" as equivalent to the common-law doctrine of fraudulent concealment. *Id.* at 5. (citing *Schaefer v. Arkansas Medical Society*, 853 F.2d 1487, 1491-92 (8th Cir. 1998)). Defendants argue that Plaintiffs have not carried their affirmative duty to allege facts sufficient to support a claim for fraudulent concealment. *Id.*

In *Schaefer v. Arkansas Medical Society*, the Eighth Circuit confirmed that "29 U.S.C. § 1113 incorporates the fraudulent concealment doctrine, which requires that plaintiffs show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) they were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence." 853 F.2d 1487,1491-

18

92 (8th Cir. 1998); *see also Bergmann v. BMC Idus., Inc.*, 2006 WL 487864, *5 (D. Minn. 2006). Active concealment involves more than merely a failure to disclose. *Id.* at 1491; *Radiology Ctr. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990).

Plaintiffs argue that the Court cannot properly consider Defendants' motion as it is an affirmative defense under Fed. R. Civ. P. 8(c) and the factual record is not sufficiently developed to assess the elements of fraudulent concealment. (Doc. 162, 3). Plaintiffs are correct. Because the statute of limitations is an affirmative defense, the burden of proving that the statute of limitations bars Plaintiffs' claims rests with Defendants. *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002). Since this matter is brought before the Court on a motion to dismiss, the Court is constrained in reviewing the record. Based upon Plaintiffs' Amended Complaint, the exhibits attached to their response [Doc. # 162], and the documents referenced in their claims, the Court cannot discern the level of concealment, if any, by the Defendants nor the diligence exercised by Plaintiffs regarding Defendants' alleged breaches of fiduciary duty. *Jackson v. Chevron Corp. Long-Term Disability Org.*, 2006 U.S. Dist. LEXIS 3590 (D.N.J. 2006). The Court cannot grant Defendants' motion to dismiss on this affirmative defense.

Accordingly, it is hereby

ORDERED that:

(1) ABB's Motion to Dismiss [Doc. # 97] Plaintiffs' Amended Complaint [Doc. # 89] is DENIED.

(2) The Fidelity Defendants' Motion to Dismiss [Doc. # 102] Plaintiffs' Amended Complaint [Doc. # 89] is DENIED.

(3) Defendants' Motion to Dismiss Plaintiffs' complaint for damages pre-dating December 29, 2000 [Doc. # 155], is DENIED.

(4) Plaintiffs' Motion to Strike [Doc. #111] is denied as moot.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 11, 2008
Jefferson City, Missouri