UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| RONALD TUSSEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| v. | ) | Case No. 06-04305-CV-C-NKL |
| | ) | |
| ABB, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO ABB DEFENDANTS' SUPPLEMENTAL NOTICE

First, unlike the clear impression that Defendants sought to portray when they filed their Notices (Ct. Docs. 437, 439), these improper payments are <u>not</u> limited to the non-qualified plans as the Court was led to believe. The summary on page 8 of ABB's Exhibit 1 shows that items 17, 18, and 19 were applicable to the Health and Welfare plan but the invoices produced do not contain any reference to the Health and Welfare plan. Thus, even in the "corrections" Defendants filed, they attempted to create the false impression that only the Non-Qualified plans' expenses were paid. Indeed, only now, buried in attachments to their Reply, do Defendants admit that the PRISM Plans also paid for services provided to ABB's <u>Health and Welfare plans</u> in addition to the Non-Qualified plans. Ct. Doc. 444 (p. 6 of 10), Ex. 1 to Ex. A to Ex. 1. Fidelity's explanation is simple: "our billing processes lack certain controls," "individuals . . . were unaware," and "error was caused by inattention." *Id.* Their resolution to this issue is telling. Instead of proceeding as usual (and using the PRISM Plans' revenue / billing to support the multiple services Fidelity provides to corporate ABB plans), Fidelity representatives must now "obtain direction from ABB individuals as to how to allocate the charges" when a "project spans several plans." *Id.*

1

Second, sixty-four percent (18 of 28) of the charges on the PRISM Plans' invoices that are identified by Fidelity have no indicia that would signify the charges pertain to a plan other than the PRISM Plans. Thus, as to the majority of these charges, there is no way Plaintiffs could know of the now admitted improper benefit ABB received. As to those that do mention the non-qualified plans, Plaintiffs cannot possibly be expected to inquire as to every entry whether the PRISM Plans were credited back as to amounts charged when Defendants have consistently represented the Plans only incurred proper charges.[1]

Third, in its response, ABB states: "On October 26, 2009, ABB Defendants voluntarily filed a notice of correction explaining that . . . Defendants had discovered that certain non-PRISM Plan expenses had mistakenly been paid from PRISM Plan assets . . .. ABB Defendants now submit that . . .ABB, Inc. has corrected the mistaken payments. . .." Ct. Doc. 444, Ex. 1, p. 1. Yet, as support for these assertions, ABB attaches a letter from Fidelity to ABB dated October 29, 2009 supposedly describing these improper charges (which was the same day Plaintiffs filed their response and three days after ABB filed their notice in this Court). *Id.* This belated letter, however, makes clear that Fidelity's review of the invoices is not complete and "[o]nce our team has completed a thorough review of those invoices, I will send you the precise amount of charges improperly included on the 2009 PRISM invoices." *Id.* It can hardly be said that ABB has "corrected" these improper charges when Fidelity's review is not complete. Further, the affidavit of ABB's employee, Mr. Lockhart, that payments have been made back to the Plan by ABB and that these were the only improper charges is insufficient to entitle ABB to summary judgment or to avoid summary judgment. *See Bacon v. Hennepin County Medical Center*, 550

---

[1] Defendants produced over 100,000 pages of documents herein and the invoices were part of that production. In contrast, the invoices were sent to ABB for review presumably one at a time.

F.3d 711, 716 (8th Cir. 2008)(holding that self-serving affidavits do not defeat a properly supported motion for summary judgment).

Finally, at a minimum the issues raised in Defendants' filings create multiple issues of fact that must be resolved by this Court. Supposed compliance with DOL regulations does not remove this Court's jurisdiction to rule on the precise issues before it.[2] Further, the damages from Defendants conduct reach far beyond the improper charges that were made. Those charges and the subsidization of other plans of corporation and its executives had the effect of causing millions of dollars of losses for the Plans.

Respectfully Submitted,

SCHLICHTER, BOGARD & DENTON

By: /s/ Jerome J. Schlichter
Jerome J. Schlichter
Daniel V. Conlisk
Troy A. Doles
Heather Lea
100 S. Fourth Street, Suite 900
St. Louis, Missouri 63102
(314) 621-6115
(314) 621-7151 (Fax)
jschlichter@uselaws.com
dconlisk@uselaws.com
hlea@uselaws.com

ATTORNEYS FOR PLAINTIFFS/
CLASS REPRESENTATIVES
*Ron Tussey, Charles Fisher, Timothy Hendron and Timothy Pinnell*

---

[2] In any event, ABB has <u>not</u> complied with the detailed procedures and protections set forth by the DOL for the voluntary correction of fiduciary breaches. For instance, ABB provides no documentation of lost earnings, proof of payment, proof of excise tax payment, or descriptions regarding the breaches and above made under the penalty of perjury. *See* Ct. Doc. 44 Ex. A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed on this 11th day of November, 2009 and will be delivered electronically by the CM/ECF system to the following:

Thomas Wack
Lisa Demet Martin
Jeffrey S. Russell
Bryan Cave, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Brian T. Ortelere
William J. Delaney
Catherine A. Cugell
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Adam B. Walker
Richard Bien
Lathrop & Gage, L.C.
2345 Grand Boulevard, Ste. 2800
Kansas City, MO 64108

Bob Eccles
Stephen D. Brody
Shannon Barrett
Brian Boyle
O'Melveny & Myers, LLP
1625 I Street, NW
Washington, DC 20006

James S. Dittmar
James O. Fleckner
Goodwin Procter
53 State Street
Exchange Place
Boston, MA 02109

            /s/ Jerome J. Schlichter