IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

Tussey, et al.       )
           )
     Plaintiffs,  )
           )
           )  No: 2:06-cv-04305 NKL
ABB, Inc., et al.      )
           )
     Defendants.  )

## <u>MEMO ON PRETRIAL CONFERENCE</u>

Pursuant to Fed. R. Civ. P. 16, an initial pretrial conference will be held in the above-

captioned matter on January 5, 2010.

The following counsel, who will try the case appeared at the conference:

1.  For Plaintiff:

   Jerome Schlichter
   Daniel V. Conlisk
   Troy A. Doles
   Heather Lea
   Mark Boyko
   Schlichter, Bogard & Denton
   100 S. 4th Street, Ste. 900
   St. Louis, MO 63102
   (314) 621-6115
   (314) 621-7151 (fax)

2.  For ABB Defendants:

   Brian T. Ortelere
   Morgan Lewis & Bockius LLP
   Philadelphia, PA 19103
   phone: (215) 963-5101
   facsimile: (215) 963-5001

   William J. Delany
   Morgan Lewis & Bockius LLP

2

Philadelphia, PA 19103
phone: (215) 963-5066
facsimile: (215) 963-5001

Jeffrey S. Russell
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
phone: (314) 259-2000
facsimile: (314) 259-2020

Azeez Hayne
Morgan Lewis & Bockius LLP
Philadelphia, PA 19103
phone: (215) 963-5426
facsimile: (215) 963-5001

Jeffrey A. Sturgeon
Morgan Lewis & Bockius LLP
Philadelphia, PA 19103
phone: (215) 963-5850
facsimile: (215) 963-5001

3.     For Fidelity Defendants:

M. Randall Oppenheimer
O'Melveny & Myers LLP
1999 Avenue of the Stars
7th Floor
Los Angeles, California 90067
Telephone: (310) 246-6722
Facsimile: (310) 246-6779

James S. Dittmar
Goodwin, Procter, LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 570-1944
Facsimile: (617) 570-8591

Robert N. Eccles
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5363

Facsimile: (202) 383-5414

Brian Boyle
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5327
Facsimile: (202) 383-5414

Richard N. Bien
Lathrop & Gage LLP
2345 Grand Boulevard
Suite 2200
Kansas City, Missouri 64108
Telephone: (816) 292-2000
Facsimile: (816) 292-2001

Benjamin G. Bradshaw
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5163
Facsimile: (202) 383-5414

Accordingly, it is **ORDERED:**

## I. STIPULATION OF FACTS.

The parties agree that the following facts are true and undisputed:

A. See attached Stipulations marked as Exhibit 1.

## II. EXHIBIT LIST:

The parties submit the following exhibits and have indicated their objections accordingly.[1] (In addition to providing the exhibit list in this Memo on Pretrial Conference, the parties must provide a clean copy of the Exhibit Index to the Courtroom Deputy the morning of trial.)[2] The parties have agreed that exhibits to be used for demonstrative purposes only need not

---

[1] In the event the parties are unable to reproduce an exhibit list in conformity with the proposed exhibit list set forth above, they may seek permission from the court to utilize an alternate exhibit list or they may obtain an exhibit list in the form set forth in this memo from the clerk's office.

[2] A: The parties agree that these exhibits shall be considered to be already in evidence at the trial without further offer, proof, or objection. Specifically, the parties agree that both plaintiff(s) and defendant(s) exhibits listed in this column are in evidence at the commencement of the trial and available for use by any party at any stage of the trial

be shared in advance of the trial or listed herein.

       Plaintiffs' Exhibits:

           See attached list marked as Exhibit 2.

       ABB Defendants' Exhibits:

           ABB Defendants will be filing their list under separate cover as Exhibit 3.

       Fidelity Defendants' Exhibits:

           See attached list marked as Exhibit 4.

       Defendants' Joint Exhibit List:

           See attached list marked as Exhibit 5.

       Parties' Joint Exhibit List:

           See attached list marked as Exhibit 6.

[Note: Any exhibits not properly listed in the Memo on Pretrial Conference will be subject to exclusion at trial and any objection not indicated will be deemed waived unless this memo is modified prior to trial to prevent manifest injustice.  All exhibits shall be made available to opposing counsel for inspection sufficiently prior to the Pretrial Conference to permit objections to be noted in the memo.  Failure to provide exhibits for inspection shall constitute a valid ground for objection at trial and should be noted in the memo.]

**III.**    **WITNESS LIST:**

       A.    Plaintiffs' witnesses (list witnesses and addresses):

           This list reflects Plaintiffs' good-faith estimate as to the witnesses they are likely to call.  Plaintiffs are mindful of the Court's admonitions concerning the division of trial time among the parties, and anticipate further conferences with the parties

---

      B:  Parties want to introduce into evidence these exhibits to which all foundation, identification and authenticity objections are waived but not to which an opposing party objects on the grounds noted.  It is further agreed that any exhibit listed in this column may be used by any other party provided that party establishes that the exhibit is otherwise admissible.

      C:  Parties want to introduce into evidence these exhibits to which an opposing party will object on the grounds noted.  It is further agreed that any exhibit listed in this column may be used by any other party provided that party establishes the exhibits is otherwise admissible.

concerning ways of making efficient use of the time the Court has allotted for the trial. Plaintiffs reserve the right to remove witnesses from this list based on the parties' discussions in the coming week, and in advance of the planning teleconference that the Court has scheduled for January 4.

