UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

RONALD TUSSEY, *et al*.,      )
      )
Plaintiffs,      )
      )
v.      )      Case No. 06-04305-CV-C-NKL
      )
ABB, INC., *et al*.,      )
      )
      Defendants.      )

# PLAINTIFFS' MEMORANDUM IN SUPPORT
# OF THEIR MOTION FOR ATTORNEY FEES

SCHLICHTER, BOGARD & DENTON
Jerome J. Schlichter
Troy A. Doles
Heather Lea
100 S. Fourth Street, Suite 900
St. Louis, Missouri 63102
(314) 621-6115
(314) 621-7151 (Fax)

Attorneys for Plaintiffs

Table of Contents

I.  The analysis for reasonable fees for Plaintiffs' counsel is a distinct and separate analysis from what fees the Court may shift to Defendants under ERISA §502(g)(1), which serves to compensate the Class (not Plaintiffs' counsel)..........................................................1

    A.  Under Rule 23(h), Plaintiffs' counsel are entitled to a reasonable fee, considering the risk of non-recovery, the substantial hours invested, the expenses incurred, the difficulty and undesirability of the case, and the monetary and nonmonetary benefit obtained......3

        1.  The likelihood of Plaintiffs prevailing in this case. ...................................4

        2.  Plaintiffs' counsel invested tremendous time and effort into prosecuting this case without any guarantee of remuneration...........................................5

            a)  The agreement between the Named Plaintiffs and Plaintiffs' counsel reflects the market negotiation for risk. ...........................................7

            b)  Apart from the contract amount, a multiplier of lodestar hours is appropriate to compensate for risk.....................................................8

        3.  Delay in payment. .........................................................................9

        4.  Value of the damage award including non-monetary relief. ..................10

    B.  Plaintiffs' counsel advanced over $2,168,811 in litigation expenses............................11

    C.  The Named Plaintiffs should receive an award of $25,000.........................................13

    D.  Plaintiffs' counsel's requested fee of $14,356,209 is reasonable under Rule 23(h). .....14

II. The Class is entitled to recover statutory attorneys' fees from Defendants under ERISA §502(g)(1), which become part of the judgment in this case. ................................................14

    A.  When deciding whether to shift attorneys' fees and costs to Defendants, the Court looks to culpability, deterrence, benefit to all participants, and significant ERISA result. .....17

    B.  The lodestar calculation is the method for determining what Defendants must pay to the Class as an element of damages, in order to compensate the Class for attorneys' fees and costs. ..................................................................................................19

        1.  Under a lodestar calculation, Defendants are responsible for $14,001,052 in fees. ..................................................................................................19

    C.  The Class is entitled to reimbursement of $349,078.78 in non-taxable costs. ...............24

ii

D.  Defendants should be jointly and severally liable for fees shifted under ERISA §502(g)(1)................................................................................................................. 24

III. Conclusion ........................................................................................................................ 25

iii

Table of Authorities

**Cases**

*Alan v. Amalgamated Transit Union Local 788*, 554 F.2d 876 (8th Cir. 1977) ........................... 4

*Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931 (8th Cir. 2007) ................................. 19

*Avalon Cinema Corp. v. Thompson*, 689 F.2d 137 (8th Cir. 1982) ......................... 21

*Blum v. Stenson*, 465 U.S. 886 (1984) .................................................................... 22

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) ........................................................... 11

*Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322 (E.D.Penn. 2007) .................... 8

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ......................... 5, 18, 26

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) .................................. 3

*Casey v. City of Cabool*, 12 F.3d 799 (8th Cir. 1993) ................................. 21

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ................................. 16, 21

*Coats v. Penrod Drilling Corp.*, 61 F.3d 1113 (5th Cir. 1995) .................................. 25

*Cohn v. Nelson*, 375 F.Supp.2d 844 (E.D.Mo. 2005) ...................................... 9

*Coleman v. Block*, 589 F.Supp. 1411 (D.N.D. 1984) ..................................... 4

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ................................. 3, 9, 13, 14, 18

*Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir. 1980) ................................. 21

*Dasler v. E.F. Hutton*, 698 F.Supp. 172 (D.Minn. 1988) ......................... 20

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) .................................. 18

*Eddy v. Colonial Life Ins. Co. of Am.*, 59 F.3d 201 (D.C. Cir. 1995) ......................... 17

*El-Tabech v. Clarke*, 616 F.3d 834 (8th Cir. 2010) ................................. 20

*Emery v. Hunt*, 272 F.3d 1042 (8th Cir. 2001) ......................................... 19

*Emmenegger v. Bull Moose Tube Co.*, 33 F.Supp.2d 1127 (E.D.Mo. 1988) ................... 13, 19, 24

*Eshelman v. Client Services Inc.*, No: 0822-cv-00763 (22d Cir. Mo. Dec. 7, 2009) ................... 22

*Essex v. Randall*, 2006 WL 83424 (D.Md. 2006) ......................................... 25

*First Nat.'l Bank & Trust Co. of Mountain Home v. Stonebridge Life Ins. Co.*, 619 F.3d 951 (8th Cir. 2010) ................................. 2, 17, 18

*Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) ...................... 9

*Florin v. Nationsbank of Ga.*, 34 F.3d 560 (7th Cir. 1994) ......................... 9

*Fox v. Vice*, 131 S.Ct. 2205 (2011) ............................................ 16, 17

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) .................................. 3

Case 2:06-cv-04305-NKL   Document 650   Filed 05/11/12   Page 4 of 33

*Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010) .......................................... 15, 17

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ....................................................................... 12

*Hensley v. Eckerhardt*, 461 U.S. 424 (1983) ........................................................... 15, 16, 17, 19

*Herbst v. Ryan*, 90 F.3d 1300 (7th Cir. 1996) ............................................................................ 25

*Hiltibran v. Levy*, 2011 WL 5008018 (W.D.Mo. 2011) ............................................................. 21

*In re AT&T Corp.*, 455 F.3d 160 (3d Cir. 2006) ........................................................................ 20

*In re BankAmerica Corp. Sec. Litig.*, 228 F.Supp.2d 1061 (E.D.Mo. 2002) .............................. 11

*In re Combustion, Inc.*, 968 F.Supp. 1116 (W.D.La. 1997) ......................................................... 8

*In re L. A. Dodgers LLC*, No. 11-12010, Doc. 884 at 8 (Bankr. D.Del. Dec. 1, 2011) ............... 24

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D.Tex. 1999) ................................................. 8

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) .......................................... 8, 12, 23

*In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985) ........................................................... 11

*In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808 (D.N.J. 2005) .................... 8

*In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001) ................................................... 4

*In re Texas Prison Litig.*, 191 F.R.D. 164 (W.D.Mo. 1999) ......................................................... 3

*In re THC Fin. Corp. Litig.*, 86 F.R.D. 721 (D.Haw. 1980) ........................................................ 11

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) ........................................................... 13

*In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 886 F.Supp. 445 (E.D.Penn. 1995).. 23

*In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. 2001) .............................................. 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ...................... 3, 18

*InveSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16 (1st Cir. 2004) ......................................... 24

*Jackson v. Ault*, 452 F.3d 734 (8th Cir. 2006) .......................................................................... 24

*Jackson v. Rheem Mfg. Co.*, 904 F.2d 15 (8th Cir. 1990) ............................................................. 1

*Jenkins v. Missouri*, 491 U.S. 274 (1989) ............................................................................ 20, 22

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) .................................... 4

*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) ....................................................... 15

*Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731 (8th Cir. 2004) ....................................... 17

*Lawrence v. Westerhaus*, 749 F.2d 494 (8th Cir. 1984) ......................................................... 2, 18

*Little Rock School Dist. v. Ark.*, 674 F.3d 990 (8th Cir. 2012) .............................................. 15, 21

