IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RONALD TUSSEY et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-4305-CV-C-NKL |
| ) | |
| ABB INC., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Pending before the Court are four motions: a motion to intervene [Doc. # 641] filed by International Paper Company: two motions to clarify or modify the Court's injunctive order, filed separately by Defendant ABB [Doc. # 635] and Defendant Fidelity [Doc. # 631]; and a motion to alter the judgment to add prejudgment interest by Plaintiffs. [Doc. # 630]. For the following reasons, the motion to intervene and motions to clarify or modify the Court's injunctive order are denied while the motion to add prejudgement interest is granted in part.

**I. Discussion**

    **A. Motion to Intervene**

On June 18, 2007, the Court granted the parties' joint motion for a protective order in this case. Movant International Paper Company ("IP") seeks to intervene in the action

1

before the Court in order to remove Plaintiffs' confidentiality designation for the expert reports and depositions of Plaintiffs' expert witness, Albert J. Otto. These reports and depositions were produced during discovery but not filed with the Court, though some parts were discussed at trial, and one document, the "Chart of Limited Reasonableness" was displayed in open court during Ott's direct and cross-examination. The parties do not dispute that at least some of the documents contain references to documents designated by Defendants as confidential.

In the alternative to removing Plaintiffs' confidentiality designations, IP requests that the Court allow it to use these reports and depositions in another pending case, *Beesley v. International Paper Company*, Case No. 3:06-cv-703-DRH (S.D. Ill.), provided that IP signs the Protective Order.

On April 2, 2009, IP first moved to intervene in the current action to challenge Plaintiffs' confidentiality designations of these materials. Otto moved to intervene in response, asking that his "Chart of Limited Reasonableness" and the identities of the vendors from whom he obtained information in preparing the chart be kept confidential. On October 22, 2009, the Court denied both motions without prejudice pending the Seventh Circuit's resolution of the interlocutory appeal on class certification in *Beesley*. [See Doc. # 433]. On January 21, 2011, the Seventh Circuit vacated class certification in *Beesley* and its companion case, *Spano v. The Boeing Co.,* 633 F.3d 574 (7th Cir. 2011), and remanded the case to the United States District Court for the Southern District of Illinois. IP filed the current motion to intervene on April 2, 2012.

### 1. Discussion

Before IP may challenge the confidentiality designations of documents in the case, it must first establish intervention as of right or permissive intervention. IP states it is not seeking to intervene as of right but rather seeking permissive intervention under Federal Rule of Civil Procedure 24(b). Rule 24(b) allows a court in its discretion to grant permissive intervention for a movant who shows that 1) the motion is timely; 2) the claim or defense "shares with the main action a common question of law or fact;" and 3) the intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The decision to grant or deny a motion for permissive intervention is wholly discretionary even when the elements of Rule 24(b) have been satisfied. *South Dakota ex rel Barnett v. United States Dep't of Interior*, 317 F.3d 783, 788 (8th Cir. 2003).

Plaintiffs argue that IP has no right of access to unfiled discovery and thus no standing to challenge its confidentiality. The Eighth Circuit has not addressed this issue but Plaintiffs point to a Seventh Circuit decision in which the court held that the public "has no constitutional, statutory (rule-based), or common-law right of access to unfiled discovery" upon which standing could be based. *Bond v. Utreras,* 585 F.3d 1061, 1073, 1075 (7th Cir. 2009) (discussing in depth the differences with regard to right of access between documents filed with the court and "discovery materials that have never been filed with the court and have never influenced the outcome of a judicial proceeding"). A district court relied upon *Bond* to deny a previous motion to intervene by IP to challenge

3

the confidentiality designation of Otto's documents in that case. *See Spano v. Boeing Co.*, No. 06-743, 2010 WL 55691, * 1-*2 (S.D. Ill. Jan 5, 2010) ("The Seventh Circuit's determination on this question is unequivocal: there is no public right of access to unfiled discovery.").

However, the Court need not decide the standing issue. Instead, the Court rejects the request because of the stage of this litigation and the added complication of dealing with this dispute so late in the process. This case is now in its final stages, as trial has been completed and judgment has been issued. Most of the pending post-judgment motions are resolved, with only a motion for attorneys' fees remaining.

