## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

RONALD TUSSEY, et al.,                )
                                       )
    Plaintiffs,    )
                                       )
v.                                     )       Case No. 06-04305-CV-C-NKL
                                       )
ABB, INC., et al.,                     )
                                       )
    Defendants.    )

## ORDER

Pending before the Court is a motion for attorneys' fees and costs by Plaintiffs.

[Doc. # 649].  For the reasons set forth below, the Court GRANTS attorneys' fees and

costs as follows: attorneys' fees in the amount of $12,947,747.68, and taxable and

nontaxable costs of $489,985.65, to be paid jointly and severally by Defendants ABB,

Inc., and Fidelity; costs of $1,712,834.85, to be paid out of the Class damages award; and

$25,000.00 to each of the three named Plaintiffs as an incentive award, to be paid jointly

and severally by Defendants ABB and Fidelity.

## I.       Background

This case involves two 401(k) retirement plans run by Defendants ABB, Inc., John

W. Cutler, Jr., Pension Review Committee of ABB, Inc., Pension & Thrift Management

Group of ABB, Inc., and Employee Benefits Committee of ABB, Inc. (collectively

"ABB"), with services provided by Defendants Fidelity Management Trust Company and

Fidelity Management & Research Company (collectively "Fidelity").  After having tried

this matter over a four-week period and reviewed extensive records and testimony, the

Court found that Defendants breached their fiduciary duties to Plaintiffs under the Employee Retirement Income Security Act ("ERISA"). In addition to providing injunctive relief, the Court found ABB Defendants jointly and severally liable for $35.2 million in monetary damages, and Fidelity Defendants jointly and severally liable for $1.7 million in monetary damages.

Pursuant to ERISA's fee-shifting provision, Plaintiffs request $14,356,209.00 in attorney fees and $2,098,029.86 in costs. Plaintiffs request that Defendants be held jointly and severally liable for $14,001,052.61 in fees and $350,560.67 in costs, and that the remainder be paid by Class members. In addition, Plaintiffs request that the named Plaintiffs receive an award of $25,000.00 each.

## II.    The ERISA Award

### A.    Fee-Shifting under ERISA

The Court has discretion to award attorney's fees under ERISA's fee-shifting provision. 29 U.S.C. § 1132(g)(1); *see also Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984). "[A]lthough there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1041 (8th Cir.2006) (citing *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir.2002)). In determining whether a fee award is proper, the court considers the following factors: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees

sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Leonard v. Sw. Bell Corp. Disability Income Plan*, 408 F.3d 528, 532 (8th Cir. 2005) (referencing *Lawrence*, 749 F.2d at 496). It is not necessary for the Court to review each factor "exhaustively and explicitly." *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999). Rather, these factors are "*general guidelines* which provide direction to the district court, while also facilitating meaningful appellate review." *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (emphasis in original) (internal quotes omitted).

Having weighed these factors, the Court determines that an award of fees and costs is appropriate in this case. ABB breached its fiduciary duties of both loyalty and prudence to the retirement plans, as a result of which it benefitted significantly while plan beneficiaries were deprived of millions of dollars. Fidelity, while less culpable, also took plan assets in violation of its fiduciary duty. The case also involved significant novel legal questions regarding the extent of the fiduciary duties owed by plan administrators under ERISA and will have a general deterrent effect on similarly situated fiduciaries. Plaintiffs sought to benefit all participants and beneficiaries of the pension plans and, but for their actions, the Defendants would continue to violate ERISA. In addition, the results of this case may help benefit other plan beneficiaries, in the event of similar litigation, by further clarifying the duty of loyalty and prudence owed by record keepers and employers. Finally, there is no question regarding Defendants' ability to pay attorneys' fees in addition to the judgment.

