# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| RONALD TUSSEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:06-cv-04305-NKL |
| ) | |
| ABB INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## ORDER

Pending before the Court is Plaintiffs' motion for attorney fees and costs, Doc. 744. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

## I. Background

Following a four-week trial in 2010, the Court found that Defendants breached their fiduciary duties to Plaintiffs under the Employee Retirement Income Security Act ("ERISA") and awarded Plaintiffs $35.2 million in damages, including $13.4 million for ABB's failure to monitor recordkeeping fees and negotiate for rebates, $21.8 million lost due to its mapping the Vanguard Wellington Fund to the Fidelity Freedom Funds, and $1.7 million for float income retained by Fidelity. *See Tussey v. ABB, Inc.*, 2012 WL 1113291 (W.D. Mo. March 31, 2012). The Court also awarded Plaintiffs attorney fees in the amount of $12,947,747.68, calculated as 25,160.8 hours of work at a blended rate of

$514.60 per hour. On appeal, the Eighth Circuit affirmed the judgment on the recordkeeping claim, reversed the judgment on the float claim, and remanded the case for further reconsideration of the mapping claim and attorney fees. *See Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014). This Court concluded on remand that ABB violated its fiduciary duty to the Plaintiffs when it mapped the Wellington Fund assets into the Fidelity Freedom Funds and the Plan was thereby damaged; however, Plaintiffs were awarded no actual damages due to their failure to use a damage calculation consistent with the methodology suggested by the Eighth Circuit. *See Tussey v. ABB, Inc.*, 2015 WL 4159983 (W.D. Mo. July 9, 2015).

On appeal ABB also challenged the attorney fees award, objecting to: (1) the use of a blended national rate of compensation of $514.60 per hour rather than a local rate, and (2) the application of the rate to time spent by twelve lawyers who never entered an appearance and performed work such as document review. The Eighth Circuit concluded,

> Although the hourly rate the district court applied for attorney work is generous and the resulting fee award substantial, we are unable to say the district court abused its discretion in determining the rate to use in calculating the award. Nonetheless, we vacate the award for further consideration in light of our decision to vacate the mapping award . . . . In recalculating any award, the district court should be careful to apply the generous attorney rate it has allowed in this case only to work that requires an attorney–not administrative, clerical, or paralegal work.

*Tussey v. ABB, Inc.*, 746 F.3d 327, 340-41 (8th Cir. 2014) (citations omitted).

The Court now considers what fee award is justified, taking into account the Eighth Circuit's decision and this Court's post-appeal rulings. Plaintiffs seek an award of $10.9 million for pre-appeal time and $1,333,392 for time spent on appeal.

## II. Discussion

### A. Fee-Shifting Under ERISA

The Court has discretion to award attorney fees under ERISA's fee-shifting provision. 29 U.S.C. § 1132(g)(1); *see also Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984). Prevailing party status is not a prerequisite. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Rather, an ERISA claimant need only show "some degree of success on the merits" to receive fees. This standard is satisfied "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was "substantial" or occurred on a "central issue."'" *Id.* at 255.

If that threshold showing is satisfied, the Court may consider the following factors to determine whether attorney fees should be awarded: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Leonard v. Sw. Bell Corp. Disability Income Plan*, 408 F.3d 528, 532 (8th Cir. 2005) (referencing *Lawrence*, 749 F.2d at 496). It is not necessary

for the Court to review each factor "exhaustively and explicitly." *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999). Rather, these factors are "*general guidelines which provide direction to the district court, while also facilitating meaningful appellate review.*" *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (emphasis in original) (internal quotes omitted).

