# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| RONALD TUSSEY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:06-cv-04305-NKL |
| | ) |
| ABB INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

After remand from the Eighth Circuit, this Court ordered each party to propose the proper method for calculating damages on Tussey's mapping claim for the breach of the duty of loyalty. They were also instructed to identify additional evidence needed to supplement the trial record, if any. Having considered the parties' proposals, the Court concludes that that the record will not be reopened for additional evidence and the proper method of calculating damages is to compare the performance of the Wellington Fund with the relevant Freedom Funds between 2001 and 2007.

The Court rejects Tussey's argument that there is one calculation of damages for ABB's decision to remove the Wellington Fund from the plan platform, and a different and additional calculation of damages for mapping the assets into the Fidelity Freedom Funds. ABB's breach of the duty of loyalty was for removing the Wellington Funds and mapping them into the Freedom funds. While they are separate acts, the breach of the duty of loyalty would not have been found as a matter of fact if only one event had occurred.

The Court rejects ABB's argument that the proper measure of damages is a comparison of the rate of return that Plan beneficiaries actually received from the Freedom Funds, with the

returns they would have received in a comparable target-fund family in the marketplace. The losses for breaching the duty of loyalty in mapping the Wellington assets into the Freedom Funds cannot be measured by asking what the losses would have been had a loyal fiduciary mapped the assets into a different fund. Such measure does not restore the Plan to the position that it would have occupied but for ABB's breach of the duty of loyalty. ABB did not make an imprudent investment; it made a disloyal investment decision. This case has never been about whether ABB made a poor or even negligent choice when it selected the Freedom Funds. If that had been the claim, then the reasons for choosing the Freedom Funds might have been relevant to the damage calculation and a comparison between the Freedom Funds and other similar target funds might have been relevant. But such considerations are not relevant to a damage calculation based on a breach of the duty of loyalty.

The Court also rejects ABB's argument that a comparison of the performance of the Wellington Fund and the Freedom Funds is prohibited by earlier Eighth Circuit opinions. When the Eighth Circuit first reversed and remanded this case for application of the *Firestone* abuse of discretion standard, it said:

> On remand, the district court should reevaluate its method of calculating the damage award, if any, for the participants' investment selection and mapping claims. … First, the district court awarded the amount that participants who had invested in the Wellington Fund presumably would have had if (1) ABB had not replaced the Wellington Fund with the Freedom Funds, and (2) the participants remained invested in the Wellington Fund for the entire period at issue. In light of the [policy statement's] requirement to add a managed allocation fund, it seems the participants' mapping damages, if any, would be more accurately measured by comparing the difference between the performance of the Freedom Funds and the minimum return of the subset of managed allocation funds the ABB fiduciaries could have chosen without breaching their fiduciary obligations.
>
> Second, the district court determined "it [was] a reasonable

inference that participants who invested in the Freedom Funds would have invested in the Wellington Fund had it not been removed from the Plan's investment platform." Such an inference appears to ignore the investment provisions of the IPS, participant choice under the Plan, and the popularity of managed allocation funds. And the participants fail to cite any evidentiary support for inferring the participants' voluntary, post-mapping investments in the Freedom Funds would have instead been made in the Wellington Fund, even if that fund remained as a Plan option for all of the years at issue. "A reasonable inference is one which may be drawn from the evidence without resort to speculation." As calculated, the $21.8 million damage award for the participants' mapping claim is speculative and exceeds the "losses to the plan" resulting from any fiduciary breach.

