IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RONALD TUSSEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ABB, INC., et al., <br><br> Defendants. | Case No.: 06-CV-04305-NKL |

**MEMORANDUM AND ORDER**

Class Counsel for plaintiffs seek an award of attorneys' fees in the amount of $18,331,500, the reimbursement of reasonable expenses incurred in prosecuting this action in the amount of $2,256,805, and compensation to each of the class representatives in the amount of $25,000 from the common fund created from the Settlement in this matter ("Motion"). Doc. 863. The Court has reviewed Class Counsel's request and supporting evidence, prior orders and attorney fee applications made in this case, as well as attorneys' fees and class representative awards from similar cases. For the reasons stated herein, the Court will grant the Motion.

**I.      BACKGROUND**

On December 29, 2006, Plaintiffs filed this case against ABB, Inc. and certain plan fiduciaries (collectively "ABB") on behalf of the Personal Retirement Investment and Savings Management Plan and the Personal Retirement Investment and Savings Management Plan for Represented Employees of ABB, Inc. (collectively the "Plans"). Two Court-ordered mediations were held before trial without a settlement.

After a month-long trial was conducted, the Court issued its Order and Judgment for Plaintiffs finding that ABB breached its fiduciary duties of prudence and loyalty to the Plans by:

1

(1) failing to monitor and ensure the reasonableness of the Plans' recordkeeping fees ($13.4 million in losses) and (2) removing the Vanguard Wellington fund and replacing it with the Fidelity Freedom funds ($21.8 million in losses). *See* Doc. 623. Under the ERISA fee-shifting provision, the Court also entered an award of attorneys' fees to Class Counsel, finding that:

> [t]he case . . . involved significant novel legal questions regarding the extent of the fiduciary duties owed by plan administrators under ERISA and will have a general deterrent effect on similarly situated fiduciaries … In addition, the results of this case may help benefit other plan beneficiaries, in the event of similar litigation, by further clarifying the duty of loyalty and prudence owed by record keepers and employers.

Doc. 718, p. 3. At that time, the attorneys' fee award was $12,947,747.68, approximately one-third of the monetary award. *See generally id.* Injunctive relief was also granted, which was estimated to have a value at that time of at least as much as the monetary relief originally ordered by the Court. Doc. 782, n.5.[1]

ABB appealed this Court's trial order and decision to the Eighth Circuit Court of Appeals. The Eighth Circuit upheld the district court's finding that ABB breached its fiduciary duty to monitor Plan recordkeeping fees and its finding of damages on that claim. The Court of Appeals, however, reversed this Court's ruling on the removal and replacement of the Vanguard Wellington fund. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014).[2]

On remand, this Court again found that ABB breached its fiduciary duty on the Wellington claim but ruled for ABB on the issue of damages. Doc. 771. After a second appeal, the case was

---

[1] An expert for Plaintiffs opined that the value of the injunctive relief was over $83 million. Doc. 775-01, ¶ 13.

[2] The judgment against the Fidelity defendants was also reversed by the Eighth Circuit.

2

remanded for calculation of damages on Plaintiffs' Vanguard Wellington claim. *See Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017).

While the issue of damages on the Wellington Vanguard claim was being litigated, the parties engaged in a third, and ultimately successful, mediation. The Court preliminarily approved the parties' settlement agreement on April 2, 2019. Doc. 861. Notices were sent on June 14, 2019 to all members of the potential class, which included information pertaining to the Class Counsel's requested fee of approximately one-third from the Settlement fund, the requested reimbursement of expenses, and the incentive awards to the class representatives.

## II. ANALYSIS

### A. In a common fund settlement, a percentage of the recovery for an award of attorneys' fees is appropriate.

Under the "common fund" doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds. Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Courts utilize two main approaches to analyzing a request for attorney fees"—the "lodestar" approach or the "percentage of the benefit" approach. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). While "[i]t is within the discretion of the district court to choose which method to apply," in common fund cases, the percentage of the benefit approach is generally recommended. *Id.* at 245–46; *see also Koenig v. U.S. Bank N.A.*, 291 F.3d 1035, 1038 (8th Cir. 2002). In such cases, the benefit should be based on both the monetary and the non-monetary value of the settlement. *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014) (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.71 (2004)); *Principles of the Law of Aggregate Litigation*, A.L.I., § 3.13(b) (May 20, 2009) ("a percent-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and the nonmonetary value of the settlement."); *cf.*

3

*Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief").