1.      James Clifford
        c/o Fidelity Defendants
        O'Melveny & Myers

2.      John Cutler
        c/o Morgan Lewis
        1701 Market St.
        Philadelphia, PA  19103-2921

3.      Richard Dahling
        82 Devonshire Street, F6B
        Boston, Massachusetts 02109

4.      Charles Fisher
        c/o Schlichter Bogard & Denton
        100 S. 4th Street, Ste. 900
        St. Louis, MO  63102

5.      Brigitte Gentile
        82 Devonshire Street, F6B
        Boston, Massachusetts 02109

6.      Jeff Halsey
        c/o Morgan Lewis
        1701 Market St.
        Philadelphia, PA  19103-2921

7.      Timothy Hendron
        c/o Schlichter Bogard & Denton
        100 S. 4th Street, Ste. 900
        St. Louis, MO  63102

8.      Joseph Herter
        82 Devonshire Street, F6B
        Boston, Massachusetts 02109

9.      Jeffrey Jarczyk
        82 Devonshire Street, F6B
        Boston, Massachusetts 02109

10.     Paul Kampner
        1300 N. Lake Shore Drive

6

Chicago, IL  60610

11.     Ross Miller
    2255 Algonquin Road
    Niskayuna, NY  12309

12.     Joanne Morlan
    82 Devonshire Street, F6B
    Boston, Massachusetts 02109

13.     Edward O'Neal
    3955 White Hawk Lane
    Winston-Salem, NC 27106

14.     Albert Otto
    125 Town Park Drive, Ste. 300
    Kennesaw, GA  30144

15.     Timothy Pinnell
    c/o Schlichter Bogard & Denton
    100 S. 4th Street, Ste. 900
    St. Louis, MO  63102

16.     Vincent Pisacretta
    82 Devonshire Street, F6B
    Boston, Massachusetts 02109

17.     Steven Pomerantz
    53 Humbert St.
    Princeton, NJ  08542

18.     John Sackie
    c/o Morgan Lewis
    1701 Market St.
    Philadelphia, PA  19103-2921

19.     Michael Scarpa
    c/o Morgan Lewis
    1701 Market St.
    Philadelphia, PA  19103-2921

20.     Ronald Tussey
    c/o Schlichter Bogard & Denton
    100 S. 4th Street, Ste. 900
    St. Louis, MO  63102

21. Brian Walters
    82 Devonshire Street, F6B
    Boston, Massachusetts 02109

22. David Witz
    5644 Rocky Trail Court
    Charlotte, NC  28270

23. Kathleen LaBonte (by deposition designation)
    c/o Rogers & Hardin, LLP
    2700 International Tower, Peachtree Center
    229 Peachtree Street, NE
    Atlanta, Georgia  30303

B.  ABB Defendants' witnesses (list witnesses and addresses):

This list reflects the ABB Defendants' good-faith judgment as to its likely witness
calls prior to the Court's teleconference today, December 28, and was predicated
upon a five-day trial week throughout January.  The ABB Defendants are mindful
of the Court's admonitions concerning the division of trial time among the parties,
and anticipate further conferences with their co-defendants and with plaintiffs this
week concerning ways of making efficient use of the time the Court has allotted
for the trial.  The ABB Defendants reserve the right to, and will likely, remove
witnesses from this list based on the parties' discussions in the coming week, and
in advance of the planning teleconference that the Court has scheduled for
January 4.

1.  James Clifford
    c/o Fidelity Defendants

2.  Jack Cutler
    ABB Holdings Inc.
    501 Merritt 7
    Norwalk, CT 06851

3.  Charles Fisher
    104 County Road 532
    Argyle, Missouri 65001

4.  Jeff Halsey
    c/o Morgan Lewis
    1701 Market St.
    Philadelphia, PA 19103-2921

5.      Timothy Hendron
        307 Dobbin Road
        Webster Groves, Missouri 63119

6.      Laura Hughes
        c/o Fidelity Defendants

7.      William Lockhart
        ABB Holdings Inc.
        501 Merritt 7
        Norwalk, CT 06851

8.      Thomas Morgan
        ABB Holdings Inc.
        501 Merritt 7
        Norwalk, CT 06851

9.      Timothy Pinnell
        6810 Route Y
        Jefferson City, Missouri 65101

10.     Jennifer Reid
        ABB Holdings Inc.
        501 Merritt 7
        Norwalk, CT 06851

11.     John Sackie
        c/o Morgan Lewis
        1701 Market St.
        Philadelphia, PA 19103-2921

12.     Michael Scarpa
        c/o Morgan Lewis
        1701 Market St.
        Philadelphia, PA 19103-2921

13.     Carol Story
        ABB Holdings Inc.
        501 Merritt 7
        Norwalk, CT 06851

14.     Ronald Tussey
        35 Trevino Court
        Lake Ozark, Missouri 65049

15.     Barry Wentworth

ABB Holdings Inc.
501 Merritt 7
Norwalk, CT 06851

16.     Stewart Lewis
        1700 K Street, N.W., Suite 300
        Washington, DC  20006

17.     Laura Starks
        University of Texas at Austin
        Department of Finance
        College of Business
        Austin, Texas 78712

18.     Lassaad Turki
        1919 Pennsylvania Avenue N.W., Suite 600
        Washington, DC 20006

19.     John Utz
        7525 West 132nd Street
        Overland Park, Kansas 66213

20.     Finis Welch
        1716 Briarcrest Dr., Ste. 700
        Bryan, Texas 77802

21.     Kathleen LaBonte (by deposition designation)
        c/o Rogers & Hardin, LLP
        2700 International Tower, Peachtree Center
        229 Peachtree Street, NE
        Atlanta, Georgia  30303

22.     David Lail (by deposition designation)
        3475 Piedmont Road Northeast
        Atlanta, GA 30305


C.      Fidelity Defendants' witnesses:

This list reflects the Fidelity Defendants' good-faith judgment as to its likely
witness calls prior to the Court's teleconference today, December 28, and was
predicated upon a five-day trial week throughout January.  The Fidelity
Defendants are mindful of the Court's admonitions concerning the division of trial
time among the parties, and anticipate further conferences with their co-
defendants and with plaintiffs this week concerning ways of making efficient use
of the time the Court has allotted for the trial.  The Fidelity Defendants reserve the
right to, and will likely, remove witnesses from this list based on the parties'

discussions in the coming week, and in advance of the planning teleconference that the Court has scheduled for January 4.