*Loggins v. Delo*, 999 F.2d 364 (8th Cir. 1993) .......................................................................... 21

*Marcet, LLC v. Johnson & Johnson*, 2010 WL 680490 (S.D.Ill. 2010) ...................................... 12

*Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966 (8th Cir. 2002) .............................. 15, 17

v

*Martin v. Caterpillar, Inc.*, 2010 WL 3210448 (C.D.Ill. 2010) ................................................. 12

*Martin v. Caterpillar, Inc.*, No. 07-1009, Doc. 197 (C.D.Ill. Sept. 10, 2010).......... 7, 8, 12, 14, 22

*Mills v. Elec. Auto-Lite*, 396 U.S. 375 (1970) ............................................................................ 11

*Nat'l Trust for Historic Pres. v. Corps of Eng'rs*, 570 F.Supp. 465 (S.D.Ohio 1983) ................. 3

*Nobles v. MBNA Corp.*, 2009 WL 1854965 (N.D.Cal. 2009) ..................................................... 12

*Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979) ..................... 5

*Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)............................... 21

*Perdue v. Kenney A. ex rel Winn*, 130 S.Ct. 1662 (2010)..................................... 2, 18, 20, 21, 22

*Phillips v. Missouri*, 2000 WL 33910092 (W.D.Mo. 2000) ....................................................... 16

*Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir. 1996) ................................................................ 24

*Planned Parenthood v. Miller*, 70 F.3d 517 (8th Cir. 1995) ..................................................... 21

*Rankin v. Rots*, 278 F.Supp.2d 853 (E.D. Mich. 2003) ............................................................... 5

*Riddell v. Nat'l Democratic Party*, 712 F.2d 165 (5th Cir. 1983) ............................................. 25

*Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587 (9th Cir. 1984) ........................................... 14

*Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704 (D.Colo. 2007)............................................. 12

*Standley v. Chilhowee R-IV School Dist.*, 5 F.3d 319 (8th Cir. 1993)................................... 22, 24

*Starr v. Metro Sys., Inc.*, 461 F.3d 1036 (8th Cir. 2006) ................................................. 2, 15, 17

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) .............................................................. 7

*Toppins v. Hartford Life & Accid. Ins. Co.*, 2009 WL 4728993 (W.D.Mo. 2009)..................... 19

*Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d.
1253 (9th Cir. 2006) .......................................................................................................... 24

*United Steel Workers of Am. v. ASARCO, Inc.*, 2008 WL 3540152 (D.Ariz. 2008) ................... 25

*Velez v. Novaris Pharm. Corp.*, 2010 WL 4877852 (S.D.N.Y. 2010).......................................... 12

*Venegas v. Mitchell*, 495 U.S. 82 (1990) ............................................................................... 1, 14

*Vickerman v. Hennepin County Probate Court*, 543 F.Supp. 165 (D.Minn. 1982) ..................... 4

*Walker v. U.S. Dept. of H.U.D.*, 99 F.3d 761 (5th Cir. 1996).............................................. 25, 26

*Warnock v. Archer*, 397 F.3d 1024 (8th Cir. 2005) ................................................................... 24

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ...................................... 8

*Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331 (8th Cir. 1995)................ 15

*Will v. General Dynamics, Corp.*, 2010 WL 4818174 (S.D.Ill. 2010) ............................... 8, 14, 22

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D.Cal. 2011).................................. 20

vi

**Statutes**

28 U.S.C. §1920................................................................................................................... 13

29 U.S.C. §1132(g)(1) ................................................................................. 1, 2, 3, 4, 10, 14, 17

**Rules**

Fed.R.Civ.P. 23(h) ............................................................................................................... 11

Fed.R.Civ.P. 54(d)(2)............................................................................................................. 1

Plaintiffs respectfully request (1) that the Court award to the undersigned attorneys the attorneys' fees and non-taxable costs to which they are entitled pursuant to their agreement with the Plaintiffs and the requirement of a reasonable fee from the Class under Federal Rule of Civil Procedure 23(h), offset by the amount assessed against Defendants, if less, and (2) that the Court shift the amount of statutory fees and non-taxable costs to Defendants, jointly and severally, as allowed under 29 U.S.C. §1132(g)(1) and Fed.R.Civ.P. 54(d)(2), which becomes part of the judgment. It is necessary that this motion relating to attorneys' fees be bifurcated in that, as discussed below, fee shifting under ERISA provides a source of recovery for the Class that does not take into account risk and does not define the fees to which Plaintiffs' counsel are entitled. Finally, the Court is asked to grant an award to the Named Plaintiffs.

## I.   The analysis for reasonable fees for Plaintiffs' counsel is a distinct and separate analysis from what fees the Court may shift to Defendants under ERISA §502(g)(1), which serves to compensate the Class (not Plaintiffs' counsel).

As recognized by the Supreme Court and the Eighth Circuit, the compensation due Plaintiffs' counsel is a distinct and separate analysis from a determination of the statutory fees and costs Defendants must pay to the Class under a fee-shifting statute like ERISA §502(g)(1). *See Venegas v. Mitchell*, 495 U.S. 82, 90 (1990)(holding that a fee-shifting statute controls only "what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer"); *Jackson v. Rheem Mfg. Co.*, 904 F.2d 15, 17 (8th Cir. 1990). ERISA §502(g)(1) permits the Court to award the Class statutory fees, offsetting Plaintiffs' counsel's fees and supplementing the judgment. 29 U.S.C. §1132(g)(1)("may allow a reasonable attorney's fee and costs of action to either *party*")(emphasis added). *See also Venegas*, 495 U.S. at 87-88 ("it is the party, rather than the lawyer, who is so eligible"). Thus, the first part of the Court's consideration of this issue should be the amount of fees Plaintiffs' counsel are entitled to pursuant to Federal Rule of Civil

1

Procedure 23(h), which means the Court must look to the risks inherent in agreeing to take on this case, and Plaintiffs' counsel's agreement with the Named Plaintiffs.

Only after the Court has completed its analysis under Rule 23(h), should it turn to what fee must be shifted to Defendants under ERISA §502(g)(1). *Lawrence v. Westerhaus*, 749 F.2d 494, 495-96 (8th Cir. 1984) The two-part analysis is important because several of the factors in determining Plaintiffs' counsel's fee award under Rule 23(h) cannot be considered when awarding statutory fee damages to the Class under fee shifting. For instance, under this fee-shifting section of ERISA, the Court cannot, as a matter of law, consider any of the staggering risks undertaken by Plaintiffs' counsel in filing this case, and fronting all costs, including experts. *Perdue v. Kenney A. ex rel Winn*, 130 S.Ct. 1662, 1676 (2010)(defendants cannot be liable for compensating plaintiffs for the risk of non-recovery). Conversely, neither the degree of culpability or bad faith of the Defendants nor whether an award of attorneys' fees will have a future deterrent effect has any bearing on the amount of reasonable compensation due to Plaintiffs' counsel from the Class. *See Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040-41 (8th Cir. 2006). Yet, these are two important factors under ERISA §502(g)(1). *Westerhaus*, 749 F.2d at 495-96; *First Nat.'l Bank & Trust Co. of Mountain Home v. Stonebridge Life Ins. Co.*, 619 F.3d 951, 956 (8th Cir. 2010).