Though motions to intervene are not precluded after a judgment has been issued, such a practice is generally frowned upon by courts, even when the motion to intervene does not go to the merits of the case. *See e.g. Bond*, 585 F.3d at 1071 (stating that the language of Fed. R. Civ. P.24(b)(3) "suggests that intervention postjudgment–which necessarily disturbs the final adjudication of the parties' rights–should generally be disfavored."). Though IP's initial motion to intervene was denied because of a pending interlocutory appeal, the Seventh Circuit subsequently remanded the *Beesley* case back to the district court in January 2011. This remand occurred 15 months prior to the judgment being issued in this case on March 31, 2012, and IP's refiling of its motion to intervene before the Court a few days later. IP offered no explanation until its reply briefing as to why it waited 15 months to file the motion, but now claims it postponed refiling until after the judgment in order to allow the parties to "determine the extent to which the

4

Court would rely on Otto's public trial testimony in its decision and whether any party (or the Court) would seek to protect its confidentiality." [Doc. # 664 at 5]. However, this argument is unpersuasive. IP fails to explain how the Court's treatment of Otto's trial testimony is relevant to IP's requests for unfiled discovery, and this lack of relevance is underscored by the fact that IP filed its initial motion to intervene before dispositive motions in the case had even been fully briefed. Further, the trial transcripts have never been sealed or otherwise hidden from public view; the risk that a party may seek to make them confidential in the future is insufficient to justify a 15-month delay in seeking to intervene for another purpose.

IP's intervention would also cause prejudice to the parties. The parties jointly requested the protective order be granted by the Court and no party has filed any motion or request to have this order lifted. Even if Defendants do not oppose IP's intervention, there is no indication that they now oppose continuation of the protective order. Given this reality, significant work would have to be done by the parties to sort through the documents to redact any material designated confidential before this material were transmitted to IP. Given these circumstances, it is apparent that in this case, in the words of the Seventh Circuit, "the extra litigant ... is not simply along for the ride but rather shifts the progress of the lawsuit in a new direction to obtain relief that neither the plaintiff nor the defendant may want." *Bond*, 585 at 1071 (7th Cir. 2009).

IP argues that Plaintiffs waived any challenge to IP's right to intervene, based on statements made by Plaintiffs in the April 2009 briefings that they "do not contest [IP's]

5

ability to intervene in this case." [Doc. # 327 at 3]. However, these statements do not waive any argument presently made, as the intervening three years have seen a substantial change in circumstances, including issuance of a final judgment in the case, thus requiring different calculations regarding prejudice and timeliness.

Based on the relevant circumstances discussed above, IP has failed to submit a timely motion to intervene before the Court and the motion is hereby denied.

### B. Motions to Clarify or Modify Injunctions

Defendants Fidelity and ABB both filed motions for clarification, or in the alternative, for modification of the injunction issued in the Court's Order dated March 31, 2012.

The injunction issued by the Court included the order that

> [W]ithin 18 months from the date of this Order, ABB utilizes a competitive bidding process, including a request for proposal to select a new recordkeeper. Fidelity Trust is permitted to take part in this process....So long as [ABB] serves a fiduciary to the Plan, ABB shall not use a PRISM recordkeeper to provide any corporate services to ABB.

[Doc. # 623 at 79-80].

Both parties seek clarification that Fidelity may continue to serve as the provider of corporate services to ABB until a new PRISM recordkeeper is selected.[1] In the

---

[1] Specifically, ABB seeks clarification that it may "maintain its DB and H&W contract with Fidelity pending the outcome of the RFP for the PRISM Plans." [Doc. # 636 at 2]. Likewise, Fidelity seeks clarification that the "Order does not prohibit Fidelity Trust or its affiliates from continuing to meet their obligations to ABB and its employees....pending ABB's selection of a new PRISM recordkeeper (or a new DB/H&W provider) during the time frame established by the Order (18 months)." [Doc. # 632 at 3].

alternative, both Defendants request that the Court modify its injunction to allow Fidelity Trust to continue to provide corporate services to ABB until a new PRISM recordkeeper is chosen.