### B.     Lodestar Calculation

Awards under fee-shifting statutes are calculated using the lodestar method. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641 (1992) ("The "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.").   The lodestar figure is "the product of reasonable hours times a reasonable rate." *Id.* at 559, 2640; *see also Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002).  To determine the lodestar amount, the Court may consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*United HealthCare Corp. v. Am. Trade Ins. Co.,* 88 F.3d 563, 574 n.9 (8th Cir. 1996) (referencing *Hensley v. Eckerhart*, 461 U.S. 424, 428, 103 S. Ct. 1933, 1937 (1983)).  It is important that the district court provides a "concise but clear explanation" of the reasons for the fee award. *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941.

The central contention between the parties is what market should be used to assess a "reasonable" fee.  Defendants would have the Court assess Plaintiffs' fee based on the local market rate in Kansas City, Missouri, while Plaintiffs argue their fee should be assessed based on the national rate for complex litigation.  "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Fish*, 295 F.3d at 851-52.  However, in a complex matter, the relevant market

4

"may extend beyond the local geographic community" and include the national market or a market for a particular legal specialization. *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993). The Eighth Circuit has recognized that where plaintiffs' attorneys are "leaders in the field" and have "extensive experience" in a specialized area, they tend to be "able to handle the case in a shorter length of time than a local lawyer, without comparable experience," and so a higher rate is appropriate. *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (affirming the district court's approval of higher hourly rates based on the specialized skill of counsel). And contrary to Defendants' assertions, Plaintiffs need not show that no local attorney would have taken their case to prove that local rates should not apply; *Planned Parenthood* merely requires that Plaintiffs' counsel possess special expertise. *Id*; *see also Torgeson v. Unum Life Ins. Co. of Am.*, 2007 WL 433540 at *6 (N.D. Iowa Feb. 5, 2007).

It is well established that complex ERISA litigation involves a national standard and special expertise. *See, e.g.*, *Torgeson*, 2007 WL 433540 at *6; *Dobson v. Hartford Fin. Services Group, Inc.*, 2002 WL 31094894 at *3 (D. Conn. Aug. 2, 2002); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003). Plaintiffs' attorneys are clearly experts in ERISA litigation. The litigation was complex in size and subject matter, involved novel questions of law, and spanned nearly six years. The Court thus finds that a reasonable rate in this case would be best assessed against national rates for complex specialized litigation. The Court may also take into account awards in similar cases. In a 2009 case involving Plaintiff's counsel, the firm of Schlichter, Bogard, and Denton, the court approved hourly rates for this firm according to the following

schedule: for attorneys with 25 years or more experience, $800 per hour; for attorneys with 15-24 years of experience, $625 per hour; 5-15 years of experience, $450 per hour; 2-4 years of experience, $325 per hour; and for professional support staff, $125 per hour. *Eshelman v. Client Services, Inc., et al.*, No: 0822-cv-00763 (22d Cir. Mo. Dec. 7, 2009). [Doc. # 650, Exhibit # 1-2 to Boyko Decl.]. Based on these rates, in 2010 an Illinois district court found that a reasonable blended rate for Plaintiffs' counsel was $514.60 per hour. *Will v. Gen. Dynamics Corp.,* 2010 WL 4818174 at *3 (S.D. Ill. Nov. 22, 2010).

Defendants argue that because this litigation began in 2006, application of current rates is inappropriate. However, when lengthy litigation has delayed the payment of attorneys' fees, it is proper to calculate the lodestar based on contemporary rates. The Supreme Court has determined that "an appropriate adjustment for delay in payment – whether by application of current rather that historic rates or otherwise" may be "part of a 'reasonable attorney's fee.'" *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284, 282, 109 S. Ct. 2463, 2469, 2468 (1989). Applying *Jenkins*, the Eighth Circuit recognized that it is appropriate to award attorneys' fees "based on current rates for past services when payment of attorneys' fees is delayed." *Little Rock Sch. Dist. v. State of Ark.*, 127 F.3d 693, 697 (8th Cir. 1997) (finding compensation was not appropriate where delay was short and the result of Plaintiffs' own actions); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992) ("district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds."); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1060 (2d Cir. 1989) (a district court has a