Plaintiffs were prevailing parties on their recordkeeping claim. Having found that Plaintiffs satisfied the threshold requirement of substantial success on the merits, the Court turns to the secondary factors identified in *Leonard v. Sw. Bell Corp. Disability Income Plan*, 408 F.3d 528, 532 (8th Cir. 2005). ABB's conduct was particularly reprehensible because ABB was a fiduciary to the Plan and the Court found ABB was not merely negligent but rather motivated by self-interest. Plaintiffs benefited all Plan members, not merely themselves, and the benefits of the litigation will continue even after payment of the judgment and attorney fees due to the equitable relief achieved. Of special importance is the significant, national contribution made by the Plaintiffs whose litigation clarified ERISA standards in the context of investment fees. The litigation educated plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees and separating a fiduciary's corporate interest from its fiduciary obligations. While ABB suggests that such benefit is not comparable to litigation to enforce the U.S. Constitution, where attorney fees often are awarded far in excess of actual damages recovered,[1] the Court

---

[1] *Fires v. Heber Springs School Dist.*, 565 Fed. Appx. 573 (8th Cir. 2014) (affirming fee award of $10,000 where plaintiff recovered $1 in nominal damages); *Lowry ex rel. Crow*

cannot agree. In addition, many of the questions involved were novel and most were complex, both factually and legally. Plaintiffs' counsel undertook significant risk in pursuing the case and ABB clearly has the ability to pay and does not argue otherwise.

Plaintiffs are entitled to very substantial attorney fees under these circumstances, to be paid by the culpable party and not the innocent victims.

### B. Lodestar Calculation

Awards under fee-shifting statutes are calculated using the lodestar method. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar figure is "the product of reasonable hours times a reasonable rate." *Id.* at 559; *see also Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). To determine the lodestar amount, the Court may consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

*v. Watson Chapel School Dist.*, 540 F.3d 752 (8th Cir. 2008) (affirming fee award of $37,500 where plaintiff recovered $1 in nominal damages); *Piper v. Oliver*, 69 F.3d 875 (8th Cir. 1995) (affirming fee award of $8,250 where plaintiff recovered $1 in nominal damages); *Butler v. Dowd*, 979 F.2d 661 (8th Cir. 1992) (affirming fee award of $94,680 where plaintiff recovered $1 in nominal damages); *Parton v. GTE North, Inc.*, 971 F.2d 150 (8th Cir. 1992) (affirming fee award of $26,292.63 where plaintiff recovered $1 in nominal damages).

*United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 574 n.9 (8th Cir. 1996) (referencing *Hensley v. Eckerhart*, 461 U.S. 424, 428 (1983)).

### 1. Rate of Compensation

The Court previously awarded Plaintiffs a lodestar fee using a blended rate of $514.60 for 25,160.8 hours of work. In light of the Eighth Circuit's opinion, Plaintiffs' counsel now requests a reduced lodestar fee, using the same blended rate of $514.60, but reducing their hours worked to 23,484. The Court in its earlier attorney fee order approved the $514.60 rate[2] and the Eighth Circuit found no abuse of discretion. Therefore, the Court will use the same blended rate on remand for trial work.

The Court must also determine what hours are properly included in the lodestar amount. The Eighth Circuit held that Plaintiffs are not entitled to the blended rate for administrative, clerical, or paralegal work. Therefore, Plaintiffs reviewed their hours and reduced the fee for any such work from $514 per hour to $125 per hour. This resulted in a reclassification of 1,577.1 hours at the lower rate. The Court has reviewed Plaintiffs' calculation and it appears Plaintiffs have overlooked a few entries that are still being charged at the $514 rate but appear to be similar to other tasks reclassified by Plaintiffs to

---

[2] The Court noted in its previous order awarding attorney fees that in a 2009 case involving Plaintiffs' counsel in Missouri, a court approved hourly rates for Schlicter, Bogard, and Denton as follows: for attorneys with 25 years or more experience, $800 per hour; for attorneys with 15-24 years of experience, $625 per hour; 5-15 years of experience, $450 per hour; 2-4 years of experience, $325 per hour; and for professional support staff, $125 per hour. In 2010, based on these rates, an Illinois district court assessed a blended rate of $514.60 per hour for the firm. *See Tussey v. ABB, Inc.*, 2015 WL 4159983 (W.D. Mo. July 9, 2015) (citing *Eshelman v. Client Services, Inc., et al.*, No: 0822-cv-00763 (22d Cir. Mo. Dec. 7, 2009) and *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174 at *3 (S.D. Ill. Nov. 22, 2010)).