*Tussey v ABB*, 746 F.3d 327, 338-339 (8th Cir. 2014) (*Tussey I*) (case citations omitted). The Eighth Circuit's direction was further clarified in *Tussey v. ABB*, 850 F. 3d 951 (8th Cir. 2017) (*Tussey II*), where it said:

> To be sure, we did clearly rule that the original award was wrong "[a]s calculated." … At the same time, we left open exactly how it should be fixed. We suggested two points in the district court's explanation that "seem[ed] or "appear[ed]" to be mistaken, but we did so in tentative, qualifying terms, rather than the firm, definite language used for our holdings (the award "*is speculative* and *exceeds*" the plan's losses, and the district court "*should* reevaluate" its methodology). Properly read, the passage at issue proposed an alternative we thought warranted consideration (if measuring the plans' losses became necessary again on remand), it did not require that the district court adopt our proffered approach. That is why our overarching instruction to the district court was to "reevaluate its method of calculating the damage award."… With that phrasing, we meant to make clear both that there was work— "reevaluation"—to do and the work involved resolving the "*method* of calculating losses, not just there ultimate amount. Such a directive would have made little sense if, as the ABB fiduciaries assert, all we meant for the district court to do was carry out the calculations under an approach we had dictated on appeal.

*Id.* at 959 (italics in original). The Eighth Circuit continued:

> [I]t is a mistake to argue, as the ABB fiduciaries and SIFMA do, that measuring any portion of the losses by comparing the returns from the Freedom Funds with what the plans would have earned

3

> from the Wellington Fund is necessarily inappropriate because it involves "an apples-to-oranges comparison." True, the funds are designed for different purposes and thus choose their investments differently, so there is no reason to expect them to make similar returns over any given span of time. But the point of the comparison here would just be to determine, as a factual matter, the effect of owning one fund rather than the other. The *reason* for any difference in returns would be immaterial.
>
> This is not to say we are sure a comparison with the returns on the Wellington Fund must be part of measuring what the ABB fiduciaries' breach cost the plans, just that we are unpersuaded by [this] arguments against it and do not want [it] to unduly occupy the parties and the district court on remand. The measure and amount of the plans' losses remain for the district court to resolve. *See generally Martin v. Feilen*, 965 F.2d 660, 671–72 (8th Cir. 1992) (insisting the district court perform its "function 'to fashion the remedy best suited to the harm'" even though the plaintiff had "presented only an unsound ... damage theory," and explaining "the measure of such damages need not be exact—'it will be enough if the evidence show [sic] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate'"….).

*Id.* at 960–61 (italics in original).

Therefore, using Wellington as a comparator is not foreclosed by the law of the case. To the contrary, as the Eighth Circuit expressly held in *Tussey II,* using Wellington as a comparator is well within the range of this Court's authority on remand to resolve the measure of the plan's losses and fashion the remedy best suited to the harm.

There remains the question of how to bring any damages up to date, given the time that has elapsed since the original calculation of damages and the date of any final award of damages for the mapping claim. Tussey proposes comparing the rate of return between the Wellington Fund and the Freedom Funds between 2007 and the present to bring the damage award up to date. Alternatively, they propose using the S & P 500 rate of return as the comparator. The Court rejects both these approaches because Tussey never asked for future damages when the

Complaint was filed. Nor did Tussey do so during the pendency of the trial. In other words, Tussey never claimed damages beyond 2007, nor is the Court aware of any basis for claiming future damages in an ERISA case such as this. While the Court recognizes the burden of the delay in this matter, it cannot award damages after 2007 because of the delay in the post-trial proceedings. Because no one has proposed a specific method of bringing the measure of damages forward using prejudgment interest, the Court will not address that issue in this order.

As for ABB's arguments concerning the lack of evidence to support a damage award using the methodology adopted by the Court, it is premature. When submitting proposed findings of fact and conclusions of law, the parties can make their respective arguments concerning the evidence, its sufficiency, and the respective burdens of proof under ERISA, as informed by trust law. The Court in this Order only selects the method of calculating damages; it does not resolve any of these other issues.

Finally, both parties have requested to supplement the record. The Court will not permit the record to be reopened. The methodology adopted by the Court was before the Court at the time of trial. Neither party can say they did not have the opportunity to present all their evidence at the time of trial to support or oppose Tussey's damage calculation.

The parties shall file proposed findings of fact and conclusions of law on the issue of damages for Tussey's mapping claim, by January 12, 2018, consistent with the methodology adopted by the Court in this Order.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: December 12, 2017  
Jefferson City, Missouri