Although the "Eighth Circuit has not laid out factors that a district court must consider when determining whether a percentage of the common fund is reasonable…[d]ecisions from this Court have relied on factors set forth by other Circuits, including the Third and Fifth Circuits." *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061–62 (D. Minn. 2010) (citing *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2006 U.S. Dist. LEXIS 67108, at *7 (D. Minn. Sept. 18, 2006)). In *Yarrington*, this Court considered seven factors: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and, (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Id*. at 1062. As explained in detail below, all of these factors support Plaintiffs' request.

A $55 million monetary recovery in a novel area of litigation is a significant benefit to the Settlement Class. Adding additional value, the Settlement provides for current participants to receive their distributions directly into their Plan account tax deferred and gives former participants the right to direct their distribution into a tax-deferred vehicle, such as an IRA. The Investment Company Institute estimates that the benefit of tax deferral for 20 years is an additional 18.6%.[3] Thus, the actual value to the class for the monetary part of the settlement is more than $55 million.

---

[3] *Abbott v. Lockheed Martin Corp.*, No. 06-701, Doc. 497, p. 37 (S.D. Ill. Apr. 14, 2015) (noting Investment Company Institute estimate); *see also* Peter Brady, *Marginal Tax Rates and the*

Further, this Court has acknowledged the value of the future benefit of the injunctive relief to the Class. Doc. 782, p. 12 ("There is also the future benefit to Plan participants of having a fiduciary that monitors fee costs. The present value of this relief may in fact exceed the award of actual damages that only reflects six years of damages because of the statute of limitations."). *See also Beesley*, 2014 WL 375432, at *1 (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.71 (2004), *Principles of the Law of Aggregate Litigation*, A.L.I., § 3.13(b) (May 20, 2009); *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)).

Here, the value of the injunctive relief obtained by Class Counsel in this Court's original Judgment and Order is substantial and has been in effect, benefitting class members, for seven years. Taking all these factors into account, the actual benefit to the Settlement Class is in excess of the monetary benefit received, and one-third of that benefit is appropriately paid to Plaintiffs' counsel for their work.

This is especially so, given the daunting risk that Plaintiffs' Attorneys took when they agreed to represent this class. Not only was the claim novel, but Class Counsel was required to fight for over a decade with well-funded defendants represented by highly-qualified national attorneys to achieve this result. Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this.

As previously mentioned, the factual and legal issues in this case were novel and difficult. The outcome of the case was uncertain, sharply contested, often protracted, and required

---

*Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral).

willingness by Class Counsel to risk unusual resources in time and money. Doc. 650-39, ¶¶ 8–9, 13, 16.

Courts also commonly consider the skill required in delivering quality legal services. *Yarrington,* 697 F. Supp. 2d at 1061–62. Class Counsel has successfully fought for over a decade to achieve this result and has shown a high degree of competence. This Court previously noted and reiterates here that Class Counsel "are clearly experts in ERISA litigation." Doc. 718, p. 5. As noted above, this kind of litigation has made a "national contribution" in the clarification and refinement of a fiduciary's responsibilities and duties. Indeed, this litigation not only educated plan administrators throughout the country, it educated the Department of Labor. Doc. 782, p. 4.

Other courts have also recognized the skill and benefits conferred by class counsel. *See Waldbuesser v. Northrop Grumman Corp.*, No. 06-6213, 2017 WL 9614818, at *4 (C.D. Cal. Oct. 24, 2017); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016); *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016); *Abbott v Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015); *Beesley*, 2014 WL 375432, at *2; *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015, *2 (C.D. Ill. Oct. 15, 2013); *Will v. Gen. Dynamics, Corp.*, No. 06-698, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010); *Martin v. Caterpillar, Inc.*, No. 07-1009, 2010 WL 3210448, at *2 (C.D. Ill. Aug. 12, 2010).