1.    Tom Breslawski
      82 Devonshire Street, F6B
      Boston, Massachusetts 02109

2.    Jack Cutler
      c/o Morgan Lewis
      1701 Market St.
      Philadelphia, PA 19103-2921

3.    Richard Dahling
      82 Devonshire Street, F6B
      Boston, Massachusetts 02109

4.    Scott David
      82 Devonshire Street, F6B
      Boston, Massachusetts 02109

5.    Charles Fisher
      104 County Road 532
      Argyle, Missouri 65001

6.    Brigitte Gentile
      82 Devonshire Street, F6B
      Boston, Massachusetts 02109

7.    Boyce Greer
      82 Devonshire Street, F6B
      Boston, Massachusetts 02109

8.    Michael Hall
      82 Devonshire Street, F6B
      Boston, Massachusetts 02109

9.    Jeff Halsey
      c/o Morgan Lewis
      1701 Market St.
      Philadelphia, PA 19103-2921

10.   Timothy Hendron
      307 Dobbin Road
      Webster Groves, Missouri 63119

11.   Joseph Herter

82 Devonshire Street, F6B
Boston, Massachusetts 02109

12.   Jeff Jarczyk
82 Devonshire Street, F6B
Boston, Massachusetts 02109

13.   Tom McGillicuddy
82 Devonshire Street, F6B
Boston, Massachusetts 02109

14.   Margaret McKenna
82 Devonshire Street, F6B
Boston, Massachusetts 02109

15.   Troy Mick
82 Devonshire Street, F6B
Boston, Massachusetts 02109

16.   Thomas Morgan
c/o Morgan Lewis
1701 Market St.
Philadelphia, PA 19103-2921\

17.   Joanne Morlan
82 Devonshire Street, F6B
Boston, Massachusetts 02109

18.   Mike Nguyen
333 South Hope Street
Los Angeles, California  90071

19.   Dawna Paton
150 Baker Avenue
Suite 301
Concord, MA 01742

20.   Guy Patton
100 Timberdell Road
Norman, Oklahoma 73019

21.   Timothy Pinnell
6810 Route Y
Jefferson City, Missouri 65101

22.   Vin Pisacreta

82 Devonshire Street, F6B
Boston, Massachusetts 02109

23.    Carolyn Redden
       82 Devonshire Street, F6B
       Boston, Massachusetts 02109

24.    John Sackie
       c/o Morgan Lewis
       1701 Market St.
       Philadelphia, PA 19103-2921

25.    Michael Scarpa
       c/o Morgan Lewis
       1701 Market St.
       Philadelphia, PA 19103-2921

26.    Carol Story
       c/o Morgan Lewis
       1701 Market St.
       Philadelphia, PA 19103-2921

27.    Ronald Tussey
       35 Trevino Court
       Lake Ozark, Missouri 65049

28.    Brian Walters
       82 Devonshire Street, F6B
       Boston, Massachusetts 02109

29.    Barry Wentworth
       c/o Morgan Lewis
       1701 Market St.
       Philadelphia, PA 19103-2921\

30.    Diane Zimmerman-Decker
       82 Devonshire Street, F6B
       Boston, Massachusetts 02109

31.    Steven Gissiner
       381 Orchard Hills Drive
       Ann Arbor, Michigan 48104

32.    Mark Grinblatt
       110 Westwood Plaza
       Los Angeles, California 90095

33. Glenn Hubbard
    3022 Broadway, Uris Hall 101
    New York, New York 10027

34. Stewart Lewis
    1700 K Street, N.W., Suite 300
    Washington, DC  20006

35. Laura Starks
    University of Texas at Austin
    Department of Finance
    College of Business
    Austin, Texas 78712

36. Lassaad Turki
    1919 Pennsylvania Avenue N.W., Suite 600
    Washington, DC 20006

37. John Utz
    7525 West 132nd Street
    Overland Park, Kansas 66213

38. Finis Welch
    1716 Briarcrest Dr., Ste. 700
    Bryan, Texas 77802

39. Kathleen LaBonte (by deposition designation)
    c/o Rogers & Hardin, LLP
    2700 International Tower, Peachtree Center
    229 Peachtree Street, NE
    Atlanta, Georgia  30303

40. David Lail (by deposition designation)
    3475 Piedmont Road Northeast
    Atlanta, GA 30305

D.     A party listing a witness guarantees his/her presence at trial unless the court and opposing counsel are notified to the contrary at least seven (7) days prior to trial.  All parties are free to call any witness listed by the opposing party whether they have listed them or not.

E.     A witness testifying by deposition must be listed with a designation that the testimony will be by deposition.

**IV.** **FACTUAL ISSUES:**

A.     Plaintiff(s) Factual Issues:

1.     Did Defendants comply with the terms of the Investment Policy Statement ("IPS") by:
   a.     Fully considering the investment products available to institutional investors, including but not limited to mutual fund alternatives such as commingled funds and separate accounts, when selecting investment options for the Plans?
   b.     Properly using the purchasing power afforded by the size of the Plans' assets to reduce the cost to participants?
   c.     Selecting the mutual fund share class with the lowest cost participation?
   d.     Ensuring that all "alliance rebates" were used to "offset" recordkeeping and administrative charges for the Plans?
   e.     Fulfilling their responsibilities as listed in detail under section 9 of the IPS?

2.     Did the Plan Document have terms in it which gave one or more of the Fidelity Defendants the right to control or veto changes or additions to the investments offered to Plan participants and if so, during what periods of time?

3.     Did the Defendants investigate, benchmark, or determine the most competitive market rate for the fees paid for the Plans' investment options or to the Plans' service providers?

4.     Did Defendants cause the Plans to pay excessive fees for recordkeeping and administrative services?

   a.     Did Defendants negotiate a specific fee schedule for recordkeeping and administrative services?
   b.     Did Defendants evaluate the increase in asset-based recordkeeping and administrative fees resulting from the tremendous growth in assets of the Plans?
   c.     Did Defendants adequately monitor the fees paid for recordkeeping and administrative services?
   d.     Did Defendants properly evaluate as reasonable the fees paid for recordkeeping and administrative services?
   e.     Did Defendants properly monitor the reasonableness of the fees paid for recordkeeping and administrative services?
   f.     Did Defendants allow open-ended, un-capped, asset-based fees for recordkeeping and administrative services?

5.     Did Defendants cause the Plans to pay excessive investment management fees?

   a.     Did Defendants investigate investment vehicles, such as commingled funds and separate accounts, appropriate for institutional investors?
   b.     Did Defendants adequately monitor the investment management fees?
   c.     Did Defendants properly evaluate as reasonable the investment management fees?
   d.     Did Defendants monitor the reasonableness of the fees paid for investment management?
   e.     Did Defendants determine the actual amount of investment management fees paid after accounting for revenue sharing?
   f.     Did Defendants investigate methods of negotiating indirect refunds of revenue sharing fees back to the Plan?

6.     When were Defendants aware, and when should they have been aware, that the fees paid by the Plans were excessive?

   a.     What, if anything, did Defendants do when they did become aware of these excessive fees?