Also, in the Eighth Circuit, under ERISA §502(g)(1), some litigation expenses, specifically expert fees and electronic research, cannot be shifted to Defendants. As to these costs, the prevailing 'American Rule' controls and Plaintiffs bear them. In this case, Plaintiffs' counsel advanced approximately $1.7 million for consulting and trial experts. Declaration of Heather Lea ("Lea Decl.") ¶19. This Court's opinion makes clear the critical importance of such expert testimony to Plaintiffs' ultimate success. Certainly corporate clients, like Defendants, invariably

2

reimburse such expenses and in a timely fashion. In order to present a compelling case and to stand on a somewhat even playing field with Defendants, Plaintiffs' attorneys were required to advance these expert fees themselves and are continuing to carry them. Plaintiffs' attorneys took enormous risk in doing so, knowing that these expenses will never be recovered unless the Class recovered a sizable amount. While Defendants may not be required to pay certain non-shiftable costs under ERISA §502(g)(1), nothing in the statute or the case law interpreting the statute purports to affect recovering these fees from Plaintiffs.

A. **Under Rule 23(h), Plaintiffs' counsel are entitled to a reasonable fee, considering the risk of non-recovery, the substantial hours invested, the expenses incurred, the difficulty and undesirability of the case, and the monetary and nonmonetary benefit obtained.**

The "fair" and "equitable" fee owed by the Class under Rule 23(h) *must* account for Plaintiffs' counsel's agreeing to accept the risk of non-recovery. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998)(use of a lodestar multiplier in setting fees pursuant to Rule 23 is not merely permissible, but mandated); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994); *Nat'l Trust for Historic Pres. v. Corps of Eng'rs*, 570 F.Supp. 465, 472 (S.D.Ohio 1983)("A contingency factor is awarded not as a bonus but rather to make the attorneys' fee award reasonable."). The Court may also consider: the time and labor required; the novelty and difficulty of the questions; the customary fee for similar work; whether the fee is fixed or contingent; the amount involved and the results obtained; the "undesirability" of the case; awards in similar cases. *In re Texas Prison Litig.*, 191 F.R.D. 164, 177 (W.D.Mo. 1999)(Laughrey, J.). Nonmonetary benefits conferred upon the class and "the economics involved in prosecuting" the action are also pertinent to the Court's determination. *Id.* (quoting *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991)); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 128 (8th Cir. 1975); *Johnson v. Georgia Highway*

*Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as adopted by the Eighth Circuit, *see Alan v. Amalgamated Transit Union Local 788*, 554 F.2d 876, 884 (8th Cir. 1977).

All of these factors provide compelling support for Plaintiffs' counsel's fee request. Most of them are discussed in detail in Section II below. This litigation is unique in its scope and novelty; its undesirability is shown by the fact that it had never been done before; more than 24,000 billable hours have been spent so far in pursuing a judgment; the skill, experience, and quality of the attorneys representing the class in this ERISA litigation could only be obtained in a national market; the monetary result obtained represents a significant victory; the non-monetary relief ensures a valuable continuing benefit to the Class that will prevent even greater harm to the Class in the future. While these factors themselves support a fee in excess of that requested, it is compensation for the staggering risk undertaken by Class counsel and certain costs not recoverable from Defendants under ERISA §502(g) that constitutes the fundamental difference between the fee that Defendants should be made to pay under §502(g) and the fee to which Plaintiffs' counsel are entitled under Rule 23(h).

"The greater the risk of loss, the greater the incentive compensation required" for Plaintiffs' counsel. *In re Synthroid Marketing Litig.*, 264 F.3d 712, 719 (7th Cir. 2001); *see also Coleman v. Block*, 589 F.Supp. 1411, 1421 (D.N.D. 1984). "Factors which courts use to evaluate the degree of risk in a case include: (1) the likelihood that plaintiff would prevail, (2) the number of hours and labor risked without guarantee of remuneration, and (3) delay in payment." *Id.* (citing *Vickerman v. Hennepin County Probate Court*, 543 F.Supp. 165, 171-72 (D.Minn. 1982)).

### 1. The likelihood of Plaintiffs prevailing in this case.

When this case was filed, "there were no 401(k) excessive fee cases in the country." Decl. of Jay Sushelsky ("Sushelsky Decl.") ¶14; Declaration of Thomas Theado ("Theado Decl.") ¶11. Further, the Department of Labor, which has the authority to bring such suits, had never brought

one. *Id.* Thus, the law was undeveloped, and there was no history establishing judgments or settlements in such litigation. This created tremendous risk and uncertainty as to the outcome far beyond the risk in a case with established law. In the words of AARP's Senior Litigation Attorney, "no other firm has accepted this staggering risk in this area of litigation." Sushelsky Decl. ¶15. Further, no other firm in America has taken an excessive fee fiduciary breach case to trial. Declaration of Troy Doles, under seal, ("Doles Decl.") ¶11.

Beyond the legal uncertainty, the facts in this case pre-filing were opaque. ERISA plaintiffs are faced with unsettled law and difficult to discern facts. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)(noting that ERISA plaintiffs have "limited access to crucial information"); *Rankin v. Rots*, 278 F.Supp.2d 853, 879 (E.D. Mich. 2003)(describing the facts of an ERISA fiduciary breach claim as a "black box" prior to discovery). This combination of lack of litigation and opaque facts created a highly doubtful outcome. Courts have recognized that cases involving developing areas of law require a substantial upward adjustment to compensate for risk. *See Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979).

### 2. Plaintiffs' counsel invested tremendous time and effort into prosecuting this case without any guarantee of remuneration.

This was the first full trial in the United States of a claim for excessive fees in a large 401(k) plan. Doles Decl. ¶11. In this vigorously contested case that took four years to prepare for trial and one month for trial, Plaintiffs spent over 24,000 hours of attorney, paralegal and support staff time in producing the $36.9 million financial and valuable injunctive relief that Plaintiffs obtained for the Plans. Doles Decl. ¶239.

Plaintiffs' counsel knew that due to of the absence of such litigation, this case would require massive hours and would be a long battle. To take on the case, Plaintiffs' counsel had to utilize a

group of attorneys knowledgeable in ERISA, class actions, finance, and investment management, and have in place systems for document management, technology usage, in-house IT capability, and the administrative structure for what would clearly be a multi-year effort. While some of this is unreimbursable overhead, it adds to the cost and risk of this litigation.

Plaintiffs' counsel are aware of no case in any area of law without prior litigation that has had the amount of time and money advanced in this case by Plaintiffs' counsel and gone to trial. This time and expense was advanced entirely by one firm and taken through a full trial to a verdict against national law firms, which had 11 lawyers at the courtroom tables and up to 18 to 20 attorneys at times in the courtroom, along with two technology teams. The enormity of this resistance was anticipated by Plaintiffs' counsel at the outset.

In light of this staggering risk, and the fact that Plaintiffs' counsel will not be compensated for their time unless Plaintiffs prevail, Plaintiffs' counsel have no incentive to pad hours or expenses.[1] To the contrary, the incentive is just the opposite; efficient use of resources is critical when those resources are at complete risk. Also, all the time on Plaintiffs' side was spent by a single firm, with no need for time spent coordinating multiple firms' work or conferences with other firms; in contrast, Defendants used a total of five firms with a joint defense. Unlike Defendants, who used local counsel to supplement their national counsel, Plaintiffs' counsel have no hours for local counsel. Plaintiffs' counsel are from Missouri, are familiar with the Court, and functioned as both handling counsel and local counsel, saving thereby many attorney hours. Further, Plaintiffs' counsel had merely to travel within the state of Missouri to Court and to the mediations, rather than fly in from Los Angeles, Washington, Philadelphia or Boston.

_____

[1] As an example, despite the case complexity and massive number of documents, 13 of the 14 depositions of corporate officers herein were attended and taken by a single lawyer from Plaintiffs' firm. Doles Decl. ¶152.