The Court denies Defendants' motions. Though the Order allowed ABB 18 months to select a new PRISM recordkeeper, it provided no such extension for the requirement that Fidelity end its dual role as provider of corporate services to ABB. The injunctive relief was ordered after Defendants were found to have breached their fiduciary duties connected with subsidization of ABB corporate services. Any delay in terminating this cross-subsidization allows the breach to continue, thus furthering the harm to Plaintiffs. Defendants argue that they require up to 18 months in order to smoothly transition as to avoid disruption of benefits which would occur if Fidelity were immediately barred from providing corporate services to ABB.[2] However, the Court will not allow Defendants further delay in remedying their breaches based on speculation of future harm or inconvenience, which, in any case, Defendants could have taken steps to prevent at any time, particularly during the six weeks accruing between judgment and the time of the filing of these motions. The responsibility to avoid such harm remains with Defendants. Indeed, no harm should come to the Plan if Fidelity no longer provides

---

[2] Fidelity argues, for example that "if services are disrupted before they can be transitioned to a new provider, there is a risk that participant accounts would not be timely updated and maintained, that new participants would not be enrolled, or that benefits eligibility determinations would not be timely made. Notifications or estimates of benefits, or even benefit payments, could also be delayed and participants might lose access to the customer support that Fidelity provides to assist participants to navigate their benefits." [Doc. # 632 at 4].

corporate services.  The Court specifically provided an eighteen month cushion to prevent a Court-ordered disruption to the Plan.  No such consideration was given nor intended for Fidelity's corporate services contract.

### C. Motion for Prejudgment Interest

Plaintiffs request that the Court amend its Judgment to award prejudgment interest in the amount of $248,628.93 from the close of trial to the date of judgment.  The decision whether to award prejudgment interest is within the district court's discretion but the court abuses its discretion when denying a prevailing ERISA benefit claimant's request for prejudgment interest, absent exceptional or unusual circumstances.  *Leonard v. Southwestern Bell Corp. Disability Income Plan,* 408 F.3d 528, 534 (8th Cir. 2005).

Prejudgment interest awards are warranted when the damage award does not otherwise make the plaintiff whole.  *Smith v. World Ins. Co.*, 38 F.3d 1456, 1466 (8th Cir. 1994).  In particular, prejudgment interest serves to compensate the prevailing party "for the inability to use the money between the time of the compensable injury and the time the award is paid."  *Christianson v. Poly-America, Inc. Medical Benefit Plan,* 412 F.3d 935, 941 (8th Cir. 2005) (citation omitted).  "A common thread throughout the prejudgment interest cases is unjust enrichment–the wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute."  *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 946 (8th Cir. 1999).  Other purposes include promotion of settlement and deterrence of "attempts to benefit unfairly

from the inherent delays of litigation." *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 752 (8th Cir. 1986).

Here, an award of prejudgment interest is clearly appropriate. Defendants retained use of the funds owed to Plaintiffs from the close of trial to judgment, and Plaintiffs were unable to use this money. By the close of trial, Plaintiffs had established their right to this money. Through no fault of Plaintiffs or Defendants, an enforceable judgment was not entered until some time later. Therefore, to permit Defendants to benefit from this delay of litigation would be unjust enrichment. The remaining question is what rate should be used for prejudgment interest.

The Eighth Circuit has held that in an ERISA case, a court must "calculate [] prejudgment interest using the rate established by § 1961." *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 969 (8th Cir. 2004); *see also Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir. 1995) ("28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest under ERISA."). Section 1961 states:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated <u>from the date of the entry of the judgment</u>, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a).

Both parties acknowledge that Section 1961 applies in this case. However, Plaintiffs argue that Section 1961 is required to be used only to determine the appropriate source of the rate, which would be "a rate equal to the weekly average 1-year constant maturity Treasury yield." Plaintiffs argue that courts are not required to use the rate in place for the calendar week preceding judgment. Rather, Plaintiffs claim that the proper rate in this case would be the "weekly average 1-year constant maturity Treasury yield" from the date the losses were due, which would be the conclusion of the trial on January 28, 2010. Use of this rate, Plaintiffs argue, would serve the equitable purposes of prejudgment interest, as Plaintiffs would be compensated at the higher interest rate which would have applied had they been able to use the funds immediately after trial.