6

"duty to consider this factor of delay" in awarding attorneys' fees); *Iqbal v. Golf Course Superintendents Ass'n of Am.*, 900 F.2d 227, 228 (10th Cir. 1990) (affirming the district court's approval of a higher rate because of "'inflation and the awards of other judges in this district' and because of the delay in payment of the attorneys' fees."). The reason for applying current fee rates is that an uncompensated delay in payment can discourage otherwise willing attorneys from taking plaintiffs who cannot afford counsel. *El-Tabech v. Clarke*, 616 F.3d 834, 839 (8th Cir. 2010). Additionally, contrary to Defendants' assertions, the Supreme Court has recognized that the relative youth or inexperience of attorneys at the beginning of litigation does not prevent them from being compensated at market rate when their performance has been "excellent." *City of Riverside v. Rivera*, 477 U.S. 561, 570, 106 S. Ct. 2686, 2692 (1986).

Plaintiffs request that the rate found reasonable by the Illinois district court in 2010 be increased by 10.7% to account for an increase in fees for sophisticated legal practice. However, the Court is mindful that "reasonableness" must also accord with the current national rate. "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir.2005).[1] The Court finds that a partner rate of $800 per hour is on

---

[1] Defendants rely on *Jorstad v. IDS Realty Trust* for the proposition that "the hourly rates which were found to be reasonable by the district court" based on the judges' "personal knowledge and… the case law in the 'area' of 'class action securities litigation' are "excessive and find no support in the law in this circuit." 643 F.2d 1305, 1312 (8th Cir. 1981). However, in *Jorstad*, the Eighth Circuit considered the district court's assessment to be unreasonable because the plaintiffs' attorneys had not substantiated their fee claims by providing detailed records "relating to standard hourly rates" for their firm or a "complete breakdown of who spent time in what endeavors." *Id.* at 1312. This is not the case here, where Plaintiffs' attorneys have provided documentation of rates and hours as well as past fee awards.

7

the upper end of that charged by national law firms in 2012. *See, e.g.*, "Billing Rates 2012," *Missouri Lawyers Weekly* (August 6, 2012). Additionally, comparison of Plaintiffs' requested fees to the fees Defendants paid their attorneys may also be relevant to determining reasonableness. *See Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1220 (8th Cir. 1981). Where the "litigation has been long and complex, involving both unique facts and novel questions of law…, the defendant's fees may provide the best available comparable standard to measure the reasonableness of plaintiffs' expenditures in litigating the issues of the case." *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*., 1996 WL 66111 at *3 (N.D. Ill. Feb. 13, 1996). The partner hourly rate used for Plaintiffs' counsel by the *Will* court, $800, is slightly more than the highest hourly rates paid to the law firm partners who were counsel for Defendant Fidelity ($549-$731), and somewhat higher than the partners who served as Counsel for Defendant ABB ($615-675).

Given the above, the Court sees no reason to increase the rate applied by the Illinois district court in 2010. The Court finds that a blended rate of $514.60 is appropriate in this case. A high rate such as this should amply compensate Plaintiffs' attorneys for the time and labor invested in this case lasting more than half a decade, as well as the novelty and difficulty of the questions involved. Plaintiffs have submitted documentation of 25,160.8 hours of work on this case to the Court. At the blended hourly rate of $514.60, this would equal a lodestar fee of $12,947,747.68.

    1.    *Lodestar Enhancement*

Plaintiffs request fees in excess of the lodestar amount calculated pursuant to ERISA's fee-shifting statute. Plaintiffs' primary justification for their request is their concern that the lodestar will not sufficiently encapsulate the risk they undertook in pursuing such novel and complex litigation. Lodestar enhancements are only permissible in "rare" and "exceptional" circumstances, "and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1674 (2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 899, 104 S. Ct. 1541, 1549 (1984)). The Eighth circuit has held that if a plaintiff "is able to establish that without an adjustment for risk [he] would have faced substantial difficulties in finding counsel in the local or other relevant market, he may be entitled to an enhancement of the lodestar to the extent "necessary to bring the fee within the range that would attract competent counsel." *Jackson v. Rheem Mfg. Co.*, 904 F.2d 15, 16-17 (8th Cir. 1990) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 733, 107 S. Ct. 3078, 3099 (1987) (O'Connor, J., concurring in part and concurring in judgment)) (internal quotes omitted). Generally, however, lodestar enhancements to account for risk are considered unnecessary, on the grounds that such an enhancement "would likely duplicate in substantial part factors already subsumed in the lodestar." *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S. Ct. 2638, 2641.