the lower rate, such as entering deposition summaries into Textmap and organizing Agenda books. Having reviewed the exhibits submitted by the parties at Docs. 776, 776-3, 779-1, and 781, the Court concludes this was a de minimis reclassification error. Rather than going line by line through thousands of entries to identify each reclassification error, the Court will cut the requested fee by $10,000 to take into account these and any other clerical errors in reclassification. The lodestar method is not intended to embroil the Court in another lawsuit to determine attorney fees and it is likely that ABB's expert John Trunko has already pointed out each such error, so the Court's reduction probably overstates the problem.

The Court will not make reductions for lawyers doing tasks such as document review or deposition summaries. Other than a conclusory statement by its expert, ABB has presented no specific examples of national law firms billing and being paid $150 per hour for document review by lawyers. While Mr. Trunko's affidavit gives examples of cases in which he was an expert or reviewed fees being considered by different courts, he does not identify any court that concluded document review by lawyers should be paid at the rate of $150 per hour. Also, the cases he cites date mostly from the 1990's. ABB has not even given examples from the billing practices of its own attorneys to show that ABB's lawyers doing document review are billed and paid at $150 per hour.

In law school, lawyers are taught substantive law as well as how to think and behave like a lawyer. Before they can practice, they are subjected to exacting review by at least one Bar. Handling documents in a professional manner and picking out facts that are important or extraneous to a relevant legal issue is the kind of work that a lawyer has

7

been classically trained to do. It is not administrative or paralegal work and the attorneys doing this work are normally compensated based on their years of experience, absent contractual provisions to the contrary.[3] Therefore, the Court makes no further reduction for these tasks.

### 2. Reduction for Unsuccessful Claims[4]

In addition to reclassifying 1,577.1 hours of administrative work, Plaintiffs have excluded over 1,600 hours. These 1,600 hours include entries related to the float claim and other issues on which Plaintiffs were not successful, as well as entries that arguably contained insufficient detail. Plaintiffs do not seek any fees for the 2,000 hours spent on remand, even though they were partially successful on their mapping claim. Therefore, Plaintiff is now seeking $2 million less in fees than the Court awarded Plaintiffs in 2012. ABB argues that these reductions are insufficient to reflect Plaintiffs' lack of success in the litigation and the 2012 fee award should be reduced by fifty percent.

Where a plaintiff achieves limited success in litigation, the fees awarded must be "reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive

---

[3] Such contractual provisions are often used in a high volume practice where expertise is substantially less important.

[4] ABB contends that Plaintiffs' documentation of their time is inadequate to be able to evaluate what time was spent on successful and unsuccessful claims. The Court has reviewed Plaintiffs' time sheets and concludes that the time was adequately accounted for to be able to generally assess the claims to which the time was relevant. Much of the time spent on the mapping and recordkeeping claims was relevant to both claims. The work conducted in relation to the float claim is most easily identifiable, and Plaintiffs have removed their hours for the time spent on this claim as set out below.

8

Case 2:06-cv-04305-NKL   Document 782   Filed 12/09/15   Page 8 of 17

amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . the most critical factor is the degree of success obtained." *Id.* at 436. The Court may use its discretion to determine the most appropriate way of assessing an award where the plaintiff achieved limited success. *Id.* Proportionality between damages and the fee award is not required, but the quantity of damages recovered is relevant to the fee award. *Loggins v. Delo*, 999 F.2d 364, 369-70 (8th Cir. 1993). No precise formula exists for making reductions based on limited success.

Plaintiffs achieved complete success on their recordkeeping claim which resulted in a $13.4 million dollar judgment as well as substantial injunctive relief. Plaintiffs achieved only partial success on their mapping claim, and lost their claim regarding float. Plaintiffs have reduced their fee request by 1,600 hours to take their lack of success into account.