Class Counsel has also spent massive amounts of time and labor on this case. The vast majority of the hours spent on this work were previously explained in detail through declaration testimony. Doc. 651 (Declaration of Troy A. Doles, *sealed*). The amount of work required to represent this class is not surprising given the attorneys' fees defendants incurred through trial in January 2010. It is a matter of public record that the two Defendants' legal fees in this case, not

including expenses, exceeded $42 million – through the trial in 2010. *Tussey v. ABB Inc.*, No. 06-4305, 2015 WL 8485265, at *6 (W.D. Mo. Dec. 9, 2015). That does not include fees paid for experts or other expenses, which were substantial. In fact, the cost for just one of ABB's experts, Glenn Hubbard, and his research was $3.2 million, far exceeding the entire requested expenses for Class Counsel in the 12 years of this case. Doc. 650, p. 13; Doc. 567, pp. 172–175 (Tr. 2108–11).

After this Settlement was preliminarily approved, Class Members were provided the opportunity to object to the Settlement by writing the Court and lodging their formal objection to the Settlement or any component of the Settlement. In particular, on June 14, 2019, 24,261 notices were mailed to Class Members. Doc. 867-02, ¶ 6. With an objection deadline of July 12, 2019, no class member filed an objection to any portion of the Settlement or Class Counsel's request for attorneys' fees, the reimbursement of expenses, and compensation awards to the Class Representatives.

Class Counsel's requested one-third fee is common in these cases. "Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: an Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 35 (2004). Moreover, each of the named plaintiffs in this case agreed to a one-third contingency fee. Doc. 864-1, ¶ 21. Unquestionably, with high-risk and high-cost cases such as this, contingency fee arrangements are the "key to the courthouse" for individuals taking on a large corporation. Courts in this Circuit and this District have frequently awarded attorney fees of 33 1/3%–36% of a common fund. *See, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (36% fee award reasonable); *Barfield v. Sho-Me Power Elec. Co-op.,* No. 11-4321, 2015 WL 3460346, at *4 (W.D. Mo. 2015) (1/3 fee and expense award is a reasonable percentage); *Yarrington,* 697 F. Supp. at 1061–62 (D. Minn. 2010)

(33% fee reasonable); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (35.5% fee award reasonable); *In re E.W. Blanch Holdings, Inc. Sec. Litig.,* No. 01-258, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (awarding 33.3% of a $20 million settlement); *KK Motors v. Brunswick Corp.,* No. 98-2307, Doc. 67, pp. 2–3 (D. Minn. March 6, 2000) (awarding one-third of a $30 million settlement); *In re Airline Ticket Commission Antitrust Litig.,* 953 F. Supp. 280, 285–86 (D. Minn. 1997) (awarding 33.3% of $86.9 million fund); *see also In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005) (listing various settlements, including *In re Select Comfort Corp. Secs. Litig.*, No. 99-884, 2003 U.S. Dist. LEXIS 26409 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $5,750,000 settlement), and *In re Control Data Sec. Litig.*, No. 85-1341 (D. Minn. Sept. 23, 1994) (awarding 36.96% of $8 million fund)).

In similar ERISA excessive fee settlements, District Courts throughout the country have consistently awarded the same Class Counsel as here a one-third fee.

| Case | Fee % |
|---|---|
| *Sims v. BB&T Corp.*, No. 15-1705, 2019 WL 1993519, at **1–3 (M.D.N.C. 2019). | 33.3% |
| *Ramsey v. Philips N.A.*, No. 18-1099, Doc. 27, pp. 1–3 (S.D. Ill. Oct. 15, 2018). | 33.3% |
| *Northrop Grumman*, 2017 WL 9614818, at *6. | 33.3% |
| *Gordan v. Mass. Mut. Life Ins. Co.*, No. 13-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) | 33.3% |
| *Kruger*, 2016 WL 6769066, at *5. | 33.3% |
| *Spano*, 2016 WL 3791123, at *1. | 33.3% |
| *Abbott*, 2015 WL 4398475, at *1. | 33.3% |
| *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). | 33.3% |

| Case | Fee % |
|---|---|
| *Beesley*, 2014 WL 375432, at *1. | 33.33% |
| *Nolte*, 2013 WL 12242015, at *1. | 33.33% |
| *George v. Kraft Foods Global, Inc.*, Nos. 08-3899, 07-1713, 2012 WL 13089487, at *1 (N.D. Ill. June 26, 2012). | 33.33% |
| *Will*, 2010 WL 4818174, at *1. | 33.33% |
| *Martin v. Caterpillar Inc.*, No. 07-1009, 2010 WL 11614985, at **1, 6 (C.D. Ill. Sept. 10, 2010). | 33.33% |