7.     After being put on notice by a third party that the Plans' fees were high, did the Defendants investigate, benchmark, or determine the most competitive market rate for the fees paid for the Plans' investment options or to the Plans' service providers?

8.     Did Fidelity provide free services to ABB or its executives?

   a.     Would Fidelity have provided ABB these free services if it were not a service provider to the PRISM Plans?

9.     Did Fidelity provide discounted services to ABB?

10.    Did Fidelity price its services to ABB for non-PRISM Plan services relying on the PRISM Plans' revenue?

   a.     Would Fidelity have provided ABB these services at the same price if it were not a service provider to the PRISM Plans.

11.    Did ABB engage in self-dealing?

12.     Did Fidelity receive consideration for its own personal account from PRISM Plan fund managers through revenue sharing?

    a.     Did Fidelity negotiate its consideration with the fund managers?
    b.     Was this consideration sent to Fidelity in connection with participants' investment selection and contributions, which are transactions involving Plan assets?

13.     Did Fidelity engage in self-dealing?

14.     What did Defendants disclose to participants regarding:

    a.     The free and discounted services to ABB?
    b.     The revenue sharing paid to Fidelity?
    c.     Their failure to follow the IPS?
    d.     The recordkeeping and administrative expenses paid by the Plans?
    e.     The investment management expenses paid by the Plans?

15.     Did FMRCo exercise discretion or control over the "overnight" investment of plan assets held in connection with Fidelity's responsibility to process contributions and disbursements?

    a.     Did FMRCo set its own compensation for overnight investment of Plan assets?

16.     Did the PRISM Plans' Trust Agreement give FMTC veto power over the investment options in the Plans from 1995 up to the present time?

17.     Did FMRCo pay a portion of its revenue (derived from the Plans' investment in Fidelity Mutual Funds) to FMTC?

18.     Did the non-fiduciary Defendants (if any) knowingly participate in the breaches of fiduciary duties by the fiduciary Defendants?

19.     Did Fidelity provide investment advice to the PRISM Plans by culling down, screening, and recommending investment options for the Plans?

    a.     Was Fidelity compensated for its investment advice to the Plans?

20.     To what extent have the PRISM Plans been damaged by Defendants' acts?

21.     If Defendants, acting as fiduciaries, failed to act in the best interests of the Plan participants, what measure of damages will make the Plan participants whole for their loss?

B.     ABB Defendants' Factual Issues:

   1.     Were the fees charged for Plan services unreasonable and excessive?

   2.     Did the ABB Defendants follow a prudent process and properly exercise their discretion in negotiating a bundled service arrangement with the Plan's service providers?

   3.     Were the investment options offered by the Plan prudent?

   4.     Did the ABB Defendants follow a prudent process and properly exercise their discretion in selecting actively-managed investment options for the Plan?

   5.     Did the ABB Defendants properly exercise their discretion in selecting mutual funds, rather than separate accounts, as investment options for the Plan?

   6.     Did the ABB Defendants follow a prudent process in selecting and monitoring the Plan's investment options?

   7.     Did the ABB Defendants fail to follow the Investment Policy Statement ("IPS"), which explicitly endorsed the use of mutual funds?

   8.     Did the ABB Defendants fail to ensure that revenue sharing was used to reduce the cost of Plan administration pursuant to the IPS?

   9.     Were the terms of Fidelity's agreements to provide non-qualified plan services to ABB causally connected to a transaction involving the assets of the PRISM Plan?

   10.    Were the terms of Fidelity's agreements to provide defined benefit administration services, health and welfare administration services or payroll/human resources administration services causally connected to a transaction involving assets of the PRISM Plan?

   11.    Can Plaintiffs adduce any evidence that the services provided to the other ABB plans and payroll/human resources administration were provided at below-market rates?

   12.    Were any Plan assets transferred "indirectly" to Fidelity Management Trust Company ("FMTC") within the meaning of ERISA's prohibited transaction rules?

   13.    Were Plaintiffs injured by any alleged conduct of the ABB Defendants and in what amount under what theory?

14.	Did the conduct underlying Plaintiffs' ERISA claims occur prior to three or six years before the filing of the complaint in December 2006?

C.	Fidelity Defendants' Factual Issues:

1.	What role, if any, does Fidelity Management and Research Company ("FMRCo") play with respect to the matters in this case;

2.	Whether, at times relevant to this litigation, FMRCo had or exercised discretionary authority or control over the selection of investment options offered under the ABB 401(k) Plans;

3.	Whether, at times relevant to this litigation, Fidelity Management Trust Company ("FMTC") had or exercised discretionary authority or control over the selection of investment options under the ABB 401(k) Plans;

4.	Whether, in the event FMTC or FMRCo were deemed to have discretionary authority or control over the selection of investment options under the ABB 401(k) plans, either FMTC or FMRCo exercised such authority or control to set its own compensation for services to the ABB 401(k) plans;

5.	Whether FMTC controlled the Pension Review Committee's selection of the ABB 401(k) Plans' investment options;

6.	Whether the ABB 401(k) Plans' formal plan documents or the Trust Agreement authorized the Pension Review Committee to create an investment policy statement that was binding on FMTC and, if so, whether the investment policy statement approved by the Pension Review Committee was created pursuant to such authority;

7.	Whether the investment options selected for the ABB 401(k) Plans failed to comply with the terms of the Pension Review Committee's investment policy statement and, if so, whether FMTC knew of such failure;

8.	Whether the ABB 401(k) Plans incurred unreasonable costs and expenses in light of the quality and nature of the services they received;

9.	Whether prudent fiduciaries of other large 401(k) plans have, at all relevant times, elected to include actively-managed investment options in their plans' investment lineups;

10.	Whether actively-managed investment options offer benefits that a prudent fiduciary of a large 401(k) plan would reasonably consider to warrant their fees;

11.	Whether prudent fiduciaries of other large 401(k) plans have, at all relevant times, elected to include retail mutual funds in their plans' investment lineups;

12.	Whether retail mutual funds offer benefits that a prudent fiduciary of a large 401(k) plan would reasonably consider to warrant their fees;

13.	Whether prudent fiduciaries of other large 401(k) plans have, at all relevant times, approved the use of bundled, asset-based compensation arrangements, similar to those employed by the ABB 401(k) Plans, to pay for plan administrative services;