6

Moreover, "counsel in this matter took a significant risk of non-payment by continuing to litigate in light of the *Hecker* decision." *Martin v. Caterpillar, Inc.*, No. 07-1009, Doc. 197 at 10 (C.D.Ill. Sept. 10, 2010)(McDade, J.)(recognizing the same Plaintiffs' counsel's actions in continuing to litigate therein). *Hecker*, which Defendants contended required judgment in their favor, dismissed 401(k) excessive fee claims against Fidelity and John Deere. Plaintiffs' counsel have continued to pour money, time and resources into this case, despite the risk being elevated by *Hecker* from the already staggering risk in taking on the case initially.

In contrast with Defendants' counsel, who were presumably timely reimbursed by their clients for their time and all litigation expenses, including millions of dollars in expert costs, all expenses on Plaintiffs' side were advanced solely by Plaintiffs' counsel, with the only hope of reimbursement being a significant victory. Besides investing the tremendous number of hours, Plaintiffs' counsel also advanced $2,168,811.19 million in expenses, over half of which was expert witness cost, in addition to costs for: document coding and review of over 200,000 pages of discovery; 14 corporate depositions, 14 expert reports; class certification; denial of two summary judgment motions; and the four-week trial. Doles Decl. ¶¶53-65, 152, 169, 173, 196–205, 212–216. Many additional hours and significant future expenses will be incurred by continued litigation over post-judgment matters.

### a) The agreement between the Named Plaintiffs and Plaintiffs' counsel reflects the market negotiation for risk.

Actual fee contracts privately negotiated for similar litigation are an indication of the appropriate compensation for risk. *Taubenfeld v. AON Corp*., 415 F.3d 597, 599 (7th Cir. 2005). The contracts between Plaintiffs and Plaintiffs' counsel in this case are for a 1/3 recovery plus expenses, consistent with the terms of other ERISA cases. *See* Theado Decl. ¶16; Sushelsky Decl. ¶23. Courts in the Central and the Southern Districts of Illinois have concluded that a

reasonable fee for Plaintiffs' counsel's work on ERISA cases such as this one, under Rule 23(h), is 1/3 of the class recovery. *Martin v. Caterpillar*, No. 07-1009, Doc. 197 at 4-5 (C.D.Ill. Sept. 10, 2010)(McDade, J.); *Will v. General Dynamics*, *Corp.*, 2010 WL 4818174, at *2-3 (S.D.Ill. 2010)(Murphy, J.)). The theory behind this is that when Plaintiffs' counsel generate monetary damages for the Class, they should be compensated with a percentage of the amount generated.[2] The 1/3 fee Plaintiffs agreed to pay their attorneys here is particularly appropriate because Plaintiffs' attorneys tried this case to judgment and thus had to put in enormous hours and effort, whereas most cases in which such percentage fees were awarded were settled without trial. *See, e.g. Martin*, No. 07-1009, Doc. 197 (C.D.Ill. Sept. 10, 2010); *Will*, 2010 WL 4818174.[3]

It is not necessary to speculate as to what the value of the risk was at the start of this litigation. The negotiation for risk occurred when each of the Named Plaintiffs entered into agreements with Plaintiffs' counsel, which provided for a contingent, 1/3 fee plus expenses. But for this agreement, Plaintiffs' counsel would not have agreed to the representation. Declaration of Jerome Schlichter ("Schlichter Decl.") ¶19. In light of the dearth of other counsel litigating in this field, without this agreement, the Class would have been unable to secure adequate, competent, and financially-able counsel. Theado Decl. ¶¶8-11, 13; Sushelsky Decl. ¶¶18-21

### b) Apart from the contract amount, a multiplier of lodestar hours is

---

[2] A 1/3 fee and higher of comparably-sized funds has been recognized as reasonable by many other courts. *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010)(1/3 of a $35 million settlement); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322, 335–42 (E.D.Penn. 2007)(34% of $39.8 million settlement); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *17 (D.N.J. 2005)(1/3 of $75 million common fund); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *10–12 (D.D.C. 2001)(34.06% of $359 million fund); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D.Tex. 1999)(35.1% of $190 million common fund); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999)(1/3 of $40 million common fund, settled during trial); *In re Combustion, Inc.*, 968 F.Supp. 1116, 1133, 1136, 1140 (W.D.La. 1997)(36% of $127 million).

[3] Percentage awards of less than 1/3 are more common for cases that settle before trial or discovery; awards of 1/3 and more are common for cases that proceed to trial. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F.Supp.2d 448, 463 (D.P.R. 2011).

**appropriate to compensate for risk.**

Given that no firm in America has taken on the staggering risk of such a case and tried it to conclusion, a multiplier beyond an hourly calculation for risk is not only appropriate but should be the highest allowed. A multiplier of three or more of lodestar is justified and has been allowed for cases with far less risk. In shareholder litigation, where both the law and facts are for more developed prior to filing, "courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation." *Cohn v. Nelson*, 375 F.Supp.2d 844, 862 (E.D.Mo. 2005).

Plaintiffs' reasonable fee *must* compensate for the staggering risk Plaintiffs' attorneys took in not receiving any payment in this case. *Cook,* 142 F.3d at 1015 (quoting *Florin v. Nationsbank of Ga.,* 34 F.3d 560, 565 (7th Cir. 1994)); *see* also *Fischel v. Equitable Life Assurance Soc'y,* 307 F.3d 997, 1008 (9th Cir. 2002)("It is an abuse of discretion to fail to apply a risk multiplier, however, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky.").

### 3. Delay in payment.

In the 5.5 years since Plaintiffs' counsel first spent time and money on this case, they have received nothing for that time and expenses, or for their cost. Defendants have already filed notices for appeal. If Plaintiffs are successful, there will still likely be years of delay in payment. Plaintiffs' counsel also bear the risk of reversal and still further trial court proceedings.

An alternative way to conceptualize this risk is to consider it from the perspective of hourly-billing ERISA firms. If the blended hourly rate for specialized national ERISA counsel is $600 per hour under an agreement that counsel is paid for time and reimbursed for expenses promptly and regardless of outcome, how much more would counsel demand if pay and expense reimbursement were wholly contingent on outcome and, even then, delayed for nearly a decade?

### 4.  Value of the damage award including non-monetary relief.

In addition to the $36.9 million judgment,[4] the Court also awarded valuable injunctive relief, rectifying years of self-interested behavior by the Plans' primary fiduciaries. In addition to the monetary judgment, the Court's Order requires ABB to: monitor recordkeeping costs; negotiate revenue sharing rebates; select the lowest share class for Plans' investments; and manage the Plans for the exclusive benefit of the Plans, their participants, and beneficiaries.[5] The Court also ordered that "[s]o long as it serves as a fiduciary to the Plan, ABB shall not use a recordkeeper to provide any corporate services to ABB." Doc. 623 at 79. This relief is of enormous additional value to the Plans. The value of the injunctive relief regarding float interest and competitive recordkeeping relief alone provides additional value annually of at least $1.48 million.[6] The strict requirements of the remaining injunctive relief will be of great additional value but their benefit has not been included in Plaintiffs' counsel's calculation of the fee from the Class. If one assumes that this injunctive relief will remain in effect for at least 4 years, this portion's value is $5.92 million. This, combined with the monetary damages award and pre-judgment interest, creates a value for the class of $43,068,629, plus any fees and costs awarded to the Class under ERISA §502(g)(1).

---

[4] Plaintiffs have moved to supplement the Court's judgment of $36.9 million with prejudgment interest in the amount of $248,629. Doc. 630. The total damages plus interest comes to $37.148 million.

[5] Additional benefits for the Class were also derived from Plaintiffs' counsel's efforts in discovery that led to Defendants' admission that non-Plan related, corporate expenses were improperly billed to, and paid by, the Plans. These would never have been discovered. At the time of trial, Defendants purportedly, paid these back to the Plans and were investigating the process that led to the improper charges. These transactions are in addition to the prohibited transactions found by this Court. *See* Doles Decl. ¶15.