However, this approach is at odds with the literal language of the Eighth Circuit in *Sheehan* and *Mansker*. These cases require the use of Section 1961 to calculate both prejudgment and postjudgment interest, apparently adopting the same bright line approach to calculate prejudgment interest as is already used to calculate postjudgment interest. In fact, in *Mansker,* the court expressly rejected a district court's use of a 6% rate when awarding prejudgment interest, and lowered the rate to 5.28%, because the latter rate was the rate for postjudgment interest under Section 1961. *Mansker*, 54 F.3d at 1331. Further, the majority of district courts within the Circuit have agreed with this interpretation of *Mansker* and *Sheehan*. *See e.g. Emmenegger v. Bull Moose Tube* Co, 33 F. Supp. 2d 1123, 1124-25 (E.D. Mo. 1998) (relying on *Mansker* to find that the district court "erred by using the rates applicable when the various amounts became due, rather than the rate

10

applicable immediately before the judgment"); *Nelson v. Metropolitan Life Ins. Co.*, 2010 WL 153040,* 10 (D. Minn. 2010) (ruling that the argument that the prejudgment interest rate could be untethered from the date of judgment was "creative" but "not supported by Eighth Circuit law").

Therefore, in calculating prejudgment interest, the Court will use the weekly average 1-year constant maturity Treasury yield from the calendar week before the Court's March 31, 2012 judgment, or 0.18%.[3] Only Defendants provided a calculation using this rate, with Fidelity providing a total amount of prejudgment interest of $6,645.42, and ABB providing a figure of $85,217.64. However, ABB failed to include any calculations for $13.4 million of the total damages awarded against it. Therefore, the Court will adopt the figure provided by Fidelity unless Plaintiffs submit objections within seven days of the date of this Order, along with their own calculations of the prejudgment interest owed by Fidelity using the standard applied in this Order. The Court will give Plaintiffs and ABB seven days from the date of this Order to submit new calculations for the total amount of prejudgment interest owed by ABB. As indicated below, the Court rejects ABB's argument that the damages for its fiduciary breaches should be reduced. The prejudgment interest in this case is not intended to address any continuing violations by ABB since the

---

[3] The Court has accepted this standard because it thinks it is required to do so by Eighth Circuit law. If it were a matter over which the Court had discretion, then the Court would annualize the weekly average one-year constant maturity Treasury yield, starting with the rate applicable for January 28, 2010, the date of the conclusion of the trial, and ending with the date of judgment.

11

end of trial. It is only to compensate Plaintiffs for the delay in judgment for the damages submitted at trial.

ABB also argues that because Section 1961 is the appropriate method for calculating pre-judgment interest, the Court erred in determining the total judgment due in the case for recordkeeping violations at trial. Specifically, ABB points to the Court's adoption of the damages calculation of Plaintiffs' expert, Otto, at trial, which included a compound interest calculation based upon the annual rate of return of the S&P 500 Index for each respective year. [Doc. # 652 at 7]. ABB argues that the Court erred at trial by awarding Plaintiffs interest using the rate established by S&P 500 rather than the rate set forth in Section 1961(a). [Doc. # 652 at 7]. ABB calls for the recordkeeping judgment adopted by the Court–that is Otto's damage figure of $13.4 million– be reduced to $10.1 million by applying the Section 1961 rate. *Id.*

However, this argument is directed at the Court's findings regarding the appropriate method to calculate Plan losses and is in effect, an untimely motion for the Court to amend its judgment, as it was presented as an opposition briefing, not a motion, and was filed more than 28 days after entry of the Judgment, in violation of Federal Rule of Civil Procedure 59(e). In any event, ABB Defendants did not ever suggest this method of calculating losses, or present any alternative damages calculations, thus waiving its belated argument. Further, compensatory damages, such as the judgment awarded to Plaintiff, are a separate remedy from the equitable relief sought in the form of prejudgment interest. *See Christianson*, 412 F.3d at 941 (an award of prejudgment interest constitutes "other

appropriate equitable relief under section 29 U.S.C. §1132(a)(3)(B)"). For the above reasons, the Court declines ABB's request to reduce the judgment.

## II. Conclusion

For the foregoing reasons, the Court hereby DENIES the motion to intervene [Doc. # 641] filed by International Paper Company and the motions to clarify or modify the Court's injunctive order, filed by Defendant ABB [Doc. # 635] and Defendant Fidelity [Doc. # 631]. The motion to alter the judgment to add prejudgment interest [Doc. # 630] is granted in part and denied in part, with the Plaintiffs and ABB having seven days from the date of this Order to submit new figures as discussed above.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 21, 2012  
Jefferson City, Missouri