The Court finds that it is not necessary to enhance the lodestar in this case, since the lodestar calculated above adequately compensates for the risk inherent in this type of litigation by taking into account factors like novelty, difficulty, complexity, and length of the litigation.

2. *Lodestar Reduction*

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Quigley v. Winter*, 598 F.3d 938, 959 (8th Cir. 2010) (quoting *Hensley,* 461 at 434, 103 S. Ct. 1933). Defendants advocate for a reduction of the lodestar amount for several reasons. First, they oppose the number of hours requested on the grounds that some of these hours are not properly documented. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40 (internal quotes omitted); *see also Toppins v. Hartford Life & Acc. Ins. Co.*, 2009 WL 4728993 (W.D. Mo. Dec. 4, 2009). Inadequate documentation may justify reducing a fee award. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991). However, in this case the Court finds that Plaintiffs' documentation was sufficient to indicate how the hours requested were spent. The Court also finds that the claimed number of hours, 25,160.8, is reasonable given the complexity of the case. *See, e.g., In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D. Mo. 2002) aff'd, 350 F.3d 747 (8th Cir. 2003) (finding 22,393.4 hours reasonable in complex 4 year securities fraud class action); *In re Charter Communications, Inc., Sec. Litig*., 2005 WL 4045741 (E.D. Mo. June 30, 2005) (finding 13,633.7 hours reasonable in a 2 ½ year class action); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig*., 364 F. Supp. 2d 980, 996 (D. Minn. 2005) (finding 10,401.67 hours over 2 ½ years reasonable in a securities fraud and ERISA class action).

Case 2:06-cv-04305-NKL   Document 718   Filed 11/02/12   Page 10 of 22

Defendants also argue that Defendant ABB should not be liable for hours worked litigating against Defendant Fidelity, and vice versa. However, where the claims against multiple defendants are so intertwined that hours spent developing a claim against one cannot be easily distinguished from those spent developing a claim against the other, a court is not required to separate out each successful claim in determining the award. *City of Riverside v. Rivera*, 477 U.S. 561, 571, 106 S. Ct. 2686, 2692 (1986) (finding that downward adjustment was not appropriate where there was "a common core of facts" and much of the case was spent ferreting out relative liability); *see also Phillips v. Missouri*, 2000 WL 33910092 at *2 (W.D. Mo. Mar. 29, 2000); *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 1940 (1983). Neither must a fee award necessarily be reduced where one of the defendants was ultimately found to have less liability than the other. *See Griffin v. Jim Jamison, Inc*., 188 F.3d 996, 998 (8th Cir. 1999) (holding that it was not appropriate to reduce the amount of time spent litigating against both defendants). The instant case involved complex, intertwined issues that implicated both Fidelity and ABB. ABB and Fidelity jointly defended against class certification and the merits of this action; jointly endorsed all defense experts; and conducted a joint trial defense. It was clear from their public conduct that they acted as a coordinated team. On this basis, the Court finds that the claims against the Defendants shared a common core of facts, and that the hours spent litigating the various claims against each are too enmeshed to be easily distinguishable.