As for the mapping claim, while Plaintiffs were not the prevailing party on the mapping claim and could not establish damages based on the trial record, the evidence relevant to the mapping claim was largely relevant to the recordkeeping claim. The mapping evidence showed how ABB made decisions to increase Fidelity's revenue sharing income so that ABB did not have to pay or charge hard dollar fees for the administration of its retirement plan. This also helped explain why ABB failed to actively monitor record keeping fees and used the size of the Plan to achieve rebates for the participants.

The application of the *Firestone* standard requires a court to determine whether actions by the fiduciary were affected by a conflict of interest, so evidence of other conflicts of interest and how ABB responded would likely be admissible even if there had not been a separate mapping claim; both focused on ABB's record keeping practices. For similar reasons, evidence was admissible to show ABB's failure to keep separate its corporate and fiduciary relationship with Fidelity. All of this evidence informed the recordkeeping claim. This is not a case where the overlap of evidence is at the margins; rather the overlap is central to the litigation and parsing through what evidence was admissible for what purpose and how many hours were devoted to overlapping evidence would lead to a second lawsuit and in the big picture would be unlikely to produce a fair result.

However, while Plaintiffs' global damage theory applied equally to the mapping claim and the recordkeeping claim, Plaintiffs presented some damage evidence applicable only to their mapping claim. The Court will therefore reduce the lodestar by $200,000 to reflect this minor divergence.

ABB also contends that Plaintiffs' request for attorney fees must be further reduced to account for time spent on Fidelity witnesses and claims against Fidelity. The Court has already rejected ABB's request for such a reduction in its earlier order. The Court observed that "[t]he instant case involved complex, intertwined issues that implicated both Fidelity and ABB. . . . On this basis, the Court finds that the claims against Defendants shared a common core of facts, and that the hours spent litigating the various claims against each are too enmeshed to be easily distinguishable." *Tussey v.*

*ABB, Inc.*, 2012 WL 5386033, at *5 (W.D. Mo. Nov. 2, 2012). The fact that Fidelity has been absolved of all liability in the case as a result of the Eighth Circuit's decision in favor of Defendants on the float claim does not alter the Court's opinion that there should be no reduction of the lodestar for other issues related to Fidelity. Fidelity was central to this litigation and would have been involved in discovery and its employees called as witnesses even if it had not been a defendant. In fact, based on the Court's experience with other cases, having Fidelity as a defendant often made the process of discovery and trial go more quickly than it would have if Fidelity had been a third party.

However, any hours related to the dismissed float claim against Fidelity are properly excluded. Upon review of the hours excluded by Plaintiffs' counsel and ABB's proposed additional exclusions, the Court concludes that Plaintiffs' exclusions account for virtually all of the hours expended on the float claim, recognizing this is an imprecise process. Mr. Trunko, did identify one entry relating to H. Lea's "conference with expert" on 12/07/06 which appeared to be excluded by Plaintiffs' counsel in similar entries that identified Ross Miller as the expert. [Doc. 779-1, p. 7]. This entry should be excluded, but the Court's earlier deduction of $10,000 for minor mistakes has already taken into account these de minimus clerical errors. The Court is confident that ABB's expert has identified all similar obvious errors like. Entries such as those billed by Troy Doles for travel to depositions which covered an array of topics beyond the float claim will not be excluded. [*See* Doc. 779-1, p. 7 and Doc. 781, p. 6-8].

The Court therefore concludes that an award of $10,768,474 is appropriate. Plaintiffs were very successful in this litigation. They obtained a $13.4 million judgment

11

Case 2:06-cv-04305-NKL   Document 782   Filed 12/09/15   Page 11 of 17

for the Plan participants and substantial injunctive relief.[5]  Specifically, the injunctive relief required ABB to conduct a competitive bidding process to hire a record keeper and to use the lowest cost share class for plan investment options.  There is also the future benefit to Plan participants of having a fiduciary that monitors fee costs.  The present value of this relief may in fact exceed the award of actual damages that only reflects six years of damages because of the statute of limitations.