**B. An award reimbursing Class Counsel's costs is appropriate.[4]**

Class Counsel seeks reimbursement of costs and expenses totaling $2,256,805. The Court finds that reimbursement of these litigation expenses that Class Counsel advanced and carried for almost a decade is warranted. Fed. R. Civ. P. 23(h). As a leading treatise states:

> An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved. The equitable principle that all reasonable expenses incurred in the creation of a fund for the benefit of a class are reimbursable proportionately by those who accept benefits from the fund authorizes reimbursement of full reasonable litigation expenses as costs of the suit in contrast to the more narrowly defined rules of taxable costs of suit under Fed. R Civ. P. 54 (d) . . . . The prevailing view is that expenses are awarded in addition to the fee percentage.

Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.); *see also Sprague v. Ticonic*, 307 U.S. 161, 166–67 (1939) (recognizing a federal court's equity power to award costs from a common fund).

"'Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client.'" *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708, 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008) (quoting *In re Infospace*,

---

[4] Because one-third of the common fund created by this litigation is a fair fee and because there is no opposition to that fee, the Court will not consider the Lodestar method for calculating attorneys' fees.

*Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004)); *accord Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). "[R]educing [litigation expenses] because the district judge thinks costs too high in general is not" permissible. *In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).

Reimbursable expenses include many litigation expenses beyond those narrowly defined "costs" recoverable from an opposing party under Rule 54(d), and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research. Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.); *see also In re BankAmerica Corp. Sec. Litig.,* 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (approving reimbursement to class counsel of: "expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review are the type for which 'the paying, arms' length market' reimburses attorneys. They are properly chargeable to the Settlement."); *Anwar v. Fairfield Greenwich Ltd.*, No. 09-118, 2012 U.S. Dist. LEXIS 78929, at *9 (S.D.N.Y. June 1, 2012) ("Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type 'the paying, arms' length market' reimburses attorneys.").

Class Counsel brought this case without guarantee of reimbursement or recovery, so they had a strong incentive to keep costs to a reasonable level, and they did so. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (recognizing that counsel with contingent fee

agreement has a "strong incentive to keep expenses at a reasonable level"). As stated earlier, Class Counsel's expenses for the entire 12 and one-half years of litigation are less than Defendants' expenses for a single expert witness. However, given the complexity, the costs incurred were substantial, and consistent with what would be expected in a typical case of this size. An empirical study of the costs awarded in class action litigation found that the average cost award was equal to 4% of the relief obtained for the class. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: an Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 70 (2004). This study suggests that "requests falling within one standard deviation above or below the mean should be viewed as generally reasonable." *Id*. at 74. The total costs here are less than 3% of the total recovery, well within the range to be considered "generally reasonable." Moreover, this Court has already approved the expenses which had been incurred as if 2015 which are close to the requested amount. Doc. 718; Doc. 782. No Class Member then or now objected to the expenses. Because of the length and complexity of this case, Class Counsel's request for reimbursement of costs and expenses is approved.

**C. The Court approves incentive awards for the class representatives.**

The Court previously awarded an incentive award of $25,000 to Mr. Tussey, Mr. Fisher, and Mr. Pinnell, finding them actively involved in the litigation for the benefit of the entire Class. Doc. 718, p. 21. Class Counsel requests that the Court grant the payment of these named Plaintiff incentive awards from the common fund, which is appropriate under Eighth Circuit law. *Id.* (citing *In re U.S. Bancorp Litig.*, 291 F.3d at 1038; *In re Charter Communications, Inc., Sec. Litig.*, 2005 WL 4045741, at *25 (E.D. Mo. June 30, 2005); *Zilhaver v. UnitedHealth Group, Inc*., 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009)). Without their involvement and willingness to pursue this litigation for the past 12 years, the Class would have received no remuneration for the breaches of

fiduciary duties, which would likely have continued to this day. The total award for all named plaintiffs represents just 0.14% of the total settlement fund.

## III. Conclusion

For these reasons, this Court approves Class Counsel's fee request of $18,331,500, approves the reimbursement of Class Counsel's costs $2,256,805 to Class Counsel, and approves the incentive awards of $25,000 to each of the following named plaintiffs and class representatives: Mr. Tussey, Mr. Fisher, and Mr. Pinnell. All these awards and reimbursements shall be paid from the Settlement Fund.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 16, 2019  
Jefferson City, Missouri