14. Whether bundled, asset-based compensation arrangements offer benefits that a prudent fiduciary of a large 401(k) plan would reasonably consider to warrant their utilization;

15. Whether the individual investment options offered through the ABB 401(k) Plans were imprudent;

16. Whether ABB received non-qualified plan services from Fidelity on compensation terms that Fidelity or ABB knew to be materially different than those ABB could have obtained for similar services through other providers;

17. Whether the compensation terms of Fidelity's agreement to provide non-qualified plan services to ABB were causally connected to a transaction involving the assets of the ABB 401(k) Plans;

18. Whether the ABB Defendants knew or had reason to know of a causal connection between transactions involving the assets of the ABB 401(k) Plans and the compensation terms on which Fidelity provided non-qualified plan services to ABB;

19. Whether, within the limitations period for this case, Fidelity agreed with ABB to provide (a) defined benefit administration services; (b) health and welfare administration services; or (c) human resources/payroll administration services at rates below those that were available from other service providers in the market at the time of contracting;

20. Whether, within the limitations period for this case, the compensation terms of Fidelity's agreement to provide (a) defined benefit administration services; (b) health and welfare administration services; or (c) human resources/payroll administration services to ABB were causally connected to a transaction involving the assets of the ABB 401(k) Plans;

21. Whether, within the limitations period for this case, the ABB Defendants knew or had reason to know of a causal connection between the compensation terms of Fidelity's agreement to provide (a) defined benefit administration services; (b) health and welfare administration services; or (c) human resources/payroll administration services to ABB and a transaction involving the assets of the ABB 401(k) Plans;

22. Whether Jack Cutler or the Pension Review Committee, when making decisions concerning the ABB 401(k) Plans' investment options, were influenced by the compensation terms of Fidelity's agreement to provide non-qualified plan services to ABB;

23. Whether any other decisions by ABB personnel concerning Fidelity's compensation were influenced by the compensation terms of Fidelity's agreement to provide non-qualified plan services to ABB;

24. Whether Jack Cutler or the Pension Review Committee, when making decisions concerning the ABB 401(k) Plans' investment options, were influenced by the compensation terms of Fidelity's agreement to provide defined benefit administration, health and welfare administration, and human resources/payroll administration services to ABB;

25. Whether any other decisions by ABB personnel concerning Fidelity's compensation were influenced by the compensation terms of Fidelity's

agreement to provide defined benefit administration, health and welfare administration, and human resources/payroll administration services to ABB;

26. Whether Fidelity's compensation for services to the ABB 401(k) Plans, when considered in light of the quality and nature of those services, was reasonable for the purposes of the prohibited transaction exemption available under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2);

27. Whether FMRCo or FMTC had actual knowledge of a fiduciary breach on the part of the ABB Defendants, assuming such breach occurred;

28. Whether either Fidelity Defendant used "float" for its own interest or account;

29. Whether ABB 401(k) Plan participants had notice of the inclusion of actively-managed funds in the ABB 401(k) Plans' lineup, and the expenses associated with those investment options, more than three years before the filing of this lawsuit;

30. Whether ABB 401(k) Plan participants had notice of the inclusion of retail mutual funds in the ABB 401(k) Plans' lineup, and the expenses associated with those investment options, more than three years before the filing of this lawsuit;

31. Whether plaintiffs can specifically identify any ill-gotten monies in FMTC or FMRCo's possession and whether any such monies can be traced to the ABB 401(k) Plans' assets.


**V.    LEGAL ISSUES:**

A.    Plaintiff(s) Legal Issues:

1.    Is the IPS a governing plan document under ERISA § 404(a)(1)(D)?
   a.    Did Defendants violate their fiduciary duty under ERISA § 404(a) by failing to follow the IPS?
   b.    Did Defendants' failure to follow the IPS cause losses to the Plans?
   c.    Apart from whether the IPS is a governing Plan document, does the IPS set a standard of fiduciary conduct for ABB?


2.    Did Defendants breach their duties of loyalty and prudence under ERISA §404(a)?
   a.    Were the Defendants procedurally imprudent in administering the Plans?
   b.    Were the Defendants' choices regarding the Plans' investment options, service providers, and their administration objectively imprudent?
   c.    Even if the Defendants followed a procedurally prudent process, did they nonetheless breach their duties under ERISA §404 by thereafter doing what was in their own interest?

d.     In light of facially self-interested character of Defendants' conduct, do they have the burden of proving that their actions were proper and not a fiduciary breach?

e.     Did Defendants' breaches cause losses to the Plans?

3.     Did Defendants cause the Plans to engage in prohibited transactions under ERISA § 406(a) by causing a direct or indirect: (1) furnishing of services between the Plans and a party in interest or (2) transfer to, or use by or for the benefit of a party in interest, of any assets of the Plans?

a.     Did Defendants' breaches cause losses to the Plans?

b.     What is the most appropriate measure of damages to make the Plan whole for the failure of the Defendants to act prudently?

c.     Must Fidelity Defendants disgorge revenues received from the Plans?

4.     Did Defendants cause the Plans to engage in prohibited transactions under ERISA § 406(b) by: (1) dealing with the assets of the Plans in their own interest or for their own account, (2) acting in a capacity in a transaction involving the Plans where their interests are adverse to the Plans, or (3) receiving consideration in their own personal account from a party dealing with the Plans in connection with a transaction involving assets of the Plans?

a.     Did Defendants' breaches cause losses to the Plans?

b.     What is the most appropriate measure of damages to make the Plan whole for the failure of the Defendants to act prudently?

c.     Must Fidelity Defendants disgorge revenues received from the Plans?

5.     As to violations of ERISA § 406(a), did Defendants meet their burden of proof to establish that the fees paid by the Plans were reasonable under ERISA § 408?

6.     Did Defendants meet their burden of proof to establish that they did not deal with Plan assets in their own interest?

7.     Did Defendants meet their burden of proof to establish that the consideration the fiduciaries received was not in connection with a transaction involving Plan assets?

8.     Did Defendants meet their burden of proof to establish that they were not acting in a capacity where their interests were adverse to the Plans in transactions involving the Plans?

9.     Is revenue sharing, which is paid to the Plans' recordkeeper and administrator to offset Plan expenses, a Plan asset?