[6] The value of the competitive bidding process ordered by the Court is determined by taking the average amount of excess by year per participant multiplied by the number of participants ($99.41 in excess on average x (1,474 participants in the represented Plan + 11,274 participants in the salaried Plan)) = $1,267,279 per year. The value of the float damages is approximately $215,701 per year. The two combined are $1,482,980 per year. For purposes of this calculation, Plaintiffs' counsel assume 4 years of affirmative relief, given that it is likely Class members may not be paid for that time (2 years for class notice, post-trial proceedings and appeal, 9 months for cert. petition, and 1 year for determination of individual amounts and payment distribution).

Case 2:06-cv-04305-NKL   Document 650   Filed 05/11/12   Page 17 of 33

Plaintiffs' counsel request a fee of $14,356,209. That request is 1/3 of the total value of the Class' recovery of $43,068,629, which includes the value of only part of the affirmative relief. This fee provides virtually no multiplier above the requested lodestar. Further, if the requested lodestar of $14,001,052 is granted, the total monetary judgment, including prejudgment interest, will be $51,149,681 million. The requested fee is 28% of that number and 25% of that amount when such monetary judgment is combined with the $5.92 million value of 4 years of injunctive relief. If the Court were to reduce the lodestar for any reason, this fee is still reasonable and far below the multiplier that is appropriate.

### B.   Plaintiffs' counsel advanced over $2,168,811 in litigation expenses.

It is well established that Plaintiffs' counsel are entitled to reimbursement of litigation costs and expenses. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); Fed.R.Civ.P. 23(h)(court can award "nontaxable costs that are authorized by law or by the parties' agreement"); *Mills v. Elec. Auto-Lite*, 396 U.S. 375, 392 (1970); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 661 (9th Cir. 1985). Reimbursable expenses encompass all reasonable litigation expenses. *In re BankAmerica Corp. Sec. Litig.*, 228 F.Supp.2d 1061, 1066 (E.D.Mo. 2002)(approving reimbursement to Class Counsel of: "expert witness costs; computerized research; court reporters; travel expenses; copy, phone and facsimile expenses; mediation; and class notification"). "The 'usual and customary' charges have been used as a measure of 'fair and reasonable' expenses for which the class ought to be responsible." *In re THC Fin. Corp. Litig.*, 86 F.R.D. 721, 740-41 (D.Haw. 1980).

Plaintiffs' counsel have advanced $2,168,811.19 which are described in detail in the Declaration of Heather Lea. Lea Decl. ¶¶5-20.[7] Plaintiffs' counsel, bearing a high risk of no

---

[7] Apart from the declaration regarding the amount and categories of expenses, Plaintiffs' counsel are prepared to submit actual invoices, receipts, and other documentation upon the Court's request, given their voluminous nature.

recovery, had a strong incentive to keep expenses reasonable. *In re Marsh ERISA Litig*., 265 F.R.D. at 150 (recognizing that counsel with contingent fee agreements have a "strong incentive to keep expenses at a reasonable level").

The costs are attributable to ordinary and necessary costs such as expert fees, computer-assisted document organization, deposition fees, travel, copies, and mediation costs. *See Nobles v. MBNA Corp*., 2009 WL 1854965, at *3 (N.D.Cal. 2009)("these expenses are reasonable and the type typically billed by attorneys in the marketplace")( *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994)(plaintiff may recover "those out-of-pocket expenses that 'would normally be charged to a fee paying client'"). As Judge McDade noted in granting final approval of the 401(k) class settlement in *Martin,* cases such as *Martin* and this case "involve significant discovery of complicated financial documents, [which] require significant expert testimony." *Martin v. Caterpillar, Inc.*, 2010 WL 3210448, at *3 (C.D.Ill. 2010).

Comparison to other cases demonstrates that Plaintiffs' counsel have been reasonable in their use of resources. In comparable litigation, costs frequently exceed $2 million. *See Marcet, LLC v. Johnson & Johnson*, 2010 WL 680490, at *11 (S.D.Ill. 2010)(citing 2007 AIPLA Survey, determining that average total cost where more than $25 million is at risk in patent cases is $5.5 million); *Velez v. Novaris Pharm. Corp*., 2010 WL 4877852, at *5 (S.D.N.Y. 2010)(awarding requested $2 million in expenses); *Stalcup v. Schlage Lock Co*., 505 F.Supp.2d 704, 709 (D.Colo. 2007)(finding approximately $2.18 million in expenses to be reasonable).

While the Class owes repayment for all expenses advanced, the Class can recover some of these expenses advanced by Plaintiffs' counsel from Defendants under ERISA's fee-shifting

provision.[8] Part II.C, *infra.* A telling demonstration of Plaintiffs' counsel's diligence regarding expenses can be seen by comparison to the cost of a single expert, who was jointly presented by Defendants. That witness, Glenn Hubbard, testified he received $200,000, plus 7.5% of a research firm's billings for research related to his work herein, totaling another $220,000. Doc. 567 at pp. 2108-2110. This means that the remaining 92.5% of the research firm's billings was approximately $2.8 million, for a total of approximately $3.2 million for Dr. Hubbard's testimony and research in this case. This single expert's cost paid by Defendants is almost double the combined cost of all experts used by Plaintiffs. In fact, the entire amount of Plaintiffs' counsel's claim for reimbursement of all expenses ($2.1 milion) is far less than the amount of this single defense expert witness and his research herein.

**C. The Named Plaintiffs should receive an award of $25,000.**

An incentive award to Named Class Representatives for prosecuting the case is appropriate, out of the Class recovery. *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)("relevant factors in deciding whether [an] incentive award to [a] named plaintiff is warranted include actions [the] plaintiff took to protect class's interests, [the] degree to which [the] class has benefitted from those actions, and [the] amount of time and effort [the] plaintiff expended in pursuing litigation")(citing *Cook,* 142 F.3d at 1016).

Mr. Fisher, Mr. Tussey, and Mr. Pinnell have been active, hands-on participants in this litigation, expending significant amounts of their time to benefit the Class. They initiated this action at substantial risk. They responded to document requests and interrogatories; reviewed

---

[8] Plaintiffs have separately filed their Bill of Costs. To the extent the Court finds any such costs are not taxable under 28 U.S.C. §1920, the cost should be included in the non-taxable costs due from the common fund and Defendants. *See Emmenegger v. Bull Moose Tube Co.*, 33 F.Supp.2d 1127, 1132 (E.D.Mo. 1988)(Perry, J.)("even if a certain out-of-pocket expense cannot properly be taxed as a recoverable 'cost,' it may still be a legitimate item of attorney's fees").

pleadings; assisted with discovery; and attended depositions and trial. Declaration of Mark Boyko ("Boyko Decl.") ¶ 9.

Awards of $25,000 to named plaintiffs have been allowed in comparable cases that did not go to trial. *See, e.g.*, *Will*, 2010 WL 4818174, at *4; *Martin*, No. 07-1009, Doc. 197; *Cook*, 142 F.3d at 1016 (upholding award of $25,000).

### D. Plaintiffs' counsel's requested fee of $14,356,209 is reasonable under Rule 23(h).

For the reasons stated above, the Court should award Plaintiffs' counsel attorneys' fees in the amount of $14,356,209, reimbursed costs in the amount of $2,064,019.75.[9] This amount fairly and adequately compensates Plaintiffs' counsel. Any statutory fees and costs recovered from Defendants through ERISA §502(g)(1) will supplement the judgment awarded to the Class and offset the effect of these fees for the Class. The Court should also award $25,000 to Mr. Fisher, Mr. Tussey, and Mr. Pinnell.