Defendants also argue for reducing the total lodestar amount because Plaintiffs received damages significantly less than the amount originally claimed, and prevailed on

just one of several claims against Defendant Fidelity. Although "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)," *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158, 176 (2010) (internal quotes omitted), a fee award "should not be reduced merely because a party did not prevail on every theory raised in the lawsuit." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991). This is particularly so where "[t]he claims on which plaintiffs did not prevail were closely related to the claims on which they did prevail." *City of Riverside v. Rivera*, 477 U.S. 561, 571, 106 S. Ct. 2686, 2692 (1986). A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Shrader v. OMC Aluminum Boat Group, Inc.*, 128 F.3d 1218, 1220 (8th Cir. 1997) (quoting Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S. Ct. 566, 573 (1992)); *see also Leonard v. Sw. Bell Corp. Disability Income Plan*, 408 F.3d 528, 533 n.3 (8th Cir. 2005). A court has considerable discretion to "tailor[] the fee to reflect a relationship to the results obtained," *Shrader v. OMC Aluminum Boat Group, Inc.,* 128 F.3d 1218, 1221 (8th Cir. 1997), and may award fees where "the lawsuit has resulted in a substantial recovery for the Plan that is significantly greater than the court's fee award." *Felber v. Estate of Regan*, 117 F.3d 1084, 1088 (8th Cir. 1997).

In the instant case, Plaintiffs prevailed overwhelmingly in the overall litigation, recovering $36.9 million in damages for their Class. Although their proposed global damages theory would have allowed a recovery much greater than the one the Court ultimately granted, this is not reflective of the merits of their claim, the most relevant

inquiry. Plaintiffs in fact submitted multiple ways to calculate damages. In addition, while the Plaintiffs' recovery was primarily against ABB and not Fidelity, the Defendants have not shown that Plaintiffs' damages would have been substantially greater if Fidelity had been found to be responsible for the actions of ABB, as a co-fiduciary.

For the foregoing reasons, the Court will not reduce the lodestar.

## III.    Joint & Several Liability

Non-prevailing defendants are generally held jointly and severally liable for attorneys' fees and costs, regardless of an individual defendant's degree of culpability. *See Walter v. Clarion Mortg. Capital, Inc.*, 2010 WL 1170136 at *2 (W.D. Mo. Mar. 23, 2010); *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002) (stating that "[j]oint and several liability for costs is the general rule"). This is especially true where plaintiff's claims against defendants are "extremely inter-related, arising out of the same transaction or occurrence or series of occurrences and sharing common questions of law and fact." *Walter*, 2010 WL 1170136 at *2; *see also Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991). Plaintiffs' claims against ABB and Fidelity clearly satisfy these criteria. The Defendants also each played a substantial role in the litigation and presented a joint legal defense, advancing many of the same arguments. *See, e.g., Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859-60 (7th Cir. 2002) (joint and several liability was appropriate where defendants were not "truly strangers," but cooperated with each other and maintained the same legal positions throughout the litigation). Defendant Fidelity argues that because Plaintiffs' recovery against them was ultimately much less than against Defendant ABB, they should not be jointly and

Case 2:06-cv-04305-NKL   Document 718   Filed 11/02/12   Page 13 of 22

severally liable for attorneys' fees. However, the Eighth Circuit has held that even where a defendant's role in the litigation was "minor," because the defendant relied on his co-defendants to litigate common issues, he could be held jointly and severally responsible for attorneys' fees. *Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999) *aff'd*, 530 U.S. 914, 120 S. Ct. 2597 (2000); *see also Doe v. Nixon*, 2011 WL 3962669 at *7 (E.D. Mo. Aug. 25, 2011). The Eighth Circuit noted that in such a case, "[h]ow the defendants choose to allocate the fees among themselves is entirely up to them." *Carhart v. Stenberg*, 192 F.3d at 1152. For the above reasons, the Court finds that joint and several liability is appropriate in this case.

## IV. Costs

### A. Taxable Costs

Federal Rule of Civil Procedure 54 governs awards of costs to prevailing parties. Fed. R. Civ. P. 54(d)(1). The court may only award such costs as are enumerated in 28 U.S.C. § 1920 or "some other statutory authorization." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006); *see also W. Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 86, 111 S. Ct. 1138, 1141 (1991). Taxable costs that may be shifted under § 1920 include: fees of the clerk and marshal; fees for transcripts necessarily obtained for use in the case; fees for printing and witnesses; costs of copying where copies are necessarily obtained for use in the case; docket fees; and compensation of court appointed experts and interpreters. 28 U.S.C. § 1920. Plaintiffs have submitted documentation of taxable costs totaling $104,791,44. [Doc. # 646]. The Court finds that

these taxable costs are reasonable and supported by sufficient documentation, and are properly shifted to Defendants under § 1920.