Moreover, Plaintiffs' success is more significant because of its national impact. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties–duties which have been described as the 'highest known to the law.'").

Finally, ABB cites *Warnock v. Archer*, 397 F.3d 1024 (8th Cir. 2005) for the proposition that a greater reduction for lack of success on the merits is warranted.  In that case, a plaintiff appealed a judgment in his favor and unsuccessfully sought additional relief on a number of claims.  The Eighth Circuit determined that he should receive only half of the appellate attorney fees he requested.  The Eighth Circuit observed that if a court cannot separate out which hours were billed for which issues, there can just be a

---

[5] In its 2012 fee order, the Court did not factor the injunctive relief Plaintiffs obtained into its lodestar calculation.  It refused to value injunctive relief for the purpose of shifting to class members the attorney fees not covered by the Court's fee  award, citing *Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003). But the Court did not determine how injunctive relief benefited the Plan participants for purposes of the lodestar calculation. *Stanton* disapproved using the value of injunctive relief to calculate a common fund from which attorney fees were to be paid, as did the Court in its 2012 fee order.  However, the *Stanton* court specifically acknowledged the propriety of using the value of injunctive relief to measure Plaintiffs' success on the merits.  While a specific dollar amount has not been found by the Court, it is obvious even without expert testimony that this is probably at least as valuable as the damage award going forward for a minimum of six years.

general reduction that reflects limited success. But it is not clear from the opinion that such a reduction is mandated if the work was relevant to and benefited both claims, one that was successful and one that was not. And there is nothing in the fact pattern that suggests such a rigid rule was intended. In fact, the opinion makes clear that awarding attorney fees is not a precise process. To reduce hours for the unsuccessful claim when those same hours substantially helped to obtain judgment on the successful claim would not address the concern raised in *Hensley*, which is hours spent in litigation that would distort the lodestar because those hours were unnecessary to the Plaintiffs ultimate success.

As previously explained, there is no proportionality requirement for an award of attorney fees. *Loggins v. Delo*, 999 F.2d 364, 369-70 (8th Cir. 1993). The fact that Plaintiffs' request for attorney fees is almost as much as the actual damages obtained, does not justify a further reduction. Plaintiffs' counsel earned this amount in a long, contentious battle. Even if ABB's counsel was only paid half of the $42 million in attorney fees that ABB and Fidelity counsel were paid through the end of trial, and that amount was reduced again by half as ABB suggests should be done to Plaintiffs' fee request, ABB's fees would be approximately the same amount being requested by Plaintiffs. And ABB's counsel was paid many years ago for their work and never risked losing all their fees if they lost the case.

Litigation of this case has lasted nine years to date. Plaintiffs' counsel took unusual risks in uncharted waters against an extraordinarily well-funded defense team. Tying Plaintiffs' counsel's fees to a percentage of the monetary recovery would unfairly

deprive them of compensation for the time spent successfully litigating important claims and issues. Courts have awarded a significant amount of fees in similar cases even when plaintiffs have recovered no monetary damages and only injunctive relief. *See O'Bannon v. NCAA*, 2015 WL 4274370, at *1-5 (N.D. Cal. July 13, 2015) (awarding $44.4 million in damages for a violation of the Sherman Act where plaintiffs were unsuccessful on their original legal theories and only received injunctive relief). Finally, the amount being awarded to Plaintiffs is $4 million less than it would be if the time value of money was factored in.

Therefore, the Court awards attorney fees to class counsel in the amount of $10,768,474 to be paid by ABB. It also reaffirms its earlier award of costs and incentive fees contained in the Court's 2012 order – $489,985.65 in taxable costs to be paid by ABB; $1,712,834.85 for non-taxable costs to be paid out of the Class damages award; and $25,000.00 to each of the three named Plaintiffs as an incentive award to be paid by ABB.