10. Did Defendants' active concealment of the amount of fees paid by the Plans to Fidelity and /or the revenue sharing arrangements between Fidelity and the mutual funds offered within the Plans satisfy the fraud or concealment exception under ERISA § 413?

11. Did Defendants' active concealment of the benefits Plan fiduciaries received satisfy the fraud or concealment exception under ERISA § 413?

12. Did participants have actual knowledge of Defendants' breaches or violations of ERISA?

13. Did Defendants knowingly participate in acts or omissions of another fiduciary under ERISA § 405, knowing that such acts or omissions were breaches?

14. Did Defendants, in failing to fulfill their own duty under ERISA § 404(a)(1), enable another fiduciary to commit breaches?

15. Did Defendants have knowledge of breaches by another fiduciary and fail to make reasonable efforts to remedy the breaches?

16. Are non-fiduciary Defendants (if any) liable for breaches of the fiduciary Defendants by knowingly participating in the breaches?

17. Is FMRCo a fiduciary to the Plans under ERISA § 3(21)?

18. Is FMTC a fiduciary to the Plans with respect to the investment options selected for the Plans during all relevant periods of time?

19. Have the Defendants complied with all of ERISA §404(c)'s discrete requirements?

20. Can the Defendants prove compliance with §404(c) when participants knew nothing about Defendants' revenue sharing scheme and ABB's receipt of free and discounted non-plan services?

21. Are the Plaintiffs legally entitled to the affirmative relief requested, including:

   a. Defendants' removal as fiduciaries to the Plans?
   b. An accounting of certain fees paid by the Plans?
   c. The appointment of an independent fiduciary to the Plans?
   d. The removal of imprudent options in the Plans?
   e. Establishment of prudent procedures, including adequate requests for proposals of service providers?

> f.   Elimination of uncapped, open-ended revenue sharing payments to the Plans' recordkeeper?
>
> g.   Rescinding all arrangements that involved self-dealing, including any arrangement where the Plans' fiduciaries received a benefit, gratuity, or discount?

B.   ABB Defendants' Legal Issues:

1.   Did the ABB Defendants breach their fiduciary duty by failing to follow a plan document, namely the IPS?

2.   Was the IPS a plan document?

3.   Did the ABB Defendants breach their fiduciary duty by failing to evaluate separate charges for recordkeeping and administrative services in a bundled service arrangement?

4.   Did the ABB Defendants breach their fiduciary duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" (29 U.S.C. § 1104(a)(1)(B)) in following industry practice to:

   a.   select mutual funds and actively-managed investment options; and

   b.   enter into a bundled service arrangement?

5.   Did the ABB Defendants cause the Plan engage in a prohibited transaction in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), by accepting free services for other ABB plans from the Fidelity Defendants?

6.   Did the ABB Defendants cause the Plan to make an indirect transfer of plan assets to FMTC in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)?

7.   Did the ABB Defendants cause the Plan to engage in a "transaction" within the meaning of ERISA § 406, 29 U.S.C. § 1106, when the contracts for PRISM Plan services were negotiated separately and at different times from the service contracts for other plans?

8.   Does the prohibited transaction exemption for payment of reasonable compensation provide the ABB Defendants with a defense?

9.   Is any further equitable relief required for the inadvertent payment from the PRISM Plan of non-PRISM Plan services following the reimbursement of all amounts mistakenly paid with interest?

10. Are Plaintiffs' claims barred by ERISA's three-year or six-year statute of limitations (29 U.S.C. § 1113)?

11. Are Plaintiffs' entitled to equitable relief under ERISA §§ 502(a)(2) or (a)(3), 29 U.S.C. §§ 1132(a)(2) or (a)(3)?

12. Does the evidence presented at trial show that Plaintiffs cannot satisfy the requirements for class certification under Rule 23(b)(1)?

C. Fidelity Defendants' Legal Issues:

1. Whether defendant FMRCo's role as investment adviser to Fidelity mutual funds rendered it an ERISA fiduciary to the ABB 401(k) Plans;
2. Whether defendant FMTC has, at relevant times, been a fiduciary to the ABB 401(k) Plans with respect to the investment challenged by plaintiffs;
3. Whether FMTC can be held liable as a purported co-fiduciary for the investment made by the ABB Defendants;
4. Whether a fiduciary has a duty to a plan when negotiating the terms of its own engagement;
5. Whether FMTC had a duty under ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), to monitor the investment options selected by the Pension Review Committee for compliance with the Pension Review Committee's investment policy statement, and, if so, whether it violated such a duty;
6. Whether the Pension Review Committee's investment policy statement is a governing plan document or instrument for the purpose of ERISA § 404(a)(1)(D);
7. Whether FMTC violated any duty under ERISA § 404(a)(1)(D) to act in accordance with governing plan documents;
8. Whether the fiduciaries responsible for selecting the ABB 401(k) Plans' investment options and for negotiating the terms of Fidelity's retention as a plan service provided breached duties of prudence or loyalty under ERISA § 404(a), 29 U.S.C. § 1104(a);
9. Whether ERISA's prudence standard measures reasonableness by the conduct of similarly situated fiduciaries;
10. Whether the costs and expenses incurred by ABB 401(k) Plans, in light of the quality and nature of the services they received and other relevant historical facts, were legally unreasonable;
11. Whether there is a fiduciary duty to select the cheapest possible administrative services and investment products for a 401(k) plan;
12. Whether the inclusion of actively-managed investment options (along with passively-managed options) in the ABB 401(k) Plans' investment lineup was imprudent as a matter of law;
13. Whether the inclusion of retail mutual funds (rather than just institutional investment products) in the ABB 401(k) Plans' investment lineup was imprudent as a matter of law;

14. Whether the use of bundled, asset-based compensation to finance Fidelity's provision of plan administrative services to the ABB 401(k) Plans was imprudent as a matter of law;

15. Whether Fidelity's provision of "total benefits outsourcing" services to ABB or ABB-sponsored plans constituted prohibited transactions under ERISA § 406, 29 U.S.C. § 1106;

16. Whether Fidelity's provision of non-qualified plan services constituted prohibited transactions under ERISA § 406, 29 U.S.C. § 1106;