## II. The Class is entitled to recover statutory attorneys' fees from Defendants under ERISA §502(g)(1), which become part of the judgment in this case.

The Court has discretion to shift to Defendants attorneys' fees and costs for Plaintiffs' counsel. ERISA §502(g)(1), 29 U.S.C. § 1132(g)(1). "[A]bsent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant", regardless of lack of defendants' bad faith. *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 590 (9th Cir. 1984). The statutory fees contemplated by §502(g) are not the measure of compensation due to Plaintiffs' counsel. Instead, these fees are an element of damages—an amount that is shifted to Defendants and paid to the Class. *Venegas*, 495 U.S. at 89. Determination of their amount necessarily excludes some factors that must be included under

---

[9] This is total advanced costs of $2,168,811.19 less the amount requested in Plaintiffs' Bill of Costs. Plaintiffs also ask the Court to shift $349,078.78 in costs. *See* §II.C *infra*.

Rule 23(h), in particular risk of non-recovery, which means they are not the full compensation to Plaintiffs' counsel who take on the risk of payment.[10]

In contrast with civil rights cases, under ERISA, the Class need not be the prevailing party to be awarded attorney fees; it needs only to have achieved "some degree of success on the merits[.]" *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2152 (2010).[11] Plaintiffs have achieved more than some degree of success on the merits and thus meet *Hardt*'s threshold requirement for an award of attorney fees and costs from Defendants. "[A]lthough there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees." *Starr*, 461 F.3d at 1040 (citing *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 972 n.4 (8th Cir. 2002)(en banc)).

> ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts.

*Id.* at 1040 (quoting *Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995)); *see also Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1468 (9th Cir. 1995)(ERISA "should be liberally construed in favor of protecting participants in employee benefits plans").

Even though Plaintiffs were not completely successful on all of their claims, they proved that all of the Defendants breached fiduciary duties and recovered nearly $37 million in Plan losses and valuable injunctive relief. "A court should compensate the plaintiff for the time his

---

[10] On the other hand, the fee shifting lodestar can be higher than the fee from the class. "Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount." *Little Rock School Dist. v. Ark.*, 674 F.3d 990, 995 (8th Cir. 2012).

[11] *Cf. Hensley v. Eckerhardt*, 461 U.S. 424, 433 (1983)(holding in a civil rights case that a "plaintiff must be a 'prevailing party' to recover an attorney's fee under §1988").

attorney reasonably spent in achieving the favorable outcome, even if the plaintiff failed to prevail on every contention." *Fox v. Vice*, 131 S.Ct. 2205, 2214 (2011)(quoting *Hensley*, 461 U.S. at 435; quotation marks omitted).

Similarly, the Court should not reduce the compensable hours merely because the Court found Fidelity not to be a fiduciary as to all breaches and did not order disgorgement by Fidelity. *See City of Riverside v. Rivera*, 477 U.S. 561, 570 (1986)(affirming district court's award of all attorney time despite proving case against only 6 of 32 original defendants); *Phillips v. Missouri*, 2000 WL 33910092, at *2–3 (W.D.Mo. 2000)(Laughrey, J.)("although Phillips did not prevail against every defendant in the lawsuit, his claims against them were so closely interrelated that much of counsel's time must have been spent preparing for the case as a whole, rather than spending time preparing separate cases against each individual defendant"). Proof of the intrinsic interrelatedness of all of the claims in this case is shown by the fact that ABB and Fidelity: jointly defended against class certification and the merits of this action; jointly endorsed all defense experts; and conducted a joint trial defense. Further, Fidelity contended, as arduously as ABB, that Plaintiffs' failed to prove *any* breach of fiduciary duty. Moreover, the discovery Plaintiffs obtained from Fidelity was critical to proving the fiduciary breaches in this case. Doles Decl. ¶¶55, 60, 64, 67, 75, 102, 116, 146, 160, 167, 171, 183, 189, 198. By entering judgment against all Defendants jointly and severally for Plaintiffs' attorney fees and costs (*see* Part II.D *infra*), the Court can leave it to the well-financed Defendants to sort out among themselves who should bear ultimate responsibility for these fees and costs. ERISA's fee shifting provision allows participants to recover from Defendants an amount of attorneys' fees, thereby reducing or entirely eliminating the impact on them of paying attorneys' fees and costs from damage awards.

Determining the amount to award under ERISA's fee-shifting statute "should not result in a

second major litigation." *Fox*, 131 S.Ct. at 2216 (quoting *Hensley*, 461 U.S. at 437); *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 748 (8th Cir. 2004). Plaintiffs need only submit documentation appropriate to meet the burden of establishing an entitlement to an award, not to satisfy "green-eyeshade accountants." *Fox*, 131 S.Ct. at 2216.

### A. When deciding whether to shift attorneys' fees and costs to Defendants, the Court looks to culpability, deterrence, benefit to all participants, and significant ERISA result.

In deciding whether to award statutory fees and costs under ERISA §502(g)(1), the Court must consider: the degree of the opposing parties' culpability or bad faith; ability of the opposing party to pay; whether an award of attorney fees against the opposing party might have a future deterrent effect; whether the parties requesting attorney fees sought to benefit all plan participants or to resolve a significant legal question regarding ERISA; and the relative merits of the parties' positions. *Starr*, 461 F.3d at 1040 (quoting *Ark. Blue Cross*, 299 F.3d at 969 n.4);[12] *First Nat.'l Bank*, 619 F.3d at 956; *see also Hardt*, 130 S.Ct. at 2158 n.8 (district court may consider these factors in deciding whether to award fees once a claimant has shown some degree of success on the merits). These factors "are by no means exclusive or to be mechanically applied." *Ark. Blue Cross*, 299 F.3d at 972.

Most of these factors have nothing to do with determining reasonable compensation for Plaintiffs' counsel, yet they have a direct bearing on the amount of attorneys' fees that should be borne by Defendants and paid to the Class as a part of the judgment. For these reasons, the award of statutory attorneys' fees should not be equated with what reasonable compensation is due to Plaintiffs' counsel under Rule 23(h). The purpose and the considerations are wholly distinct. Limiting Plaintiffs' counsel's recovery under Rule 23(h) to the statutory attorneys' fee amount

---

[12] These are similar to the factors used in other Circuits. *See, e.g.*, *Eddy v. Colonial Life Ins. Co. of Am.*, 59 F.3d 201, 206–10 (D.C. Cir. 1995)(surveying other Circuits); *Hardt*, 130 S.Ct. at 2154 n.1.

prevents compensating Plaintiffs' counsel for risk, a factor which must be accounted for under Rule 23(h). *Perdue*, 130 S.Ct. at 1676 (defendants cannot be liable for compensating plaintiffs for the risk of non-recovery under fee shifting); *Cook*, 142 F.3d at 1015 (use of a lodestar multiplier in setting fees pursuant to Rule 23 is not merely permissible, but mandated); *Wash. Pub.,* 19 F.3d at 1302 (district court abused its discretion in denying a risk multiplier to Plaintiffs' counsel). Thus, the fee shifted to Defendants is limited to a lodestar calculation, taking into account culpability, deterrence, and whether an important ERISA question is resolved. *Westerhaus*, 749 F.2d at 496; *First Nat.'l Bank*, 619 F.3d at 956.