## B. Nontaxable Costs

In addition to costs made taxable under § 1920, reasonable out-of-pocket expenses of the kind normally charged to clients may be shifted to defendants under a fee-shifting statute. *Sturgill v. United Parcel Serv., Inc*., 512 F.3d 1024, 1036 (8th Cir. 2008); *see also Owner-Operator Indep. Drivers Ass'n v. Ledar Transp*., 2009 WL 2170086 at *2 (W.D. Mo. July 20, 2009) (holding that the Truth in Leasing regulations did not provide for shifting of costs, and so plaintiffs were limited to recovering costs permitted under § 1920)*. ERISA permits a court in its discretion to award costs of an action to either party. 29 U.S.C. § 1132(g)(1); *In re UnitedHealth Group Inc. S'holder Derivative Litig*., 631 F.3d 913, 918 (8th Cir. 2011). Reasonable out-of-pocket expenses may include costs of attorney travel, computerized research, court reporters, phone and fax, air couriers, postage, mediation, and class notification. *See In re BankAmerica Corp. Sec. Litig*., 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) *aff'd*, 350 F.3d 747 (8th Cir. 2003); *Kelly v. Bowen*, 862 F.2d 1333, 1335 (8th Cir. 1988); *but see Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (denying reimbursement for overhead, including postage expenses, time spent preparing itemized billing statements, and copies where the purpose was not clearly marked; approving telephone expenses and reasonable document copy expenses).

Plaintiffs have submitted affidavits regarding nontaxable costs in the amount of $2,098,029.06. [Docs. ## 650, 699, 708]. These nontaxable costs break down as follows: $108,712.77 for copies; $15,227.16 for delivery charges; $93,324.02 for

Case 2:06-cv-04305-NKL   Document 718   Filed 11/02/12   Page 15 of 22

deposition related expenses; $57,585.70 for electronic discovery; $392.25 for mediation; $3,638.41 for phone charges; $241.01 for printing; $1,696.70 for a private process server; $12,951.94 for non-computerized research; $56,790.91 for trial expenses; $34,633.34 for online research; and $1,712,834.85 for expert witness and consulting fees. The non-prevailing party bears the burden of overcoming the presumption that the prevailing party is entitled to costs. *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 958 (8th Cir. 2007). Defendants have not challenged Plaintiffs' request for cost-shifting. Regarding all the but the last two nontaxable costs claimed, the Court finds that such costs are reasonable out-of-pocket expenses typically billed to clients, and may reasonably be shifted to Defendants under ERISA.

> 1.    *Online Legal Research Costs*

In addressing the remainder of Plaintiffs' costs, a specific discussion of computerized or online legal research is necessary. Plaintiffs state they have expended $34,633.34 on online research. Several decades ago, the Eighth Circuit held that costs for computerized research may not be shifted to the defendants. *Standley v. Chilhowee R-IV Sch. Dist*., 5 F.3d 319, 325 (8th Cir. 1993); *see also Leftwich v. Harris-Stowe State Coll*., 702 F.2d 686, 695 (8th Cir. 1983). However, in a recent case, the Eighth Circuit carved a large exception to this prohibition, distinguishing *Standley* and *Leftwich* from cases where expenses are reimbursed pursuant to settlement. *In re UnitedHealth Group Inc. S'holder Derivative Litig*., 631 F.3d 913, 918 (8th Cir. 2011). In so holding, the Eighth Circuit noted that the prevailing view among other circuits is to award costs of online research. *Id*. at 918-919. Since then, two district courts in the Eighth Circuit have