### C. Compensation for Work on Appeal

ABB contends that Plaintiffs should not receive compensation for fees incurred in pursuing the case on appeal because Eighth Circuit Rule 47C allows an appellant to seek attorney fees directly from the appellate court. However, this rule "cannot and does not affect the jurisdiction of the district courts" on remand to award attorney fees for time expended on appeal. *EEOC v. CRST Van Expedited, Inc.*, 774 F.3d 1169, 1184 (8th Cir. 2014) (quotation omitted). Given the current status of the case, it is in the interest of efficiency for the Court to address both trial and appeal fees at the same time. That the

Plaintiffs opted not to pursue their fees claim piecemeal between two different courts will not now prevent them from recovering for the time they spent litigating the case before the Eighth Circuit.

Plaintiffs' counsel requests compensation for 1,849.9 hours of work on appeal at an hourly rate recently approved in *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *3 (S.D. Ill. July 17, 2015). ABB argues that the same 2010 rates found applicable to trial work should be applied to all work done on appeal. The Court disagrees. The Supreme Court has recognized that where there is a delay in an award of fees, "[c]ompensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010). Here, Plaintiffs' counsel did the appellate work in 2012 and 2013, while the district court work was done primarily between 2006 and 2010.

ABB also contends that Plaintiffs have failed to establish the reasonableness of the 2015 rates because those rates were endorsed by a court in an unopposed fee petition. While the petition was unopposed, a federal judge in the Southern District of Illinois independently concluded that the hourly rate proposed by counsel was reasonable. And ABB provides no other case to show that the requested 2015 rate is not appropriate and does not reflect the national rate. ABB does not even identify the fees it paid for its representation on appeal, including both hours and hourly rates, broken down by tasks, based on each of the eighteen grounds for appeal.

ABB also argues that Plaintiffs' fee request for appellate work should be denied because Plaintiffs were unsuccessful on appeal. This argument ignores Plaintiffs' successful defense of the recordkeeping judgment and remand on the mapping claim. However, Plaintiffs' loss on the float claim must be taken into account. Moreover, while the factual and legal issues surrounding the appeal were undoubtedly novel and complex, Defendant's expert identified some time entries that suggest excessive billing. Finally, the time records from the appeal, unlike the time records from trial, make it difficult to determine how much time was spent by Plaintiffs' counsel on issues related to float, mapping, and recordkeeping. This is particularly problematic in terms of damage calculation variances between the mapping and recordkeeping claim.

ABB seeks a fifty percent reduction in Plaintiffs' request for appellate fees. While the Court is not as familiar with the parties' activity on appeal as it was with their work in this Court, a fifty percent reduction seems disproportionate to Plaintiffs' achievements on appeal. Although ABB has not provided evidence of what it paid for its appellate representation, the Court expects that it was a very substantial amount based on the fees paid to ABB's trial counsel.

Therefore, the Court finds that a reasonable appellate fee is $900,000. This reduction adequately accounts for the excess hours identified by ABB and the float claim that has always been an ancillary part of the litigation. It also takes into account that Plaintiffs' billing records which make it difficult to precisely determine if excessive hours are being claimed. This award is what the Court believes to be fair, given the very

aggressive way in which the lawsuit was defended, the substantial outcome achieved, the risks taken by Plaintiffs' counsel and the Court's fee award for trial.

## III. Conclusion

For the reasons set forth above, Plaintiffs' motion for attorney fees is granted in part and denied in part. Plaintiffs are awarded $10,768,474 in attorney fees for time spent litigating this case before the District Court. They are awarded $900,000 for their work on appeal. Both awards are to be paid by ABB. The Court also reaffirms its prior award of costs and incentive fees – $489,985.65 in taxable costs to be paid by ABB; $1,712,834.85 for non-taxable costs to be paid out of the Class damages award; and $25,000.00 to each of the three named Plaintiffs as an incentive award to be paid by ABB.

        /s/ Nanette K. Laughrey
        NANETTE K. LAUGHREY
        United States District Judge

Dated: December 9, 2015
Jefferson City, Missouri