17. Whether the payment by the Fidelity mutual funds to Fidelity corporate entities in accordance with contracts established by the Fidelity fund trustees constituted an indirect transfer to plan assets to a party in interest within the meaning of ERISA § 406(a), 29 U.S.C. § 1106(a);

18. Whether Fidelity's internal attribution of Fidelity mutual fund revenue to Fidelity management teams constituted an indirect transfer to plan assets to a party in interest within the meaning of ERISA § 406(a), 29 U.S.C. § 1106(a);

19. Whether ERISA § 408, 29 U.S.C. § 1108, provides an exemption from ERISA § 406 for the transactions plaintiffs assert constituted prohibited transactions;

20. Whether reasonable compensation serves as a defense to ERISA's prohibited transaction provisions and, if so, whether Fidelity's compensation for 401(k) plan services was legally reasonable in light of the nature and quality of the services provided and other relevant historical facts;

21. Whether additional remediation is warranted for the inadvertent use of the ABB 401(k) Plans' assets to pay invoices for non-401(k) plan services in light of ABB's reimbursement to the ABB 401(k) Plans of the amounts paid with interest in accordance with Department of Labor regulations;

22. Whether Fidelity's application of "float" interest to plan investment options, net of bank expenses incurred in holding contributions and redemptions on behalf of those investment options, constituted a prohibited transaction under ERISA § 406, 29 U.S.C. § 1106;

23. Whether plaintiffs' claims are barred in whole or in part by the three-year statute of limitations established under ERISA § 413, 29 U.S.C. § 1113.

24. Whether plaintiffs can establish damages for the allegedly imprudent investment of the ABB 401(k) Plans' assets by comparing the 401(k) Plans' performance to that of ABB's defined benefit plan;

25. Whether any of plaintiffs' damages models provide an appropriate measure of damages for the alleged breaches;

26. Whether plaintiffs can establish a right to "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

[**Note:**  Each party should set forth all theories of recovery or defense, including specifications of fault which will be raised at trial.  The elements of each theory of recovery and the elements of damages sought must be included.

The parties should also set forth any legal questions which are likely to arise at trial.  This should include such things as:

> A legal dispute as to the elements of plaintiff's cause or whether recovery is barred as a matter of law by a particular defense;
> Whether, as a matter of law, a particular defense would apply;
> Any legal dispute as to the measure, elements, or recovery of damage claimed by plaintiff; and
> Whether the Statute of Frauds or the Parole Evidence Rule will be raised; etc.]

## VI.  UNUSUAL EVIDENTIARY QUESTIONS:

A.  Plaintiffs' Unusual Evidentiary Questions:

1.  Can witnesses previously undisclosed be called to testify live at trial?  It is Plaintiffs' position that undisclosed witnesses are not permitted to testify at trial.  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed.R.Evid. 37(c)(1).  Accordingly, Defendants' witnesses not previously disclosed or deposed must be struck.  The Eight Circuit, for example, has clearly and routinely upheld striking witnesses based on untimely designation.  *See, Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (striking expert testimony where expert was disclosed after discovery deadline because "failure to disclose in a timely manner is equivalent to failure to disclose" and opponent was prejudiced by inability to depose witness before summary judgment briefing and without prejudicing trial preparations); *Wegener v. Johnson*, 527 F.3d 687, 692 (affirming district court's decision to strike testimony from witness not identified in compliance with Rule 26(a) or (e) where delay in disclosure prejudiced opponent's trial preparation and the court's trial schedule).

2.  Can documents and information that Defendants did not timely produce pursuant to the Federal Rules of Civil Procedure be used at trial? Plaintiffs' position is that Defendants cannot use such documents and information at trial. Fed.R.Civ.P. 37(c)(1); *ELCA Enterprises, Inc. v. SISCO Equipment Rental & Sales, Inc*., 53 F.3d 186, 190 (8th Cir. 1995); *Havenfield Corp. v. H&R Block, Inc*., 509 F.2d 1263, 1272 (8th Cir. 1975);  *Kramer v. Perez*, 579 F.Supp.2d 1164, 1171 (S.D.Iowa 2008).

3.  Can a deposition take in a different case properly be designated as a deposition for use in this case?  It is Plaintiffs' position that Defendants' designation of David Lail's deposition, a deposition not taken in this case,

is improper.  See *Advantage Media, LLC, v. City of Hopkins*, 379 F.Supp.2d 1030, 1037 (D.Minn. 2005) (Because the disposition testimony "stems from an unrelated case, because it is being offered as evidence to prove the truth of the matter asserted, and because it does not fall within a recognized exception to hearsay, that disposition testimony is inadmissible here").  To the extent Defendants attempt to admit the Lail deposition as opinion testimony, that use is also impermissible.  See Rule 26(e) of the Federal Rules of Civil Procedure.  Accordingly, Plaintiffs contend that the entire deposition is inadmissible on these grounds.

B.    ABB Defendants' Unusual Evidentiary Questions:

1.    In addition to the evidentiary issue noted below by Fidelity Defendants regarding the admissibility of e-mail communications, it is ABB's position that any statements contained in e-mail and other correspondence deemed admissible as to Fidelity Defendants as an admission by a party-opponent under the hearsay exception is nonetheless inadmissible hearsay as to ABB Defendants.  *See* Fed. R. Evid. 801(d)(2).  Specifically, "one party's admissions are not admissible against another, even if the two are co-defendants in a single action."  *Plymack v. Copley Pharmaceutical, Inc.*, No. 93-cv-2655, 1997 WL 122801, at * 3 (S.D.N.Y. March 17, 1997); *see also Battle v. Lubrizol Corp.*, 673 F.2d 984, 990 (8th Cir. 1982).

2.    Whether documents related to the Texa$aver Plan for the Employees Retirement System of Texas are admissible for any purpose.  ABB's position is that the documents presentation is inadmissible on hearsay, relevance and Rule 403 grounds.  *See* F.R.E. 402, 403, 802.  The documents are not properly authenticated, lack proper foundation, and contain inadmissible hearsay.  Further, the Texa$aver Plan is a non-ERISA plan and is thus irrelevant to this litigation.