These factors overwhelmingly compel an award of attorney fees and costs against Defendants. There is powerful evidence of Defendants' culpability. The court found that Defendants breached statutory fiduciary duties that are "the highest known to the law." *Braden*, 588 F.3d at 598 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). The Court found that: ABB Defendants breached their fiduciary duties by causing the Plans to pay excessive recording keeping fees to Fidelity at a loss of $13.4 million and by "blatant" imprudence replaced the Plans' Wellington Fund with Fidelity's Freedom Funds at a loss of $21.8 million; ABB, Inc. and its Employee Benefits Committee breached their fiduciary duties by selecting more expensive Fidelity investment options for the Plans; providing Fidelity excessive recordkeeping fees to subsidize corporate services Fidelity provided to ABB; the Fidelity Defendants breached their fiduciary duties by collecting float interest from Plan assets in the total amount of $1,294,388. Moreover, the deterrent effect of the judgment is powerful because Fidelity is the dominant company in the 401(k) industry. Further, being the very first case tried, the case decided important questions under ERISA, and it benefitted all participants in the Plans.

**B. The lodestar calculation is the method for determining what Defendants must pay to the Class as an element of damages, in order to compensate the Class for attorneys' fees and costs.**

To determine the amount of fees to shift to Defendants, the Court looks to the "'lodestar' calculation, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Toppins v. Hartford Life & Accid. Ins. Co.*, 2009 WL 4728993, at *2 (W.D.Mo. 2009)(Laughrey, J.)(citing *Hensley*, 461 U.S. at 433); *see also Emmenegger*, 33 F.Supp.2d at 1133; *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001).

Factors to consider in determining the lodestar amount include: time and labor required; novelty and difficulty of the questions; skill required to perform the legal service properly; preclusion of other employment by the attorney due to acceptance of the case; customary fee for similar work in the community; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; amount involved and results obtained; experience, reputation, and ability of the attorneys; undesirability of the case; nature and length of the professional relationship with the client; and awards in similar cases. *Hensley*, 461 U.S. at 430; *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007). Virtually every one of these factors above strongly favors Plaintiffs here, as demonstrated in the materials supporting this memorandum.

**1. Under a lodestar calculation, Defendants are responsible for $14,001,052 in fees.**

The detailed declaration of Troy Doles and accompanying backup materials in paragraphs 229-240, set forth the hours spent in this case and its great complexity. Plaintiffs' counsel have invested over 24,000 attorney and professional support hours, not including time on this fee

petition, on this case.[13] *See* Doles Decl. ¶¶229-240. Under the lodestar approach to fee shifting, and without factoring in risk, these hours must be compensated at a reasonable hourly rate. These hours are reasonable for this case because novel and complex litigation, especially against large corporations and international law firms, often results in billable hours that reasonably exceed 20,000 hours. *See, e.g., Jenkins v. Missouri*, 491 U.S. 274 (1989)(affirming award of attorney fees for 18,101 attorney hours and 16,579 paralegal hours); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *23–27 (N.D.Cal. 2011)(33,369 attorney and paralegal hours reasonable for vigorously litigated and aggressively defended FLSA case that settled); *In re AT&T Corp.*, 455 F.3d 160, 172 (3d Cir. 2006)(48,000 hours for four years of litigation and two weeks of trial); *Perdue*, 130 S.Ct. at 1672.

This time was required because of the complexity of the case, industry practices such as revenue sharing, which are notably opaque, and because of the vigorous defense of Defendants and their attorneys from large, national law firms. Defendants filed two motions to dismiss and two motions for summary judgment, on which Plaintiffs prevailed. Doles Decl. ¶¶48-52. Massive complicated discovery from both Defendants and third parties was obtained, which Defendants vigorously resisted. *Id.* at ¶¶66-162. Fourteen experts were named and deposed. *Id.* at ¶¶169, 173. Defendants opposed class certification and pursued an interlocutory appeal. *Id.* at ¶¶53-65. Further, the Court has observed the complexity, intensity, and four-week length of trial.

Throughout this case, Defendants carried out a "take no prisoners" approach to defense and

---

[13] Attorney time spent preparing a fee petition is appropriate for compensation in fee-shifting cases. *El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010)("Time spent preparing fee applications is generally compensable"); *Dasler v. E.F. Hutton*, 698 F.Supp. 172, 177 (D.Minn. 1988)(allowing recovery for attorneys' fees incurred in litigating a motion for attorneys' fees related to an ERISA case). Plaintiffs' counsel have spent substantial time preparing the fee petition and vast accompanying supporting materials herein. The time spent in this fee petition, memorandum, and declarations has been quite substantial. *However, Plaintiffs' counsel have included <u>none of that time</u> spent on the fee petition and attachments in the lodestar calculation.*

spared no expense in resisting Plaintiffs' claims. Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside*, 477 U.S. at 580 n.11 (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C.Cir. 1980)(en banc); *Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993).[14]

"A reasonable hourly rate generally means 'the ordinary fee for similar work in the community.'" *Little Rock School Dist. v. Ark.*, 654 F.3d 990, 997 (8th Cir. 2012)(quoting *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982)(en banc)). However, "rates are not limited to those in a local community where those rates would not be 'sufficient to attract experienced counsel' in a specialized legal field." *Id.* (quoting *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993)). A "national market or a market for a particular legal specialization may provide the appropriate market." *Id.* (quoting *Casey*, quotation and editing marks omitted). Here, without question, "community" is a national one because this "case involves the special expertise of non-local counsel." *Hiltibran v. Levy*, 2011 WL 5008018, at *2 (W.D.Mo. 2011)(Laughrey, J.)(citing *Planned Parenthood v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995)). This is obvious from the locations of Defendants' lead attorneys who are from three large firms with offices in Los Angeles, Boston, Philadelphia, and the District of Columbia. There is simply no question that the appropriate market for awarding attorney fees is a national one among highly experienced specialists in class actions, ERISA, and complex litigation. Doles Decl. ¶¶6-12.

"[T]he quality of a prevailing party's counsel's representation normally are [sic] reflected in the reasonable hourly rate." *Perdue*, 130 S.Ct. at 1673 (quoting *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)); *Id.* at 1674 n.5 ("the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates")(quoting

---

[14] Plaintiffs' counsel request that the Court consider the Declaration of Troy Doles in its entirety in further support of this point.

*Blum v. Stenson*, 465 U.S. 886, 898 (1984). In addition, to account for the long delay from the commencement of this action to judgment, the Court must base Plaintiffs' attorney fee award on current rates. *Perdue*, 130 S.Ct. at 1675 (quoting *Jenkins*, 491 U.S. 282); *Standley v. Chilhowee R-IV School Dist.*, 5 F.3d 319, 325 (8th Cir. 1993).

Plaintiffs' counsel's time was approved in 2009 at hourly rates ranging from $325 to $800 and legal assistants at $125. *Eshelman v. Client Services Inc.*, No: 0822-cv-00763 (22d Cir. Mo. Dec. 7, 2009); *see* Boyko Decl. ¶2. The same rates were accepted in 401(k) ERISA fiduciary breach settlements. *Martin*, No. 07-10009, Doc. 197 at 8 (McDade, J.)(approving blended rate of $514.60 based on Plaintiffs' counsel's 2009 rates); *Will*, 2010 WL 4818174, at *3 (approving *Martin* rate).[15] Since Plaintiffs' counsel's rates were approved as reasonable, fees for sophisticated legal practice have increased by 10.7%. Boyko Decl. ¶3. Taking this into account, Plaintiffs' counsel's 2012 rates range from: attorneys with 25 years or more experience–$885.60/hr; attorneys with 15-25 years–$691.88/hr; attorneys with 5-14 years–$498.15/hr; attorneys with 2-4 years–$359.78/hr; legal assistants–$138.38/hr. *Id*. ¶4. The fees previously ruled as appropriate for Plaintiffs' counsel in *Martin* and *Will*, have been brought up to date for 2012. *Id.* ¶2. The current rate for paralegals $275.00/hr. Boyko Decl. ¶6. The declaration of Troy Doles sets forth the total fees requested in each category and attaches exhibits that provide detailed billing records for attorney, paralegal, and legal assistant. Doles Decl. ¶¶229-240. The senior litigation counsel for AARP Foundation Litigation agrees that these rates are reasonable for the level of work and results Plaintiffs' attorneys obtained in this action. Sushelsky Decl. ¶28.