recognized an implicit overruling of *Leftwich* and *Standley* with regard to certain fee-shifting statutes and agreements. *Gilster v. Primebank*, 2012 WL 3518507 at *44 (N.D. Iowa Aug. 14, 2012) (Title VII); *BP Group, Inc. v. Capital Wings Airlines, Inc.*, 2011 WL 4396938 at *4 (D. Minn. Sept. 21, 2011) (private contract). *Gilster* reasoned that Title VII's fee shifting provision could include online research by reading the *In re UnitedHealth Group* decision in tandem of the Eighth Circuit's recent holding in *Sturgill v. United Parcel Service*, in which the Eighth Circuit held that Title VII permits the shifting of "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008) (internal quotes omitted). As the *Gilster* court reasoned, such reasonable expenses today includes online research fees, and so according to *Sturgill* such fees could be shifted under Title VII. *Gilster*, 2012 WL 3518507 at *44. The Supreme Court has held that "our case law construing what is a 'reasonable' fee applies uniformly to all" fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641 (1992). Although express differences between the language of Title VII and ERISA may give rise to different interpretations in some cases, *see Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 969 (8th Cir. 2002) (finding no presumption of fees for the prevailing party under ERISA because unlike Title VII, ERISA permitted the court to award fees to "either party"), this is not the case here. As the Supreme Court made explicit in *City of Burlington*, the issue of what constitutes "reasonable" fees and costs is the same inquiry under both statutes. The Court therefore finds the *Gilster* court's reasoning under Title VII to apply equally to ERISA's fee-

shifting provision. As such, pursuant to *In re UnitedHealth Group* and *Sturgill*, online research costs may be shifted to the non-prevailing party as reasonable out-of-pocket expenses under ERISA. Plaintiffs' $34,633.34 in online research costs may therefore be shifted to Defendants, for a total of $385,194.21 in nontaxable costs.

### 2. *Consulting Expert Costs*

The Plaintiffs also request $1,712,834.85 for testifying and consulting expert fees. Testifying witnesses may be reimbursed under § 1920 up to amounts specified in 28 U.S.C. § 1821. *Crawford Fitting Co. v. J. T. Gibbons, Inc*., 482 U.S. 437, 441, 107 S. Ct. 2494, 2497 (1987) ("§ 1821 specifies the amount of the fee that must be tendered to a witness, § 1920 provides that the fee may be taxed as a cost, and Rule 54(d) provides that the cost shall be taxed against the losing party"); *see also Emmenegger v. Bull Moose Tube Co*., 33 F. Supp. 2d 1127, 1136 (E.D. Mo. 1998); *Magelky v. BNSF Ry. Co*., 2008 WL 2949260 at *2 (D.N.D. July 28, 2008) (discussing *Crawford*'s implicit overruling of prior Eighth Circuit precedent permitting recovery of expert fees above the § 1821 amount). The Supreme Court has held that expert fees may not be shifted to the defendants under a fee-shifting statute unless the statute explicitly so provides. *W. Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 99, 111 S. Ct. 1138, 1147 (1991). Because ERISA does not specifically provide for shifting expert fees, these costs are not shiftable to defendants. *Emmenegger v. Bull Moose Tube Co*., 33 F. Supp. 2d 1127, 1136 (E.D. Mo. 1998).

## V. Class Responsibility for Fees and Costs

If the award granted under a fee-shifting statute is less than that specified by the contingent fee contract between claimant and counsel, then "claimant's counsel may collect from the claimant the difference" between the statutory award and the contract. *Talbott v. Bowen*, 832 F.2d 111, 112 (8th Cir. 1987); *see also Venegas v. Mitchell*, 495 U.S. 82, 90, 110 S. Ct. 1679, 1684, 109 L. Ed. 2d 74 (1990); *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 923 (8th Cir. 1986); *Jackson v. Rheem Mfg. Co.*, 904 F.2d 15, 17 (8th Cir. 1990). According to Plaintiffs' Counsel, their agreement with Class Representatives was for a contingent fee of 1/3 of recovery. The Court awarded $36.9 million in monetary damages, 1/3 of which is $12.3 million. The Court has concluded that a reasonable fee under ERISA is $12,947,747.68, slightly more than the amount Plaintiffs' counsel would receive under the contingency fee contract. Therefore, it is not necessary to require the Class to pay any additional attorneys' fees.