C.    Fidelity Defendants' Unusual Evidentiary Questions:

1.    Whether internal Fidelity e-mail communications are generally admissible under the business records exception—F.R.E. 803(6)—to the hearsay rule.  Plaintiffs have identified numerous internal Fidelity e-mail communications as trial exhibits.  Fidelity's position is that most such emails are hearsay and do not, as a class, fall within any of the exceptions to the hearsay rule.  *See* F.R.E. 802; *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 (S.D.N.Y. 2008); *United States v. Swanson*, No. 06-0692, 2007 U.S. Dist. LEXIS 86412 (N.D. Cal. Nov. 16, 2007); *New York v. Microsoft Corp.*, 2002 U.S. Dist. LEXIS 7683 (D.D.C. Apr. 12, 2002).

2.    Whether out-of-court articles and presentations can be admitted as substantive evidence.  Plaintiffs have identified several articles, including newspaper and magazine articles, and out-of-court conferences and other

presentations as trial exhibits. Fidelity will seek to have such materials either excluded or admitted only on a limited basis to the extent that a legitimate non-hearsay purpose can be established for their admission. *See* F.R.E. 802; *Perry v. Kemma*, 356 F.3d 880, 889 (8th Cir. 2004); *U.S. v. Tucker*, 82 F.3d 1423, 1428 (8th Cir. 1996); *Torbit v. Ryder Systems, Inc.*, No. 4:00CV00618 (JCH), 2001 WL 36102782, at *3 (E.D. Mo. Sept. 24, 2001).

3.      Whether a seminar presentation on fiduciary litigation prepared by members of the law firm representing ABB is admissible for any purpose. Fidelity's position is that the presentation is inadmissible on hearsay, relevance and Rule 403 grounds. *See* F.R.E. 402, 403, 802; *Torbit v. Ryder Systems, Inc.*, No. 4:00CV00618 (JCH), 2001 WL 36102782, at *3 (E.D. Mo. Sept. 24, 2001).

4.      Whether evidence concerning conduct that occurred prior to December 29, 2000, *i.e.,* the period as to which the Court has determined that the statute of limitations has run, is admissible. Fidelity's position is that such evidence, if offered to prove liability or damages for the period prior to December 29, 2000, is not admissible under F.R.E. 402. *See* F.R.E. 402, 403. *See also Tennison v. Circus Circus Enterps., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 460 (1st Cir. 1963); *Wingfield v. United Techs. Corp.*, 678 F. Supp. 973, 983 (D. Conn. 1988); *Franklin v. Consol. Edison Co. of New York, Inc.*, No. 98 Civ. 2286, 2000 U.S. Dist. LEXIS 18277 (S.D.N.Y. Dec. 19, 2000).

5.      Whether, due to scheduling constraints, witnesses may be called out of order. Fidelity has a few witnesses who, because of significant scheduling conflicts, may not be available to testify during Fidelity's affirmative case. Accordingly, Fidelity may ask that one or more of those witnesses be permitted to testify during plaintiffs' or ABB's case. *See* F.R.E. 611; *Loinaz v. EG & G, Inc.*, 910 F.2d 1, 6-9 (1st Cir. 1990).

6.      Whether the reports of plaintiffs' experts are admissible as substantive evidence. Plaintiffs have identified their experts' reports as trial exhibits. Fidelity's position is that such reports are inadmissible hearsay and are unnecessary and needlessly cumulative of the same experts' anticipated testimony. *See* F.R.E. 403, 802; *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 479-81 (6th Cir. 2008); *Saadi v. Maroun*, 2009 WL 3028312 (M.D. Fla. Sept. 17, 2009); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008); *Ake v. General Motors Corp.*, 942 F.Supp. 869, 877-78 (W.D.N.Y. 1996).

7.      What procedures may appropriately be put into place to protect from public disclosure highly confidential documents whose public release

would cause Fidelity competitive injury. Fidelity is prepared to provide separate briefing on this issue but brings it to the Court's attention at this time to assist in the Court's trial planning.

8.      Whether defendants will be allowed the option to cover defense witnesses' full testimony (rather than being limited to scope of direct) when such witnesses are called adversely in plaintiffs' case in chief. In the interests of efficiency and convenience to the witnesses, Fidelity may seek to examine witnesses called by plaintiffs fully at the time they are called by plaintiffs rather than calling the witnesses a second time during defendants' case. Except as to one ABB witness, the parties appear to have an agreement as to this issue, but Fidelity identifies the issue as a precaution and to determine if the Court has any objection to this approach. *See* F.R.E. 611.

**Note:**    Identification of unusual evidentiary questions should also include citations to relevant legal authorities.

SCHLICHTER, BOGARD & DENTON

By: /s/ Jerome J. Schlichter
Jerome J. Schlichter
Daniel V. Conlisk
Troy A. Doles
Heather Lea
100 S. Fourth Street, Suite 900
St. Louis, Missouri 63102
(314) 621-6115
(314) 621-7151 (Fax)
jschlichter@uselaws.com
dconlisk@uselaws.com
hlea@uselaws.com

ATTORNEYS FOR PLAINTIFFS/
CLASS REPRESENTATIVES
*Ron Tussey, Charles Fisher, Timothy Hendron and Timothy Pinnell*

LATHROP & GAGE, L.C.

/s/ Richard N. Bien     (with consent)
Richard N. Bien
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108

M. Randall Oppenheimer
Robert N. Eccles
Brian D. Boyle
Shannon Barrett
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
*Admitted pro hac vice*

James S. Dittmar
James O. Fleckner
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
*Admitted pro hac vice*

*Attorneys for Defendants Fidelity Management Trust Company and Fidelity Management &
Research Company*

MORGAN, LEWIS & BOCKIUS LLP

/s/ William J. Delany (with consent)
Brian T. Ortelere
William J. Delany
Azeez Hayne
Jeffrey Sturgeon
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
*admitted pro hac vice*

Thomas E. Wack
Jeffrey S. Russell
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Tel: (314) 259-2000
Tax: (314) 259-2020

*Attorneys for the ABB Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Adam B. Walker, Azeez Hayne, Brian Boyle, Brian T. Ortelere, Charles Lee Jolley, Gregory C. Braden, Henry D. Fellows, Jr., James O. Fleckner, James S. Dittmar, Jeffrey A. Strgeon, Jeffrey S. Russell, Michael J. Nester, Richard N. Bien, Robert N. Eccles, Shannon Barrett, Stephen D. Brody, Thomas E. Wack, William J. Delany.


<div align="right">

_____/s/ Troy A. Doles_____

</div>