No other law firm in the United States has committed the resources and time necessary to

_____

[15] According to the National Law Journal, average billing rates for Top 250 firms increased by 2.7% in 2010 and 4.4% in 2011. Boyko Decl. ¶3. According to Mark Medice, Director of the Hildebrandt Institute's Peer Monitor Index, rates were expected to increase between 3% and 3.5% in 2012. *Id.* These surveys indicate a cumulative increase in fees between 2009 and 2012 of 10.7%.

pursue ERISA fiduciary breach actions over excessive fees in a 401(k) plans, such as this one, through judgment. Doles Decl. ¶11-12. These rates are particularly justified because of Plaintiffs' success against national defense attorneys, who charge similar and actually higher rates.

> The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement. The O'Melveny & Myers ERISA group, headed by Robert Eccles, is an unquestioned national leader in ERISA fiduciary breach litigation. The ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition confirms the quality of their representation of the Class.

*In re Marsh Erisa Litig.*, 265 F.R.D. at 148. O'Melveny & Myers national lead litigation partner, Mr. Oppenheimer, and Mr. Eccles contested with utmost vigor the lack of *any* fiduciary breach in this case, by Fidelity *or* ABB, and they were joined by prominent and zealous national advocates from Morgan Lewis. *See In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 886 F.Supp. 445, 479 (E.D.Penn. 1995)("They efficiently brought the case for the settlement class to resolution against a defendant energetically and ably represented by Morgan, Lewis & Bockius, a prominent firm with much experience in labor and employment litigation."). Therefore, for fee shifting, it is appropriate to compensate the Class at rates comparable to Defendants' attorneys. Those hourly rates from O'Melveny from publicly available information in 2009, and updated by the 10.7% national average increase in rates would be the following: attorneys with 26-37 years of experience—$952–$1051; attorneys with 16-21 years–$775–$908; attorneys with 5-14 years–$531–$747; attorneys with 2-4 years–$437–$498; and paralegals--$249–$343. Boyko Decl. ¶7. Thus, opposing counsel's own filings suggest rates higher than the requested fee shifting, lodestar rates for Plaintiffs' counsel. *Id*. Likewise, in 2011, Morgan Lewis' hourly billing rates reached: $900 for senior partners; counsel from $460 to $505; associate from $255 to $495; and Legal Assistant from $128 to $270. *Id*. ¶8.

Other national firms in complex cases charge similar or higher rates. *E.g., In re L. A. Dodgers LLC*, No. 11-12010, Doc. 884 at 8 (Bankr. D.Del. Dec. 1, 2011)($280–$965 for attorneys at Covington Burling; $855 for lead attorney, $200–$360 for paralegal and assistants).

Thus, the total amount of hours for the lodestar is 25,160.8. Doles Decl. ¶239. At the rates approved for Plaintiffs' counsel and updated to 2012, the total lodestar fee that should be shifted to Defendants is $14,001,052.

**C.   The Class is entitled to reimbursement of $349,078.78 in non-taxable costs.**

As indicated in Part I.B., above, Plaintiffs' counsel incurred a total of $2,064,019.75 in out of pocket, non-taxable expenses that are properly charged to the class under Rule 23(h). Declaration of Sheri O'Gorman ¶¶2-14. Of those, Defendants are liable for $349,078.78. Lea Decl. ¶¶2-14. "[O]ut-of-pocket expenses of the kind normally charged to clients by attorneys" are recoverable as part of an attorney fee award. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294–95 (8th Cir. 1996); *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005). That net amount excludes expert fees and Westlaw charges, which the Eighth Circuit has held cannot be shifted to Defendants. *Standley*, 5 F.3d at 325; *Emmenegger*, 33 F.Supp. 2d at 1135-36.[16]

**D.   Defendants should be jointly and severally liable for fees shifted under ERISA §502(g)(1).**

The Court should award fees and costs to the Class against all Defendants jointly and severally. ERISA liability is joint and several. All Defendants jointly defended against the existence of *any* breach of ERISA herein, and Defendants can decide among themselves how to

---

[16] "No other circuit has endorsed this view, and many have expressly held that computerized costs can, in appropriate circumstances, be recovered in addition to the hourly rates of attorneys." *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d. 1253, 1258 (9th Cir. 2006); *see also InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16 (1st Cir. 2004)(extensive discussion and citations in support of including as attorney fee expense); *Emmenegger*, 33 F.Supp.2d at 1137. Only the Eighth Circuit *en banc* can reverse *Standley. Jackson v. Ault*, 452 F.3d 734, 736 (8th Cir. 2006). Plaintiffs request that the court do so and therefore preserve this issue for appellate review.

Case 2:06-cv-04305-NKL   Document 650   Filed 05/11/12   Page 31 of 33

allocate ultimate financial responsibility for this additional amount of the judgment for the Class. "A court may impose joint and several liability in setting fees", particularly where the injury to the Plaintiffs is indivisible and "each party played a substantial role in the litigation", including having a "joint legal defense and shared experts." *Walker v. U.S. Dept. of H.U.D.*, 99 F.3d 761, 772–73 (5th Cir. 1996)(citing *Riddell v. Nat'l Democratic Party*, 712 F.2d 165, 169 (5th Cir. 1983)). Here, the losses to the Plans were caused by the actions of all Defendants acting in concert with each other and thus are indivisible, and the Defendants all jointly fought against the existence of *any breach* in this case. Doles Decl. ¶17. Though not all Defendants were found liable for all breaches, a difference in degree of fault between Defendants has no bearing on joint and several liability. "We know of no case suggesting that joint and several liability is inappropriate is a case of disparate fault." *Walker*, 99 F.3d at 773. "The standard American rule is that a plaintiff may recover against any joint wrongdoer and that the wrongdoers then can file contribution actions against their co-wrongdoers and allocate fault among themselves." *Id.* (citing *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1121–22 (5th Cir. 1995)(en banc)); *see also Herbst v. Ryan*, 90 F.3d 1300, 1305 (7th Cir. 1996)(joint and several award proper where all defendants actively participated in wrong); *United Steel Workers of Am. v. ASARCO, Inc.*, 2008 WL 3540152, at *1 (D.Ariz. 2008); *Essex v. Randall*, 2006 WL 83424, at *6–7 (D.Md. 2006).

## III. Conclusion

For the reasons set forth alone, Plaintiffs request an attorneys' fee from the Class of $14,356,209, and costs of $2,064,019.75 under rule 23(h) and an additional judgment for the Class of $14,001,052 for statutory fees and $349,078.78 in costs shifted to Defendants, jointly and severally, under ERISA §502(g)(1).

Respectfully Submitted,

SCHLICHTER, BOGARD & DENTON

By: /s/ Jerome J. Schlichter
Jerome J. Schlichter
Troy A. Doles
Heather Lea
100 S. Fourth Street, Suite 900
St. Louis, Missouri 63102
(314) 621-6115
(314) 621-7151 (Fax)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Adam B. Walker, Azeez Hayne, Brian Boyle, Brian T. Ortelere, Catherine A. Cugell, Charles Lee Jolley, Gregory C. Braden, Henry D. Fellows, Jr., James O. Fleckner, James S. Dittmar, Jeffrey A. Strgeon, Jeffrey S. Russell, Michael J. Nester, Richard N. Bien, Robert N. Eccles, Shannon Barrett, Stephen D. Brody, Thomas E. Wack, William J. Delany.

/s/ Jerome J. Schlichter