Plaintiffs argue that the total amount of damages awarded should include the value of injunctive relief as well as monetary damages, estimating the value of the injunctive relief award at $1.48 million per anum. However, as the Ninth Circuit noted, injunctive relief may be included in a calculation of a fee percentage "only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Plaintiffs' calculation of the value of the injunctive relief is tenuous and unsupported by sufficient documentation. Therefore, the Court finds that including the alleged value of the injunctive relief in the amount of damages for purposes of determining the contingent fee recovery is inappropriate.

19

Plaintiffs' counsel request that costs that cannot be shifted to Defendants under ERISA be paid out of the damage award to Plaintiffs pursuant to the contingent fee arrangement with the Class Representatives. Defendants argue that the Class damages award cannot be used to pay fees and costs because that would constitute assignment or alienation of a plan benefit, which ERISA prohibits. 29 U.S.C. § 1056(d)(1) ("[B]enefits provided under the plan may not be assigned or alienated."). The Court agrees with Plaintiffs' interpretation that "benefit" does not include assets in a defined contribution plan that have not yet been distributed. If it were otherwise, this would lead to the absurd result that "the plan administrator would be prohibited from debiting participants' accounts even to cover expenses that ERISA and the Plan specifically contemplate they will bear." *Milgram v. Orthopedic Associates Defined Contribution Pension Plan*, 666 F.3d 68, 73 (2d Cir. 2011) (holding that ERISA's anti-alienation rule did not prevent defined contribution pension plan assets from being used to satisfy a judgment). Because ERISA explicitly provides that civil enforcement actions may be brought by beneficiaries against their benefit plans, 29 U.S.C.A. § 1132(a)(1), it "clearly contemplates the enforcement of money judgments against benefit plans." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 832, 108 S. Ct. 2182, 2187 (1988). Therefore, an award of fees out of damages paid to a Class of plan beneficiaries cannot be considered an assignment or alienation of benefits in violation of the statute.

Although costs may be recoverable from damages awarded the Class, the Court must still "monitor contingency fee arrangements" to ensure that the costs claimed are reasonable. *Ross v. Douglas County, Neb.*, 244 F.3d 620, 622 (8th Cir. 2001). Here,

Plaintiffs' Counsel attest to having spent more than $1.7 million on testifying and consulting experts. Given the complexity of this litigation and the necessity of expert testimony, the Court finds this to be a reasonable amount. Therefore, the Court finds that an appropriate cost for Plaintiffs' testifying and consulting experts to be paid out of the Class recovery is $1,712,834.85.

## VI. Named Plaintiffs' Awards

Plaintiffs request that each of the three named Plaintiffs receive $25,000.00 for prosecuting this case. Relevant considerations in determining whether to grant an incentive award to named plaintiffs include actions plaintiffs took to protect the interests of the class; the degree to which the class has benefitted from those actions; and the amount of time and effort plaintiffs expended in pursuing the litigation. *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *see also In re Charter Communications, Inc., Sec. Litig.*, 2005 WL 4045741 at *25 (E.D. Mo. June 30, 2005); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009). The Court finds that the named Plaintiffs, Mr. Tussey, Mr. Fisher, and Mr. Pinnell, have been actively involved in pursuing this litigation, to the benefit of the entire Class. As such, an incentive award of $25,000.00 each is appropriate.

## VII. Conclusion

For the reasons stated above, it is hereby ORDERED that Plaintiffs' Motion for Attorneys' Fees and Costs [Doc. # 649] is GRANTED. The Court finds that a reasonable award of attorneys' fees and costs is as follows: $12,947,747.68 in attorneys' fees and $489,985.00 in taxable and nontaxable costs to be paid jointly and severally by

Defendants ABB and Fidelity; $1,712,834.85 in costs to be paid out of the Class damages award; and $25,000.00 from the Class recovery to be paid to each of the three named Plaintiffs as an incentive award.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  November 2, 2012
Jefferson City, Missouri